**FILED**
**NOVEMBER 6, 2007**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**07 C 6272**

| | | |
|---|---|---|
| CAREMARKPCS HEALTH, L.P., a Delaware Limited Partnership, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Case No. |
| WALGREEN CO., an Illinois Corporation, | ) ) ) ) | |
| Defendant. | ) ) ) | |

**JUDGE FILIP**
**MAGISTRATE JUDGE KEYS**

**CEM**

### VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, CaremarkPCS Health, L.P. ("Caremark" or the "Company"), by its attorneys, and for its Verified Complaint for Injunctive and Other Relief against Defendant Walgreen Co. ("Walgreens"), states as follows:

### Nature of the Case

1.  This is an action for injunctive relief pursuant to Fed. R. Civ. P. 65 to enforce termination provisions in a Provider Agreement between Caremark and Walgreens. Under the Provider Agreement, Walgreens dispenses pharmaceuticals to individuals who are eligible for the drug benefit administered by Caremark on behalf of health benefit plans that serve millions of plan participants. In violation of the Provider Agreement, Walgreens has notified Caremark that it intends to terminate its obligations under the Provider Agreement with respect to four of these health benefit plans within ten days. The Provider Agreement, as amended, requires a thirty-day notice of termination. Unless enjoined by the Court, Walgreens' abrupt termination of the Provider Agreement with only ten days' notice will greatly disrupt the orderly transition of tens of thousands of plan participants' drug prescriptions to other retail pharmacies. Without

adequate time to complete this transition, plan participants' ability to fill their drug prescriptions in the manner and time frame to which they are accustomed may be impaired.

## The Parties

2. CaremarkPCS Health, L.P. is a limited partnership organized under the laws of the State of Delaware. CaremarkPCS Health, L.P. maintains its principal place of business in Scottsdale, Arizona. CaremarkPCS Health L.P. is the successor to PCS Health Systems, Inc., the party to the contract at issue in this action with Walgreens.

3. CaremarkPCS Health, L.P. has a general partner, CaremarkPCS Health Systems, L.L.C., and a limited partner, ADVP Consolidation, L.L.C. Both CaremarkPCS Health Systems, L.L.C. and ADVP Consolidation, L.L.C. are organized under the laws of the State of Delaware. CaremarkPCS Health Systems, L.L.C., maintains its principal place of business in Scottsdale, Arizona, and ADVP Consolidation, L.L.C. maintains its principal places of business in Delaware.

4. The sole member of both CaremarkPCS Health Systems, L.L.C. and ADVP Consolidation, L.L.C. is AdvancePCS Holding, L.L.C. AdvancePCS Holding, L.L.C. is organized under the laws of the State of Delaware and has its principal place of business in Scottsdale, Arizona.

5. The sole member of AdvancePCS Holding, L.L.C. is CaremarkPCS, L.L.C. CaremarkPCS, L.L.C. is organized under the laws of the State of Delaware and has its principal place of business in Scottsdale, Arizona.

6. The sole member of CaremarkPCS, L.L.C. is Caremark Rx, L.L.C. Caremark Rx, L.L.C. is organized under the laws of the State of Delaware and has its principal place of business in Nashville, Tennessee.

7. Caremark Rx, L.L.C. is the successor to Caremark Rx, Inc. In connection with a March 2007 merger between Caremark Rx, Inc. and CVS Corporation, Caremark Rx, Inc. was merged into a subsidiary of the re-named parent company, CVS Caremark Corporation. The surviving entity and successor to Caremark Rx, Inc. following the merger is Caremark Rx, L.L.C. Caremark Rx, L.L.C. has one member – CVS Pharmacy, Inc. – and CVS Caremark Corporation owns 100% of CVS Pharmacy, Inc.'s stock. CVS Caremark Corporation is a Delaware corporation with its principal place of business in Rhode Island. CVS Pharmacy, Inc. is a Rhode Island corporation with its principal place of business in Rhode Island.

8. Walgreens is a corporation organized under the laws of Illinois. It maintains its headquarters and principal place of business in Deerfield, Illinois. Pursuant to a Provider Agreement entered into on January 3, 2001, Walgreens' retail pharmacies participate in Caremark's national retail pharmacy network and service the benefit plans identified in this Complaint. Walgreens has and continues to engage in business in the State of Illinois.

**Jurisdiction and Venue**

9. This Court has personal jurisdiction over Walgreens because it transacts business in Illinois and breached contractual obligations in Illinois.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and Caremark is not a citizen of the same state as Defendant.

11. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because the claim arises out of incidents occurring in this judicial district and because Defendant resides or conducts business in this judicial district.

