File Date: _____

Case No: _____

ATTACHMENT # _____

EXHIBIT _____

TAB (DESCRIPTION) _____

Caremark will try to minimize the burden on the Provider while requesting the necessary information to perform an audit. However, if a Caremark auditor is denied access to the Provider or if the Provider fails to provide all the requested documentation, 100 percent of the amount for the paid claims in question will become immediately due and owing and Provider may be assessed a per day penalty based upon the reasonable costs incurred by Caremark associated with the audit. Caremark may offset such amounts against any amounts owed by Caremark to Provider.

Provider must promptly comply with all requests for documentation and records.

## Document Requirements

### Original Prescriptions

All prescription documentation, including telephone, oral and computer-generated orders for Covered Items written by the Prescriber and dispensed to the Eligible Person, must contain the following information:

- Full name of the patient for whom the prescription was written by the Prescriber and the address at which the patient resides
- Full name, address and telephone number of the Prescriber
- Name, quantity and strength of the medication prescribed
- Specific dosage directions
- Generic substitution instructions (if applicable)
- Notation when patient requests that a multisource brand medication be dispensed
- Refill instructions
- Miscellaneous or other information as required in accordance with applicable Law(s)
- Prescription hard copies for insulin and diabetic supplies must contain complete documentation of items, quantities dispensed and directions for use
- Prescription hard copies must be maintained for a minimum of three years or such longer period as required by Law
- Prescription records must be updated at a minimum yearly, or such shorter period required by applicable Law; if applicable Law does not specify a time period, Caremark requires that prescription hard copies be updated yearly

During the audit, it may be difficult to remember the circumstances surrounding a particular prescription. Therefore, Caremark recommends that Providers document as much information as possible on the prescription itself, outlining any unusual circumstances that occurred while dispensing the medication. A notation on the prescription may eliminate a question from the auditor or help to resolve the discrepancy.

### Signature Log – Hard Copy or Electronic

Provider must utilize a third party signature log – hard copy or electronic – approved by Caremark. The information must include, but not be limited to, the date the product was received by the Eligible Person or participant, the prescription number, the name of the third party program, authorization for the release of the information to Caremark and/or Plan Sponsor.

For each claim adjudicated through the claims system, the Provider must obtain the signature of the Eligible Person (or his or her authorized representative) on the third party signature log to confirm that he or she has received the medication recorded and has read the NCPDP approved patient disclaimer or mutually agreed upon acknowledgement which confirms that the patient representative has received the medication.

Eligible Persons whose Plan Sponsor requires 100 percent copayment at the point of service or who have prescriptions delivered also must sign the third party signature log. Options for delivered prescriptions include:

- If delivered to a home or business address, Provider must obtain the signature at the time of delivery
- If Eligible Person is sent monthly billing statements, Provider may insert a form listing the dates of fill and prescription numbers; the Eligible Person or authorized representative should be instructed to sign and return the form with his or her payment

The third party signature log must be in date order and readily accessible for a minimum of three years (or such longer period as required by Law) from the date of the last signature, corresponding with the length of time required for retaining prescription hard copies.

### Wholesaler, Manufacturer and Distributor Invoices

Provider will only use supplies to provide Covered Items or otherwise fill prescriptions for Eligible Persons that are sourced from a reputable manufacturer and/or distributor subject to regulatory oversight, including, but not limited to, the Food and Drug Administration and Drug Enforcement Administration. Unless permitted by applicable Law, Provider will not use foreign-sourced products, samples, returned, recalled, expired, or otherwise suspect supplies and/or products to provide Covered Items or otherwise dispense prescriptions for Eligible Persons under this Provider Agreement. Provider will fully cooperate with Caremark in audits or in the course of investigation of suspect or reported violations of this provision.

Wholesaler, manufacturer and distributor invoices must be maintained for a minimum of three years or longer if applicable Law requires a longer time period to substantiate that the drugs dispensed were purchased from an authorized source. Caremark may request that Provider give authorization to the wholesaler, manufacturer or distributor to release corresponding purchase invoices to Caremark to facilitate the purchase verification process. Provider must promptly comply with such requests. If Provider fails to promptly provide all the requested documentation, 100 percent of the amount for the paid claims in question will become immediately due and owing, and Caremark may offset such amounts against any amounts owed by Caremark to Provider.

## Audit Resolution

If discrepancies are found during an audit, Caremark will send Provider a report listing all of the discrepancies along with documentation guidelines that show how to address a discrepancy and validate the paid claims in question.

Provider must respond to Caremark in writing within 30 days with proper supporting documentation for the paid claims in question. Documentation must be mailed to Caremark via certified mail, Federal Express, United Parcel Service, or any other certified carrier, and must be received by the final due date specified by Caremark.

Any claims that are not documented and validated in accordance with the Caremark requirements shall become due and owing to Caremark by Provider at the expiration of the 30-day period; however, Caremark has the right to offset against amounts owed to Provider, before the expiration of the 30-day period, for any discrepant claims if Caremark has a reasonable basis for concluding that the discrepancies are the result of fraud. In addition, if an audit chargeback exceeds $2,500, Provider will reimburse Caremark $250 for the cost of the audit.

Caremark has the right to offset against any amounts owing to Provider under the Provider Agreement any amounts owed to Caremark for discrepant claims or other charges for noncompliance and audit-related costs pursuant to the Provider Agreement or any Third-Party Agreement.

When Caremark collects from Provider amounts due as a result of audit discrepancies, Provider cannot bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against an Eligible Person or Plan Sponsor in relation to such adjustment or chargeback.

Provider may be terminated as a provider or from participation in specific Plans if Caremark determines that Provider is in noncompliance with the provisions and terms set forth in the Provider Agreement.

Caremark may report its audit findings to Plan Sponsors, appropriate governmental entities, regulatory agencies, professional review and audit organizations, and other such entities.

## Potential Dispensing Errors

If as a result of Eligible Person complaint, audit review and/or prescriber verifications Caremark identifies and reviews a potential dispensing error and confirms with Provider the occurrence of a dispensing error. Provider will review the information with the Eligible Person, document the incident in accordance with Provider's internal and/or corporate procedures, and report the incident to any appropriate regulatory agency. For paid claims that have been determined to have a dispensing error, Caremark reserves the right to charge back the entire claim amount.

## Noncompliance

Provider must provide Pharmacy Services related to a Covered Item to all Eligible Persons of all Plan Sponsors in compliance with the Provider Agreement. Noncompliance may include, but is not limited to, refusing to accept an identification card for an Eligible Person, refusing to service an Eligible Person because of the reimbursement rate, failing to submit a claim for a Covered Item for an Eligible Person, disclosing confidential information or data, submitting the incorrect dispense as written (DAW) code, submitting an inaccurate U&C price, submitting incorrect data in the claims submission, collecting an amount different than displayed in the claims response, and not dispensing an emergency supply of a Covered Item to an Eligible Person as required by Law.

If Provider is deemed noncompliant, certain remedies may apply, including termination of the Provider Agreement and any other available remedies.

All fees, interest, penalties, damages, withholds, judgments, financial obligations, or other charges imposed upon Caremark that result in whole or in part from Provider's actions, inactions or other failure to comply with the Provider Agreement, including the Provider Manual, Addenda, other Caremark Documents, and/or applicable Laws shall be paid fully by Provider within the time period indicated by Caremark.

In its sole discretion, Caremark may assess against Provider a $75 administration fee per occurrence for each noncompliant claim.

Caremark has the right to offset against any amounts owing to Provider any such amounts owing to Caremark for discrepant claims or other charges for noncompliance and/or audit-related costs.

## Other Submission Requirements

### Complete and Accurate Information

Claims are paid based on the information that Provider submits through the claims systems to Caremark. Provider must clarify ambiguous dosage directions regarding utilization prior to dispensing and must not combine Prescriber authorized refills. If a prescription contains ambiguous directions (e.g., no directions, "Use as Directed," or "prn"), Provider must obtain more concise directions, as to accurately represent the days supply. The directions may be obtained by direct communications with either the Eligible Person or Prescriber. Documentation of the directions on the original prescription is required. The days supply should accurately reflect the documented directions and quantity dispensed. The Prescriber should be accurately identified with an applicable NPI or DEA registration number as described in **Claims Submission** and within this section of the Provider Manual. The strength of the medication identified on the claim must be an accurate reflection of that which was prescribed or documentation of the unavailability of the prescribed strength will be required. If any claim was paid based on incorrectly submitted data, Caremark reserves the right to charge back the entire claim amount.

### Dispensing Limitations

* The quantity dispensed must be entered exactly as it is written on the prescription; please note for NCPDP Version 5.1, Provider must enter the exact metric decimal quantity dispensed only (no rounding on all claim transactions) Many products are transmitted as a kit, the volume of medication, or weight in grams. Provider should review claims submission to ascertain that the quantity is accurate on all claims based on the specificity of the product and Prescriber instructions.
* Provider must submit the days supply accurately—if the Prescriber indicates "as directed," Provider must determine the dosing schedule in order to submit the claim correctly—if the quantity is uncertain, Provider must contact the Prescriber to determine the appropriate amount to dispense and document said amount appropriately on the original prescription
* If the Prescriber indicates "as directed" for a drug that may be administered on a sliding scale, such as insulin, the Provider must obtain the dosage range, note it on the prescription hard copy, and calculate the days supply by using the maximum daily dosage; the directions may be obtained by direct communications with either the Eligible Person or the Prescriber
* Any subsequent changes in the dispensing limitations that are approved by the Prescriber must be noted on the original prescription
* Claims submitted to Caremark that exceed Plan limits for the days supply or quantity dispensed will reject with the message, **PLAN LIMITATIONS EXCEEDED**—the reject message includes the actual limits such as: **MAXIMUM DAYS SUPPLY – 34** or **QUANTITY LIMIT – 100**; any claims resubmitted must be entered with the accurate quantity and days supply; however, if the claim submitted has a quantity which represents the smallest commercially available package size and rejects as stated, it is allowable for Provider to resubmit the claim utilizing that quantity and the **MAXIMUM DAYS SUPPLY** as provided in the reject messaging.

### U&C Validation

Provider is required to submit accurate Usual and Customary (U&C) pricing for all Caremark claims, including prices which are part of a set price program offered by Provider. Provider must provide, upon request, a record of the dispensing of a prescription (identical to the prescription being audited) that was dispensed to a cash paying customer on the same date if such dispensing occurred. Provider can redact confidential patient health information from the record in accordance with applicable Law, but the record must contain the patient charge amount.

Caremark has the right to review and audit documentation as detailed in this section to validate U&C accuracy. Provider is required to collect from the Eligible Person the lesser of the U&C or Patient Pay Amount. Provider must submit a claim to Caremark regardless of collected amount from the Eligible Person.

### Patient Receipts and Insurance Profile

Provider will print U&C price and Eligible Person Patient Pay Amount on receipts and insurance profiles provided to an Eligible Person. Provider reimbursement pricing information and prices paid to Provider for individual claims under this Provider Agreement are Confidential Caremark Information and may not be disclosed on patient receipts or insurance profiles.

Caremark has the right to review and audit documentation to validate Provider's compliance with this section.

### Dispense as Written (DAW) Codes

Incorrect DAW code submission is one of the most common causes of discrepancies.

Provider must select from the following codes:

***DAW 0—NO PRODUCT SELECTION INDICATED***
- Use DAW 0 when dispensing a generic; that is, when no party (i.e., neither Prescriber, nor pharmacist, nor Eligible Person) requests the branded version of a multisource product
- Use DAW 0 when dispensing a single-source brand product
- Generic pricing may be applied to claims for multisource products submitted with DAW 0

***DAW 1—PHYSICIAN REQUESTED PRODUCT DISPENSED AS WRITTEN***
- Must be evidenced on the prescription hard copy (original and updates) and used only when the **Prescriber** specifies the branded version of a multisource product on the hard copy prescription or in the verbally communicated instructions
- Computer systems that default to DAW 1 may result in discrepancies and chargebacks
- Prescription must follow state substitution Laws

***DAW 2—SUBSTITUTION ALLOWED—PATIENT REQUESTED PRODUCT DISPENSED***
- Must be submitted when the **Eligible Person** requests the branded version of a multisource product even though a generic is available and the Prescriber has authorized (or not prohibited) a generic or when the Eligible Person requests that Provider contact the Prescriber to obtain approval for a branded version when neither the original prescription nor the verbally communicated instructions specified the branded version
- Many plans require the Eligible Person to pay the difference between the brand and the available generic

***DAW 3—SUBSTITUTION ALLOWED—PHARMACIST SELECTED PRODUCT DISPENSED***
- Generic pricing will be applied to claims for multisource products submitted with DAW 3

***DAW 4—SUBSTITUTION ALLOWED—GENERIC NOT IN STOCK***
- Generic pricing will be applied to claims for multisource products submitted with DAW 4

***DAW 5—SUBSTITUTION ALLOWED—BRAND DISPENSED AS GENERIC, PRICED AS GENERIC***
- Use DAW 5 when dispensing a branded version of a multisource product as a generic
- Generic pricing will be applied to claims for multisource products submitted with DAW 5

***DAW 6—NOT IN USE AT THIS TIME***

***DAW 7—SUBSTITUTION NOT ALLOWED—BRAND MANDATED BY LAW***
- Use DAW 7 when Law or regulations prohibit the substitution of a brand product even though generic versions of the product may be available in the marketplace

***DAW 8—SUBSTITUTION ALLOWED—GENERIC NOT AVAILABLE***

***DAW 9—NOT IN USE AT THIS TIME***

**Reversal of Claims**

All prescriptions not received by an Eligible Person must be reversed in accordance with the Provider Manual through the electronic claims system using data elements as defined by Caremark's payer sheet(s) or as directed by Caremark.

**Prescriber Identification**

Identification of the Prescriber requires a National Provider Identifier (NPI). If an NPI is unavailable at the time of claims submission, then Provider must submit using the following order of preference:
- the Prescriber Drug Enforcement Administration (DEA) number
- the hospital or affiliated clinic NPI or DEA
- Provider's own NPI or DEA for prescriptions for noncontrolled substances

Provider may use another designation for the Prescriber only when required and communicated by Caremark and/or Plan Sponsor.

**Drugs with Unusual Submission Requirements**

Claims for some drug products frequently result in incorrect reimbursement. To help avoid audit chargebacks, refer to the examples in the chart in **Appendix E.**

## Potentially Fraudulent Activity

If Provider suspects that potentially fraudulent prescriptions are being presented or that other improprieties regarding claims are happening, Provider must notify Caremark by telephone at 877-841-1851 or by written correspondence at:

**Caremark**
**Attn: Network Performance, MC112**
**9501 East Shea Boulevard**
**Scottsdale, Arizona 85260**

Please provide the Eligible Person's name and identification number, the Prescriber name and identification number, a detailed description of the suspected fraudulent activity and any related supporting documentation.

Some examples of potentially fraudulent activity that would warrant notification to Caremark may include, but not be limited to:

- Eligible Person presenting a forged or altered prescription
- Eligible Person presenting a prescription not written by the Prescriber identified
- Eligible Person calling in their own prescription
- Eligible Person presenting a prescription indicating a medication which is not consistent with the practice or specialty of the Prescriber
- Eligible Person presenting a prescription for an ineligible person, or fictitious family member

Provider may also consider notifying the Drug Enforcement Administration (DEA) and/or other related regulatory agencies.

# Intellectual Property, Confidentiality and Proprietary Rights

### Advertising and Trademarks

Caremark retains exclusive rights to and in the names "Caremark℠," "Advance," "PCS," "AdvanceRx℠" together with other distinctive trademarks and/or service marks that have been used by Caremark or may be adopted or used by Caremark in the future.

Provider may not advertise or use any name, symbol, trademark or service mark of Caremark in advertising and/or any other promotional information other than as specifically permitted by the Provider Agreement, without prior written consent of Caremark.

Caremark and/or Plan Sponsors may: (1) use the name and address(es) of Provider in directories, informational brochures or other publications provided to Plan Sponsors and/or Eligible Persons; (2) use the information regarding Provider's services that is provided to Caremark by Provider in publications provided to Plan Sponsors and/or Eligible Persons; and (3) provide Plan Sponsors and/or Eligible Persons with credentialing information.

Upon termination as a Provider for any reason, Provider will immediately discontinue the use of any name, symbol, trademark or service mark of Caremark in advertising and/or any other promotional information.

### Confidentiality

Provider must maintain in confidence and may not sell, assign, transfer, or give to any third party, including a Plan Sponsor or Eligible Person, Confidential Caremark Information. In addition, reimbursement pricing information and prices paid to Provider for individual claims under this Agreement are Confidential Caremark Information and may not be sold, assigned, transferred, or given to any third party including a Plan Sponsor or Eligible Person. Provider may not disclose reimbursement pricing information and prices paid to Provider.

Provider may not directly or indirectly solicit a Plan Sponsor or Eligible Person in a manner that may result in inter-ference with Caremark's agreement with a Plan Sponsor nor use or disclose Confidential Caremark Information in connection with any solicitation of a Plan Sponsor or Eligible Person.

No Confidential Caremark Information may be quoted or attributed to Provider or Caremark without the prior written consent of Caremark.

Caremark and Provider must use all necessary security procedures to ensure that all information and data exchanges are authorized, and to protect any information or data records from improper access.

Provider must maintain the confidentiality of an Eligible Person's personal profile and records as required by appli-cable Law. Provider may not use the information provided by Eligible Persons for any purpose not related to the Agreement, except to the extent such use is in accordance with applicable Law.

Provider must promptly notify Caremark if it becomes aware of any unauthorized use of Confidential Caremark Information.

This **Confidentiality** section applies to the extent permissible under applicable Law.

### Proprietary Rights

Provider has no right to use, reproduce or adapt any information, data, work, compilation, computer program, manual, process or invention obtained from, provided by, or owned by Caremark and/or Plan Sponsor (including but not limited to products, programs, services, business practices, procedures), without Caremark's prior written consent.

Provider agrees that the information contained in the claims systems that was obtained by and through the adminis-tration and adjudication of a claim by Provider is the property of Caremark, and Provider agrees not to claim any right, title, or interest in said information.

Caremark has the right to use, reproduce, and adapt any information or data obtained from Provider in any manner deemed appropriate, even if such use is outside the scope of the Provider Agreement, provided such use is in accordance with applicable Law.

### Remedies

Provider acknowledges that any unauthorized disclosure or use of information or data obtained from or provided by Caremark would cause Caremark immediate and irreparable injury or loss that cannot be fully remedied by monetary damages.

Accordingly, if Provider should fail to abide by the provisions and terms set forth in these sections of the Provider Manual (**Intellectual Property, Confidentiality, and Proprietary Rights**), Caremark will be entitled to specific performance, including immediate issuance of a temporary restraining order or preliminary injunction enforcing the Agreement, and judgment for damages (including reasonable attorneys' fees and costs) caused by the breach, and all other remedies provided by the Provider Agreement and applicable Law.

# Miscellaneous

## Assignment

Provider may not assign Provider Agreement with Caremark to any other person or entity without the prior written approval of Caremark which consent will not be unreasonably withheld.

Any attempted assignment by Provider without the prior written approval of Caremark will be void and of no force and effect. Under such circumstances, Caremark has the right to immediately terminate the Provider Agreement with Provider and/or the successor.

Provider covenants that any agreement with a successor assigning Provider's rights and obligations under the Provider Agreement shall provide for an express assumption by such successor of Provider's liabilities and obligations under the Provider Agreement. Notwithstanding an approved assignment and a successor's assumption of Provider's liabilities under the Provider Agreement, Provider will remain jointly liable for any liabilities and obligations under the Provider Agreement arising prior to assignment until the successor satisfies such liabilities and obligations in full.

Caremark may assign the Provider Agreement to any direct or indirect parent, subsidiary, or affiliated company or to a successor company.

## Change of Ownership

Provider must immediately notify Caremark of a change of ownership.

By entering into the Provider Agreement, Provider hereby agrees to assume and satisfy all liabilities and obligations, if any, of the provider operating the pharmacy immediately prior to Provider's entry into the Provider Agreement.

## Independent Contractors; Third Party Beneficiaries

Caremark and Provider are considered independent contractors, and shall have no other legal relationship under or in connection with the Provider Agreement. Neither party will act as or be deemed a representative of the other party for any reason whatsoever.

Except for the indemnification provisions, no term or provision in the Provider Agreement is for the benefit of any person who is not a party to the Provider Agreement and no such party shall have any right or cause of action under the Provider Agreement.

## Court Orders, Subpoenas or Governmental Requests

If Caremark receives a court order, subpoena or governmental request relating solely to Provider, Caremark may comply with such order, subpoena or request, and Provider must indemnify and hold harmless Caremark for, from, and against any and all costs (including reasonable attorneys' fees and costs), losses, damages, or other expenses Caremark may suffer or incur in connection with the responding to such order, subpoena or request.

If Provider is requested or required to disclose any Confidential Caremark Information, whether by oral questions, interrogatories, requests for information or documents, subpoenas, or other processes, Provider will promptly provide Caremark with written notice of any such request or requirement so that Caremark may seek an appropriate protective order or other appropriate remedy. If such protective order or other remedy is not obtained, Provider will disclose only that portion of the Confidential Caremark Information as to which it has been advised by legal counsel that disclosure is required by Law; and Provider will exercise its best efforts to obtain reliable assurances that confidential treatment will be accorded to the Confidential Caremark Information that is disclosed in response to such requests or requirements.

## Notices

All notices to Caremark and Provider pursuant to the Provider Agreement must be in writing, and be delivered in person, or by certified mail, air courier, or first class mail, and addressed to network management at Caremark at the address below; and to Provider at the street, mailing, or check mailing address set forth in Provider's application or verification form.

**Caremark**
**Attn: Network Management, MC080**
**9501 East Shea Boulevard**
**Scottsdale, Arizona 85260**

Any notice of dispute must also be addressed and delivered to:

**Caremark**
**Attn: General Counsel**
**211 Commerce, Suite 800**
**Nashville, Tennessee 37201**

Notwithstanding the foregoing, Caremark may give notice to Provider via the claims system or by facsimile or e-mail at the facsimile number or e-mail address or via a Caremark website for which Provider will be given access as set forth in the Provider's application or verification form. Caremark may also include notices in Provider payment cycles.

All notices will be deemed received when delivered in person, by e-mail, or by facsimile, or if sent by mail, the notice will be deemed received on the third business day after the date such notice was mailed.

## Amendments

From time to time, and notwithstanding any other provision in the Provider Agreement (which includes the Provider Manual), Caremark may amend the Provider Agreement, including the Provider Manual or other Caremark Documents, by giving notice to Provider of the terms of the amendment and specifying the date the amendment becomes effective. If Provider submits claims to Caremark after the effective date of any notice or amendment, the terms of the notice or amendment will be deemed accepted by Provider and will be considered part of the Caremark Provider Agreement.

## Enforceability

In the event that any provision or term set forth in the Provider Agreement is determined invalid or unenforceable, such invalidity and unenforceability will not affect the validity or enforceability of any other provision or term set forth in the Provider Agreement.

## Arbitration

Any and all controversies in connection with or arising out of the Provider Agreement, which cannot be settled by the parties, will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association. The arbitrator must follow the rule of Law, and may only award remedies provided in the Provider Agreement. The award of the arbitrator will be final and binding on the parties, and judgment upon such award may be entered in any court having jurisdiction thereof. Any such arbitration must be conducted in Scottsdale, Arizona, and Provider agrees to such jurisdiction, unless otherwise agreed to by the parties in writing or mandated by Law. The expenses of arbitration, including reasonable attorney's fees, will be paid for by the party against whom the award of the arbitrator is rendered.

## Force Majeure

Caremark and Provider are excused from performance under the Provider Agreement to extent that either Caremark or Provider is prevented from performing all or any part of the Provider Agreement as a result of causes that are beyond the affected party's reasonable control, including, but not limited to, fire, flood, earthquakes, tornadoes, other acts of God, war, work strikes, civil disturbances, power or communications failure, court order, government intervention, a change in Law, a significant change in the industry, or third party nonperformance.

## Anti Kickback Statute, Stark Law, and Caremark Compliance Program

Each party certifies that it shall not violate the federal anti-kickback statute, set forth at 42 U.S.C § 1320a-7b(b) ("Anti-Kickback Statute"), or the federal "Stark Law," set forth at 42 U.S.C § 1395nn ("Stark Law"), with respect to the performance of its obligations under this Provider Agreement. Further, Caremark shall ensure that individuals meeting the definition of "Covered Persons" (as such term is defined in the "Corporate Integrity Agreement between the Office of Inspector General of the Department of Health and Human Services and AdvancePCS") shall comply with Caremark's Compliance Program, including training related to the Anti-Kickback Statute and the Stark Law. In addition, Caremark's Code of Conduct and policies and procedures on the Anti-Kickback Statute and Stark Law may be accessed at http://www.caremark.com/wps/portal/_s.155/3370?cms=CMS-2-007764.

# Medicare Part D

## A. Medicare Part D Network Standards

To the extent Provider provides Pharmacy Services to a Part D Enrollee, Provider must comply with the following terms contained in this **Medicare Part D Network Standards** section of the Provider Manual. Unless specifically indicated otherwise, these terms apply to all Providers who provide Pharmacy Services to a Part D Enrollee (including retail, home infusion, long-term care, and Indian Health providers). All capitalized terms used in this **Medicare Part D Network Standards** section will have the meaning as in the Retail Addendum to Caremark Provider Agreement (see below). All other capitalized terms shall have the meaning set forth in the Provider Agreement.

### Compliance with Laws

Pharmacy reimbursement to Providers for Pharmacy Services for a Part D Enrollee are made, in whole or in part, from federal funds, and subjects Provider to laws such as, but not limited to, the False Claims Act and the Anti Kickback Statute. Provider will comply with all applicable Laws.

### Delegated Activity

If Provider delegates any activity or responsibility related to Pharmacy Services to subcontractor(s), Provider's agreements with such subcontractor(s) will provide that the subcontractor(s) will comply with all of the terms and conditions applicable to Provider under this **Medicare Part D** section.

### Performance Monitoring

Provider understands that Caremark, on its own behalf and on behalf of any Part D Plan Sponsor, will monitor the performance of Provider on an ongoing basis to determine whether Provider is in compliance with Part D. Provider will cooperate with Caremark as necessary to support Caremark's monitoring strategy, including but not limited to, allowing Caremark to inspect, evaluate and audit Provider's books and records.