### The Business of Caremark

12.     Caremark is one of the nation's leading pharmacy benefit management ("PBM") companies.  Caremark provides comprehensive drug benefit services to over 2,000 health plan sponsors and their plan participants throughout the United States, including the health plans at issue in this action.  Caremark's pharmacy benefit management services are designed to administer prescription benefit plans by providing access to prescription drugs and cost savings for plan participants and Caremark's health plan clients.

13.     Caremark establishes national networks of retail pharmacies that dispense prescription drugs to participants of its client plans by entering into Provider Agreements with the retail pharmacies.  Pursuant to these Provider Agreements, the Provider pharmacy dispenses prescription drugs to eligible Caremark plan participants and is then reimbursed by Caremark at an agreed upon rate.

14.     Caremark offers its clients various network options for the clients' participants.  Caremark's national network includes more than 62,000 participating local retail pharmacies, including Walgreens.

### The PCS Health Systems, Inc. Provider Agreement

15.     On January 3, 2001, PCS Health Systems, Inc., the predecessor to CaremarkPCS Health, L.P., and Walgreens entered into a Provider Agreement, a copy of which is attached hereto as Exhibit 1.  This Provider Agreement sets forth the terms pursuant to which Walgreens dispenses prescriptions to participants of Caremark's client plans that participate in various national networks of retail pharmacies established by Caremark.

16.     Section 8.1 of the Provider Agreement states that "[u]nless earlier terminated in accordance with the provisions of this Agreement, the Agreement will begin on the Effective Date and will remain in effect for an initial term of one (1) year and will automatically renew for

successive terms of one (1) year each." No such notice has ever been given by either party to the Agreement and, thus, the Agreement has remained and continues to remain in effect.

17.  Section 1.3 of the Provider Agreement states that "[f]rom time to time PCS may amend this Agreement, the Schedules to which this Agreement refers, the PCS Manual or On-Line Info by giving notice to Provider [Walgreens] of the terms of the amendment and specifying the date the amendment becomes effective, which shall not be less than thirty (30) days after the notice." Section 1.3 of the Agreement further provides that if Walgreens does not object within the thirty-day period, the amendment shall be effective as of the specified date. *See* Exhibit 1.

18.  Pursuant to the Provider Agreement, Walgreens was required to participate in various national networks established by PCS Health Systems, Inc. *See* Exhibit 1, Section 4.1.

19.  Prior to being amended, under the Provider Agreement Walgreens could terminate its participation in any network or plan participating in one of PCS Health Systems, Inc.'s national networks by giving ten days' prior written notice specifying the date of termination and the names of the networks or plans in which Walgreens would no longer participate. *See* Exhibit 1, Section 4.2. This provision has been amended.

### The 2004 Acquisition of AdvancePCS by Caremark Rx, Inc.

20.  On March 24, 2004, Caremark Rx, Inc. acquired AdvancePCS, the parent corporation of PCS Health Systems, Inc.

21.  Prior to this acquisition, Walgreens and affiliates of Caremark Rx, Inc. had entered into a separate provider agreement, pursuant to which Walgreens dispensed prescriptions to participants in Caremark Rx, Inc.'s client plans participating in national networks.

22.  In April 2004, Caremark Rx, Inc. notified all retail pharmacies participating in its networks, including Walgreens, that, to facilitate the integration of Caremark Rx, Inc. and

AdvancePCS, "both companies will be using the same base provider agreement effective August 1, 2004." A copy of this notice is attached hereto as Exhibit 2. The notice further stated that the new agreement would consist of the AdvancePCS Provider Agreement—which for Walgreens, was the Provider Agreement with PCS Health Systems, Inc.—along with an exhibit and certain fee schedules not relevant here. *See* Exhibit 2. Accordingly, pursuant to this notice, the PCS Health Systems, Inc. Provider Agreement and the attachments referenced in the notice govern the terms of Walgreens' participation in all retail pharmacy networks established by Caremark Rx, Inc. and AdvancePCS, and their affiliates.

### The 2007 Caremark Provider Manual

23. Pursuant to Section 1.3 of the PCS Health Systems, Inc. Provider Agreement, on May 31, 2007, following the merger of Caremark Rx, Inc. and CVS Corporation, Caremark sent Walgreens via Federal Express a notice of various amendments to the Provider Agreement that would take effect with respect to Walgreens and other retail pharmacies on July 1, 2007. These amendments were set forth in a Provider Manual prepared by Caremark, a copy of which is attached hereto as Exhibit 3.