### Compliance Program

Provider agrees to comply with Caremark's compliance and fraud and abuse programs, including but not limited to, the policies and procedures, training, and corrective action plans related to the program. Provider will provide Caremark upon request copies of Provider's corrective actions related to Part D.

### Record Retention

Provider will maintain, for a period of 10 years, its books and records relating to Pharmacy Services, or as required under applicable Law.

### Medicare Part D Calls to the Pharmacy Help Desk

Inquiries can be directed to the interactive voice response (IVR) system or the Pharmacy Help Desk. The Caremark Pharmacy Help Desk IVR immediately routes Medicare Part D inquiries to appropriate information/pharmacy service representatives through an initial request/prompt to discover if Provider is calling on behalf of a Part D Enrollee or about a Medicare Part D Claim. If Provider responds yes, the IVR requires Provider to enter the RXGRP number of the Part D Enrollee.

After entering this information, Provider will be routed to a specialized team prepared to handle and resolve Medicare Part D inquiries. Provider should make every effort to enter the RXGRP number if it is available. If the Part D Enrollee does not have an ID card available, ask for an acknowledgement letter. If an acknowledgement letter is not available, consider calling 1-800-MEDICARE (1-800-633-4227), or send an E1 transaction to determine the processing information, including the RXGRP number.

The Pharmacy Help Desk numbers are provided below:

| BIN | PHONE NUMBER |
|---|---|
| 610415* | 1-800-345-5413 |
| 004336* | 1-800-364-6331 |
| 610029* | 1-800-421-2342 |
| 610468 | 1-800-777-1023 or 1-800-503-3241 |
| 006144 | 1-800-777-1023 or 1-800-503-3241 |
| 004245 | 1-800-837-9600 |
| 610449 | 1-800-519-8374 |
| 603604 | 1-800-785-5301 |
| 610474 | 1-800-785-5301 |

*Help Desk phone number serving Puerto Rico Providers is available by calling toll-free **1-800-842-7331**.

## Federal Health Care Programs Prescriber Participation Exclusion

In accordance with CMS guidance, Part D Plan Sponsors should have policies and procedures in place to implement a comprehensive program to detect, prevent and control fraud, waste and abuse, including a process to identify any claims that were submitted for drugs that were prescribed by an excluded Prescriber, and a process to report and properly repay any overpayments resulting from inaccurate payments in accordance with CMS policy. The guidance also states that Part D Plan Sponsors shall not pay for drugs prescribed by a Prescriber excluded by either the HHS OIG or GSA.

Caremark implemented an automated point of sale process to deny Part D Claims for all drugs prescribed by excluded Prescribers. Toward this goal, Providers may receive the following electronic messaging:

<<Prescriber is an OIG Excluded Prescriber>>

If Provider receives this electronic message, do not resubmit the Claim for processing unless, in Provider's professional judgment, it is an emergency situation. If it is an emergency situation, please call the appropriate Caremark Pharmacy Help Desk contact number referenced at the beginning of this section.

## General Procedures for Acknowledgement Letters

In order to comply with the CMS request, Providers should honor Part D Enrollee acknowledgement letters if presented at the pharmacy in place of ID cards.

- **What is an acknowledgement letter?**

    An acknowledgement letter is a letter that qualified Part D Enrollees receive from their Part D Plan in advance of the distribution of Part D Plan ID cards. The letter should contain sufficient information in order to verify a Part D Enrollee's eligibility and to submit Claims to the appropriate location in order for adjudication to occur. Please note, letters confirming initial information was received but has yet to be confirmed and/or processed may not constitute a Part D acknowledgement letter.

- **What if there is not enough information/inaccurate information on the letter? What happens if the Claim rejects?**

    The following steps are useful when a Claim rejects, whether the information was obtained from an acknowledgement letter, an ID card or from the Part D Enrollee directly:

    1. Call 1-800-MEDICARE to verify the Part D Plan under which the Part D Enrollee is enrolled, and if possible, verify the Part D Enrollee's eligibility information.

    2. If a Part D Enrollee's eligibility cannot be verified in Step 1, send an E1 transaction to the TrOOP Facilitator (RelayHealth, formerly Per Se) to verify the Part D Enrollee eligibility and to obtain information necessary to process Claims. It is Provider's responsibility to verify Part D Enrollee is the Part D Enrollee identified on the E1 transaction response.

    3. If a Part D Enrollee's eligibility cannot be verified in Step 2 but Caremark is the processor, contact the appropriate Caremark Pharmacy Help Desk phone number (listed in the front of this Provider Manual and in a table above in this section).

## Beneficiaries Receiving CMS Notification on Status Change in LICS/LIS

In order to avoid any interruptions to receiving drug therapy for Part D LICS/LIS eligible beneficiaries who have received a notification from CMS indicating a status change, the Part D Enrollee must apply/re-apply through the Social Security Administration, or they may have higher copayment and premium liabilities in the future. Providers are encouraged to assist these Part D Enrollees by:

- Helping submit LICS/LIS applications
- Refer the Part D Enrollee to the Social Security Administration at:
    - 1-800-772-1213
    - http://www.ssa.gov/medicareoutreach2/index.htm

## Claims Submission Window for Medicare Part D

Provider must submit, reverse and/or resubmit Medicare Part D Claims within 90 days of original date of fill.

Medicare Part D Claims that do not process via on-line adjudication are still eligible for processing for up to one year from original date of fill. Call the appropriate Caremark Pharmacy Help Desk number to determine if the Claim is eligible for processing and for directions on how to submit a Medicare Part D Claim that could not be submitted on-line.

## Single Transaction Coordination of Benefits (ST COB)

Caremark developed a Single Transaction Coordination of Benefits (ST COB) process whereby Provider sends one transaction to Caremark, and the Claim adjudicates against both primary and secondary plans before returning one final response to Provider. This type of COB is limited to certain Part D Plan Sponsors, and whose benefit is comprised of a group of beneficiaries that are both primary and secondary within this Part D Plan. Please refer to the Caremark payer sheet found in **Appendix A** for more information.

### General Medicare Part D Submission Requirements for Coordination of Benefits

For all other primary Part D Plan Sponsors who have not implemented single transaction coordination of benefits (ST COB), the following coordination of benefits information is essential when submitting claims for Part D Enrollees:

- If Part D is the primary coverage, the standard RXBIN/RXPCN combinations should be used (refer to the Caremark Plan Sponsor grid distributed annually every December)
- For supplemental coverage after the primary Part D Claim is processed, or if Part D falls into a secondary/supplemental status due to other existing primary coverage (commercial coverage, workers comp, etc.), please use the following RXBIN/RXPCN combinations:

| RXBIN | PROCESSOR CONTROL NUMBER (PCN) | OTHER COVERAGE CODE |
|---|---|---|
| | COBPCS | 08 |
| | COBADV | 08 |
| 012114 | COBCRK | 08 |
| | COBSEGADV | 02 |
| | COBSEGCRK | 02 |

*Note: Claims submitted under RXBIN 012114 must be routed through the Provider's switch to the TrOOP Facilitator (RelayHealth, formerly Per Se)—do not use lines that are directly connected to Caremark.*

### Patient Location Codes

To ensure proper reimbursement, it is important that Provider submit accurate patient location codes. Patient location codes must be entered in field 307-C7 (Patient Location) for every Claim submission in order for appropriate adjudication and payment. As recommended by NCPDP, Caremark will accept the following values:

| Patient Location (NCPDP Data Element 307-C7) | NCPDP Definition | Caremark Claim Type |
|---|---|---|
| 0 as a default | Not specified | Retail claims |
| 1 | Home | Home infusion claims |
| 3 | Nursing Home | Qualified LTC claims |

*Note: Home infusion and long-term care Claims must meet the CMS qualifications (i.e., skilled nursing unit, etc.) in order to submit these patient location codes and receive appropriate payment.*

### Part D Reference Guide for Pharmacists

This document can be found at the following web-site: www.cms.hhs.gov/pharmacy. It contains helpful information on a variety of Part D topics for Providers, including information on the enhancements to the E-1 transaction. CMS periodically updates this document so check periodically for the latest download.

### Special Instructions for Participating Long-term Care Providers

The following information is applicable to Providers participating in the Caremark and client-specific Long-term Care (LTC) Medicare Part D networks, unless specified otherwise.

#### LTC Override Requests

**1.  *EMERGENCY SUPPLY:***

Please note the following text from Chapter Six of the Medicare Part D manual. The requirement states to allow a one time emergency fill (after the 90 day transition period has expired) for up to 31 days of medication, unless the prescription is written for less than 31 days.

**If the prescription in question was written for less than 31 days, it is within CMS guidelines to restrict to one fill.** According to CMS regulations, exceptions should be handled within three days (72 hours).

**Section 30.4.4 Emergency Supply for Current Enrollees:** Since, as a matter of general practice, LTC facility residents receive their medications as ordered without delay, Part D Plans must cover an emergency supply of nonformulary Covered Part D Drugs for LTC facility residents as part of their transition process. During the first 90 days after a Part D Enrollee's enrollment, he or she will receive a transition supply. However, to the extent that a Part D Enrollee in an LTC setting is outside his or her 90-day transition period, the Part D Plan must still provide an emergency supply of nonformulary Covered Part D Drugs – including Covered Part D Drugs that are on a Part D Plan's formulary but require prior authorization or step therapy under a Part D Plan's utilization management rules – while an exception is being processed. These emergency supplies of nonformulary Covered Part D Drugs

– including Covered Part D Drugs that are on a Part D Plan's formulary but require prior authorization or step therapy under a Part D Plan's utilization management rules – must be for at least 31 days of medication, unless the prescription is written by a Prescriber for less than 31 days.

**2.  *EMERGENCY BOX DISPENSING:***

Provider pharmacy staff should call the appropriate Caremark Pharmacy Help Desk phone number and request an override for this "refill too soon" reject for up to a **5 (five) days supply.**

**3.  *ADMISSION (FORMULARY):***

Provider pharmacy staff should call the appropriate Caremark Pharmacy Help Desk phone number and request an override for this "refill too soon" reject for up to a **31 days supply.**

**4.  *LOA (LEAVE OF ABSENCE) MEDICATIONS:***

Provider pharmacy staff should call the appropriate Caremark Pharmacy Help Desk phone number and request an override for up to a **5 (five) days supply only.**

**5.  *MEDICATION MISSING OR SPIT OUT:***

Provider pharmacy staff should call the appropriate Caremark Pharmacy Help Desk phone number and request an override for up to a **5 (five) days supply only.**

### LTC Billing

Provider agrees to submit Claims to Caremark's claims adjudication system. Provider agrees to bill Caremark monthly for medications dispensed continuously over the course of a month. One dispensing fee will be paid based on the monthly quantity dispensed of a single drug of a single strength. When the medical needs of the Part D Enrollee require a change in the medication order or the medication provided has a documented medical necessity for limited dispensing (including but not limited to expiration of product) requiring an additional dispensing of the same drug, Provider may receive one dispensing fee for each new medication order or dispensed-quantity limited by medical necessity.

#### Pharmacies Serving Long-Term-Care Facilities (40.3.1)

Given the uniqueness of the long-term-care (LTC) setting, Part D Enrollees will generally not present the prescription to Provider. In most instances, either the treating physician or his/her authorized staff member sends the prescription to Provider. If there is an issue with a requested prescription, the Provider contacts the treating physician or his/her authorized staff member and the physician determines what course of action is appropriate (i.e., the physician may prescribe a different medication or request an exception).

If Provider is off-site, Provider must send (fax or deliver) the notice described above to the location in the LTC facility designated to accept such notices.

If Provider is on-site, Provider must deliver the notice to the location in the LTC facility designated to accept such notices. The LTC facility staff is responsible for providing the Part D Enrollee (or the Part D Enrollee's appointed representative) and the Part D Enrollee's treating physician with the notice. A copy of the notice should be placed in the Part D Enrollee's file at the LTC facility (refer to **Appendix H** for a copy of the notice in English and Spanish).

#### Formulary Transition Plan

All Part D Plans are required by CMS to provide a formulary transition plan. The intent of the transition plan is to provide immediate short-term coverage for new Part D Enrollees in order to continue ongoing therapies to satisfy CMS requirements for a formulary transition process for Part D. **Drugs excluded under Part D are NOT eligible for the transition plan.**

## Information On CMS-10147 Pharmacy Notice
## Medicare Prescription Drug Coverage And Your Rights

On behalf of all Part D Plans adjudicating through Caremark, CMS required information titled "Medicare Prescription Drug Coverage and Your Rights" must be distributed to Providers (Pharmacy Notice – CMS-10147) for use in instructing Part D Enrollees to contact their Part D Plan to obtain a coverage determination or ask for a formulary or tiering exception if the Part D Enrollee disagrees with the information provided by Provider.

This notice is provided in **Appendix H** in English and Spanish, and may be distributed to Part D Enrollees or conspicuously posted at Provider's location. Posted notices must be large enough to be easily read by a Part D Enrollee. This notice fulfills the requirements at 42 CFR §423.562(a)(3).

This is a standard notice. Part D Plans and Provider may not deviate from the content of this notice. Please note that the OMB control number must be displayed in the upper right corner of the notice.

## B. Retail Addendum to the Caremark Provider Agreement
## Terms of Participation in Medicare Part D

By entering into the Provider Agreement, Provider agrees to comply with the following terms (as noted in this Retail Addendum to the Caremark Provider Agreement) to the extent Provider provides Pharmacy Services to a Part D Enrollee and Provider is a retail pharmacy as that term is defined in 42 CFR §423.100. In the event any provision in this Retail Addendum to the Caremark Provider Agreement ("Retail Addendum") conflicts with the terms of the Provider Agreement (including the Provider Manual), the terms of this Retail Addendum shall govern. Provider acknowledges that SilverScript, Inc., together with certain other designated affiliates of Caremark Rx, L.L.C. (collectively, "Caremark") is responsible for providing Part D services on behalf of Part D Plan Sponsors.

To the extent that Provider shall provide Pharmacy Services to a Part D Enrollee, Provider agrees to comply with any applicable Part D requirements for participation in Part D as a dispensing pharmacy.

Without limiting the generality of the foregoing, and notwithstanding anything in the Provider Agreement to the contrary, Provider agrees as follows:

1. Provider agrees to participate as, and perform the functions of, a Part D Retail dispensing pharmacy, including any reporting functions required to Part D Plan Sponsors, in accordance with the terms and conditions set forth in this Retail Addendum.

2. Provider agrees to perform its services under this Retail Addendum in a manner that is consistent with, and encompasses the services required to support Part D and in compliance with the contractual obligations of a Part D Plan Sponsor to CMS.

3. Provider agrees not to hold any Part D Enrollee liable for payment of any fees that are the responsibility of Caremark or a Part D Plan Sponsor.

4. Provider and Caremark agree that Provider is not required to accept Insurance Risk as a condition of participation as a dispensing pharmacy for Part D, and in the Medicare Part D Retail Network.

5. Provider agrees to comply with all applicable Federal and State laws, CMS guidance or instructions relating to Part D, and any minimum standards for Provider practice established by the States in which Provider is licensed. Provider agrees to comply with all applicable State and Federal privacy and security requirements, including the confidentiality and security requirements set forth in 42 CFR §423.136, the Privacy Rule, Security Rule, and Transactions Standards.

6. Provider agrees to make its books and records available to CMS in accordance with, and for the period required by 42 CFR §423.505(i)(2). Specifically, Provider agrees to allow HHS, the Comptroller General, or their designees, the right to inspect, evaluate and audit any pertinent contracts, books, documents, papers, and records of Provider involving transactions related to CMS' contract with a Part D Plan Sponsor, and agrees that this right continues for a period of ten (10) years from the termination date of the Provider Agreement, ten (10) years after the final date of any Part D Plan Sponsor's contract with CMS to offer a Medicare Part D Plan, or ten (10) years after the date of completion of any CMS audit of a Part D Plan Sponsor, whichever is later.

7. Provider agrees that any service, activity or responsibility delegated to Provider pursuant to this Retail Addendum may be revoked by Caremark (on its own behalf or that of any Part D Plan Sponsor with respect to that Plan Sponsor's enrollees only) or CMS if CMS or Caremark determines that Provider has not performed such service, activity, or responsibility satisfactorily. Caremark may also exercise any remedies available at law or under the Provider Agreement in lieu of revocation.

8. Provider agrees that Caremark and any Plan Sponsor (with respect to its enrollees only) each has the right to approve, suspend, or terminate this Agreement in their sole discretion at any time.

9. Provider agrees that Caremark, on its own behalf and on behalf of any Part D Plan Sponsor, will monitor the performance of Provider on an ongoing basis.

10. Provider agrees to provide Part D Enrollees with access to Negotiated Prices for Covered Part D Drugs as required by and in accordance with 42 CFR §423.104(g).

11. Provider agrees to submit Claims to Caremark's real-time claims adjudication system.

12. Provider agrees that when it dispenses a Covered Part D Drug to a Part D Enrollee, it will inform such Part D Enrollee at the point of sale of the lowest-priced, generically equivalent version of that Covered Part D Drug, if one exists for the beneficiary's prescription, as well as any associated differential in price in accordance with 42 CFR §423.132.

13. Provider agrees to implement a method for maintaining up-to-date Part D Enrollee information such as, but not limited to, demographic and allergy (drug) information, and such other information as CMS may require.

14. Provider agrees to implement such utilization management and quality assurance programs, including concurrent drug utilization review, generic substitution and/or therapeutic interchange programs, as Caremark may require,

and as consistent with and in compliance with 42 CFR §423.153(b), (c) and (d). Provider agrees to offer patient counseling to Part D Enrollees, where appropriate and/or required by law.

15. Provider agrees to fill a prescription for a 90-day supply of Covered Part D drugs for Part D Enrollees at the appropriate cost-sharing and Negotiated Price as communicated by Caremark to Provider through the real time claims adjudication process, including that which applies to individuals qualifying for the low-income subsidy.

16. Provider agrees to charge/apply the correct cost-sharing amount, including that which applies to individuals qualifying for the low-income subsidy.

17. Part D Claims may be priced using the Provider Agreement, the Caremark Medicare Part D Retail Network, or other Caremark or Plan Sponsor specific network.

18. As of the compliance date for any electronic prescribing standards issued by CMS, Provider agrees to engage in electronic prescribing transactions with respect to Part D Enrollees in compliance with such standards.

19. Provider acknowledges that it is not a mail order pharmacy and it is a "retail pharmacy" as defined in 42 CFR §423.100.

20. Entire Agreement.  This Retail Addendum, the Provider Agreement, the Provider Manual, and the Medicare Network Enrollment form, and all other applicable enrollment forms, constitute the entire agreement between Provider and Caremark for the purposes of Provider's participation as a Medicare Part D pharmacy, all of which are incorporated by this reference as if fully set forth herein and referred to collectively as the "Provider Agreement" or "Agreement".  Any prior agreements, promises, negotiations, or representations related to the terms of this Retail Addendum are terminated and of no force and effect.  Provider's non-compliance with any of the provisions of this Retail Addendum will be a breach of the Provider Agreement.  All pricing terms are considered to be Caremark's confidential and proprietary information and may not be shared with any third party without express written consent from Caremark.

21. The following terms and phrases, when capitalized and when used in this Retail Addendum, have the meanings set forth below.  All other capitalized terms and conditions shall have the meaning set forth in the Provider Agreement.

   a. **"Claims"** means those claims processed through the Caremark on-line, real-time claims adjudication system.
   b. **"CMS"** means the Centers for Medicare and Medicaid Services under the Department of Health and Human Services.
   c. **"Covered Part D Drug(s)"** has the same meaning as that term as defined in 42 CFR §423.100.
   d. **"HHS"** means the Department of Health and Human Services.
   e. **"Insurance Risk"** has the same meaning as such term as defined in 42 CFR §423.4.
   f. **"Medicare Part D Retail Network"** means Claims priced for a Part D Enrollee pursuant to the Retail Addendum to the Caremark Provider Agreement entitled "Caremark Medicare Part D Retail Pharmacy Network."
   g. **"Negotiated Prices"** has the same meaning as such terms as defined 42 CFR §423.100.
   h. **"Part D"** means Part D of Title XVIII of the Social Security Act, which establishes the Voluntary Prescription Drug Benefit Program under Medicare.
   i. **"Part D Enrollee"** means an individual covered by a Part D Plan.
   j. **"Part D Plan"** has the same meaning as such term as defined in §423.4, but limited to those Part D Plans that have contracted with SilverScript, Inc. to use pharmacy providers that have contracted with Caremark to provide pharmacy services to Part D Enrollees.
   k. **"Part D Plan Sponsor"** has the same meaning as such term as defined in 42 CFR §423.4, but limited to those Part D Plan Sponsors that offer Part D Plans.
   l. **"Privacy Rule"** shall mean the Standards for Privacy of Individually Identifiable Health Information at 45 CFR part 160 and part 164, subparts A and E.
   m. **"Security Rule"** shall mean the Standards for Security of Electronic Protected Health Information at 45 CFR parts 160, 162 and 164, subpart C. Notwithstanding anything to the contrary in the Agreement, any requirements related to the Security Rule shall be effective no earlier than the applicable Compliance Date for the Security Rule.
   n. **"Transactions Standard"** means the Standards for Electronic Transactions under 45 CFR parts 160 and 162, subparts I et.seq.

# Federal and State Laws and Regulations

## Federal Laws and Regulations

Provider must comply with all applicable Laws, and any amendments thereto, including, without limitation, the following, which are incorporated by reference:

**(1)** Federal Acquisition Regulations ("FAR") 52.203-12, "Limitation on Payments to Influence Certain Federal Transactions" (31 U.S.C. Section 1352);

**(2)** FAR 52.222-26, "Equal Opportunity" (E.O. 11246); '.C. Section 2012(a));

**(3)** FAR 52.222-36, "Affirmative Action for Handicapped Workers" (29 U.S.C. Section 793);

**(4)** Americans with Disabilities Act of 1990 (42 U.S.C. Section 12101 et seq.); and

**(5)** Health Insurance Portability and Accountability Act of 1996 ("HIPAA") 45 CFR Parts 160, 162, and 164; in addition to current and any future updates mandated under The Administrative Simplification Subtitle.

## State Laws and Regulations

Various States require that Providers comply with specific statutes and regulations when providing Pharmacy Services to patients who reside in that State and that certain provisions be contained within the Provider Agreement. Accordingly, to the extent that Provider provides Pharmacy Services to those individuals designated by applicable State Law, the Provider Agreement is modified as set forth in the applicable State specific addendum(s) attached hereto as if fully set forth herein, and Provider must comply with the provisions contained in such addendum(s), including any amendment to such provisions or any additional provisions which are required by applicable Law that are not set forth herein.

## ALABAMA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Alabama law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Alabama.

Without limiting the generality of the foregoing, Provider agrees as follows:

**1.** Provider hereby agrees that in no event, including but not limited to, non-payment, Plan Sponsor's or Caremark's insolvency, or breach of the Provider Agreement, shall Provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against Eligible Persons, or persons other than Caremark or Plan Sponsor acting on behalf of an Eligible Person for services provided pursuant to the Provider Agreement. This provision shall not prohibit collection of copayments, deductibles, and coinsurances on Plan Sponsor's behalf made in accordance with the terms of the Plan between the Plan Sponsor and Eligible Person.

**2.** Provider further agrees that (a) this provision shall survive the termination of the Provider Agreement regardless of the cause giving rise to termination and shall be construed to be for the benefit of Eligible Persons, and that (b) this provision supersedes any oral or written contrary agreement now existing or hereafter entered into between Provider and Eligible Persons, or person on their behalf.

**3.** Provider may not change, amend, or waive any provision of this contract without prior written consent of Caremark. Any attempts to change, amend, or waive this contract are void. Code of Ala. § 27-21-A-3; Ala. Admin. Code Rule 420-5-6.10(2)(q).

## ALASKA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance

Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Alaska law (collectively and/or individually, "Plan Sponsor"). Provider agrees to comply with any requirements for participation as a provider in Alaska.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider shall be responsible for providing Pharmacy Services. Alaska Stat. § 21.07.010(a)(1).

2. Provider shall be compensated at the rate set forth on Schedule A and any applicable Enrollment Form attached to the Provider Agreement. Alaska Stat. § 21.070.010(a)(2).

3. The Provider Agreement may be terminated as set forth in the Network Termination section of the Provider Manual. Alaska Stat. § 21.070.010(a)(3).

4. In the event of a dispute between Provider and Caremark, a fair, prompt, and mutual dispute resolution process shall be used consisting of the following (Alaska Stat. § 21.07.010(a)(4)):

   a. The parties shall hold an initial meeting at which all parties are present or represented by individuals with authority regarding the matters in dispute; the meeting shall be held within 10 working days after Caremark receives written notice of the dispute or gives written notice to Provider, unless the parties otherwise agree in writing to a different schedule;

   b. If, within 30 days following the initial meeting, the parties have not resolved the dispute, the dispute shall be submitted to mediation directed by a mediator who is mutually agreeable to the parties and who is not regularly under contract to or employed by either of the parties. Each party shall bear its proportionate share of the cost of mediation, including the mediator fees;

   c. The parties shall negotiate in good faith in the initial meeting and in mediation;

   d. If, after a period of 60 days following commencement of mediation, the parties are unable to resolve the dispute, either party may initiate arbitration in accordance with the Provider Agreement.

5. Provider shall not be penalized or Provider's contract terminated by Caremark because Provider acts as an advocate for an Eligible Person in seeking appropriate, medically necessary health care services. Alaska Stat. § 21.07.010(a)(5).

6. Provider shall be free to communicate openly with an Eligible Person about all appropriate diagnostic testing and treatment options. Alaska Stat. § 21.07.010(a)(6).

7. Terms used in the Provider Agreement and this Addendum shall have the meaning set forth in the Glossary of Terms attached to the Provider Agreement. Alaska Stat. § 21.07.010(a)(7).

8. Nothing in the Provider Agreement shall be construed as creating a direct financial incentive to Provider for withholding covered health care services that are medically necessary. Alaska Stat. § 21.07.010(b)(1).

9. Nothing in the Provider Agreement shall have the effect of requiring Provider to contract for all products that are currently offered or that may be offered in the future by Plan Sponsors. Alaska Stat. § 21.07.010(b)(2).

10. Nothing in the Provider Agreement shall be construed as requiring Provider to perform Pharmacy Services at the same rate as Provider has contracted with various managed care entities. Alaska Stat. § 21.07.010(b)(3).

11. Notwithstanding anything to the contrary in the Provider Agreement, Provider shall not be required to indemnify or hold harmless Caremark or Plan Sponsors for their own acts or conduct. Alaska Stat. § 21.07.010(c).