24. The Provider Manual states that it "is a part of the Caremark Documents and incorporated into the Provider Agreement with Caremark. Provider must abide by the provisions and terms set forth in the Provider Agreement. Nonadherence to any of the provisions and terms of the Provider Agreement (which includes the Provider Manual and all other Caremark Documents) will be a breach of the Provider Agreement with Caremark." Exhibit 3 at page 3.

25. Walgreens received the Provider Manual via Federal Express on June 1, 2007. A copy of the Federal Express confirmation of delivery to Walgreens enclosing the Provider Manual is attached hereto as Exhibit 4.

26.     Page 16 of the Provider Manual, entitled "Termination Without Cause," provides that "Provider may terminate the Provider Agreement without cause upon thirty (30) days' prior written notice to Caremark," unless applicable law, a Caremark network, or a participating plan required a longer notice period.  Exhibit 3 at 16.

27.     Walgreens did not object to any of the terms of the amendments to the PCS Health Systems, Inc. Provider Agreement set forth in the Provider Manual.  Accordingly, pursuant to Section 1.3 of the Agreement, these amendments became effective on July 1, 2007.

### The Health Plans at Issue in This Action

28.     The Wisconsin Educational Association ("WEA") Trust is a health plan for which Caremark has provided prescription drug benefit services since 2004.  The WEA Trust health plan utilizes Caremark's national retail pharmacy network serviced by Walgreens and is part of a coalition of employer groups.

29.     ArcelorMittal is an employer-sponsored health plan. ArcelorMittal is headquartered in Chicago.[1]  ArcelorMittal purchases prescription drugs through a coalition that is a client of Caremark.

30.     Johnson Controls, Inc. and its participating affiliates are an employer-sponsored health plan that has been a client of Caremark since 2004.  Johnson Controls, Inc.'s headquarters is in Milwaukee, Wisconsin, with concentrated employee populations in and around Milwaukee as well as eastern Pennsylvania.

31.     Progressive Casualty Insurance Company is an employer-sponsored health plan. This plan purchases pharmacy benefit services through a coalition that is a client of Caremark.

32.     Walgreens dispenses a significant percentage of the prescriptions for each of the above-referenced plans in the range of approximately 23% to 60%.  The above-referenced plans

---

[1] In Exhibit 5 of the Complaint, Walgreens referred to ArcelorMittal's previous employer-sponsored health plan, Ispat-Inland, when it notified Caremark of its intention to terminate its participation in this plan.
.

collectively have approximately 380,000 plan participants, approximately 70,000 of which have active prescriptions at Walgreens.

### Walgreens' Notice of Termination of the Provider Agreement

33. On October 29, 2007, Walgreens faxed Caremark several written notices from its headquarters in Deerfield, Illinois. Copies of these notices are attached hereto as Group Exhibit 5. Although the notices are dated October 24, 2007, the fax coversheet and fax line on each notice indicates that the letter was not faxed to Caremark until October 29, 2007.[2] *See* Exhibit 5. The notices stated that Walgreens intended to terminate its participation in the following pharmacy benefit plans administered by Caremark: (1) Wisconsin Educational Association Trust plan; (2) the ArcelorMittal plan (referred to by Walgreens as the Ispat Island plan); (3) the Johnson Controls, Inc. and its participating affiliates plan; and (4) the Progressive Corporation plan. *See* Exhibit 5.

34. In violation of the PCS Health Systems, Inc. Provider Agreement, as amended by the 2007 Provider Manual, each notice provided for only a ten-day notice period of termination. Specifically, each notice stated that the termination of Walgreens' participation in each of the above-referenced plans was effective on November 9, 2007—eleven days after the notices were faxed to Caremark. *See* Exhibit 5.

35. Walgreens' termination of its participation in these four plans will significantly disrupt Caremark's business and the lives of participants of these health plans by preventing a timely and orderly transition of plan participants' drug prescriptions from Walgreens to other network retail pharmacies. Plan participants for whom Walgreens has dispensed prescriptions for years will be unable to have their prescriptions filled by Walgreens and covered by their health plans at the point of sale. As of November 9, these plan participants could experience a

---

[2] Walgreens initially presented Caremark with written notices of termination on October 24, but these notices were superseded by the notices set forth in Group Exhibit 5.

significant delay in getting their prescriptions filled, as their prescription records and their prescriptions will need to be transferred to another pharmacy, which is a time-consuming process. Additional delay lies in the time required to locate a pharmacy that is able to fill the prescription. Further, unless enjoined, on November 9 Walgreens will not recognize the prescription benefits that cover the prescriptions of plan participants who present their prescriptions to Walgreens. As a result, these plan participants may have no choice but to pay the "usual and customary" charge to Walgreens—which may not be covered by their health plan—to receive their prescription drugs immediately. Given the usual and customary prices of some prescription drugs, paying this amount at the point of sale may present a financial hardship to the plan participants. In an extreme case, the "up-front" usual and customary charge may be too expensive for the plan participant to afford. The purpose of the 30-day notice requirement is to allow Caremark and the participating health plans sufficient time to prepare for these eventualities, to notify plan participants of the termination, and to ensure that there is no delay in filling these plan participants' prescriptions. Walgreens' ten-day notice period prevents all of this.