12. In the event the Provider Agreement is terminated, Provider shall continue to provide Pharmacy Services to Eligible Persons who are pregnant or being actively treated by Provider on the date of termination of the Provider Agreement, and the Provider Agreement shall remain in force with respect to the continuing treatment. The Eligible Person shall be treated for the purposes of benefit determination or claim payment as if Provider were still under contract with Caremark. However, treatment is required to continue only while the applicable Plan remains in effect and: (1) for the period that is the longest of (a) the end of the current Plan year; (b) up to 90 days after the termination date, if the event triggering the right to continuing treatment is part of an ongoing course of treatment; or (c) through completion of postpartum care, if the Eligible Person is pregnant on the date of termination or (2) until the end of the medically necessary treatment for the condition disease, illness, or injury if the person has a terminal condition, disease, illness, or injury. For purposes of this section, "terminal" means a life expectancy of less than one year. Alaska Stat. § 21.07.030(f).

13. The Provider Agreement and any material modification thereto shall be filed with the Alaska Director of Insurance at least 30 days prior to use by HMOs. Alaska Stat. § 21.86.010.

14. To the extent Provider provides Pharmacy Services to subscribers of a medical service corporation under Alaska law, Provider agrees:

   a. That Provider shall provide Pharmacy Services to subscribers and that the obligation to furnish these services shall be a direct obligation of the Provider to the subscribers as well as to Caremark and Plan Sponsors;

**b.** That Provider shall be compensated for services rendered in accordance with the terms of the Provider Agreement and Schedule A attached thereto and that Provider may not request or receive compensation for services that is not in accord with those terms;

**c.** That compensation for services may be prorated and settled under the circumstances and in the manner referred to in Alaska Stat. § 21.87.300;

**d.** That if Provider withdraws from the Provider Agreement, the withdrawal may not be effective as to a subscriber's contract in force on the date of the withdrawal until the termination of the subscriber's contract or the next anniversary of the subscriber's contract, whichever date is earlier; and

**e.** That the Provider Agreement is subject to review and prior approval of the Alaska Director of Insurance. Alaska Stat. § 21.87.140

## ARIZONA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Arizona law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Arizona.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. In the event that Caremark and/or Plan Sponsor fails to pay for covered services as set forth in the Eligible Person's evidence of coverage or contract, the Eligible Person shall not be liable to Provider for any amounts owed by Caremark and/or Plan Sponsor, and Provider shall not bill or otherwise attempt to collect from the Eligible Person any amount owed by Caremark and/or Plan Sponsor. Neither Provider nor an agent, trustee, or assignee of Provider may maintain an action at law against an Eligible Person to collect any amounts owed by Caremark and/or Plan Sponsor. Nothing in this section impairs Provider's right to charge, collect from, attempt to collect from, or maintain an action at law against an Eligible Person for any of the following:
   - Copayment or coinsurance amounts
   - Health care services not covered by Plan Sponsor, including out of area claims that are not paid by Plan Sponsor on behalf of an Eligible Person
   - Health care services rendered after termination of the contract between Caremark and Provider, unless the health care services were rendered during confinement in an inpatient facility and the confinement began prior to the date of termination, or unless Provider has assumed post-termination treatment obligations under the Agreement. A.R.S. § 20-1072(A) – (D)

2. Provider shall not charge an Eligible Person more than the amount Provider has contracted to charge the Eligible Person pursuant to the Provider Agreement. A.R.S. § 20-1072(F).

3. Nothing in the Provider Agreement or this Addendum shall be construed as prohibiting Provider from informing an Eligible Person of either the cost of health care services performed or the status of any bill submitted to Caremark in connection with health care services provided to an Eligible Person. However, any such information provided to an Eligible Person shall include a statement that the information is not a bill and is for the Eligible Person's information only. The statement shall include the following disclosure prominently displayed at the top of the page in all capital letters: "Do not pay this statement. This is not a bill. The information provided below is for information purposes only." A.R.S. § 20-1072(G).

4. In the event that Plan Sponsor is declared insolvent, Provider shall provide services to Eligible Persons at the same rates and subject to the same terms and conditions established in the Provider Agreement for the duration of the period after Plan Sponsor is declared insolvent, until the earliest of the following:
   - The duration of the contract period under the Eligible Person's Plan or for sixty days from the date insolvency is declared, whichever is longer
   - If the Eligible Person is confined on the date of insolvency in an inpatient facility until their discharge
   - A notification from the receiver pursuant to A.R.S. § 20-1069, Subsection F or a determination by the court that the Plan Sponsor cannot provide adequate assurance it will be able to pay Provider's claims for covered services that were rendered after the Plan Sponsor is declared insolvent
   - A determination by the court that the insolvent Plan Sponsor is unable to pay Provider's claims for covered

services that were rendered after the Plan Sponsor is declared insolvent
- A determination by the court that continuation of services would constitute undue hardship to Provider
- A determination by the court that the Plan Sponsor has satisfied its obligations to all Eligible Persons under its Plans

A.R.S. §§ 20-1060, 20-1074(B).

5. Nothing in the Provider Agreement shall be construed to restrict or prohibit Provider's good faith communication with Provider's patients concerning the patients' health care or medical needs, treatment options, health care risks, or benefits. A.R.S. §§ 20-118(A), 20-1061(B)(1).

6. Caremark shall not terminate or refuse to renew the Provider Agreement with Provider solely because Provider in good faith does any of the following:
- Advocates in private or in public on behalf of a patient
- Assists a patient in seeking reconsideration of a decision to deny coverage for a health care service
- Reports a violation of law to an appropriate authority

A.R.S. §§ 20-118(B), 20-1061(B)(2).

7. Caremark shall not make or withhold a specific payment from Provider as an inducement to deny, reduce, limit or delay medically necessary care that is covered by an Eligible Person's Plan for a specific disease or condition. A.R.S. §§ 20-833(D), 20-1106(C).

8. In the event the Provider Agreement is terminated by Caremark, except for reasons of medical incompetence or unprofessional conduct, Provider shall continue to provide services for a transitional period to an Eligible Person under an active course of treatment who has either: (a) a life threatening disease or condition, in which case the transitional period is not more than thirty days after the date of Provider's disaffiliation from Caremark's network; or (b) entered the third trimester of pregnancy on the date of Provider's disaffiliation, in which case the transition period includes the delivery and any care up to six weeks after the delivery that is related to the delivery. During the transitional period, Provider agrees to: (a) except for copayment, coinsurance or deductible amounts, continue to accept as payment in full reimbursement from Caremark the rates applicable before the beginning of the transitional period; (b) comply with Caremark's and Plan Sponsors' quality assurance and utilization review requirements and provide to Caremark and Plan Sponsor any necessary medical information related to the care; and (c) comply with Caremark's and Plan Sponsors' policies and procedures, including procedures relating to referrals and obtaining preauthorization, claims handling and treatment plan approval by Caremark and Plan Sponsors. A.R.S. §§ 20-841.06(B), 20-1057.04(B).


## ARKANSAS

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Arkansas law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Arkansas.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. In the event Caremark and/or Plan Sponsor fails to pay for services as set forth in the Provider Agreement, Eligible Persons shall not be liable to Provider for any sums owed by Caremark and/or Plan Sponsor. Provider, or its agent, trustee, or assignee shall not maintain an action at law against an Eligible Person to collect sums owed by Caremark and/or Plan Sponsor nor make any statement, either written or oral, to any Eligible Person that makes demand for, or would lead a reasonable person to believe that a demand is being made for, payment of any amounts owed by Caremark and/or Plan Sponsor. Ark. Code Ann. §§ 23-76-118(b)(1)(A), 23-76-119(c)(1).

2. In the event of the insolvency of Caremark or Plan Sponsor, Provider shall continue to provide Pharmacy Services for the duration of the period after the insolvency for which premium payment has been made or until an Eligible Person's discharge from inpatient facilities, whichever is longer. Ark. Code Ann. § 23-76-118(c)(2).

3. Nothing in the Provider Agreement shall be construed as prohibiting, restricting, or penalizing Provider in any way from disclosing to any Eligible Person any health care information that Provider deems appropriate regarding the nature of treatment, risks, or alternatives thereto, the availability of alternate therapies, consultations, or tests, the decision of utilization reviewers or similar persons to authorize or deny services, the process that is used to authorize or deny health care services or benefits, or information on financial incentives and structures used by

Caremark or Plan Sponsor. Ark. Code Ann. § 23-00-407.

4. In the event the Provider Agreement is terminated, Provider shall continue to provide Pharmacy Services to Eligible Persons until a current episode of treatment for an acute condition is completed or until the end of ninety (90) days, whichever occurs first. During this period of continuing treatment, Provider shall be deemed to be a participating provider for purposes of reimbursement, utilization management, and quality of care. Ark. Code Ann.§ 23-99-408.

## CALIFORNIA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Service to Eligible Persons enrolled in a plan regulated by the Knox-Keene Act ("Plan Sponsor"), provider agrees to comply with any requirements for participation as a provider in California.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider agrees to maintain reasonable hours of operation to ensure that Eligible Persons have access to Pharmacy Services at all reasonable times. Provider shall monitor waiting times and access and provide Caremark, upon request, with information regarding Eligible Person's access to services.

2. Provider agrees to comply with the requirements of the Knox-Keene Health Care Service Plan Act (and the Medi-Cal program) and all other applicable laws and regulations to the extent they bear, directly or indirectly, upon the subject matter of the Caremark Documents and/or operation of Provider's business.

3. Provider shall cooperate with Caremark's or a given Plan Sponsor's quality management and drug utilization management programs in effect from time to time. Caremark shall be promptly notified of any unresolved dispute with an Eligible Person.

4. Provider will maintain records for each Eligible Person as dictated by generally accepted pharmaceutical practice and as may be necessary for compliance with the provisions of the Knox-Keene Act and the regulations promulgated thereunder, and, based upon appropriate releases or consents, will provide such information to Caremark or to the California Department of Corporations ("DOC") upon request and as may be necessary for compliance by Caremark with the provisions of the Knox-Keene Act and the regulations promulgated thereunder. In no event will Provider dispose of such records for any Eligible Person prior to six (6) years from the date of last service or six (6) years from the date that a minor has achieved majority, whichever is later. In a manner consistent with data privacy statutes and other applicable law, Provider will furnish Caremark with copies of such records as reasonably requested, if applicable. In addition, Provider will provide Caremark or its designee with reasonable access during regular business hours to specified records of Eligible Persons maintained by Provider for the period required by applicable law and at any time thereafter that such access is reasonably required in connection with the provision of Pharmacy Services to an Eligible Person. Caremark will have access at reasonable times upon demand to all books, records and papers of Provider relating to the Pharmacy provided to Eligible Persons, to the cost thereof and to payments received by Provider directly from Eligible Persons (or from others on their behalf). The obligations set forth in this Section will survive the termination of Provider's Agreement with Caremark, whether by rescission or otherwise.

5. Provider will bill and collect from Eligible Persons only copayment/coinsurance, and deductibles, if any, provided for under the applicable plan covering such Eligible Person (s) and set forth on the Eligible Person's identification card, communicated to Provider via the claim system or which Provider is otherwise notified by Caremark as being in effect. Nothing in the foregoing sentence will preclude Provider from billing an Eligible Person for non-covered services. Except as provided for with respect to such copayments/coinsurance and deductibles, or any fees for non-covered services, Provider will not hold any Eligible Person financially responsible for Covered Items. Provider will accept payment from Caremark as provided herein as payment in full by Caremark for all Covered Items rendered to Eligible Persons pursuant to Provider's Agreement with Caremark. Provider hereby acknowledges its understanding of the prohibition against billing Eligible Persons for services covered by Provider's Agreement with Caremark as imposed by Section 1379 of the Knox-Keene Act, other than for such copayments/coinsurance or deductibles, or other charges or payments permitted to be billed or collected pursuant to the Knox-Keene Act and applicable plan, and will report to Caremark all such other charges or pay-

ments collected by Provider on a monthly or other agreed upon periodic basis. Provider will not, and will cause any agent, trustees or assignees of Provider not to, maintain any action at law or in equity against an Eligible Person to collect sums that are owed by Caremark/Plan Sponsor under the terms of Provider Agreement with Caremark, even if Caremark/Plan Sponsor fails to pay, becomes insolvent or otherwise breaches the terms and conditions of Provider Agreement with Caremark. This section will survive termination of Provider's Agreement with Caremark, regardless of the cause of termination. Provider will bill to, and collect directly from, Eligible Persons all copayments/coinsurance and deductible payments relating to Covered Items.

6. Any "surcharges" by Provider against Eligible Persons are prohibited. As uses herein, a "surcharge" is an additional fee charged to an Eligible Person for Covered Items that are not approved by the DOC and are not provided for under the applicable plan. Whenever Provider receives notice of any such surcharge, Caremark shall take appropriate action and Provider will fully cooperate in such action. In addition, Provider will promptly report to Caremark, in writing, all surcharge and copayment, coinsurance and deductible monies paid by Eligible Persons directly to Provider.

7. Any provision required to be in Provider's Agreement with Caremark by Chapter 2.2 of Division 2 of the California Health and Safety Code or Subchapter 5.5 of Chapter 3 of Title 10 of the California Code of Regulations will be binding upon Caremark and Provider not specifically provided for herein.

## COLORADO

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Colorado law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Colorado.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider shall not be prohibited from protesting or expressing disagreement with a medical decision, medical policy, or medical practice of the Plan Sponsor or Caremark. Colo. Rev. Stat. § 10-16-121(1)(a); Colo. Ins. Reg. 4-2-15(V).

2. Neither Caremark nor Plan Sponsor shall be prohibited from protesting or expressing disagreement with a medical decision, medical policy, or medical practice of Provider. Colo. Rev. Stat. § 10-16-121(1)(a); Colo. Ins. Reg. 4-2-15(V).

3. Caremark shall not terminate the Agreement with Provider because Provider expresses disagreement with a Plan Sponsor's decision to deny or limit benefits to a covered person or because Provider assists the covered person to seek reconsideration of Plan Sponsor's decision or because Provider discusses with a current, former, or prospective patient any aspect of the patient's medical condition, any proposed treatments or treatment alternatives, whether covered by Plan Sponsor or not, policy provisions of a Plan, or Provider's personal recommendation regarding selection of a health plan based on Provider's personal knowledge of the health needs of such patients. Colo. Rev. Stat. § 10-16-121(b); Colo. Ins. Reg. 4-2-15(V).

4. Provider shall not be subjected to financial disincentives based on the number of referrals made to participating providers in the health plan for covered benefits so long as Provider making the referral adheres to the Plan Sponsor's and Caremark's utilization review policies and procedures. Colo. Rev. Stat. § 10-16-121(d).

5. Provider shall hold covered persons harmless for money owed to Provider by Plan Sponsors and agrees that covered persons shall, in no circumstances, be liable for money owed to Provider by Plan Sponsors. Provider agrees that in no event, including but not limited to nonpayment by the Plan Sponsor, insolvency of the Plan Sponsor, or breach of this Agreement, shall Provider bill, charge, collect a deposit from, seek compensation, renumeration or reimbursement from, or have any recourse against a covered person, an enrollee, or persons (other than the Plan Sponsor) acting on his/their behalf for services provided pursuant to this agreement. This provision does not prohibit Provider from collecting supplemental charges or copayments or fees for uncovered services delivered on a "fee-for-service" basis to covered persons/enrollees. Provider agrees that this provision shall survive the termination of this Agreement, for authorized services rendered prior to the termination of this Agreement, regardless of the cause giving rise to termination and shall be construed to be for the benefit of the Plan Sponsor's covered persons/enrollees. This provision is not intended to apply to services provided after this Agreement has

been terminated. Provider agrees that this provision supersedes any oral or written contrary agreement now or existing hereafter entered into between Provider and the covered person, enrollee, or persons acting on their behalf insofar as such contrary agreement relates to liability for payment of services provided under the terms and conditions of this Agreement. Any modification, addition, or deletion to this provision shall become effective on a date no earlier than thirty (30) days after the Colorado Insurance Commissioner has received written notification of proposed changes. Colo. Rev. Stat. § 10-16-705(3); Colo. Ins. Reg. 4-7-1 sec. 12.

6. Provider and Caremark shall provide at least 60 days written notice to each other before terminating the Agreement without cause. Caremark shall make a good faith effort to provide written notice of termination within 15 working days after receipt of or issuance of a notice of termination to all covered persons that are patients seen on a regular basis by Provider whose contract is terminating, regardless of whether the termination was for cause or without cause. Within five working days after the date that Provider either gives or receives notice of termination, Provider shall provide Caremark with a list of those patients of Provider that are covered by Caremark's Plan Sponsors. Colo. Rev. Stat. § 10-16-705(7).

7. Provider agrees to maintain continuity of care in the following circumstances:
   a. In the event that notice of Provider's termination has not been provided to covered persons as outlined in section 7 above, Provider shall continue to provide Pharmacy Services in accordance with the terms of the Agreement to covered persons for 60 days from the date Provider is terminated without cause.
   b. In the event Plan Sponsor terminates coverage for any reason other than nonpayment of the premium, fraud, or abuse, Provider agrees to continue to provide Pharmacy Services to covered persons being treated at an inpatient facility until the patient is discharged. Colo. Rev. Stat. § 10-16-705(4).

8. Provider shall not discriminate, with respect to the provision of medically necessary covered benefits, against covered persons that are participants in a publicly financed program. Colo. Rev. Stat. § 10-16-705(9).

9. Provider agrees that the sole responsibility for obtaining any necessary preauthorization rests with Provider, not with the covered person. Colo. Rev. Stat. § 10-16-705(14).

10. Provider shall not assign or delegate the rights and responsibilities set forth in the Caremark Provider Agreement without prior written consent. Colo. Rev. Stat. § 10-16-705(8).

## CONNECTICUT

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall        govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Connecticut law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Connecticut.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. In the event Caremark or Plan Sponsor fails to pay Provider for Pharmacy Services as set forth in the Provider Agreement, Eligible Persons shall not be liable to Provider for any sums owed by Caremark or Plan Sponsor. Provider shall not collect or attempt to collect from Eligible Persons sums owed by Caremark or Plan Sponsor. Provider, or an agent, trustee or assignee of Provider shall not maintain any action at law against an Eligible Person to collect sums owed by Caremark or Plan Sponsor or request payment from an Eligible Person for such sums. For purposes of this section "request payment" includes, but is not limited to, submitting a bill for services not actually owed or submitting for such services an invoice or other communication detailing the cost of the services that is not clearly marked with the phrase "THIS IS NOT A BILL." C.G.S.A. § 38a-193(c).

2. In the event of the insolvency of Caremark or Plan Sponsor, Provider shall continue providing Pharmacy Services for Eligible Persons for the duration of the period for which premium payment has been to Plan Sponsor and until Eligible Persons' discharge from inpatient facilities. C.G.S.A. § 38a-193(d).

3. Provider and Caremark shall each provide the other at least sixty days' advance notice to terminate or withdraw from the Agreement. This section shall not apply:
   a. When lack of such notice is necessary for the health or safety of Eligible Person;
   b. When Provider has entered into a contract with Caremark that is found to be based on fraud or material misrepresentation; or
   c. When Provider engages in any fraudulent activity related to the terms of the Agreement. C.G.S.A. § 38a-193(e).

4. Caremark shall not take or threaten to take any action against Provider in retaliation for Provider's assistance to an Eligible Person in filing an internal grievance or appealing a utilization review determination. C.G.S.A. § 38a-478(h).

5. Nothing in the Agreement shall be construed as or shall have the effect of prohibiting or limiting any cause of action or contract rights an Eligible Person otherwise has. C.G.S.A. § 38a-478(i).

6. If Plan Sponsor requires a percentage coinsurance payment by an Eligible Person, the coinsurance payment shall be calculated on the lesser of Provider's charges for the goods or services or the amount payable by Plan Sponsor for such goods or services, except as otherwise required by the laws of a foreign state when applicable to Provider in such foreign state. C.G.S.A. § 38a-478(j).

7. Nothing in the Agreement shall be construed as prohibiting Provider from discussing with an Eligible Person any treatment options and services available in or out of network, including experimental treatments, or the method that Caremark uses to compensate Provider. C.G.S.A. § 38a-478(k).

# DELAWARE

## ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Delaware law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Delaware

Without limiting the generality of the foregoing, Provider agrees as follows:

1. A copy of the form of the Provider Agreement and any subsequent amendments thereto shall be submitted to the Delaware Department of Health and Social Services and Delaware Insurance Commissioner for approval prior to execution. Code of Del. Regs. 40 700 035 §§ 69.202, 69.302, 69.304, 69.314; Code of Del. Regs. 50 000 058 §§ 8, 9; see also 18 Del. Code Ann. § 6304.

2. Provider agrees that in no event, including but not limited to nonpayment by Caremark or Plan Sponsor, insolvency of Caremark or Plan Sponsor, or breach of the Agreement, shall Provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against an Eligible Person or a person (other than Caremark or Plan Sponsor) acting on behalf of the Eligible Person for services provided pursuant to the Agreement. The Agreement does not prohibit Provider from collecting coinsurance, deductibles or co-payments, as specifically provided in the evidence of coverage, or fees for uncovered services delivered on a fee-for-services basis to Eligible Persons, as long as Provider clearly informs the Eligible Person that Plan Sponsor will not cover the services. Code of Del. Regs. 40 700 035 §§ 69.303, 69.502.

3. In the event of the insolvency of Caremark or Plan Sponsor or other cessation of operations, covered services to Eligible Persons will continue through the period for which a premium has been paid to Plan Sponsor on behalf of an Eligible Person or until the Eligible Person's discharge from an inpatient facility, whichever time is greater. Covered benefits to Eligible Persons confined in an inpatient facility on the date of insolvency or other cessation of operations will continue until their continued confinement in an inpatient facility is no longer medically necessary. Code of Del. Regs. 40 700 035 § 69.303.

4. Sections 2 and 3 above shall be construed in favor of the Eligible Person, shall survive the termination of the Agreement regardless of the reason for termination, including the insolvency of Caremark or Plan Sponsor, and shall supersede any oral or written contrary agreement between Provider and an Eligible Person or the representative of an Eligible Person if the contrary agreement is inconsistent with the hold harmless and continuation of covered services provisions required by Sections 2 and 3 above. This provision is not intended to apply to services provided after the Agreement has been terminated. Code of Del. Regs. 40 700 035 § 69.303; Code of Del. Regs. 50 000 058 §§ 8, 9.

5. If the Agreement with Provider is terminated, except in cases where termination is due to unsafe health care practices that compromise the health or safety of Eligible Persons, Provider shall continue to provide Pharmacy Services at the contract price for up to 120 calendar days in cases where it is medically necessary for the Eligible Person to continue treatment with Provider. In cases of the pregnancy of an Eligible Person, medical necessity shall be deemed to have been demonstrated and Provider shall continue to provide services through completion of postpartum care. Code of Del. Regs. 40 700 035 § 69.305.

6. Nothing in the Agreement shall be construed as prohibiting Provider from giving Eligible Persons information regarding diagnoses, prognoses and treatment options. Code of Del. Regs. 40 700 035 § 69.307.

7. Nothing in the Agreement shall be construed as offering Provider incentives to provide less than medically necessary services to an Eligible Person. Code of Del. Regs. 40 700 035 § 69.307.

8. Neither Caremark nor Plan Sponsor shall penalize Provider because Provider, in good faith, reports to state authorities any act or practice by Caremark or Plan Sponsor that jeopardizes patient health or welfare. Code of Del. Regs. 40 700 035 § 69.307.

9. Notwithstanding the definitions set forth in the Agreement, the definitions and provisions set forth in the Code of Delaware Regulations shall control. Code of Del. Regs. 40 700 035 § 69.307.

10. The rights and responsibilities under the Agreement shall not be assigned or delegated by Provider without the prior written consent of Caremark. Code of Del. Regs. 40 700 035 § 69.308.

11. Provider shall furnish covered benefits to all Eligible Persons without regard to the Eligible Person's enrollment in the Plan as a private purchaser of the Plan or as a participant in publicly financed programs of health care services. This requirement does not apply to circumstances when Provider should not render services due to limitations arising from lack of training, experience, skill or licensing restrictions. Code of Del. Regs. 40 700 035 § 69.311.

12. Provider shall collect applicable coinsurance, co-payments or deductibles from Eligible Persons pursuant to the evidence of coverage and shall notify Eligible Persons of their personal financial obligations for non-covered services. Code of Del. Regs. 40 700 035 § 69.312.

13. Provider shall make its health records available to the Delaware Department of Health and Social Services employees involved in assessing the quality of care or investigating the grievances or complaints of Eligible Persons and shall comply with the applicable laws related to the confidentiality of medical or health records. Code of Del. Regs. 40 700 035 § 69.316.

14. Provider shall notify Caremark of any changes in the status of any of the required criteria impacting Provider's credentialing. Code of Del. Regs. 40 700 035 § 69.401.

15. Caremark shall not retroactively deny reimbursement for a covered service provided to an Eligible Person by Provider if Provider relied upon the written or verbal authorization of Caremark prior to providing the service to the Eligible Person, except in cases where Caremark can show that there was material misrepresentation, fraud or the patient was found not to have coverage. Code of Del. Regs. 40 700 035 § 69.403.

16. Caremark shall not refuse to contract with Provider or compensate Provider for covered services solely because Provider has in good faith communicated with one or more of Provider's current, former or prospective patients regarding the provisions, terms or requirements of Plan Sponsors' products or services as they relate to the needs of Provider's patients. 18 Del. Code Ann. §§ 3339, 6408.

17. If Caremark proposes to terminate or not renew the Agreement with Provider, it shall give Provider a minimum of 60 days written notice prior to the effective date of the termination. This notice shall include a statement of Provider's right to request a written explanation and to request an internal administrative review within 20 days.

Upon Provider's request pursuant to this Section, Caremark shall provide written explanation by certified or registered mail of the reasons for the proposed termination or nonrenewal (unless such explanation has already been provided), and an opportunity for an internal administrative review of the decision to terminate. Provider's request for written explanation and administrative review must be made within 20 days after receipt of Caremark's notice of termination or nonrenewal. Caremark shall provide the written explanation and administrative review not less than 20 days after receipt of Provider's request.

If Provider reasonably believes that Caremark's decision to terminate or not renew the Agreement was based solely on Provider's good faith communication with patients as referenced in Section 17 above, Provider may request that this concern be addressed in the written explanation and administrative review provided by Caremark. Upon request, Provider shall submit to Caremark a list of the Eligible Persons with whom Provider has communicated and upon whom Provider relies to support the belief and a statement of the nature of the information provided to each Eligible Person that is protected by Section 17 above.