## COUNT I
### (Breach of Contract by Walgreens)

36. Caremark realleges and restates paragraphs 1-35 as if fully restated herein.

37. The PCS Health Systems, Inc. Provider Agreement, as amended by the 2007 Provider Manual, is a valid and enforceable contract.

38. Caremark has fully performed all of its obligations to Walgreens under the PCS Health Systems, Inc. Provider Agreement.

39. Walgreens has breached the PCS Health Systems, Inc. Provider Agreement by providing Caremark with only ten days' notice of termination of its participation in the following health plans: (1) the Wisconsin Educational Association Trust plan; (2) the ArcelorMittal plan

(referred to as the Ispat Inland Inc. plan by Walgreens); (3) the Johnson Controls, Inc. and its participating affiliates plan; and (4) the Progressive Casualty Insurance Company plan. The contract, as amended by the Provider Manual, requires thirty days' notice of termination.

40. Caremark and the tens of thousands of plan participants who depend upon their Caremark-administered drug benefit to fill their prescriptions will suffer irreparable harm and have no adequate remedy at law unless Walgreens is enjoined by the Court from terminating the PCS Health Systems, Inc. Provider Agreement with only ten days' notice. In addition, Caremark's business will suffer damages in excess of $75,000.

## COUNT II
### (For Preliminary and Permanent Injunctive Relief Against Walgreens)

41. Caremark realleges and restates paragraphs 1-40 as if fully restated herein.

42. Caremark and the tens of thousands of plan participants who depend upon their Caremark-administered drug benefit to fill their prescriptions will suffer irreparable injury as a result of Walgreens' contract violation.

43. Caremark's business will be injured, irreparably and otherwise in amounts that will exceed $75,000 but that will also be difficult to determine or calculate, as a result of Defendant's conduct. Caremark's business activities will be significantly disrupted as a result of Defendant's conduct. The precise monetary value of this disruption to Caremark's business, as a result of Defendant's actions, will exceed $75,000 but will also be difficult to determine.

44. Caremark is likely to prevail on the merits because Walgreens is in open breach of the PCS Health Systems, Inc. Provider Agreement.

45. Injunctive relief is necessary as no adequate remedy at law exists. Unless an injunction is issued, Caremark will suffer irreparable and incalculable harm for which it can never be compensated.

## PRAYER FOR RELIEF

Wherefore, Caremark requests that judgment be granted in its favor and against Walgreens, and that Caremark be granted:

(a) Preliminary and permanent injunctive relief against Walgreens and anyone acting in concert therewith, prohibiting Walgreens from terminating its participation in the following pharmacy benefit plans administered by Caremark: (1) the Wisconsin Educational Association Trust plan; (2) the ArcelorMittal plan; (3) the Johnson Controls, Inc. and its participating affiliates plan; and (4) the Progressive Casualty Insurance Company plan on less than thirty days' notice, or before November 29, 2007;

(b) compensatory and punitive damages;

(c) attorneys' fees and costs; and

(d) such other and further relief as may be appropriate.

Respectfully submitted,

CAREMARKPCS HEALTH, L.P.


By: ___s/ Peter J. Kocoras___
      One of Its Attorneys

Howard M. Pearl
Peter J. Kocoras
Courtney M. Oliva
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600 (telephone)
(312-558-5700 (facsimile)
Firm ID No. 90875

## **VERIFICATION**

Under penalties as provided by law, the undersigned, Gregory Madsen, Senior Vice President of Retail Services, being first duly sworn under oath, deposes and states that he has read the foregoing Verified Complaint for Injunctive and Other Relief, and on the basis of his personal knowledge, review of appropriate business records and discussions with relevant knowledgeable personnel, he believes the allegations contained therein are true and correct except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he believes same to be true to the best of his knowledge, information and belief. This verification is made by deponent and not by Plaintiff because Plaintiff is a limited partnership and deponent is a duly authorized representative thereof.

_____ 11/5/07
Gregory Madsen

Sworn to and subscribed before me this 5th day of November, 2007.

_____
Notary Public

My Commission Expires: 03/04/2010

"OFFICIAL SEAL"
BARBARA J. FOGARTY
Notary Public, State of Illinois
My Commission Expires 3/04/2010