If Caremark has used economic profiling to evaluate Provider's practice and performance and has referenced the economic profiling data in its written explanation of termination or nonrenewal to Provider, Caremark shall supply the data to Provider. The data shall be confidential and shall not be disclosed by Provider or Caremark to third parties without the consent of the other.

This section does not apply to a decision by Caremark to terminate or not renew the Provider Agreement because of breach of contract, loss of professional liability insurance, indictment or arrest or conviction for a felony or crime of moral turpitude, final internal disciplinary action (excluding judicial appeals) by a hospital, licensing board or other governmental agency that impairs Provider's ability to practice, failure to meet the minimum requirements for participant in Caremark's networks or Plan Sponsors' Plans, as previously disclosed to Provider, adjudication of fraud, or in cases involving imminent harm to patient care.

18 Del. Code Ann. § 3339.

## FLORIDA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Prepaid Limited Health Service Organization, Insurer, or Carrier licensed under Florida law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Florida.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. The Agreement shall be canceled upon issuance of an order by the Florida Department of Insurance pursuant to Florida Statute §§ 624.4411(3), 636.036(3), or 6411.234(3).

2. In the event Caremark or Plan Sponsor fails to pay for covered services already rendered to an Eligible Person by Provider, Plan Sponsor is liable for such fees rather than the Eligible Person as provided in Florida Statute §§ 627.6472(4)(e), 636.035, 641.3154, and 641.43. Fla. Stat. § 627.6472(4)(e); Fla. Stat. § 636.035; Fla. Stat. § 641.3154; Fla. Stat. § 627.6131; Fla. Stat. § 641.43.

3. Nothing in the Agreement shall be construed or shall have the effect of requiring Provider to accept the terms of other providers' contracts with Plan Sponsors or other plans under common management and control with Plan Sponsors. Fla. Stat. § 627.6474, Fla. Stat. § 641.315(10).

4. Provider shall provide no less than ninety (90) days' (for prepaid limited health services organizations) or sixty (60) days' (for HMOs) advance written notice to Caremark and the Department of Insurance before canceling the Agreement for any reason. Nonpayment for goods or services rendered by Provider shall not be a valid reason for avoiding the ninety (90) or sixty (60) day, as applicable, advance notice of cancellation. Fla. Stat. § 636.035(6), Fla. Stat. § 641.315(2)(a).

5. Caremark shall provide 90 days' (for prepaid limited health services organizations) or sixty (60) days' (for HMOs) advance written notice to Provider and the Department of Insurance before canceling, without cause, the Agreement, except where a patient's health is subject to imminent danger or Provider's ability to practice is effectively impaired by an action by a governmental agency. Fla. Stat. § 636.035(8) Fla. Stat. § 641.315(2)(b).

6. If any provision of the Agreement is held to be unenforceable or otherwise contrary to any applicable laws, regulations, or rules, such provision shall have no effect and shall be severable without affecting the validity or enforceability of the remaining provisions of the Agreement. Fla. Stat. § 636.035(9).

7. Nothing in the Agreement shall be construed as restricting Provider's ability to communicate information to Provider's patient regarding care or treatment options for the patient when Provider deems knowledge of such information by the patient to be in the best interest of the health of the patient. Fla. Stat. § 636.035(10), Fla. Stat. § 641.315(5).

8. Nothing in the Agreement shall be construed as either prohibiting or restricting Provider from entering into a commercial contract with any other plan or from prohibiting or restricting Caremark or Plan Sponsor from entering into a commercial contract with any other provider. Fla. Stat. § 641.315(6).

9. Provider shall prominently display a consumer assistance notice in its reception area that is clearly noticeable by all Eligible Persons. Such notice shall state the addresses and toll-free telephone numbers of the Agency for Health Care Administration, the Statewide Provider and Subscriber Assistance Program, and the Department of Insurance. The consumer assistance notice must also clearly state that the addresses and toll-free telephone numbers of Caremark's and Plan Sponsors' grievance department shall be provided to Eligible Persons upon request. Fla. Stat. §641.51(11).

10. In the event the Agreement is terminated for any reason other than for cause, Provider shall continue to provide services to Eligible Persons undergoing active treatment when medically necessary, through completion of treatment of the condition for which the Eligible Person was receiving care at the time of the termination, until the Eligible Person selects another treating provider, or during the next enrollment period offered by Plan Sponsor, whichever is longer, but not longer than six months after termination of the Agreement. Provider shall continue to provide services to an Eligible Person who has initiated a course of prenatal care, regardless of the trimester in which care was initiated, until completion of postpartum care. This provision does not prevent Provider from refusing to continue to provide care to an Eligible Person who is abusive, noncompliant, or in arrears in payments for services provided. For care continued under this provision, Provider shall continue to be bound by the terms of the Agreement. Changes made within 30 days before termination of the Agreement are effective only if agreed to by both parties. Fla. Stat. § 641.51 (8).

11. Provider shall maintain appropriate levels of medical malpractice insurance or its equivalent in compliance with Florida Statutes. Fla. Admin. Code Ann. § 4-191.069(1).

## GEORGIA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Georgia law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Georgia.

Without limiting the generality of the foregoing Provider agrees as follows:

1. An Eligible Person shall be held harmless for provider utilization review decisions over which he has no control. Ga. Comp. R. & Regs. Rule 120-2-44-.04(3).

## HAWAII

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Hawaii law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Hawaii.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. In the event that Caremark or Plan Sponsor fails to pay for pharmacy services as set forth in the Provider Agreement, Plan Sponsor's Eligible Persons shall not be liable to Provider for any sums owed by Caremark or Plan Sponsor. Provider, or any agent, trustee, or assignee thereof, shall not maintain any action at law against an Eligible Person to collect sums owed by Caremark or Plan Sponsor. Hawaii Rev. Stat. Ann. § 432D-8(d).
2. In the event of Plan Sponsor's insolvency, Provider agrees to continue to provide services to Eligible Persons for the duration of the period after Plan Sponsor's insolvency for which premium payment has been made and until the Eligible Person's discharge from inpatient facilities. Hawaii Rev. Stat. Ann. § 432D-8(e)(2).
3. In the event Provider terminates the Provider Agreement, Provider shall give Caremark at least sixty days' advance written notice. Hawaii Rev. Stat. Ann. § 432D-8(f).
4. Neither Caremark nor Plan Sponsor shall impose any type of prohibition, disincentive, penalty, or other negative treatment upon Provider for discussing or providing any information regarding treatment options and medically necessary or appropriate care, including no treatment, even if the information relates to services or benefits not provided by Plan Sponsor. Hawaii Rev. Stat. Ann. § 432E-4(d).
5. Provider shall comply with any request by Caremark or Plan Sponsor necessary for Plan Sponsor to measure quality, outcomes, access, satisfaction, and utilization of services as provided in Hawaii Rev. Stat. Ann. § 432E-10(a).

## IDAHO

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Insurer, or Carrier licensed under Idaho law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Idaho.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider agrees that in no event, including but not limited to nonpayment by the Plan Sponsor or Caremark, shall Provider require a covered person to make additional payments for covered services, other than specified deductibles, copayments, or coinsurance. Idaho Code § 411-3915(4)-(5).

2. Provider shall not charge or collect from any member or other beneficiary any amount in excess of that amount of compensation determined or allowed for a particular service by Plan Sponsor/Caremark. Nothing in this section shall be construed to prevent the collection of any copayments, coinsurance, or deductibles allowed for in the Plan design. Idaho Department of Insurance Rules, IDAPA 18.01.26, "Rule to Implement the Managed Care Reform Act."

3. Caremark shall provide written notice to Provider setting forth any breach of this Agreement for which Caremark proposes that the Agreement be terminated or not renewed and shall provide a reasonable period of time for Provider to cure such breach prior to termination or nonrenewal. If the breach has not been cured within such period of time the Agreement may be terminated or not renewed. Provided, however, that if the breach for which Caremark proposes that the Agreement be terminated or not renewed is a willful breach, fraud or a breach which poses an immediate danger to the public health or safety, the Agreement may be terminated or not renewed immediately. Idaho Code § 41-3927(2).

4. Caremark shall not refuse to contract with Provider or reimburse Provider, on Plan Sponsor's behalf, solely because Provider has in good faith communicated with one or more current, former, or prospective patients regarding the provisions, terms or requirements of Plan Sponsors' Plans as they relate to the needs of provider's patients. Idaho Code § 41-3927(5).

5. In no event shall Provider receive any payment under this Agreement, in any type or form, as an inducement to deny, reduce, limit, or delay specific, medically necessary and appropriate covered services and provided with respect to a specific member or group of members with similar medical conditions. Idaho Code § 41-3928(1).

6. Caremark shall not terminate or otherwise penalize Provider solely because Provider advocates for Provider's patients, so long as Provider is practicing in conformity with community standards. Idaho Code § 41-3927(8).

7. Provider shall not pay another for the referral of a covered person to Provider. Provider shall not provide or claim or represent to have provided services to a covered person, knowing that the covered person was referred in violation of this paragraph. Idaho Code § 41-348(1).

8. Provider shall not engage in a regular practice of waiving, rebating, giving, paying, or offering to waive, rebate, give or pay all or part of a covered person's deductible or claim for health insurance. Idaho Code § 41-348(2).

9. Provider shall maintain complete and accurate records reflecting transactions with covered persons for a period of not less than seven (7) years. Provider shall make all records available to the director of the Idaho Department of Insurance or his designee at all reasonable times upon request, subject to any Idaho law limiting or defining such availability. Idaho Code § 41-3909.

10. Provider shall not release or sell any information pertaining to prescriptions, drug orders, records or any other prescription information that specifically identifies a covered person, except as authorized under the provisions of section 54-1727, Idaho Code. Idaho Code § 41-1335.

## ILLINOIS

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Limited Health Service Organization ("LHSO"), Managed Care Organization ("MCO"), Insurer, or Carrier licensed under Illinois law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Illinois.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider agrees to participate in the quality assurance programs instituted by Caremark and Plan Sponsors. Ill. Compiled Stat. Ann. §§ 215 ILCS 125/2-8 and 215 ILCS 130/2008; 50 Ill. Admin. Code § 5421.50(4).

2. Provider agrees that in no event including, but not limited to, nonpayment by Caremark and/or Plan Sponsor of amounts due Provider under the Provider Agreement, insolvency of Caremark and/or Plan Sponsor or any breach of the Provider Agreement, shall Provider or its assignees or subcontractors have a right to seek any type of payment from, bill, charge, collect a deposit from or have any recourse against the Eligible Person, persons acting on the Eligible Person's behalf (other than Caremark or Plan Sponsor), the employer or group contractholder for services provided pursuant to the Provider Agreement except for the payment of applicable copayments for services covered by Plan Sponsor or fees for services not covered by Plan Sponsor. The requirements of this section shall survive any termination of the Provider Agreement for services rendered prior to such termination, regardless

of the cause of such termination. Plan Sponsors' Eligible Persons shall be third party beneficiaries of this clause. This clause supersedes any oral or written agreement now existing or hereafter entered into between Provider and an Eligible Person or persons acting on the Eligible Person's behalf (other than Caremark or Plan Sponsor). Ill. Compiled Stat. Ann. § ILCS 130/2008.

3.  Caremark shall give Provider at least sixty (60) days notice of nonrenewal or termination of Provider. The notice shall include a name and address to which Provider may direct comments and concerns regarding the nonre-newal or termination. However, immediate written notice may be provided without sixty (60) days notice when Provider's license has been disciplined by a state licensing board. Ill. Compiled Stat. Ann. § 215 ILCS 134/20; 50 Ill. Admin. Code §§ 2051.55(H), 5420.50. Caremark may terminate the Provider Agreement immediately for cause. 50 Ill. Admin. Code § 2051.55(H).

4.  Provider shall give Caremark at least (sixty) 60 days notice for termination with cause, as defined in the Provider Agreement, and at least ninety (90) days notice for termination without cause. 50 Ill. Admin. Code §§ 5420.50, 5421.50(5).

5.  Provider must maintain and provide evidence of insurance coverage for professional liability insurance effective as of the date of the Provider Agreement. Provider must give Caremark at least 15 days advance notice of any reduction or cancellation of such insurance. 50 Ill. Admin. Code §§ 2051.55(K), 5421.50(7).

6.  Provider agrees to comply with all administrative policies and procedures of Caremark. 50 Ill. Admin Code § 2051.55(C)(2)(B).

7.  Provider agrees to cooperate with and participate in Caremark's credentialing and recredentialing processes. 50 Ill. Admin Code § 2051.55(C)(2)(C).

8.  Provider agrees to participate in and cooperate with the decisions, policies, processes and rules established by Caremark's utilization review program including, but not limited to, certification procedures, concurrent and retrospective evaluations, referral procedures, and reporting of clinical encounter data. 50 Ill. Admin Code § 2051.55(C)(2)(D).

9.  Provider shall maintain and make medical records available to Caremark for the purpose of determining, on a concurrent or retrospective basis, the medical necessity and appropriateness of care provided to Plan Sponsors' Eligible Persons, and to make such medical records available to appropriate state and federal authorities and their agents involved in assessing the accessibility and availability of care or investigating grievances or complaints and to comply with the applicable state and federal laws related to privacy and confidentiality of medical records. 50 Ill. Admin Code § 2051.55(C)(2)(E).

10. Provider shall be licensed by the state to provide Pharmacy Services and shall notify Caremark immediately whenever there is a change in licensure or certification status. 50 Ill. Admin Code § 2051.55(C)(2)(F).

11. Neither Caremark nor Provider shall sell, lease, assign or otherwise delegate the rights and responsibilities under the Provider Agreement without the prior written and informed consent of Caremark. 50 Ill. Admin. Code § 2051.55(J).

12. Provider shall provide services without discrimination against any Eligible Person on the basis of participation in the Plan, source of payment, age, sex, ethnicity, religion, sexual preference, health status or disability. 50 Ill. Admin Code § 2051.55(C)(2)(L).

13. Provider shall collect all applicable copayments and/or deductible from Eligible Persons, and shall provide notice to Eligible Persons of their personal financial obligations for non-covered services. 50 Ill. Admin Code § 2051.55(C)(2)(M).

14. Provider shall comply with Plan Sponsors' requirements regarding operating hours and availability. 50 Ill. Admin Code § 2051.55(C)(2)(N).

## INDIANA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Insurer, or Carrier licensed under Indiana law (col-lectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Indiana.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. In the event Plan Sponsor and/or Caremark fails to pay for covered services provided by Provider to an Eligible Person as specified in the Plan for any reason whatsoever, including insolvency or breach of the Provider Agreement, the Eligible Person is not liable to Provider for any sums owed by Plan Sponsor and/or Caremark. This section does not prohibit the collection of uncovered charges consented to by the Eligible Person or copayments. The provisions in this section shall survive the termination of the Provider Agreement, regardless of the reason for termination. Burns Ind. Code Ann. §§ 27-13-15-1, 27-13-34-15.

2. Provider or a trustee, agent, representative, or assignee of Provider may not bring or maintain any legal action against an Eligible Person to collect sums owed by Caremark and/or Plan Sponsor. If Provider brings or maintains a legal action against an Eligible Person for an amount owed to Provider by Caremark and/or Plan Sponsor, Provider shall be liable to the Eligible Person for costs and attorney's fees incurred by the Eligible Person in defending the legal action. This section does not prohibit the collection of uncovered charges consented to by the Eligible Person or copayments. The provisions in this section shall survive the termination of the Provider Agreement, regardless of the reason for termination. Burns Ind. Code Ann. §§ 27-13-15-3, 27-13-34-15.

3. Provider must give Caremark at least sixty (60) days advance written notice before terminating the Provider Agreement unless Provider provides thirty percent (30%) or more of an HMO Plan Sponsor's services, in which case Provider must give at least one hundred twenty (120) days advance notice. Burns Ind. Code Ann. § 27-13-17-1.

4. In the event of termination of the Provider Agreement, Provider shall, for a period not to exceed ninety (90) days, complete procedures in progress on an Eligible Person receiving treatment for a specific condition, at the same schedule of copayment or other applicable charge that is in effect on the effective date of termination. Burns Ind. Code Ann. § 27-13-34-15.

5. In the event of termination of the Provider Agreement, for reasons other than quality of care, Provider shall, upon the request of an Eligible Person, continue to treat the Eligible Person for up to sixty (60) days following termination or, in the case of a pregnant Eligible Person in the third trimester of pregnancy, throughout the term of the enrollee's pregnancy. During a continuation period under this Section, Provider shall agree to continue accepting the terms and conditions of the Provider Agreement, together with applicable deductibles and copayments, as payment in full and is prohibited from billing the Eligible Person for any amounts in excess of the Eligible Person's applicable deductible or copayment. Burns Ind. Code Ann. § 27-13-36-6.

## IOWA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Insurer, or Carrier licensed under Iowa law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Iowa.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider, or its assignee or subcontractor, hereby agrees that in no event, including, but not limited to nonpayment by Plan Sponsor, Plan Sponsor's insolvency, or breach of this agreement, shall Provider, or its assignee or subcontractor, bill, charge, collect a deposit from, seek compensation, renumeration or reimbursement from, or have any recourse against subscriber/enrollee or persons other than Plan Sponsor acting on their behalf for services provided pursuant to this Agreement. This provision shall not prohibit collection of supplemental charges or copayments on Plan Sponsor's behalf made in accordance with the terms of the Plan between Plan Sponsor and subscriber/enrollee or person acting on their behalf.

   Provider, or its assignee or subcontractor, further agrees that (1) this provision shall survive the termination of this Agreement regardless of the cause giving rise to termination and shall be construed to be for the benefit of the Plan Sponsor's subscriber/enrollee and that (2) this provision supersedes any oral or written contrary agreement now existing or hereafter entered into between Provider and subscriber/enrollee or persons acting on their behalf. Iowa Admin. Code §§ 191-40.18 (514B), 191-41.16(514B).

2. In the event that Caremark shall terminate the Agreement with Provider, Provider nonetheless agrees to continue to provide pharmacy services to covered persons in their second or third trimester of pregnancy through postpartum

care related to the childbirth and delivery. Payment for covered services shall be according to the terms and conditions of the Agreement. Notwithstanding the above, if Caremark terminates Provider for cause, Caremark shall not be obligated to reimburse Provider for pharmacy services provided following the date of termination. Iowa Code § 514C.14.

3. In the event that Caremark shall terminate the Agreement with Provider, Provider nonetheless agrees to continue to provide pharmacy services for a period of up to 90 days to covered persons who are undergoing a specified course of treatment for a terminal illness or a related condition. Payment for covered services shall be according to the terms and conditions of the Agreement. Notwithstanding the above, if Caremark terminates Provider for cause, Caremark shall not be obligated to reimburse Provider for pharmacy services provided following the date of termination. Iowa Code § 514C.17.

4. Nothing in this Agreement shall be construed as prohibiting or penalizing Provider from either: (1) discussing treatment options with a covered person, notwithstanding the Plan Sponsor's organized delivery system or the Plan' Sponsor's position on such treatment option; (2) advocating on behalf of a covered person within the review and grievance process established by Plan Sponsor or Caremark; or (3) reporting to state or federal authorities any act or practice by Plan Sponsor that, in the opinion of Provider, jeopardizes patient health or welfare. Iowa Code § 514C.15; Iowa Admin. Code § 191-27.8 (514F); Iowa Admin. Code § 191-35.20; Iowa Admin. Code § 191-35.32(514C); Iowa Admin. Code § 191-40.22; Iowa Admin. Code § 191-41.20; Iowa Admin. Code § 191-75.13 (514C).

## KANSAS

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Kansas law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Kansas.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. If there is Medicaid coverage for Pharmacy Services provided to Eligible Persons, the Medicaid coverage shall be the source of last resort of any payment to Provider. Kan. Stat. Ann. § 40-3208.

2. In the event of the insolvency of Caremark or Plan Sponsor, Provider shall continue to provide Pharmacy Services to Eligible Persons for the duration of the period for which premium payment has been made to Plan Sponsor and until Eligible Persons' discharge from inpatient facilities. Kan. Stat. Ann. § 40-3227.

3. In cases where Provider is responsible for obtaining prior authorization before receiving payment for the treatment of emergency medical conditions and the Eligible Person is eligible at the time when covered services are provided, the Eligible Person shall not be held financially responsible to Provider for payment for covered services if the prior authorization for emergency services has not been sought and received, other than for what the Eligible Person would otherwise be responsible, such as copayments and deductibles. Kan. Stat. Ann. § 40-3229.

4. If the Provider Agreement is terminated for any reason, Provider shall continue to provide Pharmacy Services to Eligible Persons for a period up to 90 days in those cases where the continuation of such care is medically necessary and in accordance with the dictates of medical prudence and where the enrollee has special circumstances such as a disability, a life threatening illness or is in the third trimester of pregnancy. Eligible Persons shall not be liable to Provider for Pharmacy Services during this continuation period other than for any deductibles or copayment amounts specified in the certificate of coverage or other contract between the Eligible Person and Plan Sponsor. Provider is entitled to payment for Pharmacy Services during this continuation period at the rate specified in the Provider Agreement. Kan. Stat. Ann. § 40-3230.

5. If Caremark/Plan Sponsor has authorized emergency services, it shall not subsequently rescind or modify that authorization after Provider renders the authorized care in good faith and pursuant to the authorization except for, payments made as a result of misrepresentation, fraud, omission or clerical error and copayment, coinsurance or deductible amounts that are the responsibility of the Eligible Person. Kan. Stat. Ann. § 40-4603.

6. Nothing in the Provider Agreement shall be construed to prohibit or restrict Provider from discussing with or disclosing to any Eligible Person or other individual any medically appropriate health care information that Provider

deems appropriate regarding the nature of treatment options, the risks of alternatives thereto, the process used or the decision made by Caremark or Plan Sponsor to approve or deny health care services, the availability of alternate therapies, consultations, or tests, or from advocating on behalf of the Eligible Person within the utilization review or grievance processes established by Caremark or Plan Sponsor. Kan. Stat. Ann. §; 40-4604.

7. Nothing in the Provider Agreement shall have the effect, directly or indirectly, or providing Provider with an inducement to reduce or limit the delivery of medically necessary services with respect to an Eligible Person. Kan. Stat. Ann. § 40-4605.

## KENTUCKY

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Kentucky law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Kentucky.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider may not, under any circumstance, including nonpayment of moneys due Provider by Plan Sponsor and/or Caremark, insolvency of Plan Sponsor or Caremark, or breach of the Agreement, bill charge, collect a deposit, seek compensation, remuneration, or reimbursement from, or have any recourse against Eligible Persons, or any persons acting on their behalf, for services provided in accordance with the Agreement. This provision shall not prohibit collection of deductible amounts, copayment amounts, coinsurance amounts, and amounts for non-covered services. This provision shall survive the termination of the Agreement. Ky. Rev. Stat. Ann. § 304.17A-527(1)(a), (c); Ky. Rev. Stat. Ann. § 304.17A-310(5); see also 806 KAR 17:300(8).

2. In the event the Agreement is terminated, for any reason, other than a quality of care issue or fraud, Provider shall continue to provide services and Caremark shall continue to reimburse Provider in accordance with the Agreement until an Eligible Person's discharge from an inpatient facility or completion of an active course of treatment, whichever is greater. In the case of a pregnant woman, Provider shall continue to provide services through the end of the post-partum period if the pregnant woman is in her fourth or later month of pregnancy at the time the Agreement terminates. This provision shall survive termination of the agreement. Ky. Rev. Stat. Ann. § 304.17A-527(1)(b)-(c); § 304.17C-060(1)(a); see also 806 KAR 17:300(8).

3. In the event of the insolvency of Plan Sponsor or Caremark, Provider shall continue providing Pharmacy Services to Eligible Persons for the duration of the contract period for which premiums have been paid or until the date of discharge from an inpatient facility, whichever is longer. Ky. Rev. Stat. Ann. § 304.17A-310(6).

4. Upon written request, Caremark shall provide Provider with specific fees for requested codes applicable to the compensation that Provider will receive under the Agreement within thirty days of the date of such request. Ky. Rev. Stat. Ann. § 304.17A-527(1)(d); see also 806 KAR 17:300(8).

5. If Provider enters into any subcontract agreement with another provider to provide Pharmacy Services to Eligible Persons where the subcontracted provider will bill Caremark or Eligible Persons directly for the subcontracted services, the subcontract agreement must meet all requirements of Title XXV, Chapter 304, Subtitle 17A of the Kentucky Insurance Code and be filed with the Kentucky Commissioner of Insurance. Ky. Rev. Stat. Ann. § 304.17A-527(1)(e); § 304.17C-060(1)(c); see also 806 KAR 17:300(8); 806 KAR 17:440E.

6. The Provider Agreement and any subsequent amendments shall be filed with the Kentucky Commissioner of Insurance at least 60 days before its effective date. Ky. Rev. Stat. Ann. § 304.17A-527(2); § 304.17C-060; § 304.38-075; § 304.38A-100; see also 806 KAR 17:300(8); 806 KAR 17:440E.

7. The reimbursement rate identified in the Provider Agreement shall apply to all Pharmacy Services rendered to all Plan Sponsors' Eligible Persons. Ky. Rev. Stat. Ann. § 304.17A-728; see also 806 KAR 17-300(8).

8. Nothing in the Agreement shall be construed to limit Provider's disclosure to an Eligible Person, or to another person on behalf of an Eligible Person, any information relating to the Eligible Person's condition or treatment options. Ky. Rev. Stat. Ann. § 304.17A-530(1); § 304.17C-070(1); see also 806 KAR 17:300(8); 806 KAR 17:440E.

9. Neither Caremark nor Plan Sponsor shall penalize Provider or terminate Provider's contract because Provider discusses medically necessary or appropriate care with an Eligible Person or another person on behalf of an Eligible

Person. Neither Caremark nor Plan Sponsor shall prohibit Provider from discussing all treatment options with Eligible Persons. Provider may disclose to Eligible Persons or to another person on behalf of an Eligible Person, all information determined by Provider to be in the best interests of the Eligible Person. Ky. Rev. Stat. Ann. § 304.17A-530(2); § 304.17C-070(2); see also 806 KAR 17:300(8); 806 KAR 17:440E.

10. Neither Caremark nor Plan Sponsor shall penalize Provider for discussing financial incentives and financial arrangements between Provider and Caremark with an Eligible Person. Ky. Rev. Stat. Ann. § 304.17A-530(3); § 304.17C-070(1); see also 806 KAR 17:300(8); 806 KAR 17:440E.

11. In the event that Provider's participation under the Agreement terminates for a reason unrelated to quality, Provider shall identify Eligible Persons with "special circumstances" and may request, with the concurrence of the Eligible Person, that the Eligible Person be permitted to continue treatment under Provider's care even when Provider is no longer participating in the network. Provider shall agree to care for the Eligible Person under the same guidelines and payment schedule as required by the Agreement, and shall report to Caremark and/or Plan Sponsor on the care being provided. This section does not extend the obligation of Plan Sponsor or Caremark to pay Provider following the date of termination or nonrenewal for ongoing treatment of an Eligible Person with "special circumstances" beyond the ninetieth day after the effective date of the termination or nonrenewal or beyond nine months in the case of an Eligible Person who had been diagnoses with a terminal illness at the time of the termination. If the Eligible Person is beyond the twenty-fourth week of pregnancy, Plan Sponsor's obliga-tion to pay for services extends through the delivery of the child, immediate postpartum care, and examination within the first six weeks following delivery. For purposes of this section, "special circumstances" includes a circumstance in which a covered person has a disability, a congenital condition, a life-threatening illness, or is past the twenty-fourth week of pregnancy where disruption of the Eligible Person's continuity of care could cause medical harm. Procedures for resolving disputes regarding the necessity for continued treatment by Provider shall be established by Caremark and/or Plan Sponsor and shall provide for review through an internal appeal process. Ky. Rev. Stat. Ann. § 304.17A-643.

12. The Provider Agreement shall be governed by Kentucky law. 806 KAR 17:300(8); 806 KAR 17:440E.

## LOUISIANA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Louisiana law (collectively and/or individually, "Plan Sponsor"). Provider agrees to comply with any requirements for participation as a provider in Louisiana.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Nothing in this Agreement shall be construed to interfere with the ability of Provider to communicate with a patient or Eligible Person regarding his or her health care, including but not limited to communications regarding treatment options and medical alternatives, or other coverage arrangements. Caremark shall not refuse to contract, renew, cancel, restrict, or otherwise terminate this Agreement solely on the basis of a medical communication by Provider. Caremark shall not refuse to refer Eligible Persons to Provider or refuse to compensate Provider for covered services, or take other retaliatory action against Provider because of Provider's medical communication. As used in this Section, medical communication shall mean information regarding the mental or physical health care needs or the treatment of a patient. No communication regarding treatment options shall be represented by Provider or construed to expand or revise the scope of benefits covered services under the Plan Sponsor. La. R. S. 22:215.18.

2. Caremark shall not prohibit or restrict Provider from filing a complaint, making a report, or commenting to an appropriate governmental body regarding the policies or practices of Caremark or Plan Sponsor which may nega-tively impact upon the quality of, or access to, patient care. La. R. S. 22:215.18.

3. Caremark shall not prohibit or restrict Provider from advocating to Caremark or the Plan Sponsor on behalf of the Eligible Person for approval or coverage of a particular course of treatment or for the provision of health care services. La. R. S. 22:215.18.

4. Except as otherwise prohibited by state or federal law or otherwise under the Agreement, Provider may bill an Eligible Person for payment of the balance of a bill for services rendered by Provider and not paid or covered by

Caremark or Plan Sponsor only if Provider has notified such Eligible Person prior to rendering such services that the Eligible Person may be liable for such payment. An Eligible Person shall be allowed a grace period of at least twenty-five (25) days from the date of billing to remit payment of any such bill. La. R. S. 22:230.3.

5. Nothing in this Agreement shall be construed to transfer to Provider by indemnification or otherwise any liability relating to activities, actions, or omissions of Caremark or Plan Sponsor. La. R. S. 22:215:18.

# MAINE

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Maine law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Maine.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. In the event that Caremark or Plan Sponsor fails to pay for health care services set forth in this Agreement, the Eligible Person may not be held liable to Provider, and its agent, trustee or assignee may not maintain any action at law against an Eligible Person to collect sums owed by Caremark or Plan Sponsor. If a petition to liquidate Caremark or Plan Sponsor is filed with a court of competent jurisdiction, then after the date of filing the petition for liquidation;

    a. Provider is prohibited from collecting or attempting to collect from an Eligible Person amounts normally payable by Caremark or Plan Sponsor;

    b. Provider or its agent, trustee or assignee may not maintain any action at law against an Eligible Person to collect amounts for covered services normally payable by Caremark or Plan Sponsor.

    Nothing in this Section prohibits Provider from collecting or attempting to collect from an Eligible Person any amounts for services not normally payable by Caremark or Plan Sponsor, including applicable copayments or deductibles. 24-A M.R.S. 4204.

2. In the event of the insolvency of Caremark, Plan Sponsor may require the assignment of this Agreement to itself and Provider shall continue to provide services to Eligible Persons. CMR 02-031-191.

3. Provider shall allow appropriate access to medical records of Eligible Persons for purposes of quality management, and quality reviews and complaint investigations conducted by Caremark or Plan Sponsor, the State, or the State's designee. CMR 10-144-109.

4. Provider shall have policies and procedures for 1) protecting the confidentiality of Eligible Person health information; 2) limiting access to health care information on a need-to-know basis, consistent with existing law; 3) holding all health care information confidential and not divulging it without Eligible Person's authorization, except as consistent with existing law; and 4) allowing Eligible Persons access to their medical records, consistent with existing law. CMR 10-144-109.

5. Provider shall cooperate fully and timely in the investigation and resolution of any complaint or grievance filed by an Eligible Person or their authorized representative. 24-A M.R.S. 4211; CMR 02-031-850.

# MARYLAND

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Maryland law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Maryland.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider and Caremark shall provide written notice to the other of intent to terminate this Agreement at least ninety (90) days prior to the termination unless the termination by Caremark is for fraud, patient abuse, incompetency, or loss of Provider's license. Provider shall continue to provide services pursuant to this Agreement from the date is provides notice of intent to terminate until the termination. Md. Insurance Code Ann. 15-112.

2.  Caremark and Plan Sponsor shall not, as a condition of this Agreement, prohibit Provider from discussing with or communicating to an Eligible Person, public official, or other person information that is necessary or appropriate for the delivery of health care services, including:

a.  Communications that relate to treatment alternatives;

b.  Communications that are necessary or appropriate to maintain the Provider-patient relationship while the patient is under Provider's care;

c.  Communications that relate to an Eligible Person's right to appeal a coverage; determination of Plan Sponsor with which Provider or Eligible Person does not agree; and

d.  Opinions and the basis of an opinion about public policy issues. Md. Insurance Code Ann. 15-116.

3.  Provider shall cooperate fully and timely in the investigation and resolution of any complaint or grievance filed by an Eligible Person or their authorized representative. Md. Insurance Code Ann. 15-10A-02 et seq.

4.  Caremark shall not terminate Provider on the basis of (a) gender, race, age, religion, national origin, or a protected category under the Americans with Disabilities Act; (b) the type of number of appeals that Provider files; (c) the number of grievances that Provider files on behalf of a patient; or (d) the type or number of complaints or grievances that Provider files or request for review under Caremark and/or Plan Sponsor's internal review system. Md. Ins. Code Ann § 15-122.

5.  Caremark shall not terminate or otherwise penalize Provider for (a) advocating the interests of a patient through Caremark and/or Plan Sponsor's internal review system; (b) filing an appeal; or (c) filing a grievance or complaint on behalf of a patient. Md. Ins. Code Ann. § 15-112.

The following provisions shall apply to services provided pursuant to this Agreement to Eligible Persons enrolled in Maryland Medicaid Managed Care Program:

1.  Provider shall be subject to all of the requirements to which Caremark and Plan Sponsor are subject under any contract with the Maryland Department of Health and Mental Hygiene ("Department") and pursuant to the Department's regulations. COMAR 10.09.65.17.

2.  Provider shall release to Caremark, Plan Sponsor and to the Department, upon request, any information necessary for the Plan Sponsor to perform any of its contractual and regulatory obligations under its contract with the Department, including, but not limited to, its records, reporting, and quality assurance duties. COMAR 10.09.65.17.

3.  Provider's facilities and records shall be open for inspection by Caremark, Plan Sponsor, the Department, and other government agencies, and Provider is subject to all audits and inspections to the same extent that audits and inspections may be required of Plan Sponsor under law or its contract with the Department. COMAR 10.09.65.17.

4.  Copies of Provider's medical records pertaining to Plan Sponsor's Eligible Persons shall be furnished to Caremark and Plan Sponsor upon request for transfer to a subsequent Provider in the event of termination of this Agreement. COMAR 10.09.65.17.

5.  Any termination of this Agreement shall not be effective without prior written notice to the Department. COMAR 10.09.65.17.

6.  Provider shall look solely to Caremark and/or Plan Sponsor for compensation for covered services provided to Plan Sponsor's Eligible Persons under this Agreement in accordance with this Agreement. COMAR 10.09.65.17.

7.  Provider agrees not to seek payment from an Eligible Person in the event Caremark/Plan Sponsor/the Department denies payment or request repayment on the basis that an otherwise covered service was not medically necessary. COMAR § 10.09.16.04.

8.  Evidence of Provider's professional liability coverage shall be submitted annually to Caremark upon request. COMAR 10.09.65.17.

9.  This Agreement shall not be assigned by Provider (even if allowed by Caremark) without prior written notice to the Department. COMAR 10.09.65.17.

## MASSACHUSETTS

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Massachusetts law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Massachusetts.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Caremark shall not refuse to contract with or compensate for covered services an otherwise eligible health care provider solely because Provider has in good faith:

   (a) Communicated with or advocated on behalf of one of more of his/her/its prospective, current or former patients regarding the provisions, terms or requirements of Caremark or Plan Sponsor's health benefit plans as they relate to the needs of Provider's patients; or

   (b) Communicated with one or more of his/her/its prospective, current, or former patients with respect to the method by which Provider is compensated by Caremark or Plan Sponsor for services provided to patient. 211CMR 52.12(1).

2. Provider is not required to indemnify Caremark or Plan Sponsor for any expenses and liabilities, including, without limitation, judgments, settlements, attorneys' fees, court costs and any associated charges, incurred in connection with any claim or action brought against Caremark or Plan Sponsor based on Caremark or Plan Sponsor's management decisions, utilization review provisions or other policies, guidelines or actions. 211 CMR 52.12(2).

3. Caremark shall not terminate this Agreement without cause. In the event Provider attempts to terminate this Agreement without cause, Provider shall be required to give Caremark at least ninety (90) days written notice prior to terminating this Agreement without cause. 211 CMR 52.12(5).

4. Caremark shall provide a written statement to Provider of the reason or reasons for termination of this Agreement. 211 CMR 52.12(6).

5. Caremark shall notify Provider in writing of modifications in payments, modifications in covered services or modifications in Caremark's procedures, documents or requirements, including those associated with utilization review, quality management and improvement, credentialing and preventive health services, that have a substantial impact on the rights or responsibilities of Provider, and the effective date of the modifications. The notice shall be provided sixty (60) days before the effective date of such modification unless such other date for notice is mutually agreed upon between Caremark and Provider. 211 CMR 52.12(7).

6. Provider shall not bill Eligible Persons for charges for covered services other than for deductibles, copayments, or coinsurance. 211 CMR 52.12(8).

7. Provider shall not bill Eligible Persons for nonpayment by Caremark or Plan Sponsor of amounts owed under this Agreement due to the insolvency of Caremark or Plan Sponsor. This requirement shall survive the termination of this Agreement for services rendered prior to the termination of this Agreement, regardless of the cause of the termination. 211 CMR 52.12(9).

8. Provider shall comply with Caremark's and Plan Sponsor's requirements for utilization review, quality management and improvement, credentialing and the delivery of preventive health services. 211 CMR 52.12(10).

9. Provider agrees that in no event, including but not limited to nonpayment by Caremark or Plan Sponsor of amounts due Provider under this Agreement, insolvency of Caremark or Plan Sponsor or any breach of this Agreement by Caremark or Plan Sponsor, shall Provider or its assignees or subcontractors have a right to seek any type of payment from, bill, charge, collect a deposit from , or have any recourse against, the Eligible Person, persons acting on the Eligible Person's behalf, other than Caremark or Plan Sponsor, the employer or the group contract holder for services provided pursuant to this Agreement except for the payment of applicable co-payment, co-insurance, or deductibles for services covered by the Plan Sponsor. The requirements of this provision shall survive any termination of this Agreement for services rendered prior to the termination, regardless of the cause of such termination. Plan Sponsor's Eligible Persons, any persons acting on the Eligible Person's behalf, other than Caremark or Plan Sponsor, and the employer or group contract holder shall be third party beneficiaries of this clause. This provision supercedes any oral or written agreement hereafter entered into between Provider and the Eligible Person, persons acting on the Eligible Person's behalf, other than Caremark or Plan Sponsor, and employer or group contract holder. Mass. Ann. Laws ch. 176G, Sect. 21.

10. Within 45 days after the receipt by Caremark of completed forms for reimbursement, Caremark shall (i) make payment, (ii) notify Provider in writing of the reason or reasons for nonpayment, or (iii) notify Provider in writing of what additional information or documentation is necessary to complete the forms for reimbursement. If Caremark fails to comply with these requirements for any claims related to the provision of health care services, Provider shall be paid in addition to any reimbursement for health care services provided, interest on such benefits, which shall accrue beginning 45 days after the Caremark's receipt of request for reimbursement at the rate of 1.5 per cent per month, not to exceed 18 per cent per year. The provisions relating to interest payments shall not apply to a claim that the carrier is investigating because of suspected fraud. Mass.Ann.Laws ch. 176G, Sect. 6.

## MICHIGAN

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Michigan law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Michigan.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider shall not seek payment from an Eligible Person for services provided pursuant to this Agreement, except Provider may collect copayments directly from Eligible Persons. MCLS 500.3529(3).

2. Provider must meet all applicable licensure or certification requirements. MCLS 500.3529(4)(a).

3. Provider must provide appropriate access to Caremark and Plan Sponsor to records or reports concerning services to its Eligible Persons. MCLS 500.3529(4)(b).

4. Provider shall cooperate with Caremark's and Plan Sponsor's quality assurance Activities. MCLS 500.3529(4)(c).

5. Caremark nor Plan Sponsor shall prohibit or discourage Provider from advocating on behalf of an Eligible Person for appropriate medical treatment options pursuant to the grievance procedure in MCLS 500.2213 or the Eligible Person's right to independent review under Michigan law or from discussing with an Eligible Person or provider any of the following:

   a. Health care treatments and services;

   b. Quality assurance plans required by law, if applicable;

   c. The financial relationships between Caremark , Plan Sponsor and Provider including all of the following if applicable:

      i. Whether a fee-for-service arrangement exists, under which Provider is paid a specified amount for each covered service rendered to an Eligible Person;

      ii. Whether a capitation arrangement exists, under which a fixed amount is paid to Provider for all covered services that are or may be rendered to each Eligible Person;

      iii. Whether payments to Provider are made based on standards relating to cost, quality, or patient satisfaction. MCLS 500.3541.

6. Provider shall cooperate fully and timely in the investigation and resolution of any complaint, grievance or external review initiated by an Eligible Person or their authorized representative. MCLS 500. 1907 et seq.

7. This provision supersedes and replaces all other payment provisions when a HMO Plan Sponsor is the payor, when required by a specific payor other than a HMO Plan Sponsor, or when required pursuant to applicable statutes and regulations: In no event, including but not limited to, non-payment by payor, including HMO, for pharmacy services rendered to Eligible Persons by Provider, insolvency of Caremark or HMO, or breach by HMO or Caremark of any term or condition of their agreements, shall Provider bill, charge, collect a deposit from seek compensation, remuneration or reimbursement from, or have any recourse against any Eligible Person or persons acting on behalf of the Eligible Person for Pharmacy Services eligible for reimbursement under the Agreement; provided, however, that Provider may collect from the Eligible Person, Eligible Person expenses or charges for services not covered under the Eligible Peron's benefit contract. Provider agrees not to maintain any action at law or in equity against an Eligible Person to collect sums that are owed to Provider for pharmacy services, even in the event that the HMO Plan Sponsor or Caremark fails to pay, becomes insolvent or otherwise breaches the terms and conditions of this Agreement. The provisions of this section shall (1) apply to all Pharmacy Services rendered while this Agreement is in force; (2) with respect to Pharmacy Services rendered while this Agreement is in force, survive the termination of this agreement regardless of the cause of termination; (3) be construed to be for the benefit of the Eligible Person; and (4) supersede any oral or written agreement, existing or subsequently entered into, between Provider and an Eligible Person or person acting on an Eligible Person's behalf, that requires the Eligible Person to pay for such Pharmacy Services.

8. Provider shall maintain all federal, state and local licenses, certifications and permits, without material restriction, which are required to provide health care services according to the laws of the jurisdiction in which Pharmacy Services are provided, and shall comply with all applicable statues and regulations. Provider shall also require that all health care professionals employed by or under contract with Provider to render Pharmacy Services to Eligible Person, comply with this provision.

9. Pharmacy agrees that the federal, state and local government, or accrediting agencies including, but not limited to, the National Committee for Quality Assurance (the "NCQA"), and any of their authorized representatives, shall to the extent permitted and/or required by law have immediate and complete access to, and Pharmacy shall release, all information and records or copies of such, within the possession of Pharmacy, Caremark or HMO Plan Sponsor, which are pertinent to Eligible Persons if such access is necessary to comply with accreditation standards, statutes or regulations applicable to HMO Plan Sponsor or Caremark.

## MINNESOTA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

The Caremark Provider Agreement is hereby amended in accordance with Section 1.3 to incorporate the following language into the "Schedule of Provisions Applicable to Providers in Certain States":

To the extent that Provider shall provider Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Minnesota law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Minnesota.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. PROVIDER AGREES NOT TO BILL, CHARGE, COLLECT A DEPOSIT FROM, SEEK REMUNERATION FROM, OR HAVE ANY RECOURSE AGAINST AN ELIGIBLE PERSON OR PERSONS ACTING ON THEIR BEHALF FOR SERVICES PROVIDED UNDER THIS AGREEMENT. THIS PROVISION APPLIES TO BUT IS NOT LIMITED TO THE FOLLOWING EVENTS: (1) NONPAYMENT BY CAREMARK OR PLAN SPONSOR OR (2) BREACH OF THIS AGREEMENT. THIS PROVISION DOES NOT PROHIBIT PROVIDER FROM COLLECTING COPAYMENTS OR FEES FOR UNCOVERED SERVICES. THIS PROVISION SURVIVES THE TERMINATION OF THIS AGREEMENT FOR AUTHORIZED SERVICES PROVIDED BEFORE THIS AGREEMENT TERMINATES, REGARDLESS OF THE REASON FOR TERMINATION. THIS PROVISION IS FOR THE BENEFIT OF PLAN SPONSOR ELIGIBLE PERSONS. THIS PROVISION DOES NOT APPLY TO SERVICES PROVIDED AFTER THIS AGREEMENT TERMINATES. THIS PROVISION SUPERSEDES ANY CONTRARY ORAL OR WRITTEN AGREEMENT EXISTING NOW OR ENTERED INTO THE FUTURE BETWEEN PROVIDER AND THE ELIGIBLE PERSON OR PERSONS ACTING ON THEIR BEHALF REGARDING LIABILITY FOR PAYMENT FOR SERVICES PROVIDED UNDER THIS AGREEMENT. MINN. STAT. 62D. 123.

2. Provider agrees to cooperated with and participate in Caremark's and Plan Sponsor's quality assurance program, dispute resolution procedure, and utilization review program. Minn. Stat. 62D.123.

3. Provider shall give Caremark at least one hundred and twenty (120) days' advance notice of its intent to terminate this Agreement without cause. Minn. Stat. 62D.123.

4. Provider shall not have recourse against Eligible Persons or persons acting on their be behalf for amounts above those specified in the Plan Sponsor's evidence of coverage as copayments for health care services. This provision applies but is not limited to the following events: (1) nonpayment by Caremark or Plan Sponsor; (2) insolvency of Caremark or Plan Sponsor; and (3) breach of this Agreement. This provision does not limit Provider's ability to seek payment from any person other than the Eligible Person, the Eligible Person's guardian or conservator, the Eligible Person's immediate family members, or the Eligible Person's legal representative in the event of nonpayment by Caremark or Plan Sponsor. Minn. Stat. 62D.12.

5. Neither Caremark nor Plan Sponsor shall take retaliatory action against Provider solely on the grounds that Provider disseminated accurate information regarding coverage of benefits or accurate benefit limitations of an Eligible Person's contract or accurate interpreted provisions of Provider's Agreement that limit the prescribing, providing, or ordering of care. Minn. Stat. 62D.12.

6. Provider shall cooperate fully and timely in the investigation and resolution of any complaint or grievance filed by an Eligible Person or their authorized representative. Minn. Stat. 62D.11.

## MISSISSIPPI

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement

(including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Mississippi law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Mississippi.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider may not waive, discount, rebate or distort a copayment of any Plan Sponsor or Plan or an Eligible Person's coinsurance portion of prescription drug coverage or reimbursement. Miss. Code Ann. § 83-9-6(4).

2. If Provider provides a Pharmacy Service to an Eligible Person of a Plan Sponsor that meets the terms and require-ments of the Plan Sponsor under a Plan, Provider shall provide Pharmacy Services to all Eligible Persons of the Plan on the same terms and requirements of Plan Sponsor. Miss. Code Ann. § 83-9-6(4).

3. If Caremark or Plan Sponsor fails to pay for health care services as set forth in the Provider Agreement, Eligible Persons shall not be liable to Provider for any sums owed by Caremark or Plan Sponsor. Provider shall not col-lect or attempt to collect from an Eligible Person sums owed by Caremark or Plan Sponsor. Provider, or its agent, trustee or assignee thereof, shall not maintain any action at law against an Eligible Peron to collect sums owed by Caremark or Plan Sponsor. Miss. Code Ann. § 83-41-325(13).

4. In the event of the insolvency of Caremark or Plan Sponsor, Provider shall continue to provide Pharmacy Services for the duration of the period after the insolvency for which premium payments has been made to Plan Sponsor and until the Eligible Persons' discharge from inpatient facilities. Miss. Code Ann. § 83-41-325(16).

5. If Provider terminates the Provider Agreement, Provider shall give Caremark at least sixty (60) days advance notice of termination. Miss. Code Ann. § 83-41-325(17).

6. Provider shall comply with all state and federal laws designed to protect the confidentiality of medical records. Miss. Code Ann. § 83-41-409(f).

## MISSOURI

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider provides pharmacy services to Eligible Persons enrolled with a Missouri health carrier (which is defined as an entity that is subject to the insurance laws and regulations of Missouri that contracts or offers to contract to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services, including a sickness and accident insurance company, a health maintenance organization, a nonprofit hospital and health service corporation, or any other entity providing a plan of health insurance, health benefits or health services; except that such plan shall not include any coverage pursuant to a liability insurance policy, workers' compensation insurance policy, or medical payments insurance issued as a supplement to a liability policy), Provider agrees to comply with any requirements for participation as a provider in Missouri. RSMo. 354.621; 354.627.1; 354.627.2; 354.636.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider is not prohibited or restricted from disclosing to any subscriber, enrollee or member any information that provider deems appropriate regarding the nature of treatment, risks or alternatives thereto, the availability of other therapy, consultation or test, the decision of any plan to authorize or deny services, or the process that the plan or any person contracting with the plan uses or proposes to use, to authorize or deny health care services or benefits. RSMo. 354.441.

2. Provider shall be notified on an ongoing basis of specific covered health services for which the provider is respon-sible, including limitations or conditions on service. RSMo. 354.606.1.

3. Provider agrees that in no event, including but not limited to nonpayment by the health carrier or Caremark, insolvency of the health carrier or Caremark, or breach of this agreement, shall the provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against an enrollee or a person, other than the health carrier or Caremark, acting on behalf of the enrollee, for services provided pursu-ant to this agreement. This agreement shall not prohibit the provider from collecting coinsurance, deductibles or co-payments, as specifically provided in the evidence of coverage, or fees for uncovered services delivered on a fee-for-service basis to enrollees. This agreement shall not prohibit a provider, except for a health care profession-al who is employed full time on the staff of a health carrier and has agreed to provide services exclusively to that

health carrier's enrollees and no others, and an enrollee from agreeing to continue services solely at the expense of the enrollee, as long as the provider has clearly informed the enrollee that the health carrier may not cover or continue to cover a specific service or services. Except as provided herein, this agreement does not prohibit the provider from pursuing any available legal remedy; including, but not limited to, collecting from any insurance carrier providing coverage to a covered person. RSMo. 354.606.2; Mo. 20 CSR 400-7.080(1), (3).

4.  In the event of a health carrier's or Caremark's insolvency or other cessation of operations, covered service to enrollees shall continue through the period for which a premium has been paid to the health carrier on behalf of the enrollee or until the enrollee's discharge from an inpatient facility, whichever time is greater. RSMo. 354.606.3.

5.  Paragraphs 3 and 4 above shall: (1) be construed in favor of the enrollees; (2) survive the termination of this agreement regardless of the reasons for termination, including the insolvency of the health carrier or its intermediary; (3) supersede any oral or written contrary agreement between a provider and an enrollee or the representative of an enrollee if the contrary agreement is inconsistent with the hold harmless and continuation of covered services provisions required by paragraphs 3 and 4 above; and (4) be binding upon all individuals with whom a provider may subcontract to provide services to enrollees. RSMo. 354.606.4; Mo. 20 CSR 400-7.080(3).

6.  The health carrier, Caremark, and the provider are independent contractors. Mo. 20 CSR 400-7.080(2).

7.  In no event shall a participating provider collect or attempt to collect from an enrollee any money owed to the provider by the health carrier nor shall a participating provider collect or attempt to collect from an enrollee any money in excess of the coinsurance, co-payment, or deductibles. RSMo. 354.606.5.

8.  Provider shall be notified of the provider's responsibilities with respect to the health carrier's or intermediary's (or both) administrative policies and programs, including, but not limited to payment terms, utilization review, quality assessment, and improvement programs, credentialing, grievance procedures, data reporting requirements, confidentiality requirements and any applicable federal or state programs. RSMo. 354.606.8.

9.  No provider shall be offered an inducement under the managed care plan to provide less than medically necessary services to an enrollee. RSMo. 354.606.10.

10. Provider is not prohibited from advocating in good faith on behalf of enrollees within the utilization review or grievance processes established by the health carrier or a person contracting with the health carrier. RSMo. 354.606.11.

11. Provider must make health records available to appropriate state and federal authorities involved in assessing the quality of care but shall not disclose individual identities, or investigating the grievances or complaints or enrollees, and to comply with the applicable state and federal laws related to the confidentiality of medical or health records. RSMo. 354.606.12.

12. The rights and responsibilities of provider under this agreement shall not be assigned or delegated by the provider without the prior written consent of the health carrier and/or Caremark, as applicable. RSMo. 354.606.13. A health carrier shall have the right, in the event of Caremark's insolvency, to require the assignment to the health carrier of the provisions of this agreement addressing the provider's obligation to furnish covered services. RSMo. 354.621.6.

13. Provider must furnish covered benefits to all enrollees without regard to the enrollee's enrollment in the plan as a private purchaser of the plan or as a participant in a publicly financed program of health care services. RSMo. 354.606.14.

14. Provider must collect applicable coinsurance, co-payments or deductibles from enrollees and must notify enrollees of their personal financial obligations for non-covered services. RSMo. 354.606.15.

15. Provider will not be penalized because the provider, in good faith, reports to state or federal authorities any act or practice by the health carrier that may jeopardize patient health or welfare. RSMo. 354.606.16.

16. Provider may determine whether a person is covered by a health carrier through the claims response system as set forth in this agreement or as otherwise notified. RSMo. 354.606.17.

17. Provider must follow the dispute resolution process set forth in the agreement with respect to all disputes. In no event will such procedures supercede the provisions of RSMo. 354.600-354.636. RSMo. 354.606.19.

18. At least 60 days written notice must be provided to the other party before terminating the agreement without cause. The written notice shall include an explanation of why the agreement is being terminated. Within 15 working days of the date that the provider either gives or receives notice of termination, the provider shall supply the health carrier with a list of those patients of the provider that are covered by a plan of the health carrier. RSMo. 354.609.1.

19. Provider's agreement cannot be terminated unless the provider is provided a written explanation of the reasons for the proposed termination and an opportunity for a review or hearing. This paragraph shall not apply in cases involving imminent harm to patients, a determination of fraud, or a final disciplinary action by a state licensing board or other governmental agency. The notice of the proposed termination shall include: (a) the reasons for the

proposed action; (b) notice that the provider has the right to request a hearing or review, at the provider's discretion, before a panel appointed by the health carrier or Caremark; (c) a time limit of not less than 30 days within which a health care professional may request a hearing; and (d) a time limit for a hearing date which shall be held within 30 days after the date of receipt of a request for a hearing. The hearing panel shall be comprised of at least 3 persons appointed by the health carrier or Caremark. At least one person on such panel shall be a clinical peer in the same discipline and the same or similar specialty as the health care professional under review. The hearing panel may consist of more than 3 persons, provided however, that the number of clinical peers on such panel shall constitute one-third or more of the total membership of the panel. The hearing panel shall render a decision on the proposed action within 15 days after a hearing. Such decision shall include reinstatement of the provider, provisional reinstatement subject to conditions set forth or termination of the provider. Such decision shall be provided in writing to the provider. A decision by the hearing panel to terminate a provider shall be effective not less than 30 days after the receipt by the provider of the hearing panel's decision. In no event shall termination be effective earlier than 60 days from the receipt of notice of termination. Either party may exercise a right of nonrenewal at the expiration of the contract period or upon 60 days notice to the other party; provided, however, that any nonrenewal shall not constitute a termination for purposes of this addendum. RSMo. 354.609.2 and RSMo. 354.609.3.

20. Provider's agreement shall not be terminated solely or in part because a provider: (1) advocates on behalf of an enrollee; (2) files a complaint against the health carrier or Caremark; (3) appeals a decision of the health carrier or Caremark; (4) provides information or files a report with the department of insurance; or (5) requests a hearing or review. RSMo. 354.609.5.

21. Provider shall have at least 30 days to review a proposed contract.

22. Upon termination from a network, provider must continue care to enrollees for a period of up to 90 days where the continuation of care is medically necessary and in accordance with the dictates of medical prudence, including circumstances such as disability, pregnancy, or life-threatening illness. In such circumstances, enrollee shall not be liable to the provider for any amounts owed for medical care other than deductibles or co-payment amounts specified in the certificate of coverage or other contract between the enrollee and the health plan as set forth in paragraph 3 above. In the event the terminated provider is authorized to continue treating the enrollee pursuant to this paragraph, provider shall have the right to be paid at the previously contracted rate for services provided to the enrollee. RSMo. 354.612.

23. Provider must furnish records to HMO or Caremark in order to document and/or demonstrate that the provider has the ability, clinical capacity, and legal authority to furnish all contracted benefits to enrollees under the terms of this agreement, including, without limitation, audited financial statements (if provider received 10% or more of the total medical expenditures made by the health carrier). RSMo. 354.603.1(3).

24. Unless such other time is specified in this agreement, provider may file claims for reimbursement for health care services provided in Missouri for a period of up to 6 months from the date of service. RSMo. 376.384.1(2).

25. No request for a refund or offset will be made against a claim more than 12 months after a claim has been paid except in cases of fraud or misrepresentation by the provider. RSMo. 376.384.1(3).

26. Provider shall be sent an acknowledgement of the date of receipt of the claim within 10 working days. Claims will be paid on or before the 45th day from the date of receipt of the claim or the provider will receive 1% interest per month, calculated based upon the unpaid balance of the claim. Payments of interest may be aggregated and paid once it reaches five dollars. RSMo. 376.383.

27. All claims for reimbursement for health care services provided in Missouri shall be submitted in an electronic format consistent with federal administrative simplification standards adopted pursuant to the Health Insurance Portability and Accountability Act of 1996. Any claim submitted by a provider in a non-electronic format shall not be subject to the provisions of paragraph 26 of this addendum. RSMo. 376.384.1(2).

28. Nothing in this agreement shall limit an enrollee's right to sue someone under RSMo. 538.205(4). RSMo. 538.205(4).

29. Nothing in this agreement shall prevent the HMO or Caremark from contracting with other providers if such other contracts are necessary for the HMO to maintain an adequate provider network. RSMo. 354.603.

## MONTANA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement

(including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with an insurer, Health Maintenance Organization ("HMO"), hospital service nonprofit corporation, health service corporation, health service corporation, nonprofit medical service corporation, nonprofit health care corporation, third-party administrator, self-insurer licensed under Montana law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Montana.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider agrees that it may not for any reason, including but not limited to nonpayment by Caremark or Plan Sponsor, insolvency of Caremark or Plan Sponsor, or breach of this Agreement, bill charge, collect a deposit, seek compensation, remuneration, or reimbursement, or have any recourse from or against an Eligible Person or a person other than Caremark or Plan Sponsor acting on behalf of the Eligible Person for services provided pursuant to the Agreement. This Agreement does not prohibit Provider from collecting coinsurance, copayments, or deductibles, as specifically provided in the evidence of coverage, or fees for uncovered services delivered on a fee-for-service basis to an Eligible Person. This Agreement does not prohibit Provider, except a health care profes-sional who is employed full-time on the staff of a Plan Sponsor and who has agreed to provide services exclusively to that Plan Sponsor's Eligible Persons and no others, and an Eligible Person from agreeing to continue services solely at the expense of the Eligible Person if Provider has clearly informed the Eligible Person that the Plan Sponsor may not cover or continue to cover a specific services or services. Except as provided in this Agreement, this Agreement does not prohibit Provider from pursuing any legal remedy available for obtaining payment for services from the Plan Sponsor. Mont. Code Ann. 33-36-202.

2. If Caremark or Plan Sponsor becomes insolvent or otherwise ceases operations, covered benefits to Eligible Persons will continue through the end of the period for which a premium has been paid to the Plan Sponsor on behalf of the Eligible Person, but not to exceed thirty (30) days, or until the Eligible Person's discharge from an acute care inpatient facility, whichever occurs last. Covered benefits to an Eligible Person confined in an acute care inpatient facility on the date of insolvency or other cessation of operations must be continued by Provider until the confinement in an inpatient facility is no longer medically necessary. Mont. Code Ann. 33-36-202.

3. The provisions of Sections 1 and 2 above must be construed in favor of the Eligible Person, survive the termination of this Agreement regardless of the reason for termination, including the insolvency of Caremark or Plan Sponsor, and supersede an oral or written contrary agreement between Provider and an Eligible Person or the representative of an Eligible Person if the contrary agreement is inconsistent with the hold harmless and continuation of covered benefits provisions required by Sections 1 and 2. Mont. Code Ann. 33-36-202.

4. Provider may not collect or attempt to collect from an Eligible Person money owed to the Provider by Caremark or Plan Sponsor. Mont. Code Ann. 33-36-202.

5. Provider shall cooperate fully and timely in the Insurance Commissioner approved Complaint system established and maintained by Plan Sponsor for the resolution of written complaints of Eligible Person. Mont. Code Ann. 33-31-303.

6. Neither Caremark nor Plan Sponsor shall offer an inducement under a managed care plan to Provider to prove less than medically necessary services to an Eligible Person nor prohibit Provider from discussing a treatment option with an Eligible Person or from advocating on behalf of an Eligible Person within the utilization review or grievance processes established by Caremark or Plan Sponsor. Mont. Code Ann. 33-36-204.

7. Provider shall make health records available to appropriate state and federal authorities, in accordance with the applicable state and federal laws related to the confidentiality of medical or health records, when the authorities are involved in assessing the quality of care or investigating a grievance or complaint of an Eligible Person. Mont. Code Ann. 33-36-204.

8. Caremark and Provider shall provide at least sixty (60) days' written notice to each other before terminating this Agreement without cause. Mont. Code Ann. 33-36-204.

9. Provider shall furnish covered benefits to all Eligible Persons without regard to the Eligible Person's enrollment in a Plan Sponsor as a private purchaser or as a participant in a publicity financed program of health care service. Mont. Code Ann. 33-36-204.

10. Provider shall collect applicable coinsurance, copayments, or deductibles from an Eligible Person pursuant to the evidence of coverage and shall notify Eligible Person of their personal financial obligations for noncovered benefits. Mont. Code Ann. 33-36-204.

11. Caremark shall not penalize Provider because it, in good faith, reports to state or federal authorities an act or practice by Caremark or the Plan Sponsor that may adversely affect patient health or welfare. Mont. Code Ann. 33-36-204.

12. This Agreement or a model form of this Agreement (and any material changes thereto) shall be filed with the Department of Insurance by Plan Sponsor at least sixty (60) days prior to use. A change in Provider's payment rate, coinsurance, copayment, or deductible or other Plan benefit shall not be considered a material change for purposes of this Section.

13. This Agreement may not be terminated by Caremark prior to the expiration of its term except for just cause which means reasonable grounds for termination based on a failure to satisfactorily perform contract obligations or other legitimate business reason. Mont. Code Ann. 33-37-104.

14. Notwithstanding anything to the contrary, Provider shall not be required to indemnify Plan Sponsor or Caremark for the acts or conduct of Plan Sponsor and/or Caremark. Mont. Code Ann. 33-37-104.

15. If Provider is providing services to Eligible Persons enrolled in the Montana Medicaid program, it shall comply with all applicable state and federal statues, rules and regulations, including but not limited to federal regulations and statutes found in Title 42 of the Code of Federal Regulations and the United States Code governing the Medicaid program and all applicable Montana statutes and rules governing licensure and certification. Mont. Admin. R. 37.85.401.

16. Provider shall render services to an Eligible Person enrolled in the Medicaid program in the same scope, quality, duration and method of delivery as to the general public, unless specifically limited by state regulations. Provider shall not discriminate illegally in the provision of service to Eligible Persons enrolled in the Medicaid program or in employment of persons on the grounds of race, creed, religion, color, sex, national origin, political ideas, marital status, age or disability. Provider shall comply with the Civil Rights Act of 1964 (42 USC 2000d, et seq.), The Age Discrimination Act of 1975 (42 USC 6101, et seq.), section 504 of the Rehabilitation Act of 1973 (29 SC 794), and the applicable provisions of Title 49, Mont. Code Ann., as amended and all other regulations and rules implementing the statues. Mont. Admin. R. 37.85.402.

17. For services rendered to Eligible Persons enrolled in the Montana Medicaid program, Provider shall maintain records which fully demonstrate the extent, nature and medical necessity of services and items provided which support the fee charged or payment sought for the services and items, and which demonstrate compliance with all applicable requirements for a period of at least six (6) years and three (3) months from the date of service or until any dispute or litigation concerning the services is resolved, whichever is later. Mont. Admin. R. 37.85.414.

# NEBRASKA

## ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Nebraska law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Nebraska.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. If Caremark or Plan Sponsor fails to pay for health care services as set forth in this Agreement for any reason whatsoever, including, but not limited to, insolvency or breach of this Agreement, Eligible Persons shall not be liable to Provider for any sum owed by Caremark or Plan Sponsor. Provider and its agents, trustees, or assignees may not maintain any action at law against an Eligible Person to collect sums owed by Caremark or Plan Sponsor. Provider and its agent, trustee, or assignee may not maintain an action at law or attempt to collect from an Eligible Person sums owed to Provider by Caremark or Plan Sponsor. This Section does not prohibit Provider from collecting copayments from Eligible Persons. This Section shall survive the termination of this Agreement, regardless of the reason giving rise to the termination. R.R.S. Neb. 44-32,141; 44-47-4717.

2. If Provider terminates this Agreement, it must provide Caremark with at least sixty (60) days notice of termination. R. R. S. Neb. 44-32,142.

3. Termination of this Agreement shall not release Provider from the obligations and duties imposed by this Agreement to complete treatments in progress on Eligible Persons for specific conditions for a period not to exceed thirty (30) days at the same schedule of copayment or other applicable charges in effect upon the effective date of termination of this Agreement. R.R.S. Neb. 44-4717.

4. Any amendment to the provisions of this Agreement shall be submitted to and approved by the Director of the Nebraska Department of Insurance prior to becoming effective. R.R.S. Neb. 44-4717.

5. Provider shall cooperate fully and timely in the investigation and resolution of any complaint or grievance filed by an Eligible Person. R.R.S. Neb. 44-32,102; 44-32,136; 44-4713; 44-7307 et seq.

## NEVADA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider provides pharmacy services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Nevada law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Nevada.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. If Caremark or Plan Sponsor fails to pay for a covered service for any reason, including but not limited to, insolvency or breach of this Agreement, Eligible Persons are not liable to Provider for any money owed to Provider pursuant to this Agreement. Provider, its agent, trustee or assignee thereof may not maintain an action at law or attempt to collect from an Eligible Person any money which Caremark or Plan Sponsor owes to Provider. This provision does not prohibit the collection of any uncovered charges which an Eligible Person agreed to pay or the collection of any copayment from an Eligible Person. This provision survives the termination of this Agreement, regardless of the reason for the termination. Nev. Rev. Stat. Ann. 695F.220; Nev. Admin. Code 695C.190; Nev. Admin. Code 695F.300.

2. Caremark and Plan Sponsor shall not restrict or interfere with any communication between Provider and Eligible Person regarding any information that Provider determines is relevant to the health care of the Eligible Person. Nev. Rev. Stat. Ann. 695G.240.

3. Caremark shall not terminate this Agreement or refuse to contract with or refuse to compensate Provider solely because Provider in good faith 1) advocates in private or in public on behalf of an Eligible Person, 2) assists an Eligible Person in seeking reconsideration of a decision by Caremark or Plan Sponsor to deny coverage for a service, or 3) reports a violation of law to an appropriate authority. Nev. Rev. Stat. Ann. 695G.250.

4. Caremark and Plan Sponsor shall not offer or pay any type of material inducement, bonus or other financial incentive to Provider to deny reduce, withhold, limit or delay specific medically necessary services to an Eligible Person. Nev. Rev. Stat. Ann. 695G.260.

5. Any deductible or coinsurance payment paid by an Eligible Person to Provider must be applied to the negotiated rate paid by Caremark to Provider pursuant to this Agreement. Nev. Rev. Stat. Ann. 689B061.

6. Provider shall not disclose any information relating to the Agreement or to the diagnosis, treatment or health of any Eligible Person except as provided by law. Nev. Rev. Stat. Ann. 695F.410.

7. For all claims for Eligible Persons not enrolled in managed Medicaid plan, Caremark shall approve or deny a claim for services within thirty (30) days after it receives the claim. If the claim is approved, Caremark shall pay the claim within thirty (30) days after it is approved. If Caremark requires additional information to determine whether to approve or deny the claim, it shall notify Provider of its request for additional inforammt8on within twenty (20) days after it receives the claim. Caremark shall notify Provider of all specific reasons for any delay in approving or denying the claim. Caremark shall approve or deny a claim within thirty (30) days after receiving the additional information requested. If the claim is approved, Caremark shall pay the claim within thirty (30) days after it receives the additional information. Caremark shall not request Provider to resubmit information that Provider Has already provided, unless Caremark provides a legitimate reason for the request and the purpose of the request is not to delay payment of the claim, harass Provider or discourage the filing of claims. If any approved claim is not paid as set forth in the foregoing provisions, Caremark shall pay interest on the claim at a rate of interest equal to the prime rate at the largest bank in Nevada, as ascertained by the commissioner of financial institutions, on January 1 or July 1, as the case may be, immediately preceding the date on which the payment was due, plus six (6) percent. The interest shall be calculated from thirty (30) days after the date on which the claim is approved until the date on which the claim is paid. Nev. Rev. Stat. Ann. 689A.410; 689B.255; 695B.2505; 695C.185; 695C.187; 695D.215.

8. For all claims for Eligible Persons who are provided services under this Agreement pursuant to an Agreement between Caremark and a Plan Sponsor which is contracted to provide managed care to recipients or Medicaid under the Nevada state plan for Medicaid. Caremark shall pay the claim within the time period set forth in this Agreement, and if no specific time period is set forth, within thirty (30) days. after approval of the claim. If Caremark fails to pay the claim within this time period, it shall pay interest on the claim at the rate of interest set forth in the proceeding Paragraph 7. Nev. Rev. stat. Ann. 695C.128.

9. Provider shall cooperate in a timely manner with the complaint procedure established by Plan Sponsor or Caremark and approved by the commissioner of insurance in consultation with the state Board of Health including the prompt investigation and resolution of such complaints. Nev. Rev. Stat. Ann. 689.745,750; 689B.0285, 029; 695B.380, 390; 695C.260; 695G.200, 210, 230; 695F.230.

10. Provider shall participate in and abide by Caremark and Plan Sponsors' quality assurance programs. Nev. Admin. Code 695C.190(4), 965F300.

11. Provider shall provide all covered medically necessary service to each Eligible Person for the period for which a premium has been paid to Plan Sponsor Nev. Admin. Code 695.190(G), 695F.300.

12. Provider shall provide proof of insurance against loss resulting to third persons from the practice of his/her/its profession and shall indemnify Caremark and Plan Sponsor for any liability resulting to third persons from the health care services rendered by Provider Nev. Admin. Code 695C.190(b), 695B.300.

13. Provider shall transfer or otherwise arrange for the maintenance of the records of Eligible Persons who are patients of Provider if this Agreement terminates for any reason. Nev. Admin. Code 695C. 190(7), 695F.300(7).

14. The termination of this Agreement does not release Provider from its obligation to complete any treatment/service for an Eligible Person who is receiving treatment for a specific condition for a period not to exceed sixty (60) days, at the same schedule copayment or any other applicable charge in effect when this Agreement is terminated. Nev. Rev. Stat. Ann. 695F.220.

15. Any amendment to this Agreement must be submitted to the Nevada Insurance Commissioner for approval prior to its effective date. New. Rev. Stat. Ann. 695F. 220.

16. Caremark shall not reduce Provider's reimbursement or otherwise penalize Provider for contraception or any type of hormone replacement therapy to an Eligible Person. Caremark shall not offer or pay any type of material inducement, bones or other financial incentive to Provider to deny, reduce, withhold, limit, or delay any such service. Nev. Rev. Stat. Ann. § 6898.0376.

## NEW HAMPSHIRE

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under New Hampshire law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in New Hampshire.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. Provider agrees that in no event, including but not limited to nonpayment by Caremark or Plan Sponsor, insolvency of Caremark or Plan Sponsor, or breach of this Agreement, shall Provider bill, charge, collect a deposit from, seek payment or reimbursement from, or have recourse against an Eligible Person or a person acting on behalf of the Eligible Person (other than Caremark or Plan Sponsor) for services provided pursuant to this Agreement. This Agreement does not prohibit Provider from collecting coinsurance, deductibles, or copayments, as specifically provided in the Eligible Person's health benefit plan/evidence of coverage, or fees for uncovered services delivered on a fee-for-service basis to Eligible Persons. Nor does this Agreement prohibit Provider and an Eligible Person from agreeing to continue services solely at the expense of the Eligible Person, as long as the Provider has clearly informed the Eligible Person that Caremark and/or Plan Sponsor may not cover or continue to cover a specific service or services. Except as provided in this Section, this Agreement does not prohibit Provider from pursuing any available legal remedy. This Section shall survive the termination of this Agreement regardless of the cause giving rise to termination and shall be construed to be for the benefit of the Eligible Person. This Section supercedes any oral or written contrary agreement now existing or hereafter entered into between Provider and an Eligible Person or persons acting on their behalf. Any modifications, additions or deletions to the provisions of the Section shall become effective on a date no earlier that fifteen (15) business days after the New Hampshire Insurance Commissioner has received written notice of such proposed changes. N.H. Rev. Stat. Ann. 420-J:8.

2. This Agreement shall not limit what information Provider may disclose to patients, prospective patients or Eligible Persons regarding the provisions, terms, or requirements of Caremark or the Plan Sponsor's products as they relate to the needs of Provider's patients except for trade secrets of significant competitive value. N.H. Rev.

Stat. Ann. 420-J:8; 420-A:19.

3. Neither Caremark nor Plan Sponsor shall remove Provider from its participating Pharmacy network or refuse to renew this Agreement because of Provider's participation in an Eligible Person's internal grievance procedure or external review. N.H. Rev. Stat. Ann. 420-J:8.

4. Provider shall cooperate fully and timely in the investigation and resolution of any Complaint, internal grievance or external appeals process which an Eligible Person or his/her representative initiates. N.H. Rev. Stat. Ann. 420-B:11; 415-A:4-a; 415-A:4-b.

5. This Agreement shall not be construed as limiting the liability of Caremark and/or Plan Sponsor for any actions of Provider for which Caremark and/or Plan Sponsor might otherwise be liable. N.H. Rev. Stat. Ann. 420-J:8, 420-A:19.

6. Caremark shall not offer or pay Provider any payment or reimbursement which creates an inducement for Provider to not provide medically necessary care to Eligible Persons. N.H. Rev. Stat. Ann. 420-J:8.

## NEW JERSEY

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under New Jersey law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in New Jersey.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. The Plan Sponsor shall have privity of contract with the Provider such that the Plan Sponsor shall have standing to enforce the Caremark Provider Agreement in the absence of enforcement by Caremark. NJAC 8:38-15.2(f).

2. Provider shall not discriminate in its treatment of HMO patients or carrier's covered persons. NJAC 8:38-15.2(b)(8), NJAC 8:38A-4.15(b)(7).

3. Provider shall comply with Caremark's and carriers' quality assurance and utilization review programs applicable to the Provider. NJAC 8:38-15.2(b)(9), NJAC 8:38A-4.15(b)(8).

4. If either Caremark or Provider terminates the Agreement, and regardless of the reasons for the termination, Caremark and the Provider shall abide by the terms of the Agreement, including reimbursement terms, for four months following the date of the termination. Provider has no obligation under the Agreement to provide, and Caremark has no obligation to reimburse at the contract rate, services that are not medically necessary to be provided by the Provider on and after the 31st day following the date of termination. NJAC 8:38-3.5(d). Provider must notify Caremark in writing if it is medically necessary that Provider provide such services.

If the Agreement is terminated before the termination date, Caremark shall give the Provider at least 90 days prior written notice; and in the event of such a termination, the Provider has a right to request a hearing following such notice.

These requirements shall not apply when the termination is based on: nonrenewal of the contract, a determination of fraud, breach of contract by the Provider, or the opinion of the medical director that the Provider represents an imminent danger to a patient of the public health, safety and welfare. NJAC 8:38-15.2(b)(i).

The Provider has the following rights upon receipt of the termination notice: (i) the right to obtain a reason for the termination in writing from Caremark if the reason is not otherwise stated in the notice; (ii) the right to request a hearing, and any exceptions to that right; and (iii) the right to obtain the procedures for exercising either right, NJAC 8:38-15.2(b)(ii).

In order to request from Caremark the reasons for the termination, the Provider must submit such request in writing to Caremark, 9501 E. Shea Blvd., Scottsdale, Arizona 85260, Attn: ADVP Network Management, MC-080. Caremark's response to this request shall be in writing. NJAC 8:38-3.6.

Provider shall have the right to request a hearing in writing within 10 business days following the date of receipt of notice of termination occurring prior to the date of termination from Caremark's network stated in the Agreement. The Agreement terminates, creating the right to a hearing, whenever the Agreement terminates on any date other than the designated renewal or anniversary date, except that no such right shall exist with respect to terminations based on nonrenewal of the Agreement, a determination of fraud, breach of contract by the Provider, or the opinion of the medical director that the Provider represents an imminent danger to a patient or the public

health, safety and welfare. (If no renewal or anniversary date is specified in the Agreement, then the renewal or anniversary date shall be deemed to be the month and day in each calendar year on which the Agreement was originally signed by both parties, or became effective, whichever date is latest).

Caremark shall hold a hearing within 30 days following receipt of a written request for a hearing by a terminated Provider before a panel appointed by Caremark. The panel shall consist of no less than 3 people, at least one person on the panel shall be a clinical peer in the same or substantially similar discipline and specialty as the Provider requesting the hearing, and Caremark shall not preclude the Provider from being present at the hearing or represented by counsel. The panel shall render a decision in writing within 30 days of the close of the hearing unless the panel provides notice of a need for an extension for the rendering of its decision to both Caremark and the Provider prior to the date the panel's decision would otherwise be due.

The panel's decision shall set forth the relevant contract provisions and the facts upon which Caremark and the Provider have relied at the hearing. The panel shall recommend that the Provider be terminated, reinstated or provisionally reinstated. The panel shall specify the reasons for its recommendations, including the reasons for any conditions for provisional reinstatement. The panel shall specify the conditions for provisional reinstatement, the duration of the conditions, and the consequences for failure to meet the conditions. In the event of reinstatement or provisional reinstatement, the panel shall specify the impact of the reinstatement upon the terms of the duration of the contract at issue. In the event that the panel recommends that the Provider be terminated, Caremark shall provide notice of the termination to members in accordance with NJAC 8:38-3.5. NJAC 8:38-3.6; NJAC 8:38A-4.9.

Provider's participation in the hearing process shall not be deemed to be an abrogation of the Provider's legal rights.

5.  Provider shall continue to provide services to members at the contract price following termination of the contract, in accordance with NJAC 8:38-3.5. NJAC 8:38-15.2(b)(4); NJAC 8:38A-4.15(b)(4).

6.  Provider shall not be terminated or penalized solely because of filing a complaint or appeal as permitted by law. NJAC 8:38-15.2(b)(2); NJAC 8:38A-4.15(b)(2).

7.  Provider shall not be penalized nor this Agreement terminated by Caremark because the Provider acts as an advocate for the patient in seeking appropriate, medically necessary health care services or communicates openly with the patient about all appropriate diagnostic testing and treatment options. NJAC 8:38-15.2(b)(3); NJAC 8:38-15.2(13); NJAC 8:38A-4.15(b)(3).

8.  This Agreement shall not be deemed to impose obligations or responsibilities upon Provider which require Provider to violate the statutes or rules governing licensure of Provider. NJAC 8:38-15.2(e); NJAC 8:38A-4.15(e).

9.  Provider shall hold covered persons harmless for the cost of any service or supply for which the Plan Sponsor provides benefits, whether or not the Provider believes its compensation for the service or supply from the Plan Sponsor (directly or through Caremark) is made in accordance with the reimbursement provision of the Provider Agreement, or is otherwise inadequate. NJAC 8:38-15.2(b)(7)(iii). However, members shall not be held harmless for payment of required copayments, deductibles or coinsurance, if any. Provider shall not balance bill members who have obtained covered services or supplies through the network mechanism. NJAC 8:38-15.2(b)(7).

    Provider agrees that in no event, including but not limited to nonpayment by the Plan Sponsor or Caremark, payment by the Plan Sponsor or Caremark that is other than what the Provider believed to be in accordance with the reimbursement provision of the Provider Agreement or is otherwise inadequate, insolvency of the Plan Sponsor or Caremark, or breach of this Agreement, shall the Provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against a covered person or a person (other than the health carrier or intermediary) acting on behalf of the covered person for services provided pursuant to this Agreement. This Agreement does not prohibit the Provider from collecting coinsurance, deductibles or copayments, as specifically provided in the evidence of coverage. Nor does this Agreement prohibit a Provider (except for a health care professional who is employed full-time on the staff of a health carrier and has agreed to provide services exclusively to that health carrier's covered persons and no others) and a covered person from agreeing to continue services solely at the expense of the covered person, as long as the Provider has clearly informed the covered person that the Plan Sponsor may not cover or continue to cover a specific service or services. NJAC 11:4-37.4(c)(17).

10. Provider shall keep all patient information confidential, however, the Provider shall have a mutual right to a member's medical records, as well as timely and appropriate communication of patient information, so that the Provider, Caremark and the Plan Sponsor may perform their respective duties efficiently and effectively for the benefit of the member. NJAC 8:38-15.2(b)(11); NJAC 8:38A-4.15(b)(9).

11. Provider shall maintain licensure, certification and adequate professional liability insurance. Provider shall purchase and maintain professional liability insurance for claims arising from incidents occurring during the term of this Agreement. Said insurance shall, (i) be obtained from a carrier licensed and in good standing by the state in

which Provider operates, (ii) provide minimum policy limits of $1,000,000 per occurrence/$3,000,000 aggregate or such other limits as may reasonably be required, (iii) shall include coverage for the rendering of or failure to render professional services by Provider or by any employee, agent or other person for whose acts or omissions Provider is responsible, and (iv) meet any other requirements established by law. NJAC 8:38-15.2(b)(10); NJAC 11:4-37.4(c)(7).

**12.** It is not the intent of the parties to this Agreement to establish, through execution of this Agreement an employee relationship. Neither Caremark, Provider, nor the employees, servants or representatives of either, intend to be considered the employee, servant or representative of the other. None of the provisions of this Agreement are intended to create or to be construed as creating a partnership, joint venture or employer-employee relationship between or among Caremark, Provider, or any of their respective employees, servants or representatives. The parties acknowledge that the intent of the parties with respect to their relationship and the provisions of this Agreement are subject to common law and may result in findings to the contrary.

**13.** Internal and External Appeals.

    **A.** *Internal Appeals.* In accordance with N.J. Admin. Code § 11:22-1.8, any dispute between Caremark and a Provider relating to payment of claims, but not including appeals made pursuant utilization review determinations, (a "Claims Dispute") shall be processed as follows:

        **(1)** Provider shall submit Claims Dispute in writing to Caremark, 9501 E. Shea Blvd., Scottsdale, Arizona 85260, Attn: ADVP Network Management, MC-080. The Claims Dispute must contain sufficient detail about the claims and Provider's basis for disputing the claim payment.

        **(2)** An internal review shall be conducted by Caremark employees who are personnel other than those responsible for claims payment on a day-to-day basis (the "Review Panel") and shall be provided at no cost to the Provider.

        **(3)** Caremark will conduct the internal review and communicate its results in a written decision to Provider within 10 business days of the receipt of the Claims Dispute. The written decision shall include: (i) The names, titles and qualifying credentials of the persons participating in the internal review; (ii) A statement of the Provider's grievance; (iii) The decision of the reviewers' along with a detailed explanation of the contractual basis for such decision; (iv) A description of the evidence or documentation which supports the decision; and (v) If the decision is adverse, a description of the method to obtain an external review of the decision.

    **B.** *External Appeals.* Provider may appeal adverse decisions of Caremark's internal appeals process through the following process:

        **(1)** Provider shall submit an appeal of adverse decisions of Caremark's internal appeals process by providing notice to Caremark of Provider's request for the appeal within twenty (20) calendar days after Provider receives notice of the adverse decision ("the External Appeal"). Such notice must be in writing and sent to Caremark, 9501 E. Shea Blvd., Scottsdale, Arizona 85260, Attn: Law Department, MC-024.

        **(2)** The parties shall select an arbitrator to hear and rule on the External Appeal. If, within twenty (20) calendar days of the original ADR notice, the parties cannot reach mutual agreement on the arbitrator, they shall apply to the American Arbitration Association in New Jersey to appoint a qualified arbitrator having experience in commercial contract matters.

        **(3)** The arbitration proceedings shall be conducted in New Jersey unless the parties mutually agree to another location.

        **(4)** No later than thirty (30) calendar days after selection, the arbitrator shall hold a hearing to resolve each of the issues identified by the parties.

        **(5)** The parties shall follow the American Arbitration Association Rules and Procedures.

        **(6)** Except as required by law, the existence of the dispute, any settlement negotiations, the ADR hearing, any submissions (including exhibits, testimony, proposed rulings, and briefs), and the rulings shall be deemed Confidential Information The arbitrator shall have the authority to impose sanctions for unauthorized disclosure of Confidential Information.

        **(7)** The recommended decision of the arbitrator shall be issued no later than thirty (30) business days from receipt by the ADR firm of all documentation necessary to complete the review.

        **(8)** The costs of the External Appeal shall be borne equally by Provider and Caremark.

        **(9)** External Appeal decision shall be nonbinding unless the parties agree otherwise.

        **(10)** Caremark shall annually notify participating providers in writing of the internal appeals process and the ADR mechanism and how they can be utilized. The ADR mechanism shall also be described in the final internal decision denying or disputing the Provider's claim, in full or in part.

        **(11)** Caremark shall annually report, in a format prescribed by the Department, the number of internal and external provider appeals received and how they were resolved.

14. At a time mutually agreeable to Provider and Caremark, unless otherwise authorized by the Division of Medical Assistance and Health Services in the Department of Human Services with regard to any health care-related programs funded in whole or in part with State funds, Caremark may inspect all records of Provider relating to this Agreement including, but not limited to, original signed Prescriber's orders, telephoned Prescriber's orders, signature logs, computer records, and invoices showing purchase or receipt of Covered Items. Caremark may also inspect such other documents and items that reasonably relate to Provider's compliance with the Caremark Documents, including, without limitation, electronic communications. Caremark may not review any document relating to any person or prescription plan other than those reimbursable by the Plan Sponsor, unless authorized by the Division of Medical Assistance and Health Services in the Department of Human Services with regard to any health care-related programs funded in whole or in part with State funds. Audit results will be shared with the Provider and the Provider will have an opportunity to rebut the results. Amounts paid to Provider in connection with Claims that are not documented in accordance with the Caremark Documents and that are not validated by Provider within thirty (30) days after written request by Caremark, shall become due and owing to Caremark by Provider at the expiration of such thirty (30) day period. Caremark may notify the Plan Sponsor of any discrepancies with respect to claims under its plan. The time frame for an audit may encompass all retained records; normally, an auditor will review claims dispensed during the past three (3) years. If Caremark is denied admission to the pharmacy or if provider does not present prescription records, signature logs and supporting documentation, Caremark has the right to charge back 100% of the reimbursed claims. See NJAC 26:2J-4.7(5).

15. The Plan Sponsor or Caremark shall not restrict or prohibit, directly or indirectly, Provider from charging the subscriber for services rendered by the Provider that are in addition to charges for the drug, for dispensing the drug or for prescription counseling. Services rendered by the Provider for which additional charges are imposed shall be subject to the approval of the Board of Pharmacy. A Provider shall disclose to the purchaser the charges for the additional services and the purchaser's out-of-pocket cost for those services prior to dispensing the drug. A Provider shall not impose any additional charges for patient counseling or other services required by the Board of Pharmacy or State or federal law or the Division of Medical Assistance and Health Services in the Department of Human Services.] See NJAC 26:2J-4.7(6).

16. The method of reimbursement shall be as set forth in the Provider Agreement, subject to the following pursuant to NJAC 8:38A-4.15(b)(5):

    i.   In no event shall financial incentives be provided to Provider for the withholding of covered health care services that are medically necessary, but this shall not prohibit or limit the use of capitation arrangements between the carrier and Provider;

    ii.  To the extent that some portion of the Provider compensation may be increased or decreased by the occurrence, or nonoccurrence, of a predetermined event, Caremark shall specify such event to Provider in writing and Provider shall have the right to receive a periodic accounting (no less frequently than annually) of the funds held in connection therewith;

    iii. Provider may appeal a decision denying Provider additional compensation, in whole or in part, in accordance with any compensation arrangement tied to the occurrence or nonoccurrence of a pre-determined event, in accordance with Section 13 of this Addendum; and

    iv.  Notwithstanding subparagraph (i) above, capitation shall not be used as the sole method of reimbursement to Provider.

17. Provider agrees there is mutual responsibility between the Providers and Plan Sponsor to provide 24-hour, 7 day a week emergency and urgent cares services and benefit to a covered person pursuant to N.J.A.C. 8:38A-4.15(c)2.

18. The forms of the provider agreements and any amendments thereto, shall be submitted to the Departments of Health and Senior Services and Banking and Insurance for prior approval by the Department, following receipt of comments from the Department of Banking and Insurance. NJAC 8:38-15.3(a).

19. Clean claims will be paid as follows: Claims submitted electronically will be paid within 30 days and claims submitted by any other means will be paid within 40 days pursuant to NJAC 11:22-1.5(a).

20. Any provision in the Provider Agreement regarding limitation on liability or indemnification are subject to Chapter 187 of the New Jersey Laws of 2001, the Health Care Carrier Accountability Act, to the extent applicable.

21. This Agreement is governed by the laws of the State of New Jersey.

22. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement or the Caremark Provider Manual, the terms of this Addendum shall govern.

23. Any arbitration conducted under the Provider Agreement shall be held in New Jersey.

24. Provider shall have the right to communicate openly with the patient about all diagnostic testing and treatment options. NJAC 8:38A-4.15(b)(11).

## NEW MEXICO

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide pharmacy services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under New Mexico law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in New Mexico.

Without limiting the generality of the foregoing, Provider agrees as follows:

The Following provisions shall apply to all services provided to non-Medicaid Eligible Persons:

1. Provider agrees that in no event, including but not limited to nonpayment by Caremark or Plan Sponsor, insolvency of Caremark or Plan Sponsor, or breach of this Agreement, shall Provider bill, charge, collect a deposit from, seek remuneration or reimbursement from, or have any recourse against, a subscriber, enrollee, Eligible Person, person to whom health care services have been provided, or person acting on their behalf, for health care services provided pursuant to this Agreement. This does not prohibit Provider from collecting co-insurance, deductibles, or copayments as specifically provided in the evidence of coverage, or fees for uncovered health care services delivered on a fee-for-service basis to persons referenced above, nor from any recourse against Caremark or Plan Sponsor or their successors. This provision shall survive the termination of this Agreement regardless of the reason for the termination, including the insolvency of Caremark or Plan Sponsor. NMAC 13.10.13.25.

2. Provider agrees to comply with all the policies and programs and requirements set forth in the Caremark Manual. NMAC 13.10.13.25.

3. Provider acknowledges the confidentiality of those health records maintained by it and agrees to make available to Caremark or Plan Sponsor those health records maintained to monitor and evaluate the quality of care, to conducts evaluations and audits, and to determine on a concurrent or retrospective basis the necessity of an appropriateness of health care services provided to Eligible Persons. Provider shall also make these health records available to appropriate state and federal authorities involved in assessing the quality of care or in investigating the grievances or complaints of Eligible Persons. Provider shall comply with all applicable state and federal laws related to the confidentiality of medical or health records. NMAC 13.10.13.25.

4. Neither this Agreement, nor any of the rights and responsibilities therein, may be assigned or delegated by Provider without the prior written consent of the Plan Sponsor and Caremark. NMAC 13.10.13.25.

5. Provider shall maintain adequate professional liability and malpractice insurance. Provider shall notify Caremark not more than ten (10) days after the Provider's receipt of any reduction or cancellation of such coverage. NMAC 13.10.13.25.

6. Provider shall observe, protect, and promote the rights of Eligible Persons as patients. NMAC 13.10.13.25.

7. Provider shall provide health care services without discrimination on the basis of an Eligible Person's participation in a Plan, age, gender, ethnicity, religion, sexual orientation, health status, or disability, and without regard to the source of payments made for health care services rendered to an Eligible Person. NMAC 12.10.13.25.

8. Provider shall follow the provisions of New Mexico law regarding disputes arising out of this Agreement (including, but not limited to, termination of this Agreement for cause) which are those grievance procedures developed and implemented by Caremark or Plan Sponsor pursuant to NMAC 13.10.16.8-9 and approved by the New Mexico Superintendent of Insurance, a copy of which shall be made available upon request of Provider. If Provider is not satisfied with the resolution of the grievance process, it may initiate arbitration proceedings to resolve the dispute. NMAC 13.10.13.25. N.M. Stat. Ann. § 59A-57-6 (see § 13.10.16.8 and § 13.10.16.9 for timeframes, notice, and hearing requirements imposed for Provider deputes/terminations).

9. All terms used in this Agreement and that are defined by New Mexico statutes and New Mexico Insurance Department regulations shall be used in a manner consistent with any definitions contained in said laws and regulations. NMAC 13.10.13.25.

10. In the event Caremark or Plan Sponsor fail to pay Provider or fail to pay an Eligible Person for out of packet covered expenses within forty-five (45) days after a clean claim has been received by Caremark, interest shall accrue on the that amount at the rate of one and one half times the rate established by a bulletin entered by the New Mexico Superintendent of Insurance in January of each calendar year. For purposes of this provision, clean claim means a manually or electronically submitted claim that contains all the required data elements necessary for accurate adjudication without the need for additional information from outside of Caremark system and contains

no deficiency or impropriety, including lack of substantiating documentation required by Caremark, or particular circumstances requiring special treatment that prevents timely payment from being made. NMAC 13.10.13.25.

11. Neither Caremark or Plan Sponsor (1) shall offer an inducement financial or otherwise to provide less than medically necessary services to an Eligible Person; (2) penalize Provider for assisting an Eligible Person to seek reconsideration of a decision to deny or limit benefits to the Eligible Peron; (3) prohibit Provider from discussing treatment options with an Eligible Person irrespective of Plan Sponsor's position on treatment options, or from advocating on behalf of Eligible Person within the utilization review or grievance processes; or (4) prohibit Provider from using disparaging language or making disparaging comments when referring to Caremark or Plan Sponsor. NMAC 13.10.13.25 and N.M. Stat. Ann. 59A-57-6.

12. Notwithstanding anything to the contrary, no provisions in the Agreement shall operate to relieve either party of liability for its actions or inactions. N.M. Stat. Ann. § 59A-2-9-2.

The following Sections apply to services rendered to Medicaid Eligible Persons enrolled in Managed care Organizations contracting with the State of New Mexico in its Medicaid Managed Care Program and are included pursuant to the Medicaid Policy Manual, MAD –MR: 8.305.3.11.

1. Provider shall maintain records relating to services provided to Eligible Persons for six (6) years.
2. Provider shall keep Eligible Person's information confidential as defined by federal or state law.
3. Provider shall allow reasonable access by New Mexico Human Services Department ("HSD") to facilities, personnel and records for financial and medical audit purposes.
4. Provider shall release to Plan Sponsor and Caremark any information necessary to perform any of their obligations.
5. Provider shall accept payment from Caremark or Plan Sponsor, as applicable, for any services included in the Medicaid benefit package and shall not request payment from HSD for services performed under this Agreement.
6. Provider shall comply with all applicable state and federal statutes, rules and regulations, including the prohibition against discrimination.
7. This Agreement may be terminated, rescinded, or canceled for a violation of applicable HSD requirements.
8. This Agreement does not prohibit Provider from entering into a contractual relationship with another Medicaid Managed Care Organization, nor does it include any incentive or disincentive that encourages Provider to not enter into such a relationship.
9. This Agreement does not prohibit Provider from assisting Eligible Persons from accessing the grievance process or otherwise protecting an Eligible Person's interest.
10. Provider shall grant Eligible Persons enrolled in New Mexico's Medicaid program all rights afforded under the Patient Protection Act. N.M. Rev. Stat. Ann. § 59A-57-10.

## NEW YORK

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO") licensed under New York Law ("Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in New York.

Without limiting the generality of the foregoing, and notwithstanding anything in the Caremark Provider Agreement to the contrary, Provider agrees as follows:

1. The New York Standard Clauses Appendix, attached hereto as Appendix A is incorporated into this Agreement by reference and sets forth the New York State Standard Clause requirements applicable to Caremark, Plan Sponsor, and Provider. Caremark, Plan Sponsor, and Provider shall comply with all provisions set forth in Appendix A. To the extent any provision set forth in the Provider Agreement and Addendum conflicts with any provision otherwise set forth in Appendix A, Appendix A shall control.

To the extent that Provider shall provide pharmacy services to Eligible Persons enrolled with an Insurer or Carrier licensed under New York law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in New York.

Without limiting the generality of the foregoing, and notwithstanding anything in the Caremark Provider Agreement to the contrary, Provider agrees as follows:

1. Subject to the terms and conditions of the Agreement, payment shall be made to Provider for Covered Items rendered to Eligible Persons within the time required by State law, which currently requires payment not later than the 45th day after the date a claim for payment is received, except in cases where the obligation to make payment is not reasonably clear or where there is evidence that the claim may be fraudulent. NY CLS Ins. § 3224-a(a).

2. If the Provider Agreement is terminated before the termination date, Caremark shall provide Provider a written explanation of the reasons for the proposed termination; and in the event of such a termination, Provider has a right to request a hearing within thirty (30) days following such notice. The hearing date must be held with thirty (30) days after the date of receipt of a request for a hearing. NY CLS Ins. § 4803(b)(1-2). The hearing panel shall render a written decision on the proposed action in a timely manner, and the decision shall include reinstatement of Provider, provisional reinstatement of subject to conditions set forth by Caremark, or termination of Provider. NY CLS Ins. § 4803(3-4).

   The hearing panel shall be comprised of three persons appointed by Caremark. At least one person on such panel shall be a clinical peer in the same discipline and the same or similar specialty as Provider. The hearing panel may consist of more than three persons, provided, however, that the number of clinical peers on such panel shall constitute one-third or more of the total membership of the panel. NY CLS Ins. § 4803(3).

   The hearing panel's decision shall be effective not less than thirty (30) days after the receipt by Provider of the hearing panel's decision, and a termination shall not be effective earlier than sixty (60) days from the receipt of the notice of termination; provided, however, that the provisions of paragraph 8 of the Addendum shall apply to such terminations. NY CLS Ins. § 4803(5-6).

   These requirements shall not apply in cases involving imminent harm to patient care, a determination of fraud, or final disciplinary action by state licensing board or other governmental agency that impairs Provider's ability to practice. NY CLS Ins. § 4803(b)(1).

3. Caremark shall not terminate the Provider Agreement or refuse to renew a contract for participation in the in-network benefits portion of a managed care product solely because Provider has: (a) advocated on behalf of an Eligible Person; (b) filed a complaint against Caremark and/or Plan Sponsor; (c) appealed a decision of Caremark and/or Plan Sponsor; (d) provided information or filed a report pursuant to NY Pub. Health § 4406-c; or (e) requested a hearing or review pursuant to NY CLS Ins. § 4803, NY CLS Ins. § 4803(c).

4. The parties may exercise a right of non-renewal at the expiration of the Provider Agreement, or for a contract without a specific expiration date, on each January first occurring after the contract has been in effect for at least one year, upon sixty (60) days notice to the other party; provided, however, that any nonrenewable shall not constitute a termination. NY CLS Ins. § 4803(6)(c).

5. Caremark shall not prohibit or restrict Provider from disclosing to Eligible Person or Eligible Person's designated representative, any information that Provider deems appropriate regarding: (a) a condition or course of treatment, including the availability of other therapies, consultations, or test; or (b) the provision, terms, or requirements of Caremark's or Plan Sponsor's products as they relate to Eligible Person, where applicable. NY CLS Ins. §§ 3217-b(a)(1-2); 4325(a)(1-2).

6. Caremark shall not prohibit or restrict Provider from filing a complaint, making a report or commenting to an appropriate governmental body regarding the policies or practices of Caremark or Plan Sponsor, which the Provider believes may negatively impact upon the quality of, or access to, patient care. NY CLS Ins. §§ 3217-b(b); 4325(b).

7. Caremark shall not prohibit or restrict Provider from advocating to Caremark and/or Plan Sponsor on behalf of Eligible Person for approval of coverage of a particular course of treatment or for the provision of health care services. NY CLS Ins. §§ 3217-b(c); 4325(c).

8. If Provider leaves Plan Sponsor's in-network benefits portion of its network of providers for a managed care product for reasons other than those for which Provider would not be eligible to receive a hearing pursuant to NY Pub. Health § 4803(b)(1), Caremark shall permit the Eligible Person to continue an ongoing course of treatment with the Eligible Person's current provider during a transitional period of: (a) up to ninety (90) days from the date of the notice to Eligible Person of Provider's disaffiliation from Plan Sponsor's network; or (b) if the Eligible Person has entered the second trimester of pregnancy at the time of the provider's disaffiliation, for a transitional period that includes the provision of post-partum care directly related to the delivery. NY CLS Ins. § 4804(e)(1). Caremark shall authorize the care described above if Provider agrees: (a) to continue to accept reimbursement at the rates applicable prior to the start of the transitional period as payment in full; (b) to adhere to Plan Sponsor's and Caremark quality assurance requirements and to provide Plan Sponsor and Caremark necessary medical information related to such care; and (c) to otherwise adhere to Plan Sponsor's and Caremark's policies and procedures, including, but not limited, to procedures regarding referrals and obtaining pre-authorization and a treatment plan. NY CLS Ins. § 4804(e)(2).

9. In the event of Plan Sponsor's or Caremark's insolvency, Provider may not: (a) collect or attempt to collect from Eligible Persons sums owed by Plan Sponsor or Caremark, or (b) maintain any action at law against Eligible Persons to collect sums owed to Provider by Plan Sponsor or Caremark. NY CLS Ins. § 4307(d).

10. For Providers who provide services to members of the Department of Social Services medical assistance     program,

   a. Provider shall prepare and maintain contemporaneous records demonstrating its right to receive payment under the medial assistance program and to keep for a period of six (6) years from the date services or supplies were furnished, all records necessary to disclose the nature and extent of services furnished and all information regarding claims for payment submitted by, or on behalf of, Provider. Provider further agrees to furnish such records and information, upon request, to the department, the Secretary of the United States Department of Health and Human Services, the Deputy Attorney General for Medicaid Fraud Control and the New York State Department of Health. 18 NYCRR § 504.3(a).

   b. Provider shall comply with the disclosure requirements of Part 502 of Title 18 of the New York Codes, Rules and Regulations, with respect to ownership and control interests, significant business transactions, and involvement with convicted persons. 18 NYCRR § 504.3(b).

   c. Provider shall accept payment from the medical assistance program as payment in full for all care, services and supplies billed under the program, except where specifically provided in law to the contrary. 18 NYCRR § 504.3(c).

   d. Provider shall not discriminate on the basis of handicap race, color, religion, national origin, sex, or age. 18 NYCRR § 504.3(d).

   e. Provider shall submit claims for payment only for medically necessary services actually furnished to Eligible Persons or otherwise authorized under the Social Services Law. Provider shall submit claims on officially authorized claim forms in the manner specified by the department in conformance with the standards and procedures for claims submission. Any information provided in relation to any claim for payment shall be true, accurate, and complete. 18 NYCRR § 504.3(e),(f),(h).

   f. Provider shall permit audits, by the persons and agencies denominated in subparagraph (a) of the section, of all books and records or, in the discretion of the auditing agency, a sample thereof, relating to services furnished and payments received under the medical assistance program, including patient histories, case files, and patient-specific data. 18 NYCRR § 504.3(g).

## NORTH CAROLINA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under North Carolina law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in North Carolina.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. In the event of termination of this Agreement or the insolvency of Plan Sponsor or Caremark, Provider agrees to continue to provide pharmacy services to a patient receiving inpatient care until the patient is ready for discharge. 11 N.C.A.C. 20.0202.

2. In the event of termination of this Agreement or the insolvency of Plan Sponsor or Caremark, Provider's obligation to transition administrative duties and records are as set forth in the Provider Agreement. 11 N.C.A.C. 20.0202.

3. Provider shall maintain licensure, accreditation, and credentials sufficient to meet Caremark's credential verification program requirements and shall notify Caremark of subsequent changes in status of any information relating to Provider's professional credentials. 11 N.C.A.C. 20.0202.

4. Provider shall maintain professional liability insurance coverage in an amount acceptable to Caremark and notify Caremark of subsequent changes in status of professional liability insurance on a timely basis. 11 N.C.A.C. 20.0202.

5. Provider shall not bill any Eligible Person for covered services, except for specified coinsurance, copayments, and applicable deductibles. This provision does not prohibit Provider and an Eligible Person from agreeing to con-

tinue noncovered services at the Eligible Person's expense, as long as Provider has notified the Eligible Person in advance that Caremark or Plan Sponsor may not cover or continue to cover specific services and that the Eligible Person chooses to receive the service. 11 N.C.A.C. 20.0202.

6. Provider agrees to arrange for call coverage or other backup to provide service in accordance with Plan Sponsor's standards for Provider accessibility. 11 N.C.A.C. 20.0202.

7. Caremark shall provide mechanisms to allow Provider to verify eligibility, based on current information held by Caremark and Plan Sponsor, before rendering services. 11 N.C.A.C. 20.0202.

8. Provider shall: 1) maintain confidentiality of Eligible Person's medical records and personal information as required by G.S. 58, Art. 39 and other health records as required by law; 2) maintain adequate medical and other health records according to industry and Plan Sponsor's standards; 3) make copies of such records available to Caremark and Plan Sponsor and the North Carolina Department of Insurance in conjunction with its regulation of Plan Sponsor. 11 N.C.A.C. 20.0202.

9. Provider shall cooperate with Eligible Persons in grievance procedures available to Eligible Persons. 11 N.C.A.C. 20.0202.

10. Provider shall not discriminate against Eligible Person's on the basis of race, color, national origin, gender, age, religion, marital status, health status, or health insurance coverage. 11 N.C.A.C. 20.0202.

11. Provider shall comply with Caremark and Plan Sponsor's utilization management programs, credential verification programs, quality management programs, and provider sanction programs but none of these programs shall override the professional or ethical responsibility of Provider or interfere with Provider's ability to provide information or assistance to Eligible Persons. 11 N.C.A.C. 20.0202.

12. Provider authorizes and Caremark agrees to include the name of Provider in the provider directory distributed to Plan Sponsor's Eligible Persons. 11 N.C.A.C. 20.0202.

13. Provider's duties and obligations under this Agreement shall not be assigned, delegated, or transferred without the prior written consent of Caremark. Caremark shall notify Provider, in writing, of any duties or obligations that are to be delegated or transferred, before the delegation or transfer. 11 N.C.A.C. 20.0202.

14. This form of Agreement shall be filed with and approved by the Department of Insurance prior to usage and any material changes to the approved contract form shall also be filed with the Department for approval before use. Material change included a change in the means of calculating payment to Provider (e.g. change from capitation to fee-for-service), a change in the distribution of risk between parties, or a change in the delegation of clinical or administrative responsibilities. 11 N.C.A.C. 20.0201; 20.0203.

15. In the event that Caremark or Plan Sponsor fails to pay for health care services as set forth in this Agreement, the Eligible Person shall not be liable to Provider for any sums owed by Caremark or Plan Sponsor. No other provision of this Agreement shall, under any circumstances, change the effect of this Section. Provider, its agent, trustee, or assignee, may not maintain any action at law against an Eligible Person to collect any sums owed by Caremark or Plan Sponsor. N.C. Gen. Stat. 58-67-115.

16. Caremark and Plan Sponsor shall not limit either of the following: 1) Provider's ability to discuss with an Eligible Person the clinical treatment options medically available, the risks associated with the treatments, or a recommended course of treatment; 2) Provider's professional obligations to patients as specified under Provider's professional license. N. C. Gen. Stat. 58-3-176.

17. Provider shall cooperate fully and timely in the investigation and resolution of any complaint or grievance filed by an Eligible Person or their authorized representative. N.C. Gen. Stat. 58-50-62.

18. Provider acknowledges and agrees that Plan Sponsors retain the right and ability to approve or disapprove Provider's participation as well as the ability to monitor and oversee Provider's offering of services to Eligible Members. 11 N.C.A.C. 20.0204(2),(4).

## NORTH DAKOTA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under North Dakota law (collectively and/or individually, "Plan Sponsor"). Provider agrees to comply with any requirements for participation as a provider in North Dakota.

Without limiting the generality of the foregoing, Provider agrees as follows:

1.  In the event Caremark or Plan Sponsor fails to pay for services for any reason whatsoever, including insolvency or breach of this Agreement, the Eligible Persons are not liable to Provider for any sums owed to Provider under this Agreement. Neither Provider, nor its agent, trustee, or assignee thereof may maintain an action at law or attempt to collect from the Eligible Person sums owed to Provider by Caremark or Plan Sponsor. This Section does not prohibit collection of uncovered charges consented to by Eligible Persons or collection of copayments from Eligible Persons. The provisions of this Section survive the termination of this Agreement, regardless of the reason giving rise to termination. N.D. Cent. Code §§ 26.1-17.1-16; 26.1-47-02.

2.  Termination of this Agreement does not release Provider from completing procedures in progress on Eligible Persons then receiving treatment for a specific condition for a period not to exceed sixty days, at the same schedule of copayment or other applicable charge in effect upon the effective date of termination of this Agreement. N. D. Cent. Code § 26.1-17.1-16.

3.  Any amendment to Sections 1 or 2 must be submitted to and approved by the North Dakota Commissioner of Insurance. N.D. Cent. Code § 26.1-17.1-16.

4.  Provider shall cooperate fully and timely in the investigation and resolution of any complaint or grievance process initiated by an Eligible Person or their representative. N.D. Cent. Code §§ 26.1-17.1-12; 26.1-18.1-10; 26.1-36-42. THE FOLLOWING APPLY TO "PREFERRED PROVIDER ARRANGEMENTS"

5.  This Agreement may not be terminated by either party except after the terminating party has given the other at least sixty (60) days advance written notice of the termination. N.D. Cent. Code § 26.1-47-02.

6.  This Agreement shall be filed with the North Dakota Commissioner of Insurance within ten days of implementation. The Commissioner may declare this Agreement void and disapprove this Agreement. N. D. Cent. Code § 26.1-47-02.

7.  In the event of the insolvency of Plan Sponsor or Caremark, Provider agrees to provide services to Eligible Persons for the period for which premium payment has been made and until an Eligible Peron's discharge from inpatient facilities. N.D. Cent. Code § 26.1-47-02.

8.  Nothing in this Agreement shall be construed as restricting Provider from entering into preferred provider arrangements or other arrangements with any health care insurer. N.D. Cent. Code § 26.1-47-02.

9.  Neither Caremark nor Plan Sponsor shall offer an inducement to Provider to provide less than medically necessary services to an Eligible Person. N.D. Cent. Code §§ 26.1-47-02; 26.1-04-03.

10. Neither Caremark nor Plan Sponsor shall penalize Provider because Provider, in good faith, reports so state or federal authorities any act or practice by Caremark or Plan Sponsor that jeopardizes patient health or welfare. N.D. Cent. Code §§ 26.1-47-02; 26.1-04-03.

11. Notwithstanding anything to the contrary, this Agreement shall not be construed to require Provider to indemnify Caremark or Plan Sponsor for their negligence, willful misconduct, or breach of contract or to waive any right to seek legal redress from Caremark or Plan Sponsor. N.D. Cent. Code § 26.1-04-03.

12. Neither Caremark nor Plan Sponsor shall restrict or interfere with any medical communication and shall not take any of the following actions against Provider solely on the basis of a medical communication:
    (a) Refusal to contract with Provider;
    (b) Termination or refusal to renew a contract with Provider;
    (c) Refusal to refer patients to or allow others to refer patients to Provider; or
    (d) Refusal to compensate Provider for covered services that are medically necessary.
    N.D. Cent. Code § 26.1-04-03.

13. Neither Caremark nor Plan Sponsor shall require Provider to accept from Caremark the lowest payment for services and items that provider charges or receives from any other entity. N.D. Cent. Code § 26.1-04-03.

## OHIO

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Ohio law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Ohio.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. A copy of the form of the Provider Agreement and any material modifications thereto shall be filed with the Ohio Superintendent of Insurance for prior approval at least 60 days before its intended use. Ohio Rev. Code Ann. § 1751.03(A)(4)(7), (B).

2. Provider shall provide Pharmacy Services to Eligible Persons as set forth in the Provider Agreement and Manual. Ohio Rev. Code Ann. § 1751.13(C)(1).

3. Provider agrees that in no event, including but not limited to nonpayment by Caremark or Plan Sponsor, insolvency of Caremark or Plan Sponsor, or breach of the Provider Agreement, shall Provider bill, charge, collect a deposit from, seek remuneration or reimbursement from, or have any recourse against an Eligible Person for health care services provided pursuant to this Agreement. This does not prohibit Provider from collecting a coinsurance or copayments as specifically provided in the evidence of coverage, or fees for uncovered health care services delivered on a fee-for-service basis to persons referenced above, nor from any recourse against Caremark, Plan Sponsor, or their successors. The provisions of this Section shall survive the termination of the Provider Agreement with respect to services covered and provided under the Provider Agreement during the time the Provider Agreement was in effect, regardless of the reason for the termination, including the insolvency of Caremark or Plan Sponsor. Ohio Rev. Code Ann. § 1751.13(C)(2), (12); Ohio Rev. Code Ann. § 1751.60.

4. Provider shall continue to provide Pharmacy Services to Eligible Persons in the event of the insolvency of discontinuance of the operations of Caremark or Plan Sponsor. Provider shall continue to provide covered services to Eligible Person as needed to complete any medically necessary procedures commenced but unfinished at the time of the insolvency or discontinuance of operations by Caremark or Plan Sponsor. The completion of a medically necessary procedure shall include the rendering of all covered health care services that constitute medically necessary follow-up care for that procedure. If an Eligible Person is receiving necessary inpatient care at a hospital, Provider shall continue to provide services until the earliest of the following: (a) the Eligible Person's discharge from the hospital; (b) the determination by the Eligible Person's attending physician that inpatient care is no longer medically indicated; (c) the Eligible Person's reaching the limit for contractual benefits; or (d) the effective date of any new coverage. In no event shall Provider be required to continue to provide services after: (a) the end of the thirty-day period following the entry of a liquidation order under Chapter 3903 of the Revised Code; (b) the end of the Eligible Person's period of coverage for which a contractual prepayment or premium has been paid; (c) the date by which an Eligible Person obtains equivalent coverage; (d) the date by which the Eligible Person's employer terminates coverage under the contract; or (e) the date by which the liquidator effects a transfer of Plan Sponsor's obligations under the Plan. Ohio Rev. Stat. Ann. § 1751.13((C)(3); see also Ohio Rev. Code Ann. § 1751.05(4),(5).

5. The rights and responsibilities of Caremark, Plan Sponsor, and Providers with respect to administrative policies and programs are set forth in the Provider Agreement and Manual. Ohio Rev. Stat. Ann. § 1751.13(C)(4).

6. Provider shall make its health records available to appropriate state and federal authorities involved in assessing the quality of care or in investigating the grievances or complaints of Eligible Persons, and shall comply with applicable state and federal laws related to the confidentiality of medical or health records. Ohio Rev. Stat. Ann. § 1751.13(C)(5).

7. The contractual rights and responsibilities set forth in the Provider Agreement may not be assigned or delegated by Provider without the prior written consent of Caremark. Ohio Rev. Stat. Ann. § 1751.13(C)(6).

8. Provider shall maintain adequate professional liability and malpractice insurance. Provider shall notify Caremark not more than 10 days after Provider's receipt of notice in any reduction or cancellation of coverage. Ohio Rev. Stat. Ann. § 1751.13(C)(7).

9. Provider shall observe, protect, and promote the rights of Eligible Persons as patients. Ohio Rev. Stat. Ann. § 1751.13(C)(8).

10. Provider shall provide Pharmacy Services without discrimination on the basis of a patient's participation in a Plan, age, sex, ethnicity, religion, sexual preference, health status, or disability, and without regard to the source of payments made for Pharmacy Services rendered to a patient. This requirement shall not apply to circumstances when Provider appropriately does not render services due to limitations arising from Provider's lack of training, experience, or skill, or due to licensing restrictions. Ohio Rev. Stat. Ann. § 1751.13(C)(9).

11. Resolution of disputes arising out of the Provider Agreement shall be resolved pursuant to the Provider Manual. Ohio Rev. Stat. Ann. § 1751.13(C)(11).

12. The terms used in the Provider Agreement that are defined by Ohio Revised Code Title XVII, Chapter 1751 shall be construed in a manner consistent with that Chapter regardless of the meaning ascribed to them in the Agreement. Ohio Rev. Stat. Ann. § 1751.13(C)(13).

13. Nothing in the Agreement shall be construed as or shall have the effect of:
   a. Directly or indirectly offering an inducement to Provider to reduce or limit medically necessary services to Eligible Persons;
   b. Penalizing Provider for assisting an Eligible Person to seek a reconsideration of Plan Sponsor's decision to deny or limit benefits to an Eligible Person;
   c. Limiting or otherwise restricting Provider's ethical and legal responsibility to fully advise Eligible Persons about their medical condition and about medically appropriate treatment options;
   d. Penalizing Provider for principally advocating for medically necessary health care services; or
   e. Penalizing Provider for providing information or testimony to a legislative or regulatory body or agency unless Provider provides information or testimony that is libelous or slanderous or that impermissibly discloses a trade secret.
      Ohio Rev. Stat. Ann. § 1751.13(D)(1).
14. Provider acknowledges that Plan Sponsors are third-party beneficiaries to the Provider Agreement. Ohio Rev. Stat. Ann. § 1751.13(F)(2).
15. Provider acknowledges that Provider's participation under the Provider Agreement is subject to the approval and disapproval of Plan Sponsors. Ohio Rev. Stat. Ann. § 1751.13(F)(3).
16. Provider acknowledges Plan Sponsors' statutory responsibility to monitor and oversee the offering of covered health care services to their Eligible Persons. Ohio Rev. Stat. Ann. § 1751.13(F)(1), (G).
17. Provider shall cooperate with the utilization review program of Caremark and Plan Sponsors and shall provide Caremark, Plan Sponsors, and their designees access to Eligible Persons medical records during regular business hours, or copies of those records at a reasonable cost. Ohio Rev. Code Ann. § 1751.822.
18. Caremark shall notify Provider prior to the effective date of an amendment to the Provider Agreement, and prior to the effective date of an amendment to any document incorporated by reference into the Provider Agreement if the amendment of the document directly and materially affects Provider. Such amendments shall not be effective with regard to Provider until Provider has thirty (30) days to exercise Provider's right to terminate its participation status in accordance with the terms of the Provider Agreement. This Section does not apply, however, if the delay caused by compliance with this Section could result in imminent harm to an Eligible Person or if the amendment is required by state or federal law, rule, or regulation. Ohio Rev. Code Ann. § 1753.08.

## OREGON

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Oregon law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Oregon.

Without limiting the generality of the foregoing, and notwithstanding anything in the Caremark Provider Agreement to the contrary, Provider agrees as follows:

1. In the event Plan Sponsor fails to pay for health care services covered by An Eligible Person's health benefit plan, Provider shall not bill or otherwise attempt to collect from Eligible Person for amounts owed by Plan Sponsor, and Eligible Person shall not be liable to Provider for any sums owed by Plan Sponsor. This provision does not prohibit Provider from collecting deductibles, copayments, coinsurance, and/or noncovered services. Or. Rev. Stat. § 743.821.
2. Provider may not maintain a civil action against Eligible Persons to collect amounts owed by Plan Sponsor for which Eligible Person is not liable to Provider. Or. Rev. Stat. § 750.095(4).

## PENNSYLVANIA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization, Insurer, or Carrier licensed under Pennsylvania law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Pennsylvania.

Without limiting the generality of the foregoing, and notwithstanding anything in the Provider Agreement to the contrary, Provider agrees as follows:

1.  If Caremark initiates termination of the Caremark Provider Agreement with Provider, an Eligible Person may continue an ongoing course of treatment with Provider at the Eligible Person's option for a transitional period of up to sixty (60) days from the date the Eligible Person was notified by Caremark of the termination or pending termination. In the case of an Eligible Person in the second or third trimester of pregnancy at the time of notice of the termination or pending termination, the transitional period shall extend through postpartum care related to the delivery. Any pharmacy service provided during this transitional period shall be covered by Plan Sponsor under the same terms and conditions as applicable for participating providers. Provider agrees to provide pharmacy services during the transitional period under the same terms and conditions as participating providers. If Caremark terminates Provider for cause, including breach of contract, fraud, criminal activity or posing a danger to an Eligible Person or the health, safety or welfare of the public as determined by Caremark, Plan Sponsor shall not be responsible for health care services provided to the Eligible Person following the date of termination. 40 Pa. Stat. § 99.2117; 28 Pa. Code § 9.684; 31 Pa. Code §§ 152.104(3)(vi), 154.15.

2.  If Provider terminates the Caremark Provider Agreement, it must give Caremark at least 60 days advance notice. 31 Pa. Code § 301.124.

3.  Neither Provider nor Caremark may terminate the contract without cause upon less that 60 days prior written notice. 28 Pa. Code § 9.722(e)(7).

4.  Caremark shall not sanction, terminate or fail to renew Provider's participation for any of the following reasons:
    a.  Advocating for medically necessary and appropriate health care services for an Eligible Person.
    b.  Filing a grievance on behalf of and with the written consent of an Eligible Person, or helping an Eligible person to file a grievance.
    c.  Protesting a decision, policy or practice of Caremark or Plan Sponsor that Provider believes interferes with its ability to provide medically necessary and appropriate health care.
    d.  Taking another action specifically permitted by 40 Pa. Stat. §§ 991.2113, 991.2121, and 991.2171. 28 Pa. Code § 9.222(c).

5.  Caremark shall not penalize or restrict Provider from discussing (a) the process that Plan Sponsor or Caremark uses or proposes to use to deny payment for a health care service; (b) medically necessary and appropriate care with or on behalf of an Eligible Person, including information regarding the nature of treatments, risks of treatment, alternative treatments, or the availability of alternate therapies, consultation or tests; (c) the decision of Plan Sponsor or Caremark to deny payment for a health care service; or (d) any other information Provider reasonably believes is necessary to provide an Eligible Person full information concerning the health care of the Eligible Person. 40 Pa. Stat. § 991.2113(a); 28 Pa. Code § 9.722(d)

6.  In no event including, but not limited to, non-payment by Plan Sponsor, Plan Sponsor's insolvency, or a breach of this contract, shall Provider bill, charge, collect a deposit from, seek compensation or reimbursement from, or have any recourse against the Eligible Person or persons other than Plan Sponsor acting on behalf of the Eligible Person for pharmacy services. This provision does not prohibit collecting supplemental charges or co-payments in accordance with the terms of the applicable agreement between Plan Sponsor and the Eligible Person. Provider further agrees that (a) the hold harmless provisions herein shall survive the termination of the Caremark Provider Agreement regardless of the cause giving rise to termination and shall be construed to be for the benefit of the Eligible Person and that (b) this hold harmless provision supersedes any oral or written contrary agreement now existing or hereafter entered into between Provider and Eligible Person or person acting on their behalf. Any modification, addition, or deletion to the provisions of this section shall become effective on a date no earlier than fifteen (15) days after the Pennsylvania Secretary of Health has received written notice of such proposed changes. 28 Pa. Code § 9.722(e)(1); 31 Pa. Code §§ 152.14, 152.204(3)(i), 301.122;

7.  Provider shall keep confidential records of Eligible Persons in accordance with 40 Pa. Stat. § 991.2131 and all applicable State and Federal regulations. Provider agrees to grant access to records to the employees and agents of the Pennsylvania Department of Health, Insurance Department, and Department of Public Welfare with direct responsibility for quality assurance, investigation of complaints or grievances, enforcement or other activities related to compliance with State law or Plan Sponsor on behalf of such entity. 40 Pa. Stat. § 9.722(e)(2); 31 Pa. Code § 152.104(3)(v).

8. Provider agrees to participate in and abide by the decisions of Caremark and Plan Sponsor's quality assurance, utilization review and enrollee complaint and grievance systems. 40 Pa. Stat. § 9.722(e)(3); 31 Pa. Code § 152.104(3)(ii)-(iv).

9. Provider agrees to adhere to all State and Federal laws and regulations. 40 Pa. Stat. § 9.722(e)(5).

10. Caremark shall make payment to Provider for Covered Items rendered to Eligible Persons within the time required by State law, which currently requires payment within 45 days after the date a claim for payment is received with all documentation reasonably necessary for Caremark to process the claim. 40 Pa. Stat. § 991.2166; 28 Pa. Code § 9.722(e)(6); 31 Pa. Code § 154.18.

11. Caremark shall give Provider at least 30 days prior written notice of any changes to contracts, policies or procedures affecting Provider or the provision or payment of health care services to Eligible Persons, unless the change is required by law or regulation. 28 Pa. Code § 9.722(e)(8).

12. Caremark shall offer no incentive reimbursement system to Provider which shall weigh utilization performance as a single component more highly than quality of care, enrollee services and other factors collectively. 28 Pa. Code § 9.722(f)(2).

13. Caremark shall offer no financial incentive that compensates Provider for providing less than medically necessary and appropriate care to an Eligible Person. 28 Pa. Code § 9.722(f)(3).

14. Provider acknowledges and agrees that nothing in the Caremark Provider Agreement limits the following:
    a. The authority of Plan Sponsors to ensure Provider's participation in and compliance with Plan Sponsors' quality assurance, utilization management, enrollee complaint and grievance systems and procedures or limits.
    b. The Department of Health's authority to monitor the effectiveness of Plan Sponsors' systems and procedures or the extent to which Plan Sponsors adequately monitor any function delegated to Caremark, or to require Plan Sponsors to take prompt corrective action regarding quality of care or consumer grievances and complaints.
    c. Plan Sponsors' authority to sanction or terminate a provider found to be providing inadequate or poor quality care or failing to comply with Plan systems, standards or procedures as agreed to by Caremark. 28 Pa. Code § 9.725(1).

15. Provider acknowledges and agrees that any delegation by Plan Sponsors to Caremark for performance of quality assurance, utilization management, credentialing, provider relations and other medical management systems shall be subject to Plan Sponsors' oversight and monitoring of Caremark's performance. 28 Pa. Code § 9.725(2).

16. Provider acknowledges and agrees that Plan Sponsors, upon failure of Caremark to properly implement and administer the systems, or to take prompt corrective action after identifying quality, enrollee satisfaction or other problems, may terminate their contracts with Caremark, and that as a result of the termination, Provider's participation in the Plans may also be terminated. 29 Pa. Code § 9.725(3).

17. Provider agrees to provide services for the duration of the period after a Plan Sponsor's insolvency for which premium payment has been made and until the Eligible Person's discharge from an inpatient facility if applicable. Continuation of benefits is limited, however to expiration of the Eligible Person's benefits if the there has been an opportunity to obtain replacement coverage. 31 Pa. Code § 301.123.


## RHODE ISLAND

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Rhode Island law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Rhode Island.

Without limiting the generality of the foregoing, and notwithstanding anything in the Caremark Provider Agreement to the contrary, Provider agrees as follows:

1. Nothing in the Agreement shall be construed as providing for the specific payment to Provider directly or indirectly as an inducement or incentive to reduce or limit services, to reduce the length of stay or the use of alternative treatment settings or the use a particular medication with respect to an individual patient. Gen. Laws of R.I. § 23-17.13-3(b)(8); 14 000 CRIR 022 § 5.4.

2. Caremark shall not refuse to compensate Provider for covered services solely because Provider has in good faith communicated with one or more of Provider's patients regarding the provisions, terms or requirements of Plan

Sponsors' products as they relate to the needs of Provider's patients. Gen. Laws of R.I. §§ 23-17.13-3(b)(5), 27-41-14.1; 14 000 CRIR 022 § 5.1.

3. Notwithstanding anything to the contrary in the Agreement, Caremark shall not terminate Provider "without cause"; provided, however, that "cause" shall include lack of need due to economic considerations. Gen. Laws of R.I. § 23-17.13-3(b)(10); 14 000 CRIR 022 § 5.3.

4. Caremark shall afford Provider due process for all adverse decisions resulting in a change of Provider's status as a participating provider. Caremark shall notify Provider of the proposed actions and the reasons for the proposed action. Caremark shall give Provider the opportunity to contest the proposed action and participate in the internal appeals process set forth in the Agreement and Provider Manual. Gen. Laws of R.I. § 23-17.13-3(b)(11); 14 000 CRIR 022 § 5.12.

5. Provider shall not assert a claim against Eligible Persons in the event of the rehabilitation, liquidation, conservation, or administrative supervision of Plan Sponsor or Caremark. Gen. Laws of R.I. §§ 27-19-28(b), 27-20-24(b).

6. Nothing in the Agreement shall be construed as or shall have the effect of requiring Provider to render services exclusively to Eligible Persons of Plan Sponsors in order to participate as a provider in Caremark networks. Gen. Laws of R.I. § 27-20.5-1.

7. Provider agrees that in the event of the insolvency of Plan Sponsor or Caremark, Eligible Persons shall not be liable to Provider for charges for covered services received before the time of insolvency. Gen. Laws of R.I. § 27-41-13(e)(5).

8. In the event of the insolvency of Plan Sponsor or Caremark, Provider shall continue to provide Pharmacy Services to Eligible Persons confined at the time of insolvency until the earlier of discharge or ninety (90) days following the insolvency and to all other Eligible Persons for a period of thirty (30) days following the insolvency. During the period of continued care. Gen. Laws of R.I. § 27-41-13(e)(5).

9. Provider agrees that Eligible Persons shall not be liable to Provider for charges for covered health services, except for amounts due for copayments. Gen. Laws of R.I. § 27-41-26; 14 000 CRIR 022 § 5.2.

## SOUTH CAROLINA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under South Carolina law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in South Carolina.

Without limiting the generality of the foregoing, and notwithstanding anything in the Caremark Provider Agreement to the contrary, Provider agrees as follows:

1. For Providers who provide services to members of a Health Maintenance Organization, Provider agrees to hold Eligible Persons harmless for money owed to Provider by Plan Sponsor or Caremark and agrees that Eligible Persons shall, in no circumstances, be liable for money owed to Provider by Plan Sponsor or Caremark. This provision does not prohibit Provider from collecting deductibles, copayments, coinsurance, and/or payment for noncovered services. S.C. Code Ann. § 38-33-130(B).

## SOUTH DAKOTA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under South Dakota law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in South Dakota.