07 C 6272
JUDGE FILIP
MAGISTRATE JUDGE KEYS

Without limiting the generality of the foregoing, Provider agrees as follows:

1. In no event may Provider collect or attempt to collect from an Eligible person any money owed to Provider by Caremark or Plan Sponsor nor may Provider have any recourse against Eligible Persons for any covered charges in excess of the copayment, coinsurance, or deductible amounts in the coverage. S.D. Codified Laws § 58-17C-14(2).
2. Nothing in the Provider Agreement shall be construed as or shall have the effect of prohibiting or penalizing Provider from discussing treatment options with Eligible Persons irrespective of the Plan Sponsor's positions on the treatment options, from advocating on behalf of Eligible Persons within the utilization review or grievance processes established by Caremark or Plan Sponsor or from, in good faith, reporting to state or federal authorities any act or practice by Caremark or Plan Sponsor that jeopardizes patient health or welfare. S.D. Codified Laws § 58-17C-14(5).
3. Provider shall make health records available to Caremark and Plan Sponsor upon request, but only those health records necessary to process claims, perform necessary quality assurance or quality improvement programs, or to comply with any lawful request for information from appropriate state authorities. S.D. Codified Laws § 58-17C-14(6).
4. Caremark and Provider shall provide at least sixty days written notice to each other before terminating the Agreement without cause. S.D. Codified Laws § 58-17C-14(7).
5. If Provider is terminated without cause or chooses to leave Caremark networks, Provider shall continue to provide Pharmacy Services pursuant to the terms of the Agreement to Eligible Persons with an ongoing course of treatment, upon their request, for ninety days following the effective date of termination. In the event that an Eligible Person has entered the second trimester of pregnancy at the time of termination as specified in this Section, the continuation of services through Provider shall extend to the provision of postpartum care directly related to the delivery. S.D. Codified Laws § 58-17C-14.
6. Provider shall collect all applicable coinsurance, copayments, or deductibles from Eligible Persons pursuant to the applicable evidence of coverage and shall notify Eligible Persons of their personal financial obligations for noncovered services. S.D. Codified Laws § 58-17C-14.
7. Provider acknowledges that Plan Sponsor shall the right to approve or disapprove Provider's participation status. S.D. Codified Laws § 58-17C-15.
8. Provider acknowledges that Plan Sponsor shall have the right, in the event of Caremark's insolvency, to require the assignment to Plan Sponsor of the provisions of the Provider Agreement addressing Provider's obligation to furnish covered services. S.D. Codified Laws § 58-17C-15.

## TENNESSEE

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, Prepaid Group Health Plan, Prepaid Limited Health Services Organization, Consumer Card Discount Program, or TennCareSM MCO (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation in Tennessee. The Caremark Provider Agreement, its attachments, and all documents incorporated by reference contain all terms and conditions agreed upon by the parties.

Without limiting the generality of the foregoing, Provider agrees as follows:

*PART I*

The following provisions shall apply to all services provided to all Eligible Persons:

1. Provider shall not be required to indemnify or hold harmless Plan Sponsor for tort, patent or copyright infringement liability that Plan Sponsor incurs, experiences, or causes by act or omission, or by act or omission of Provider to the extent the act or omission was pursuant to a directive of the Plan Sponsor. Tenn. Code Ann. 56-2-124.
2. Provider must submit all claims electronically for payment for all members presenting Plan Sponsor's identification cards. If the electronic processing system is unavailable at the time of the transaction, Provider shall follow alternate procedures as determined by Caremark (such procedures comply with HIPAA Administrative Simplification regulations governing the Standards for Electronic Transactions to the extent applicable).
3. To the extent permitted by law, Provider must enter the Drug Enforcement Agency number of the Prescribing Provider on all claims submitted to Caremark.

4. Provider must comply with Caremark's provider administration manual.
5. If verbal authorization is given by Caremark to Provider or Eligible Person for medical care or services under any policy, plan or contract of the Plan Sponsor, such authorization shall be confirmed by Caremark by written authorization, facsimile transmission, or verbally by means of a confirmation number or other confirmation code. Tenn. Code Ann. 56-2-123.
6. Provider, pursuant to the State of Tennessee's "Patients' Right to Truth Act of 1996", shall not be restricted in any way from informing Eligible Persons of alternative medical care, treatments, programs or pharmaceuticals which may be available to the Eligible Person, regardless of whether covered by the Plan Sponsor or not.
7. If Provider terminates this Agreement or Caremark terminates this Agreement without cause, Provider, Caremark and Plan Sponsor shall allow an Eligible Person who is: (1) under active treatment for a particular injury or sickness, to continue to receive covered benefits from Provider for such injury or sickness for a period of one hundred twenty (120) days from the date of notice of termination, (2) in the second trimester of pregnancy to continue to receive care with Provider until completion of postpartum care. This provision shall only apply if Provider agrees to continue to be bound by the terms, conditions and reimbursement rates of this Agreement. Tenn. Code Ann. 56-7-2358.
8. Caremark and Provider acknowledge that this Agreement, along with any subsequent amendments that materially modify this Agreement, shall be submitted to the Tennessee commissioner of commerce and insurance. Tenn. Code Ann. 56-32-203; 56-51-106.
9. Neither Caremark nor Provider shall disclose or transfer any information relating to an Eligible Person's abuse status or abuse-related medical condition, or the Eligible Person's status as a family member, employer or associate of, or in a relationship with a subject of abuse, except: (a) for purposes of the provision of health care services; (b) for purpose of administering claims, utilization review or case management; or (c) where required by the commissioner of commerce and insurance or a court of competent jurisdiction.
10. Provider shall cooperate in a timely and prompt manner with Caremark and Plan Sponsor in the investigation of complaints and grievances of Eligible Persons and in the independent review process of the Plan Sponsor which is provided pursuant to Tennessee law for the examination of coverage decisions. Tenn. Code Ann. 56-32-227; 56-51-131; 56-32-210.
11. Caremark shall not terminate or not renew this Agreement or take retaliatory action against Provider because Provider:
    - (i) Communicated with an Eligible Person with respect to the Eligible Person's health status, health care or treatment options, if Provider is acting in good faith and within its scope of practice as defined by law;
    - (ii) Disclosed accurate information about whether a health care service or treatment is covered by the Eligible Person's Plan Sponsor;
    - (iii) Expressed personal disagreement with the decision made by Plan Sponsor or Caremark regarding treatment or coverage provided to Eligible Person, or assisted the Eligible Person in pursuing the grievance process relative to such decision of the Plan Sponsor or Caremark; provided Provider makes it clear that Provider is acting in a personal capacity, and not as a representative of, or on behalf of, the Plan Sponsor or Caremark; or
    - (iv) Disclosed to an Eligible Person accurate information regarding the basis of Provider reimbursement, however, Provider must keep confidential and not use or disclose specific amounts paid to it by Caremark or the Caremark fee schedule.

    Nothing in the preceding provisions of this Section 11 shall prohibit Caremark from taking action against Provider if it has evidence that Provider's actions are illegal, constitute medical malpractice or are contrary to accepted medical practices; or from making a determination not to pay for a particular service or to enforce reasonable peer review or utilization review protocols. Tenn. Code Ann. 56-32-230.
12. If Caremark authorizes and adjudicates a claim by Provider for services to be rendered to an Eligible Person, Caremark and/or Plan Sponsor shall not subsequently rescind or modify that authorization or deny the authorized payment to Provider for the authorized service after Provider renders the authorized service in good faith and pursuant to the authorization, except for payments made as a result of Provider's misrepresentation or fraud. Notwithstanding the above, Caremark may request Provider to adjust or correct an adjudicated claim to correct incorrect data elements, including incorrect billing units, incorrect national drug code (NDC) numbers and incorrect prescriber identification numbers submitted in error and in good faith by Provider. Caremark shall provide Provider an opportunity to correct claims submitted by Provider in good faith, if Provider does not correct the adjudicated claim requested within thirty (30) days of receipt of the request, Caremark may rescind, modify or recoup the funds paid on the requested claim.

*PART II*

In addition to the above, the following provisions shall also apply to all services provided to Eligible Persons in the TennCare[SM] program:

1. Provider shall not enter into any subsequent agreements or subcontracts for any of the work contemplated under this Agreement without approval of Caremark.
2. Subject to the professional judgment of Provider, Provider shall not refuse to provide medically necessary or preventive covered services to an Eligible patient, including TennCare patients and BlueCare patients under this Agreement for non-medical reasons, including, but not limited to, failure to pay applicable cost sharing responsibilities. Effective January 1, 2003, Provider may require that an Eligible Person enrolled as a TennCare Standard enrollee pay applicable cost share responsibilities prior to receiving non-emergency services. However, Provider is not required to accept or continue treatment of a patient with whom Provider feels he/she cannot establish and/or maintain a professional relationship.
3. Provider shall only provide services that are within the scope of his/her/its professional and/or technical practice and licensure.
4. Provider shall render any emergency services without the requirement of prior authorization of any kind.
5. Provider must maintain an adequate record system which shall include but not be limited to, evidence of the service performed or medications supplied, charges for such service or medications, dates of services, prescription orders, and all other information identified by Caremark, Plan Sponsor or TennCare that might be necessary for the evaluation of the quality, quantity, appropriateness, and timeliness of services performed and medications supplied by Provider under this Agreement. Such records must be maintained in the format prescribed by Plan Sponsor as mutually agreed or TennCare, or, if such format is not prescribed, such records shall be maintained in detail consistent with the professional practice that permits effective internal and external peer review and/or medical audit, and facilitates an adequate system to follow-up treatment.

   Eligible Persons and their representatives shall be given access to the Eligible Persons' medical records, to the extent and in the manner provided by Tenn. Code Ann. §§ 63-2-101 and 63-2-102, and, subject to reasonable charges, be given copies thereof upon request.
6. Provider must maintain any and all records pertaining to the medical care or Services provided pursuant to this Agreement to Eligible Persons for a period of not less than five (5) years from the close of this Agreement and retained longer if the records are under review or audit until the review or audit is complete. Said records shall be made available and furnished immediately upon request for fiscal audit, medical audit, medical review, utilization review, and other periodic monitoring upon request of authorized representative of Caremark, the Plan Sponsor or Bureau of TennCare and authorized federal, state and Comptroller of the State of Tennessee personnel.
7. TennCare, the U.S. Department of Health and Human Services, the Office of Inspector General, and the Comptroller of the State of Tennessee shall have the right to evaluate through inspection, whether announced or unannounced, or other means any records pertinent to this Agreement including quality, appropriateness and timeliness of services, and such evaluation, when performed, shall be performed with the cooperation of Caremark and Provider. Upon request, Provider shall assist in such reviews including the provision of complete copies of medical records.
8. Caremark or Plan Sponsor shall have the right to monitor, whether announced or unannounced, services rendered by Provider to Eligible Persons.
9. Provider shall participate and cooperate in any internal and external QM/QI, utilization review, peer review and appeal procedures established by Caremark, Plan Sponsor, or the Bureau of TennCare, whether announced or unannounced.
10. Caremark and/or Plan Sponsor are permitted to monitor the quality of services delivered under this Agreement and initiate corrective action where necessary to improve quality of care, in accordance with that level of medical care that is recognized as acceptable professional practice in the respective community in which Provider practices and/or conducts business and/or the standards established by the Bureau of TennCare.
11. Provider shall comply with corrective action plans initiated by Caremark and/or Plan.
12. Provider shall submit all reports and clinical information required by Plan Sponsor and/or Caremark.
13. Provider shall safeguard information about Eligible Persons according to applicable state and federal laws and regulations and the following guidelines:

    All material and information, in particular information relating to Eligible Persons or potential Eligible Persons, which is provided to or obtained by or through the Plan Sponsor's performance under its agreement with TennCare, whether verbal, written, tape, or otherwise, shall be reported as confidential information to the extent confidential treatment is provided under state and federal laws. Provider, Plan Sponsor and Caremark shall

not use any information so obtained in any manner except as necessary for the proper discharge of its obligations and securement of its rights under this Agreement or Plan Sponsor's agreement with TennCare. Provider, Plan Sponsor, and Caremark shall comply with any and all requirements of the Health Insurance Portability and Accountability Act (HIPAA).

All information as to personal facts and circumstances concerning Eligible Persons or potential Eligible Person obtained by Provider, Plan Sponsor or Caremark shall be treated as privileged communications, shall be held confidential, and shall not be divulged without the written consent of the Eligible or potentially Eligible Person or TennCare, provided that nothing stated herein shall prohibit the disclosure of information in summary, statistical or other form which does not identify particular individuals. The use or disclosure of information concerning Eligible or potentially Eligible Persons shall be limited to purposes directly connected with the administration of this Agreement and/or the agreement between Plan Sponsor and TennCare.

**14.** Provider shall promptly submit to Caremark any information needed to make payment by Caremark. Caremark shall have in place an automated claims processing system capable of accepting and processing claims submitted electronically with the exception of claims that require written documentation to justify payment. Caremark shall process Provider's claims for covered benefits provided to Eligible Persons consistent with Caremark policies and procedures and the terms of this Agreement and that the agreement between Plan Sponsor and TennCare. Caremark shall ensure that ninety percent (90%) of claims for payment for services delivered to a TennCare Eligible Person (for which no further written information or substantiation is required in order to make payment) are paid within thirty (30) days of the receipt of such claims. Caremark shall process, and if appropriate pay, within sixty (60) days ninety-nine point five percent (99.5%) of all Provider claims for services delivered to an Eligible Person in the TennCare program. "Pay" means that Caremark shall either send Provider cash, or cash equivalent in full satisfaction of the allowed portion of the claims, or give Provider a credit against any outstanding balance owed by Provider to Caremark. "Process" means Caremark must send Provider a written remittance advice or other appropriate written notice evidencing either that the claim has been paid or informing Provider that a claim has been either partially or totally "denied" and specify all known reasons for denial. If a claim is partially or totally denied on the basis Provider did not submit any required information or documentation with the claim, then the remittance advice or other appropriate written notice must specifically identify all such information and documentation. Resubmission of a claim with further information and/or documentation shall constitute a new claim for purposes of establishing the time frame for claims processing. If requested by Provider, Caremark shall provide an electronic status report indicating the disposition for every adjudicated claim for each claim type submitted by Provider seeking payment. The status report shall contain appropriate explanatory remarks related to payment or denial of the claim. Payment shall be made to the official name and address set forth in this Agreement and during such time period specified in the Agreement. Caremark shall contract with independent reviewers for the purposes of said reviewers to review disputed claims as provided by Tenn. Code Ann. 56-32.226. Tenn. Code Ann. 71-5-2314.

**15.** Provider shall accept payment or appropriate denial made by Caremark or Plan Sponsor (or, if applicable, payment by Caremark or Plan Sponsor that is supplementary to the Eligible Persons third party payor) plus the amount of any applicable cost sharing responsibilities, as payment in full for covered services provided and shall not solicit or accept any surety or guarantee of payment from the Eligible Person in excess of the amount of applicable cost sharing responsibilities except as permitted by TennCare rule 1200-13-12-.08 and as described below. Eligible Person shall include the patient, parent(s), guardian, spouse or any other legally responsible person of the patient being served.

Provider may seek payment from an Eligible Person in the following situations:

**a.** If the services are not covered by TennCare and Provider informed the individual the services were not covered prior to providing the service. Provider is required to inform the Eligible Person of the non-covered service and have the Eligible Person acknowledge the information. If the Eligible Person still requests the service, Provider shall obtain such acknowledgment in writing prior to rendering the service. Regardless of any understanding worked out between Provider and the Eligible Person about private payment, once Provider bills the MCO for the service that has been provided, the prior arrangement with the Eligible Person becomes null and void without regard to any prior arrangement worked out with the Eligible Person; or

**b.** If the Eligible Person's TennCare eligibility is pending at the time services are provided and if Provider informs the person they will not accept TennCare assignment whether or not eligibility is established retroactively. Regardless of any understanding worked out between Provider and Eligible Person about private payment, once Provider bills the MCO for the service the prior arrangement with the Eligible Person becomes null and void without regard to any prior arrangement worked out with the person; or

c. If the Eligible Person's TennCare eligibility is pending at the time services are provided, however, all monies collected, except applicable cost share amounts must be refunded when a claim is submitted to an MCO if Provider agreed to accept TennCare assignment once retroactive TennCare eligibility was established. (The monies collected shall be refunded as soon as a claim is submitted and shall not be held conditionally upon payment of the claim); or

d. The Eligible Person requests services that are non-TennCare covered services provided at the option of the Plan Sponsor; or

e. The services provided are covered services but exceed the number or limitation on services.

16. Provider shall indemnify and hold harmless the State of Tennessee, as well as its officers, agents and employees (hereinafter the "Indemnified Parties") from all claims, losses or suits incurred by or brought against the Indemnified Parties as a result of the failure of Provider to comply with the terms of this Agreement or the agreement between TennCare and Plan Sponsor. The State shall give Plan Sponsor and/or Caremark and/or Provider written notice of each such claim or suit and full right and opportunity to conduct Provider's own defense thereof, together with full information and all reasonable cooperation; but the State does not hereby accord to the Plan Sponsor, Caremark, or Provider , through their attorneys, any right(s) to represent the State of Tennessee in any legal matter, such right being governed by Tenn. Code Ann. 8-6-106.

Provider shall indemnify and hold harmless the Indemnified Parties as well as their officers, agents, and employees from all claims or suits which may be brought against the Indemnified Parties for infringement of any laws regarding patents or copyrights which may arise from Provider's or the Indemnified Parties' performance under this Agreement or the agreement between Plan Sponsor and TennCare. In any such action, brought against the Indemnified Parties, Provider shall satisfy and indemnify the Indemnified Parties for the amount of any final judgment for infringement. The State shall give the Plan Sponsor and/or Caremark and/or Provider written notice of each such claim or suit and full right and opportunity to conduct Provider's own defense thereof, together with full information and all reasonable cooperation; but the State does not accord to the Plan Sponsor, Caremark or Provider, through their attorneys, any right(s) to represent the State of Tennessee in any legal matter, such right being governed by Tenn. Code Ann. 8-6-106.

While the State will not provide a contractual indemnification to the Plan Sponsor, Caremark or Provider, such shall not act as a waiver or limitation of any liability for which the State may otherwise be legally responsible to the Plan Sponsor, Caremark or Provider. Caremark and Provider retain all of their rights to seek legal remedies against the State for losses they may incur in connection with the furnishing of services under this Agreement or the agreement between Plan Sponsor and TennCare or the failure of the State to meet its obligations under this Agreement or the agreement between it and the Plan Sponsor.

17. Caremark and Provider agree to recognize and abide by all state and federal laws, regulations and guidelines applicable to the health plan.

18. Provider shall secure all necessary liability and malpractice insurance coverage as is necessary to adequately protect the Plan Sponsor's Eligible Persons and the Plan Sponsor and Caremark under this Agreement. Provider shall provide such insurance coverage at all times during this Agreement and upon execution of this Agreement furnish Caremark with written verification of the existence of coverage. TennCare shall be exempt from and in no way liable for any sums of money that may represent a deductible in any insurance policy. The payment of such a deductible shall be the sole responsibility of the Plan Sponsor, subcontractor, and/or Provider providing such insurance. The same holds true of any premiums paid on any insurance policy.

19. This Agreement incorporates by reference all applicable federal and state laws or regulations, TennCare rules and regulations or court orders, and revisions of such laws, or regulations shall automatically be incorporated into this Agreement, as they become effective. In the event that changes in this Agreement as a result of revisions and applicable federal or state law materially affect the position of either party, Caremark and Provider agree to negotiate such further amendments as may be necessary to correct any inequities.

20. Subject to Section 19 above, Caremark may amend this Agreement from time to time by giving notice to Provider of the terms of the amendment and specifying the date the amendment becomes effective, which shall not be less than thirty (30) days after notice. Provider may object to any such amendment by giving written notice thereof to Caremark prior to the expiration of the thirty (30) day period. In this event, if the parties cannot agree on an appropriate amendment, this Agreement shall terminate at the end of the thirty (30) day period. If Provider does not object within the thirty (30) day period, the amendment shall be effective as of the specified date. Notice of amendment shall be documented (i.e., certified mail, facsimile, hand-delivery, etc.).

21. Caremark and Provider acknowledge that in the event of termination of the agreement between Plan Sponsor and Caremark or in the event of termination of the agreement between Plan Sponsor and TennCare for any of the

reasons stated below this Agreement may also terminate with respect to Plan Sponsor. Additionally, in the event of such termination, Provider shall immediately make available, to the Bureau of TennCare and Plan Sponsor or its designated representative, in a usable form, any or all records, whether medical or financial, related to Provider's activities undertaken pursuant to this Agreement. The provision of such records shall be at no expense to TennCare or Plan Sponsor.

The agreement between Plan Sponsor and TennCare may be terminated for the following reasons:

Mutual agreement between TennCare and Plan Sponsor

Termination by TennCare for cause

Termination for unavailability of state or federal funds

Termination for Plan Sponsor financial inviability, insolvency or bankruptcy

Termination by TennCare for convenience

Notice of non-renewal by the Plan Sponsor or TennCare

**22.** The TennCare Provider Independent Review of Disputed Claims process shall be available to Provider to resolve non-emergency claims denied in whole or in part by Caremark or the Plan Sponsor as provided at Tenn. Code Ann. 56-32-226(b).

**23.** Caremark and Provider warrant that no part of the total Agreement amount provided herein shall be paid directly or indirectly to any officer or employee of the State of Tennessee as wages, compensation, or gifts in exchange for acting as officer, agent, employee, subcontractor, or consultant to Caremark, Plan Sponsor or Provider in connection with any work contemplated or performed relative to this Agreement unless otherwise authorized by the Commissioner, Tennessee Department of Finance and Administration.

This Agreement may be terminated if it is determined that Caremark, Plan Sponsor, or Provider, their agents or employees offered or gave gratuities of any kind to any officials or employees of the State of Tennessee. Caremark and Provider certify that no member of or delegate of Congress, the General Accounting Office, DHHS, CMS or any other federal agency has or will benefit financially or materially from this Agreement.

**24.** Caremark and Provider acknowledge that there will be no savings or loss realized under this Agreement or the agreement between Plan Sponsor and Caremark.

**25.** Provider shall be required to accept TennCare reimbursement amounts for services provided under this Agreement to TennCare Eligible Persons and shall not be required to accept TennCare reimbursement amounts for services provided to Eligible Persons who are covered under another health plan operated or administered by Plan Sponsor. This is not intended to prohibit Provider from offering or rendering non-covered services to Eligible Persons, provided that Provider makes independent financial arrangements with the Eligible Person concerning payment for such non-covered services prior to providing such non-covered services.

**26.** Provider shall adhere to the Quality of Care Monitors included in the agreement between Plan Sponsor and TennCare, a copy of which is attached to this Addendum as Attachment 1.

**27.** Provider shall have at least, but no more than one hundred and twenty (120) calendar days from the date of rendering a health care service to file a claim with Caremark or Plan Sponsor except in situations regarding coordination of benefits or subrogation in which case Provider is pursuing payment from a third party or if an Eligible Person is enrolled in TennCare with a retroactive eligibility date. In situations of enrollment in TennCare with a retroactive eligibility date, the minimum and maximum time frames for filing a claim shall begin on the date that the Plan Sponsor receives notification from TennCare of the Eligible Person's eligibility.

**28.** Provider shall comply with the TennCare appeals process including but not limited to assisting a Eligible Person by providing appeal forms and contact information including the appropriate address for submitting appeals for state level review.

**29.** Provider shall display notices of the Eligible Person's right to appeal adverse decisions affecting services in public areas of their facility(s) in accordance with TennCare rules, subsequent amendments, or any and all Court Orders.

**30.** If any requirement in this Agreement is determined by TennCare to conflict with the agreement between Plan Sponsor and TennCare, such requirement shall be null and void and all other provisions shall remain in full force and effect.

**31.** Federal and state law provide for a package of benefits referred to as Early Periodic Screening Diagnosis and Testing ("EPSDT") and which requires Provider to make treatment decisions based upon Eligible children's individual medical and behavioral health needs. A listing of the EPSDT benefit package shall be furnished to Provider upon request.

**32.** Provider is not permitted to encourage or suggest, in writing or verbally, that TennCare eligible children be placed into state custody in order to receive medical or behavioral services covered by TennCare.

33. In the event that TennCare deems the Plan Sponsor or Caremark unable to timely process and reimburse claims and requires the Plan Sponsor to submit provider claims for reimbursement to an alternate claims processor to ensure timely reimbursement, Provider shall agree to accept reimbursement at Caremark's contracted reimbursement rate as set forth in this Agreement or the rate established by TennCare, whichever is greater.

34. Caremark shall give Plan Sponsor, TennCare and the Tennessee Department of Commerce and Insurance, TennCare Division, immediate notification in writing by Certified Mail of any administrative or legal action or complaint filed regarding any claim made against Plan Sponsor or Caremark or Provider, by a Provider or Eligible Person which is related to Plan Sponsor's or Caremark or Provider's responsibilities under this Agreement or the agreement between Plan Sponsor and TennCare, including but not limited to notice of any arbitration proceedings instituted between Provider and Caremark.

    Provider must report to Caremark immediately if it is sanctioned by the Federal government or State of Tennessee.

35. Any delay by Provider in providing care to a knowingly pregnant Eligible Person, including a presumptive Eligible Person, seeking prenatal care will be considered a material breach of this Agreement.

36. Plan Sponsor and TennCare shall have the right to request Caremark to disallow Provider from providing benefits under this Agreement.

37. Provider must comply with Title VI and all other laws addressing prohibited discriminatory practices.

    Provider shall not differentiate or discriminate in the treatment of Eligible Persons on the basis of race, color, veteran status, sex, age, religion, national origin, handicap, disability, state of health, or source of payment. Provider shall not refuse to render benefits to an Eligible Person for non-medical reasons, including, but not limited to, failure to pay applicable deductibles, copayments, or special fees.

38. Caremark and Provider shall comply with Plan Sponsor's drug formulary, utilization management, quality assurance, pre-admission, record keeping, and peer review policies and procedures as disclosed to Caremark. Further, Caremark and Provider shall comply with the drug utilization review, utilization review, quality assurance, peer review, and appeal procedures established by the State of Tennessee as part of TennCare as disclosed by Plan Sponsor to Caremark.

39. Caremark and Provider shall abide by all applicable local, state and federal laws, regulations, policies, procedures, and guidelines applicable to TennCare, including, but not limited to, formulary guidelines, consent decrees, TennCare Standard Operating Procedures, two-week supply, prior authorization, and medical necessity requirements and processes, including but not limited to those regulations, laws, standards, orders, consent decrees specifically set forth in the agreement between Plan Sponsor and Caremark for pharmaceutical services to Eligible Persons enrolled in TennCare.

40. All terms, definitions, conditions, and policies stated in the Contractor Risk Agreement executed by the State of Tennessee and the Plan Sponsor, the TennCare Standard Operating Procedures, and all other relevant regulations or policies applicable to the TennCare Program shall apply to Provider and Caremark, their employees, agents, officers, subcontractors, volunteers and anyone else providing services to Eligible Persons under this Agreement in connection with the TennCare Program to the extent applicable.

41. Eligible Persons enrolled in TennCare are the intended third party beneficiaries of this Agreement and as such, they are entitled to the remedies accorded third party beneficiaries under the law. This provision is not intended to provide a cause of action against TennCare or the State of Tennessee by such TennCare Eligible Persons beyond any that may exist under state or federal law.

42. All late fees, interest, penalties, liquidated damages, withholds, judgments or financial obligations resulting from negotiated settlements, court orders, or consent decrees, or other charges imposed upon Plan Sponsor by TennCare or the State of Tennessee pursuant to the Contractor Risk Agreement between Plan Sponsor and TennCare that result from Provider's failure to comply with any applicable term or condition of the Contractor Risk Agreement, the Agreement and Attachment between Caremark and Plan Sponsor , or this Agreement shall be paid fully by Provider within the time period prescribed, provided that Plan Sponsor promptly notifies Caremark in writing (and Caremark promptly notifies Provider in writing) when Plan Sponsor (and Caremark) becomes aware of such actions or inactions that could reasonably give rise to such penalties. Provider shall be liable to Plan Sponsor only to the extent its performance contributed to the imposition of a penalty against Plan Sponsor. In the event there is a conflict between Caremark and Provider concerning whether, or to what extent, a penalty is attributable to conduct by Provider, such dispute shall be resolved in accordance with the arbitration provisions of the Provider Agreement .

43. Caremark shall not impose upon Provider any service limitations that are more restrictive than those that have been established by Plan Sponsor and approved as required by relevant State and/or Federal authorities.

44. Provider shall comply with all requirements of the TennCare Drug Formulary Accountability Act and all formulary management requirements set forth in the Contractor Risk Agreement between Plan Sponsor and TennCare, whether or not such requirements have been restated or summarized in this Agreement.

45. "Two-Week Supply". If Caremark is unable to respond to a request for prior authorization on the day of the request to Caremark or if the prescribing provider is unavailable, Provider shall provide a two-week supply of the prescribed medication, provided that:
    (i) The medication is not classified by the Food and Drug Administration as Less Than Effective (i.e., a DESI, LTE or IRS drug), or
    (ii) The medication is not a drug in a non-covered TennCare therapeutic category (e.g., appetite suppressants, drugs to treat infertility), or
    (iii) Use of the medication is not contraindicated because of the patient's medical condition or possible adverse drug interaction, or
    (iv) If the patient is not already taking the medication, use of the medication for a two week period possibly followed by abrupt discontinuance of the drug would not be medically contraindicated, or
    (v) The prescribing provider did not prescribe a total quantity less than a two week supply, in which case the pharmacist must provide a supply up to the amount prescribed, or
    (vi) Provision of the two week supply would not violate state or federal Controlled Substance laws.

    In some circumstances it is not feasible for Provider to dispense a two week supply because the drug is packaged by the manufacturer to be sold as the original unit or because the usual and customary pharmacy practice would be to dispense the drug in the original packaging, e.g., inhalers, eye drops, injections, topicals, drugs packaged in special dispensers and drugs that require reconstitution before dispensing such as antibiotic powder for oral suspension. When coverage of a two-week supply of a prescription would otherwise be required and when, as described above, it is not feasible for Provider to dispense a two-week supply, it shall be the responsibility of Plan Sponsor to provide coverage for the amount prescribed.

46. Caremark shall not deny or withhold payment to Provider for duplicate prescription refills, or prescriptions that are filled early in relation to the prior days supply dispensed, where such refills are for the purpose of: (i) replacing the Eligible Person's lost or destroyed medication; (ii) providing an Eligible Person with the quantity of medication necessary for extended travel away from the community in which the Eligible Person resides; or (iii) any other bona fide reason that causes the Eligible Person to be without a medication, when the discontinuance of the medication would, in Provider's judgment, place the Eligible Person at risk of harm. Provision of such duplicate prescription refills or early refill shall comply with applicable state and federal Controlled Substances laws and other state pharmacy laws and regulations.

47. Caremark and Provider acknowledge that Provider will follow Plan Sponsor's policies and procedures when requesting an override to allow early dispensing, when in the pharmacist's professional judgment, the enrollee is not abusing the medication and needs early dispensing of the medication due to lack of readily accessible transportation.

48. Provider and all of its employees, agents, subcontractors, or anyone acting for or on behalf of Provider, shall be legally authorized under applicable state or federal law and/or regulations to render the services set forth in this Agreement.

49. Provider shall not be required to indemnify or hold harmless Plan Sponsor or Caremark for tort or patent or copyright infringement liability that Plan Sponsor or Caremark incurs, experiences, or causes by act or omission , or by act or omission of Provider to the extent the act or omission was pursuant to a directive of Plan Sponsor or Caremark. Tenn. Code Ann. 71-5-136.

50. Caremark and Provider shall abide by the provisions of Tenn. Code Ann. 56-32-238.

51. Caremark and Provider agree to follow the uniform TennCare claims process as promulgated by commissioner of commerce and insurance and commissioner of health pursuant to Tenn. Code Ann. 71-5-91. Caremark and Provider also agree to comply with all HIPAA requirements.

52. Caremark shall adhere to the requirements of Tenn. Code Ann. 71-1-403, the TennCare Drug Formulary Accountability Act, as applicable, for the process for formulary development and management.

53. Provider affirms that he/she/it has not been excluded from participation in the Medicare and/or Medicaid programs pursuant to Sections 1128 or 1156 of the Social Security Act and is in good standing with the TennCare program.

54. Provider must ask Eligible Persons whether they have other insurance coverage for pharmacy services and, if so, Provider shall seek payment from the other coverage for all pharmacy services rendered. BlueCare shall always be the payer of last resort.

55. Provider agrees to be bound by the restrictions, terms and conditions imposed by the Health Insurance Portability and Accountability Act (HIPAA).

## TEXAS

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide provider services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Texas law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a pharmacy in Texas.

Without limiting the generality of the foregoing, and notwithstanding anything in the Provider Agreement to the contrary, Provider agrees as follows:

1. Provider hereby agrees that in no event, including, but not limited to non-payment by Caremark, Plan Sponsor, or Caremark's or Plan Sponsor's insolvency, or breach of this agreement, shall Provider bill, charge, collect a deposit from, seek compensation, remuneration, or reimbursement from, or have any recourse against an Eligible Person(s) other than Caremark or Plan Sponsor, as applicable, acting on their behalf for services provided pursuant to the Provider Agreement. This provision shall not prohibit collection of supplemental charges or copayments on Plan Sponsor's behalf made in accordance with the terms of the plan between Plan Sponsor and Eligible Persons. Provider further agrees that this provision shall survive the termination of the Provider Agreement regardless of the cause giving rise to termination and shall be construed to be for the benefit of the Plan Sponsor's Eligible Persons. Provider further agrees that this provision supersedes any oral or written contrary agreement now existing or hereafter entered into between Provider and Eligible Person(s) acting on their behalf. Any modification, addition, or deletion to the provisions of this clause shall be effective on a date no earlier than 15 days after the Texas Insurance Commissioner has received written notice of such proposed changes. Tex. Ins. Code § 843.361; 28 TAC 11.901(1) and 11.1102; 28 TAC 3.3703(10).

2. Caremark shall not engage in any retaliatory action, including termination of or refusal to renew a contract, against Provider because Provider has, on behalf of an Eligible Person, reasonably filed a complaint against Plan Sponsor or has appealed a decision of Plan Sponsor. Tex. Ins. Code § 843.281; 28 TAC 11.901(2); 28 TAC 3.3703(a)(13); V.A.T.S. Insurance Code, Art. 3.70-3C.

3. Provider must post a notice to Eligible Persons on the process for resolving complaints with the Plan Sponsor. The notice must include the Texas Department of Insurance's toll-free telephone number for filing complaints. Tex. Ins. Code § 843.283; 28 TAC 11.901(5).

4. Caremark must provide reasonable advance notice to Plan Sponsor or an Eligible Person of the impending termination of Provider who is currently treating the Eligible Person. Termination of Provider's contract, except for reason of medical competence or professional behavior, does not release the Plan Sponsor from the obligation to pay for claims submitted by Provider for treating an Eligible Person of special circumstance, such as a person who has a disability, acute condition, or life-threatening illness or is past the twenty-fourth week of pregnancy, at no less than the contract rate for that Eligible Person's care in exchange for continuity of ongoing treatment of an Eligible Person then receiving medically necessary treatment in accordance with the dictates of medical prudence. For purposes of this section, "special circumstance" means a condition such that the treating Provider reasonably believes that discontinuing care by the treating Provider could cause harm to the patient. The special circumstance shall be identified by Provider, who must request that the Eligible Person be permitted to continue treatment under Provider's care and agree not to seek payment from the patient of any amounts for which the Eligible Person would not be responsible if the Provider were still in the Plan Sponsor network. If there is a disagreement between Provider and Plan Sponsor as to whether or not the Eligible Person is a patient of special circumstance, Plan Sponsor will request a review of patient's condition by a physician. The section does not extend the obligation of the Plan Sponsor to pay for claims submitted by Provider for ongoing treatment of such an Eligible Person beyond the 90th day after the effective date of the termination, or beyond nine months in the case of an Eligible Person who at the time of the termination has been diagnosed with a terminal illness. However, the obligation of the Plan Sponsor to pay for claims submitted by a terminated Provider or, if applicable, the Eligible Person for services to an Eligible Person who at the time of the termination is past the 24th week of pregnancy, extends through delivery of the child, immediate postpartum care, and the follow-up checkup within the first six (6) weeks of delivery. Tex. Ins. Code § 843.309; 28 TAC 11.901(3), (4); 28 TAC 3.3703(a)(12); V.A.T.S. Insurance Code, Art. 3.70-3C.

5. Caremark shall provide a written explanation to Provider of the reason(s) for termination at least ninety (90) days prior to the effective date of termination. On request and before the effective date of the termination, but within a

period not to exceed sixty (60) days, Provider shall be entitled to a review of the Caremark and/or Plan Sponsor's proposed termination by an advisory review panel, except in a case in which there is imminent harm to patient health or an action by a state pharmacy board, or other licensing board or government agency, that effectively impairs Provider's ability to practice, or in a case of fraud or malfeasance. The advisory review panel shall be composed of physicians and pharmacies, including at least one representative in Provider's specialty or a similar specialty, if available, appointed to serve on the standing quality assurance committee or utilization review committee of the Plan Sponsor and/or Caremark. The decision of the advisory review panel must be considered but is not binding on the Plan Sponsor and/or Caremark. Caremark shall provide to the affected Provider, on request, a copy of the recommendation of the advisory review panel and the Plan Sponsor's or Caremark determination. Tex. Ins. Code § 843.306; 28 TAC 11.901(4); 28 TAC 3.3703(a) (19); 28 TAC 3.3706(c); V.A.T.S. Insurance Code, Art. 3.70-3C.

6. If Provider voluntarily terminates the Agreement or participation in any network, the Provider shall provide reasonable notice to Eligible Persons under the Provider's care. Caremark and/or Plan Sponsor shall provide assistance to Provider in assuring that the notice requirements of this subdivision are met. 28 TAC 3.3703(a) (18).
7. Notwithstanding anything to the contrary in the Provider Agreement, Provider does not indemnify the Plan Sponsor for any tort liability resulting from acts or omission of the HMO Plan Sponsor. Tex. Ins. Code § 843.310; 28 TAC 11.901(6); 28 TAC 3.3703(a) (9); V.A.T.S. Insurance Code, Art. 3.70-3C.
8. Notwithstanding anything to the contrary in the Provider Agreement, Provider is not restricted from contracting with other insurers, preferred provider plans, preferred provider organizations, or HMOs. 28 TAC 3.3703(a) (1).
9. Notwithstanding anything to the contrary in the Provider Agreement, the Provider Agreement shall not contain any financial incentives to Provider which act directly or indirectly as an inducement to limit medically necessary services. This subsection does not prohibit the savings from cost-effective utilization of health services by Provider from being shared with pharmacies in the aggregate. 28 TAC 3.3703(a) (7); V.A.T.S. Insurance Code, Art. 3.70-3C.
10. Provider shall be paid in accordance with all applicable statutes and rules pertaining to prompt payment of clean claims for covered services that are rendered to Eligible Persons. 28 TAC 3.3703(a) (11) V.A.T.S. Insurance Code, Art. 3.70-3C 28 TAC 11.901(7).
11. Provider is entitled upon request to all information necessary to determine that the Provider is being compensated in accordance with the Provider Agreement. Provider may make the request for information by any reasonable and verifiable means. The information must include a level of detail sufficient to enable a reasonable person with sufficient training, experience and competence in claims processing to determine the payment to be made according to the terms of the Provider Agreement for covered services that are rendered to Eligible Persons. Caremark may provide the required information by any reasonable method through which the Provider can access the information, including e-mail, computer disks, paper or access to an electronic database. Caremark shall provide the fee schedules and other required information by the 30th day after the date Caremark receives the Provider's written request. This information must include a Provider specific summary and explanation of all payment and reimbursement methodologies that will be used to pay claims submitted by the Provider. At a minimum, the information must include:
    - (i) a fee schedule, including, if applicable, CPT, HCPCS, ICD-9-CM codes and modifiers: (I) by which all claims for covered services submitted by or on behalf of the Provider will be calculated and paid; or (II) that pertains to the range of health care services reasonably expected to be delivered under the Provider Agreement on a routine basis along with a toll-free number or electronic address through which the Provider may request the fee schedules applicable to any covered services that the Provider intends to provide to an Eligible Person and any other information required by this paragraph that pertains to the service for which the fee schedule is being requested if that information has not previously been provided to the Provider;
    - (ii) all applicable coding methodologies;
    - (iii) all applicable bundling processes, which must be consistent with nationally recognized and generally accepted bundling edits and logic;
    - (iv) all applicable downcoding policies;
    - (v) a description of any other applicable policy or procedure Caremark or Plan Sponsor may use that affects the payment of specific claims submitted by or on behalf of the Provider, including recoupment;
    - (vi) any addenda, schedules, exhibits or policies used by Caremark in carrying out the payment of claims submitted by or on behalf of the Provider that are necessary to provide a reasonable understanding of the information provided pursuant to this paragraph; and
    - (vii) the publisher, product name and version of any software Caremark uses to determine bundling and unbundling of claims.

In the case of a reference to source information as the basis for fee computation that is outside the control of Caremark and/or Plan Sponsor, such as state Medicaid or federal Medicare fee schedules, the information provided by Caremark shall clearly identify the source and explain the procedure by which the Provider may readily access the source electronically, telephonically, or as otherwise agreed to by the parties.

Nothing in this section shall be construed to require Caremark to provide specific information that would violate any applicable copyright law or licensing agreement. However, Caremark must supply, in lieu of any information withheld on the basis of copyright law or licensing agreement, a summary of the information that will allow a reasonable person with sufficient training, experience and competence in claims processing to determine the payment to be made according to the terms of the Provider Agreement for covered services that are rendered to Eligible Persons as required by this section. No amendment, revision, or substitution of claims payment procedures or any of the information required to be provided by this paragraph shall be effective as to the Provider, unless Caremark provides at least 90 calendar days written notice to the Provider identifying with specificity the amendment, revision or substitution. Caremark may not make retroactive changes to claims payment procedures or any of the information required to be provided by this paragraph. Where a contract specifies mutual agreement of the parties as the sole mechanism for requiring amendment, revision or substitution of the information required by this paragraph, the written notice specified in this section does not supersede the requirement for mutual agreement. If Provider receives information under this paragraph, Provider:

**(i)** may not use or disclose the information for any purpose other than: (I) Provider's practice management, (II) billing activities, (III) other business operations, or (IV) communications with a governmental agency involved in the regulation of health care or insurance;

**(ii)** may not use this information to knowingly submit a claim for payment that does not accurately represent the level, type or amount of services that were actually provided to an Eligible Person or to misrepresent any aspect of the services; and

**(iii)** may not rely upon information provided pursuant to this paragraph about a service as a representation that a person is covered for that service under the terms of the person's policy or certificate.

A Provider that receives information under this paragraph may terminate the Provider Agreement on or before the 30th day after the date the Provider receives information requested under this paragraph without penalty or discrimination in participation in other health care products or plans. If a Provider chooses to terminate the Provider Agreement, Caremark shall assist the Provider in providing the notice required by paragraph 6 above of this Addendum. 28 TAC 3.3703(a) (20); 28 TAC 11.901(10).

## UTAH

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Managed Care Organization ("MCO"), Health Care Services Organization, Insurer, or Carrier licensed under Utah law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Utah.

Without limiting the generality of the foregoing, Provider agrees as follows:

1. If Plan Sponsor or Caremark fails to pay for Pharmacy Services as set forth in the Provider Agreement, Eligible Persons shall not be liable to Provider for any sums owed by Plan Sponsor or Caremark. Utah Code § 31A-8-407(1)(a)(i).
2. Provider acknowledges and agrees that if Plan Sponsor or Caremark becomes insolvent, the rehabilitator or liquidator may require Provider to:
   a. Continue to provide Pharmacy Services until the earlier of (i) 90 days after the date of the filing of a petition for rehabilitation or liquidation or (ii) the date the term of the Provider Agreement ends; and
   b. Reduce the fees that Provider is otherwise entitled to under the Provider Agreement during the time period described in subsection a above, provided that the rehabilitator or liquidator may not reduce a fee to less than 75% of the regular fee set forth in the Provider Agreement and provided that Eligible Persons shall continue to pay the same copayments, deductibles, and other payments for services as before the petition for reorganization or liquidation. Provider shall accept the reduced payment as payment in full and relinquish the right to collect additional amounts from Eligible Persons. Utah Code §§ 31A-8-407(1)(a)-(c), 31A-22-617(1)(c), 31A-27-311.5(2).

## VERMONT

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider provides pharmacy services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Vermont law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Vermont.

Without limiting the generality of the foregoing, and notwithstanding anything in the Caremark Provider Agreement to the contrary, Provider agrees as follows:

1. Provider shall be permitted to participate in Plan Sponsor's quality assurance program, dispute resolution process, and utilization management program. CVR 21-040-010, § 10.203 § (I)(6); CVR 13-170-008, §10.203 § 103.3(N)(3).
2. Provider shall comply with applicable state and federal laws related to the confidentiality of medical or health records. CVR 21-040-010, § 10.203 (I)(8); CVR 13-170-008, § 103.3(N)(6).
3. Provider shall make member health records available, as required by law, to appropriate state and federal authorities involved in assessing the quality of care or investigating member grievances and complaints. CVR 21-040-010, § 10.203(I)(8); CVR 13-170-008, § 103.3(N)(6).
4. Provider agrees that in no event, including nonpayment by Plan Sponsor or Caremark, insolvency of Plan Sponsor or Caremark; or breach of the Provider Agreement, shall Provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against a member or a person (other than the Plan Sponsor or Caremark) acting on behalf of the member for services provided pursuant to the Provider Agreement. This provision does not prohibit Provider from collecting coinsurance, deductibles or copayments, as specifically provided in the evidence of coverage, or fees for uncovered services delivered on a fee-for-service basis to members. CVR 21-040-010, § 10.203(I)(10); 8 V.S.A. § 5102b(d).
5. To the extent Provider provides services to members of a managed care plan, Provider agrees to the following: In the event of Plan Sponsor's insolvency or other cessation of operations, covered services to a member will continue through the period for which a premium has been paid to Plan Sponsor on behalf of the member or until the member's discharge from an inpatient facility, whichever period is greater. Covered benefits to a member confined in an inpatient facility on the date of insolvency or other cessation of operations will continue until the member's continued confinement in the facility is no longer medically necessary. CVR 21-040-010, § 10.203(I)(11).
6. The provisions in paragraphs 4 and 5 shall be construed in favor of the member, shall survive termination of the Provider Agreement regardless of the reason for termination, including the insolvency of Plan Sponsor, and shall supersede any oral or written contrary agreement between Provider and a member or member's representative if the contrary agreement is consistent with the provisions in paragraphs 4 and 5 above. CVR 21-040-010, § 10.203(I)(12).
7. Provider and Caremark shall provide at least sixty (60) days written notice to each other before terminating the Provider Agreement without cause. Caremark shall provide written notice of the termination within fifteen (15) working days after receipt of or issuance of a notice of termination without cause, or of the date on which a contract is terminated for cause, to all members who are patients seen on a regular basis by Provider whose contract is terminating. Within five (5) working days of the date that Provider either gives or receives notice of termination, either for or without cause, Provider shall provide Caremark with a list of his or her patients that are covered by Caremark's Plan Sponsor. CVR 21-040-010, § 10.203(I)(13), (14).

## VIRGINIA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider shall provide Pharmacy Services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Virginia law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Virginia.

Without limiting the generality of the foregoing, and notwithstanding anything in the Caremark Provider Agreement to the contrary, Provider agrees as follows:

1. In the processing of any payment of claims for health care services rendered by Provider under the Provider Agreement and in performing under the Agreement, Caremark shall adhere to and comply with the minimum fair business standards required under Va. Code. Ann. § 38.2-3407.15(B), which include the following:

    a. Claims shall be paid within forty (40) days of receipt of the claim, except where the obligation of Caremark to pay the claim is not reasonably clear due to the existence of a reasonable basis supported by specific information available for review by Provider that:

        i. The claim is determined by Caremark not to be a clean claim due to a good faith determination or dispute regarding (i) the manner in which the claim form was completed or submitted, (ii) the eligibility of a person for coverage, (iii) the responsibility of another carrier for all or part of the claim, (iv) the amount of the claim or the amount currently due under the claim, (v) the benefits covered, or (vi) the manner in which services were accessed or provided; or

        ii. The claim was submitted fraudulently. Va. Code Ann. § 38.2-3407.15(B)(1).

    b. Caremark shall maintain a written or electronic record of the date of receipt of a claim. Provider shall be entitled to inspect such record on request and to rely on that record or on any other admissible evidence as proof of the fact of receipt of the claim, including without limitation electronic or facsimile confirmation of receipt of a claim. Va. Code Ann. § 38.2-3407.15(B)(1).

    c. Caremark shall, within thirty (30) days after receipt of a claim, request electronically or in writing from Provider the information and documentation that Caremark believes will be required to process and pay the claim or to determine if the claim is a clean claim. Upon receipt of the additional information requested under this subsection, claims shall be paid in compliance with this section. Caremark shall not refuse to pay a claim for health care services for covered benefits rendered pursuant to this Agreement if Caremark fails timely to notify or attempt to notify Provider of the matters identified above unless such failure was caused in material part by Provider; however, nothing herein shall preclude Caremark from imposing a retroactive denial of payment of such a claim if permitted by the Provider Agreement unless such retroactive denial of payment of the claim would violate subsection (g) set forth below. Nothing in this subsection shall require Caremark to pay a claim that is not a clean claim. Va. Code Ann. § 38.2-3407.15(B)(2).

    d. Any interest owing or accruing on a claim under § 38.2-3407.1 or § 38.2-4306.1 of Title 38.2 of the Virginia Code, under the Provider Agreement, or under any other applicable law shall, if not sooner, be paid without necessity of demand at the time the claim is paid or within sixty (60) days thereafter. Va. Code Ann. § 38.2-3407.15(B)(3).

    e. Caremark and/or Plan Sponsor, as applicable, shall establish and implement reasonable policies to permit Provider (i) to confirm in advance during normal business hours by free telephone or electronic means if available whether the health care services to be provided are medically necessary and a covered benefit and (ii) to determine the Plan Sponsor's requirements applicable to Provider (or to the type of health care services which Provider has contracted to deliver under this Provider Agreement) for (a) pre-certification or authorization of coverage decisions, (b) retroactive reconsideration of a certification or authorization of coverage decision or retroactive denial of a previously paid claim, (c) Provider-specific payment and reimbursement methodology, coding levels and methodology, downcoding, and bundling of claims, and (d) other Provider-specific applicable claims processing and payment matters necessary to meet the terms and conditions of the Provider Agreement, including determining whether a claim is a clean claim. If Caremark, as a matter of policy, bundles or downcodes claims submitted by Provider, Caremark shall clearly disclose that practice in the Provider Agreement. Further, Caremark shall either (i) disclose in the Provider Agreement or on its website the specific bundling and downcoding policies that Caremark reasonably expects to be applied to Provider or Provider's services on a routine basis as a matter of policy or (ii) disclose in each Provider Agreement a telephone or facsimile number or e-mail address that Provider can use to request the specific bundling and downcoding policies that Caremark reasonably expects to be applied to Provider or Provider's services on a routine basis as a matter of policy. If such request is made by or on behalf of Provider, Caremark shall provide the requesting Provider with such policies within 10 business days following the date the request is received. Va.Code Ann. §38.2-3407.15(B)(4)(a).

    f. Caremark shall make available to Provider within ten (10) business days of receipt of a request, copies of or reasonable electronic access to all such policies that are applicable to Provider or to the particular health care services identified by Provider. In the event the provision of the entire policy would violate any copyright law, Caremark may instead comply with this subsection by timely delivering to Provider a clear explanation of the policy as it applies to Provider and to any health care services identified by Provider. Va. Code Ann. § 38.2-3407.15(B)(4)(b).

g. Caremark shall pay a claim if Caremark has previously authorized the health care service or has advised Provider or Eligible Person in advance of the provision of health care services that the health care services are medically necessary and a covered benefit, unless:
   i. The documentation for the claim clearly fails to support the claim as originally authorized; or
   ii. The refusal is because (i) another payor is responsible for the payment, (ii) Provider has already been paid for the health care services identified on the claim, (iii) the claim was submitted fraudulently or the authorization was based in whole or material part on erroneous information provided to Caremark by Provider, Eligible Person, or other person not related to Caremark, or (iv) the person receiving the health care services was not eligible to receive them on the date of service and Caremark did not know, and with the exercise of reasonable care could not have known, of the person's eligibility status. Va. Code Ann. § 38.2-3407.15(B)(5).

h. Caremark may not impose any retroactive denial of a previously paid claim unless Caremark has provided the reason for the retroactive denial and (i) the original claim was submitted fraudulently, (ii) the original claim payment was incorrect because Provider was already paid for the health care services identified on the claim or the health care services identified on the claim were not delivered by Provider, or (iii) the time that has elapsed since the date of the payment of the original challenged claim does not exceed the lesser of (a) twelve (12) months or (b) the number of days within which Caremark requires under the Agreement that a claim be submitted by Provider following the date on which a health care service is provided. Caremark shall notify Provider at least thirty (30) days in advance of any retroactive denial of a claim. Va. Code Ann. § 38.2-3407.15(B)(6).

i. Notwithstanding section h above, with respect to Provider Agreements entered into, amended, extended, or renewed on or after July 1, 2004, Caremark shall not impose any retroactive denial of payment or in any other way seek recovery or refund of a previously paid claim unless Caremark specifies in writing the specific claim or claims for which the retroactive denial is to be imposed or the recovery or refund is sought. The written communication shall also contain an explanation of why the claim is being retroactively adjusted. Va.Code Ann. §38.2-3407.15(B)(7)

j. No amendment to the Agreement or to any addenda, schedule, exhibit or policy thereto (or new addenda, schedule, exhibit or policy) applicable to Provider (or to the range of health care services reasonably expected to be delivered by Provider) shall be effective as to Provider, unless Provider has been provided with the applicable portion of the proposed amendment (or the proposed new addenda, schedule, exhibit or policy) at least 60 calendar days before the effective date and has failed to notify Caremark in writing within thirty (30) calendar days of receipt of the documentation of Provider's intention to terminate the Agreement at the earliest date thereafter permitted under the Agreement. Va. Code Ann. § 38.2-3407.15(B)(9).

k. In the event Caremark's provision of a policy under Va.Code Ann. §38.2-3407.15(B)(8) or (9) would violate any applicable copyright law, Caremark may provide a clear, written explanation of the policy as it applies to Provider. Va.Code Ann. §38.2-3407.15(B)(10)

l. Caremark shall not be in violation of Va. Code Ann. § 38.2-3407.15 if its failure to comply is caused in material part by Provider or if Caremark's compliance is rendered impossible due to matters beyond Caremark's control (such as an act of God, insurrection, strike, fire, or power outages), which are not caused in material part by Caremark. Va. Code Ann. § 38.2-3407.15(D).

m. Plan Sponsor (or its network, provider panel or intermediary) shall not terminate or fail to renew the employment or other contractual relationship with Provider or otherwise penalize Provider for invoking any of Provider's rights under Va. Code Ann. § 38.2-3407.15 or under the Provider Agreement. Va. Code Ann. § 38.2-3407.15(F).

2. To the extent Provider provides services to members of an HMO, Provider agrees to the following:

   a. Provider hereby agrees that in no event, including, but not limited to nonpayment by Plan Sponsor or Caremark, or the insolvency of Plan Sponsor or Caremark, or breach of this Agreement, shall Provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from or have any recourse against Eligible Persons other than Plan Sponsor for services provided pursuant to this Agreement. This provision shall not prohibit collection of any applicable copayments or deductibles billed in accordance with the terms of Plan Sponsor's subscriber agreement.

   Provider further agrees that (i) this provision shall survive the termination of this Agreement regardless of the cause giving rise to such termination and shall be construed to be for the benefit of Plan Sponsor's Eligible Persons and (ii) this provision supersedes any oral or written agreement to the contrary now existing or hereafter entered into between Provider and Eligible Persons or persons acting on such Eligible Persons' behalf. Code of Va. § 38.2-5805(C)(9),(10); Code of Va. § 38.2-4301(C)(2).

    b. If Provider terminates this Agreement, Provider shall give Caremark and Plan Sponsor at least sixty (60) days advance notice of termination. Code of Va. § 38.2-5805(C)(1),(7).

c. Neither Provider or its agent, trustee, or assignee thereof, may maintain any action at law against an Eligible Person to collect sums owed by Plan Sponsor or Caremark. Code of Va. § 38.2-5805(C)(2),(5).

d. In the event either Plan Sponsor or Caremark fails to pay for health care services as set forth in the Agreement, Eligible Persons shall not be liable to Provider for any sums owed by either Caremark or Plan Sponsor. Code of Va. § 38.2-5805(C)(4).

3. To the extent Provider provides services to members of the Virginia Medicaid Program, Provider agrees to the following (Virginia Department of Medical Assistance Services Medallion II Managed Care Contract, at pp. 152-155):

a. Provider agrees to abide by all applicable provisions of Plan Sponsor's Medicaid Contract with the Virginia Department of Medical Assistance Services ("Department"). Provider's compliance with Plan Sponsor's Medicaid Contract ("Medicaid Contract") specifically includes, but is not limited to, the following requirements:

i. No terms of this Agreement are valid if such terms terminate legal liability of Plan Sponsor in the Medicaid Contract;

ii. Provider agrees to participate in and contribute required data to Plan Sponsor's quality improvement and other assurance programs as required in the Medicaid Contract;

iii. Provider agrees to abide by the terms of the Medicaid Contract for the timely provision of emergency and urgent care. Where applicable, Provider agrees to follow those procedures for handling urgent and emergency care cases stipulated in any required hospital/emergency department Memorandums of Understanding signed by Plan Sponsor in accordance with the Medicaid Contract;

iv. Provider agrees to submit Plan Sponsor utilization data in the format specified by Plan Sponsor, so Plan Sponsor can meet Department specifications required by the Medicaid Contract;

v. Provider agrees to comply with all non-discrimination requirements set forth in the Medicaid Contract;

vi. Provider agrees to comply with all record retention requirements;

vii. Provider agrees to provide representatives of Plan Sponsor, as well as duly authorized agents or representatives of the Department, the United States Department of Health and Human Services, and the State Medicaid Fraud Unit access to its premises and its contract and/or medical records in accordance with the Medicaid Contract. Provider agrees otherwise to preserve the full confidentiality of medical records in accordance with the Medicaid Contract;

viii. Provider agrees to the requirements for maintenance and transfer of medical records stipulated in the Medicaid Contract. Provider agrees to make medical records available to recipients and their authorized representatives within ten (10) working days of the record request. Provider agrees to ensure confidentiality of family planning services in accordance with the Medicaid Contract, except to the extent required by law, including, but not limited to, the Virginia Freedom of Information Act;

ix. Provider agrees not to create barriers to access to care by imposing requirements on recipients that are inconsistent with the provision of medically necessary and covered Medicaid services;

x. Provider agrees to hold the recipient harmless for charges for any Medicaid covered service, which includes those circumstances where Provider fails to obtain preauthorizations, or fails to perform other required administrative functions;

xi. Provider agrees not to bill a Medicaid enrollee for medically necessary services covered under the Medicaid Contract and provided during the enrollee's period of Plan Sponsor enrollment. This provision shall continue to be in effect even if Plan Sponsor becomes insolvent. However, if an enrollee agrees in advance of receiving the service and in writing to pay for a non-Medicaid covered service, then Plan Sponsor, Provider, or subcontractor may bill for the service;

xii. Provider must forward to Plan Sponsor medical records, within ten (10) working days of Plan Sponsor's request;

xiii. Provider shall promptly provide or arrange for the provision of all services required under the Provider Agreement. This provision shall continue to be in effect for subcontract periods for which payment has been made even if Provider becomes insolvent until such time as the enrollees are withdrawn from assignment to Provider;

xiv. Provider will be paid within thirty (30) days of the receipt of a claim for covered services rendered to a covered enrollee unless there is a signed agreement with Provider that states another timeframe for payment that is acceptable to Provider;

xv. Notwithstanding any other provision to the contrary, the obligations of Virginia shall be limited to annual appropriations by its governing body for the purposes of the subcontract.

## WASHINGTON

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider provides pharmacy services to Eligible Persons enrolled with a health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Washington law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Washington.

Without limiting the generality of the foregoing, and notwithstanding anything in the Caremark Provider Agreement to the contrary, Provider agrees as follows:

1. Provider agrees that in no event, including, but not limited to nonpayment by Caremark or Plan Sponsor, Caremark's or Plan Sponsor's insolvency, or breach of the Provider Agreement shall Provider bill, charge, collect a deposit from, seek compensation, remuneration, or reimbursement from, or have any recourse against a member or person acting on their behalf, other than Caremark or Plan Sponsor, for services provided pursuant to the Provider Agreement. This provision shall not prohibit collection of deductibles, copayments, coinsurance, and/or noncovered services, which have not otherwise been paid by a primary or secondary carrier in accordance with regulatory standards for coordination of benefits from members in accordance with the terms of the member's health plan. Wash. Admin. Code § 284-43-320(2); Wash. Admin. Code §§ 48.44.020(4)(a),(b); 48.46.243(1),(4).

   Provider further agrees that it may collect only the actual cost of providing health care services to a member of an HMO, if any, as specified in the member's agreement with Plan Sponsor, if the member received services that he or she was not entitled to receive under the terms of the member's agreement with Plan Sponsor. This provision does not apply if the member or the member's family member gave or withheld information, which misled or misinformed Provider as to the member's right to receive such services. Wash. Rev. Code § 48.46.110(3).

   A Provider's willful collection or attempt to collect an amount from a member, knowing that collection to be in violation of the Provider Agreement constitutes a class C felony under Wash. Rev. Code § 48.80.030(5-6). Wash. Rev. Code § 284-43-320(3).
2. Provider agrees, in the event of Plan Sponsor's insolvency, to continue to provide the services promised in the Provider Agreement to members for the duration of the period for which premiums on behalf of the member were paid to Plan Sponsor or until the member's discharge from an inpatient facility, whichever time is greater. Wash. Rev. Code § 284-43-320(2)(b); Wash. Rev. Code § 48.46.243(2).
3. Notwithstanding any other provision of the Provider Agreement, nothing in this Agreement shall be construed to modify the rights and benefits contained in a member's health plan. In the event of any conflict between the Provider Agreement and a member's health plan, the benefits, terms, and conditions of the health plan shall govern with respect to coverage provided to members. Wash. Rev. Code § 284-43-320(1),(2)(c).
4. Provider may not bill a member for covered services (except for deductibles, copayments, or coinsurance) where Caremark or Plan Sponsor denies payments because Provider has failed to comply with the terms or conditions of the Provider Agreement. Wash. Rev. Code § 284-43-320(2)(d).
5. Provider further agrees that the provisions of paragraphs (1), (2), (3), and (4) of this Agreement shall survive termination of the Provider Aggreement regardless of the cause giving rise to termination and shall be construed to be for the benefit of the member. Provider further agrees that this provision supersedes any oral or written contrary agreement now existing or hereafter entered into between Provider and members or persons acting on their behalf. Wash. Rev. Code § 284-43-320(2)(e); Wash. Rev. Code §§ 48.44.020(4)(a); 48.46.243(1).
6. If Provider contracts with other providers or facilities who agree to provide covered services to embers with the expectation of receiving payment directly or indirectly from Caremark or Plan Sponsor, such providers or facilities must agree to abide by the provision of paragraphs (1), (2), (3), and (4) of this Agreement. Wash. Rev. Code § 284-43-320(2)(f).

## WEST VIRGINIA

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider provides pharmacy services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under West Virginia law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in West Virginia.

Without limiting the generality of the foregoing, and notwithstanding anything in the Caremark Provider Agreement to the contrary, Provider agrees as follows:

1. Provider shall comply with Caremark's and Plan Sponsors' quality assurance, quality improvement and utilization review programs. W. Va. Legis. Rule 114-535.-4.

2. Provider is allowed open provider-patient communication regarding appropriate treatment alternatives and shall not be penalized, nor this Agreement terminated, by Caremark because the Provider discussed medically necessary or appropriate care for the patient. W. Va. Legis. Rule 114-53-5.4

3. No Eligible Person of a Plan Sponsor is liable to Provider for any service covered by the Plan Sponsor if at any time during the provision of the service, the Provider or its agents are aware the individual to whom the service is provided is an enrollee/Eligible Person of a Plan Sponsor. If at any time during the provision of a service, the Provider or its agents are aware that the patient is an Eligible Person, the Provider or any agent or representative of the Provider may not collect or attempt to collect from the Eligible Person any money for services covered by the Plan Sponsor, and the Provider or agent or representative of the Provider may not maintain any action at law against an Eligible Person of a Plan Sponsor to collect money owed to the Provider by Caremark or Plan Sponsor. The provisions of this Section do not apply to the amount of any deductible or copayment not payable by Caremark or Plan Sponsor pursuant to the Plan Sponsor's contract with its Eligible Person. W. Va. Code 33-25A-7a; 33-25D-10.

4. Provider shall provide sixty days advance written notice to Caremark and the insurance commissioner before canceling this Agreement for any reason. Nonpayment for goods or services rendered by the Provider to an Eligible Person is not a valid reason for avoiding the sixty-day advance notice of cancellation. Upon receipt by Caremark of a sixty-day cancellation notice, Caremark can, if requested by Provider, terminate the contract in less than sixty days if Caremark or Plan Sponsor is not financially impaired or insolvent. W. Va. Code 33-25A-7a; 33-25D-10.

5. Provider shall keep all patient information confidential; however, the Provider shall allow Caremark or the Plan Sponsor access to Eligible Persons' medical records. W. Va. Legis. Rule 114-53-5.4.

6. Provider shall have an organized medical record keeping system. Medical records shall be maintained in a manner that is current, detailed, organized, and permits effective patient care and quality review. W. Va. Legis. Rule 114-53-9.

7. Provider shall cooperate with Caremark and Plan Sponsor in any grievance procedure, which has been approved by the insurance commissioner, to provide adequate and reasonable procedures for the expeditious resolution of written grievances initiated by Eligible Persons concerning any matter relating to any provisions of the Plan Sponsor's benefit contracts. W. Va. Code 33-25D-14; 33-25A-12.

8. Provider shall render to any Eligible Person such services as he/she may be entitled to under the terms and conditions of the contract issued to the Eligible Person by the Plan Sponsor. In submitting claims to Caremark for services rendered to Eligible Persons under the terms of their benefit contracts with the Plan Sponsor, the Provider will only make such charges as are set forth in this Agreement and shall accept as full payment for services contracted for Eligible Persons that compensation set forth in this Agreement. W. Va. Code 33-24-7; 33-25-12.

9. This Agreement shall be filed with the West Virginia Commissioner of Insurance who may require immediate cancellation or renegotiation if he/she determines the Agreement includes or fails to include statutory requirements. W. Va. Code 33-25A-7.

## WISCONSIN

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider provides pharmacy services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Wisconsin law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Wisconsin.

Without limiting the generality of the foregoing, and notwithstanding anything in the Caremark Provider Agreement to the contrary, Provider agrees as follows:

1. Provider may discuss with or on behalf of an enrollee, all treatment options and any other information that the Provider determines to be in the best interest of the Eligible Person and within the scope of the Provider's profes-

sional license. Caremark shall not limit the Provider's disclosure of information to or on behalf of an Eligible Person about the Eligible Person's medical condition or treatment options. Caremark shall not penalize or terminate this Agreement of the Provider because the Provider makes referrals to other participating providers or discusses medically necessary appropriate care with or on behalf of an Eligible Person. Wis. Stat. 609.30; Wis. Admin. Code. Ins. 9.36.

2. Provider may not hold an Eligible Person liable for costs covered under a policy or certificate issued by a Plan Sponsor. Provider shall not bill, charge, collect a deposit from, seek remuneration or compensation from, file or threaten to file with a credit reporting agency or have any recourse against an Eligible Person or any person acting on their behalf, for health care costs for which the Eligible Person, or person acting on their behalf, is not liable under Wis. Stat. 609.91. The provisions of this Section do not affect the liability of an Eligible Person for any deductibles, copayments, or premiums owed under the policy or certificate issued by a Plan Sponsor. The immunity of an Eligible Person for health care costs, to the extent of the immunity provided under this Section and Wis. Stat. 609.92 or 609.935 is not affected by any of the following:
   a. An agreement, other than a notice of election or termination of election in accordance with Wis. Stat. 609.92 or 609.925, entered into by the Provider, the Plan Sponsor or Caremark, or any other person, at any time, whether oral or written and whether implied or explicit, including an agreement that purports to hold the Eligible Person liable for health care costs.
   b. A breach or default of this Agreement by Caremark or Plan Sponsor or any other person to compensate the Provider, directly or indirectly, for health care costs, including health care costs for which the Eligible Person is not liable under this Section.
   c. The insolvency of the Plan Sponsor, Caremark, or any person contracting with the Plan Sponsor or Caremark or the Provider, or the commencement or the existence of conditions permitting the commencement of insolvency, delinquency or bankruptcy proceeding involving the Plan Sponsor, Caremark or other person, including delinquency proceedings, as defined in Wis. Stat. 645.03(1)(b) or Wis. Stat. 745.03(1)(b), despite whether the Plan Sponsor, Caremark, or other person has agreed to compensate, directly or indirectly, the Provider for health care costs for which the Eligible Person is not liable under this Section.
   d. The inability of the Provider or other person who is owed compensation for health care costs to obtain compensation from the Plan Sponsor or Caremark or any other person for health care costs for which the Eligible Person is not liable under this Section.
   e. The failure of Plan Sponsor to comply with Wis. Stat. 609.94. Any other conditions or agreements, other than a notice of election or termination of election in accordance with Wis. Stat. 609.92 or 609.925, existing at any time.

   Wis. Stat. 609.91 et seq.; Wis. Admin. Code Ins. Appendix. C (2001).
3. Provider shall promptly respond to complaints and grievances filed with the insurance commissioner to facilitate resolution and to cooperate fully and promptly with Caremark and/or Plan Sponsor in the investigation and resolution of complaints and grievances. Wis. Admin. Code Ins. 18.03.

## WYOMING

### ADDENDUM TO CAREMARK PROVIDER AGREEMENT

The Caremark Provider Agreement is hereby amended as set forth in the Provider Agreement to incorporate the following language. In the event any provision in this Addendum conflicts with the terms of the Provider Agreement (including the Provider Manual and Caremark Documents), the terms of this Addendum shall govern.

To the extent that Provider provides pharmacy services to Eligible Persons enrolled with a Health Maintenance Organization ("HMO"), Insurer, or Carrier licensed under Wyoming law (collectively and/or individually, "Plan Sponsor"), Provider agrees to comply with any requirements for participation as a provider in Wyoming.

Without limiting the generality of the foregoing, and notwithstanding anything in the Caremark Provider Agreement to the contrary, Provider agrees as follows:

To the extent Provider provides services to HMO members, Provider agrees (1) that in the event Caremark and/or Plan Sponsor fail to pay for health care services as set forth in the Provider Agreement, Provider may not collect from any member any sums owed by Caremark and/or Plan Sponsor (Wyo. Stat. § 26-34-114(o)); and (2) if Provider terminates the Provider Agreement before the termination date, Provider shall give Caremark at least sixty (60) days prior written notice (Wyo. Stat. § 26-34-114(s)).

# Appendix A
# Caremark and PharmaCare Payer Specification Sheets

## Caremark Payer Specification Sheet

**PART 1: GENERAL INFORMATION**

| | |
|---|---|
| Payer Name: Caremark | Revised Date: February 2007 |
| Plan Name/Group Name: All | |
| Effective as of: February 2007 (For BIN 610084 & NPI; the exact date in February is listed by the data element) | Version/Release #: 5.1 |
| Contact/Information Source: Caremark Retail Services/Director, Systems and Industry Standards, networksys@caremark.com | |

**PART 2: BILLING TRANSACTION / SEGMENTS AND FIELDS**

The following lists the segments available in a Billing Transaction. The document also lists values as defined under Version 5.1. The Transaction Header Segment is mandatory. The Segment Summaries included below list the mandatory data fields.

**M=Mandatory as defined by NCPDP**
**S=Situational as defined by Plan**
**R=Required as defined by Processor**

**Transaction Header Segment: Mandatory**

| FIELD # | NCPDP FIELD NAME | VALUE | M | COMMENT |
|---|---|---|---|---|
| 1Ø1-A1 | BIN Number | 610415, 004336, 610029, 012114, 610084 | M | BIN 012114 is used for claims processed under plans that are supplemental to Medicare or when Medicare is paying as a supplemental plan. |
| 1Ø2-A2 | Version/Release Number | 51 | | NCPDP v5.1 |
| 1Ø3-A3 | Transaction Code | B1 | M | Billing Transaction |
| 11Ø4-A4 | Processor Control Number | Default PCNs by BIN: 610415: PCS 004336: ADV or as communicated or printed on card. 610029: 'CRKblankblank' or RXGRP printed on card. Default Medicare Part D COB PCNs to be submitted with BIN 012114: COBPCS COBADV COBCRK COBSEGPCS COBSEGADV COBSEGCRK | M | Other PCNs may be required as communicated or printed on card. For BIN 610029, if set to 'CRKblankblank', the RXGRP must be submitted as printed on the card. Other Medicare Part D COB PCNs may be required as communicated or printed on card. |
| 1Ø9-A9 | Transaction Count | 1, 2, 3, 4 | M | RxBINs 610415 & 004336 accepts up to four billing transactions (B1) per transmission Only 1 transaction is permitted for Medicare Part D and COB Billing. |
| 2Ø2-B2 | Service Provider ID Qualifier | 01, 05, 07, 08 | M | RXBIN 610415 & 004336 accept qualifiers 01 (effective 2/26/07), 05, 07 & 08 RXBIN 610029 accepts qualifier 01 (effective 2/26/07) & 07 |

| FIELD | NCPDP FIELD NAME | VALUE | M/S | COMMENT |
|---|---|---|---|---|
| 2Ø1-B1 | Service Provider ID | NPI or NCPDP Provider ID Number | M | NPI effective 2/26/07 |
| 4Ø1-D1 | Date of Service | | M | CCYYMMDD |
| 11Ø-AK | Software Vendor/Certification ID | | M | The Software Vendor/Certification ID is the same for all RxBINs |

**Patient Segment: Required**

| FIELD | NCPDP FIELD NAME | VALUE | M/S | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | Ø1 | M | Patient Segment |
| 304-C4 | Date of Birth | | R | CCYYMMDD |
| 305-C5 | Patient Gender Code | | R | |
| 310-CA | Patient First Name | | R | Required for all RxBINs |
| 311-CB | Patient Last Name | | R | Required for all RxBINs |
| 322-CM | Patient Street Address | | S | Required for some federal programs |
| 323-CN | Patient City Address | | S | Required for some federal programs |
| 324-CO | Patient State/Province Address | | S | Required for some federal programs |
| 325-CP | Patient Zip/Postal Zone | | S | Required for some federal programs |
| 307-C7 | Patient Location | | S | Required for Home Infusion & Long Term Care billing |

**Insurance Segment: Mandatory**

| FIELD # | NCPDP FIELD NAME | VALUE | M/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | Ø4 | M | Insurance Segment |
| 3Ø2-C2 | Cardholder ID | | M | |
| 301-C1 | Group ID | | R | As printed on the ID card |
| 303-C3 | Person Code | | R | As printed on the ID card |
| 306-C6 | Patient Relationship Code | | R | |

**Claim Segment: Mandatory**

| FIELD # | NCPDP FIELD NAME | VALUE | M/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | Ø7 | M | Claim Segment |
| 455-EM | Prescription/Service Reference Number Qualifier | 1= Rx Billing<br>2 = Service Billing | M | Service billing supported on RxBIN 610029 only as defined in the Appendix |
| 4Ø2-D2 | Prescription/Service Reference Number | | M | Rx Number for Rx/Service Billing |
| 436-E1 | Product/Service ID Qualifier | 03<br>06<br>07 | M | NDC Number Qualifier<br>DUR/PPS Qualifier supported for RxBIN 610029 only<br>CPT4 Qualifier supported for RxBIN 610029 only |
| 4Ø7-D7 | Product/Service ID | | M | NDC Number<br>CPT 4 value of 0115T supported for RxBIN 610029 only |
| 442-E7 | Quantity Dispensed | | R | |
| 403-D3 | Fill Number | | R | |
| 405-D5 | Days Supply | | R | |
| 406-D6 | Compound Code | | R | |
| 408-D8 | DAW / Product Selection Code | | R | |
| 414-DE | Date Prescription Written | | R | CCYYMMDD, Required for all RxBINs |
| 415-DF | Number of Refills Authorized | | R | |
| 461-EU | Prior Authorization Type Code | | S | Required for Specific Overrides |

| FIELD | NCPDP FIELD NAME | VALUE | M/S | COMMENT |
|---|---|---|---|---|
| 462-EV | Prior Authorization Number Submitted | | S | Required for Specific Overrides |
| 308-C8 | Other Coverage Code | 2, 3, 4, 5, 6, 7, 8 | R | For COB Segment Billing:<br>Use value 2 when previous payer paid the claim<br>Use values 3–7 when payment was not collected from the previous payer<br>For Copay Only Billing:<br>Use values 3-7 when payment was not collected from the previous payer<br>Use value 8 when previous payer paid the claim |

**Claim Segment: Mandatory (These fields applicable to RXBIN 610029 only)**

| FIELD # | NCPDP FIELD NAME | VALUE | M/R | COMMENT |
|---|---|---|---|---|
| 343-HD | Dispensing Status | P=Partial Fill<br>C=Partial Fill Completion | S | Required for Partial Fills – Must Be P or C for partial fills<br>Partial Fills will not be accepted for COB Billing |
| 456-EN | Associated Prescription/Service Reference Number | | S | Required for Partial Fill Completion – Rx Number of Associated Partial Fill Transaction |
| 457-EP | Associated Prescription/Service Date | | S | Required for Partial Fill Completion – Fill Date of Associated Partial Fill Transaction |
| 403-D3 | Fill Number | 0=Original Fill<br>1 to 99=Refill Number | S | Required for Partial Fills |
| 344-HF | Quantity Intended To Be Dispensed | | S | Required for Partial Fills |
| 345-HG | Days Supply Intended To Be Dispensed | | S | Required for Partial Fills |

**Prescriber Segment: Required**

| FIELD # | NCPDP FIELD NAME | VALUE | M/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | Ø3 | M | Prescriber Segment |
| 466-EZ | Prescriber ID Qualifier | | R | 01 = NPI (effective 2/26/07)<br>12=DEA Number<br>99=Other |
| 411-DB | Prescriber ID | | R | |

**COB/Other Payments Segment: Optional**

| FIELD # | NCPDP FIELD NAME | VALUE | M/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 05 | M | COB/Other Payments Segment |
| 337-4C | Coordination of Benefits/Other Payments Count | | M | Up to 3 occurrences |
| 338-5C | Other Payer Coverage Type | | M | 01 = Primary, 02 = Secondary,<br>03 = Tertiary, 99 = Composite |
| 339-6C | Other Payer ID Qualifier | | R | 03 = BIN |
| 340-7C | Other Payer ID | | R | |
| 443-E8 | Other Payer Date | | R | |
| 341-HB | Other Payer Amount Paid Count | | S | Required if other payer(s) paid |
| 342-HC | Other Payer Amount Paid Qualifier | | S | 07= Drug Benefit, 08 = Sum of all Reimbursement |
| 431-DV | Other Payer Amount Paid | | S | Required if other payer(s) paid |
| 471-5E | Other Payer Reject Count | | S | Required if other payer rejected |
| 472-6E | Other Payer Reject Code | | S | Required if other payer rejected |

**DUR/PPS Segment: Optional**

| FIELD # | NCPDP FIELD NAME | VALUE | M/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | Ø8 | M | DUR/PPS Segment |
| 473-7E | DUR / PPS Code Counter | 1-9 Occurrences | S | Submitted when requested by processor |
| 439-E4 | Reason for Service Code | | S | Submitted when requested by processor |
| 440-E5 | Professional Service Code | | S | Submitted when requested by processor |
| 441-E6 | Result of Service Code | | S | Submitted when requested by processor |

**Pricing Segment: Mandatory**

| FIELD # | NCPDP FIELD NAME | VALUE | M/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 11 | M | Pricing Segment |
| 409-D9 | Ingredient Cost Submitted | | R | |
| 412-DC | Dispensing Fee Submitted | | R | |
| 430-DU | Gross Amount Due | | R | Required for RxBIN 610029 only |
| 423-DN | Basis Of Cost Determination | | R | Required for RxBIN 610029 only |
| 433-DX | Patient Paid Amount Submitted | | R | Required for RxBIN 610029 only |
| 478-H7 | Other Amount Claimed Submitted Count | | R | Required for Coordination of Benefits (COB) Copay only billing |
| 479-H8 | Other Amount Claim Submitted Qualifier | | R | Required for Coordination of Benefits (COB) Copay only billing |
| 48Ø-H9 | Other Amount Claimed Submitted | | R | Required for Coordination of Benefits (COB) Copay only billing |
| 481-HA | Flat Sales Tax Amount Submitted | | R | When required by state law |
| 426-DQ | Usual and Customary Charge | | R | Required for all RxBINs |
| 482-GE | Percentage Sales Tax Amount Submitted | | R | When required by state law |
| 483-HE | Percentage Sales Tax Rate Submitted | | R | When required by state law |
| 484-JE | Percentage Sales Tax Basis Submitted | | R | Required when submitting Percentage Sales Tax Amount Submitted and Percentage Sales Tax Rate Submitted. |

**Clinical Segment: Optional (RXBIN 610029 only)**

**Diagnosis Code is required when the participant and the drug is covered by Medicare.

| FIELD # | NCPDP FIELD NAME | VALUE | M/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 13 | M | Clinical Segment |
| 491-VE | Diagnosis Code Count | 1-9 | R | |
| 492-WE | Diagnosis Code Qualifier | 01 | R | CD9 |
| 424-DO | Diagnosis Code | | R | |

**PART 3: REVERSAL TRANSACTION**

**Transaction Header Segment: Mandatory**

| FIELD # | NCPDP FIELD NAME | VALUE | M | COMMENT |
|---|---|---|---|---|
| 1Ø1-A1 | BIN Number | 610415, 004336, 610029, 610084, 012114 | M | |
| 1Ø2-A2 | Version/Release Number | 51 | M | |
| 1Ø3-A3 | Transaction Code | B2 | M | |
| 104-A4 | Processor Control Number | Default PCNs by BIN: 610415: PCS 004336: ADV or as communicated or printed on card. 610029: 'CRKblankblank' or RXGRP printed on card. Default Medicare Part D COB PCNs to be submitted with BIN 012114: COBPCS (Legacy PCS) COBADV Legacy Advance Paradigm) COBCRK (Legacy Caremark) | M | Other PCNs may be required as communicated or printed on card. For BIN 610029, if set to 'CRK', the RXGRP must be submitted as printed on the card. |
| 1Ø9-A9 | Transaction Count | 01=For RxBIN 610029 01-04 = For RxBIN610415 & RxBIN004336 | M | One reversal (B2) per transmission for RxBIN 610029 Up to 4 reversals (B2) per transmission for RxBIN 610415 & RxBIN 004336. |
| 2Ø2-B2 | Service Provider ID Qualifier | 07 | M | |
| 2Ø1-B1 | Service Provider ID | NPI or NCPDP Provider ID Number | M | NPI effective 2/26/2007 |
| 4Ø1-D1 | Date of Service | | M | CCYYMMDD |
| 11Ø-AK | Software Vendor/Certification ID | | M | The Software Vendor/Certification ID is the same for all RxBINs |

**Claim Segment: Mandatory**

| FIELD # | NCPDP FIELD NAME | VALUE | M/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | Ø7 | M | Claim Segment |
| 455-EM | Prescription/Service Reference Number Qualifie | 1=Rx Billing 2=Service Billing | M | |
| 4Ø2-D2 | Prescription/Service Reference Number | | M | Rx Number |
| 436-E1 | Product/Service ID Qualifier | 03=NDC ID | M | |
| 4Ø7-D7 | Product/Service ID | | M | NDC Number |
| 343-HD | Dispensing Status | P=Partial Fill C=Partial Fill Completion | S | RxBIN 610029 Only. Required for partial fills – Must be P or C for partial fills |

**Insurance Segment: Mandatory**

| FIELD # | NCPDP FIELD NAME | VALUE | M/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | Ø4 | M | Insurance Segment |
| 3Ø2-C2 | Cardholder ID | | M | |
| 301-C1 | Group ID | | R | As printed on the ID card |

**PART 4: PAID (OR DUPLICATE OF PAID) RESPONSE**

**Transaction Header Segment: Mandatory**

| FIELD # | NCPDP FIELD NAME | VALUE | M | COMMENT |
|---|---|---|---|---|
| 1Ø2-A2 | Version/Release Number | Same value as in request billing 51 | M | NCPDP v5.1 |
| 1Ø3-A3 | Transaction Code | Same value as in request billing B1 | M | Billing Transaction |
| 1Ø9-A9 | Transaction Count | Same value as in request billing 1-4 | M | 1-4 occurrences supported for B1 transaction |
| 5Ø1-F1 | Header Response Status | A | M | |
| 2Ø2-B2 | Service Provider ID Qualifier | Same value as in request billing 07= NCPDP Provider ID | M | |
| 2Ø1-B1 | Service Provider ID | Same value as in request billing NCPDP Provider ID Number | | M |
| 4Ø1-D1 | Date of Service | Same value as in request billing | M | CCYYMMDD |

**Response Insurance Segment: Optional**

| FIELD # | NCPDP FIELD NAME | VALUE | M/O | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 25 | M | Response Insurance Segment |
| 524-FO | Plan ID | | S | |
| 568-J7 | Payer ID Qualifier | 99 | S | 99 = Other |
| 569-J8 | Payer ID | | S | |

**Response Message Segment: Optional**

| FIELD # | NCPDP FIELD NAME | VALUE | M/O | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 20 | M | Response Message Segment |
| 504-F4 | Message | | R | |

**Response Status Segment: Mandatory**

| FIELD # | NCPDP FIELD NAME | VALUE | M/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 21 | M | Response Status Segment |
| 112-AN | Transaction Response Status | P=Paid D=Duplicate of Paid | M | |
| 503-F3 | Authorization Number | | R | |
| 526-FQ | Additional Message Information | | R | |

**Response Claim Segment: Mandatory**

| FIELD # | NCPDP FIELD NAME | VALUE | M/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 22 | M | Response Claim Segment |
| 455-EM | Prescription/Service Reference Number Qualifier | 1=Rx Billing | M | Service Billing not supported |
| 4Ø2-D2 | Prescription/Service Reference Number | | M | Rx Number |

**Response Pricing Segment: Mandatory**

| FIELD # | NCPDP FIELD NAME | VALUE | M/O/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 23 | M | Response Pricing Segment |
| 505-F5 | Patient Pay Amount | | R | This data element will be returned on all paid claims. Please read this data element to assist in COB billing. |
| 506-F6 | Ingredient Cost Paid | | S | |
| 507-F7 | Dispensing Fee Paid | | S | |
| 509-F9 | Total Amount Paid | | R | This data element will be returned on all paid claims. Please read this data element to assist in COB billing. |
| 512-FC | Accumulated Deductible Amount | | S | |
| 513-FD | Remaining Deductible Amount | | S | |
| 514-FE | Remaining Benefit Amount | | S | |
| 517-FH | Amount Applied to Periodic Deductible | | S | |
| 518-FI | Amount Copay / Coinsurance | | S | |
| 519-FJ | Amount Attributed to Product Selection | | S | |
| 520-FK | Amount Exceeding Periodic Benefit Maximum | | S | |
| 521-FL | Incentive Amount Paid | | S | |
| 522-FM | Basis of Reimbursement Determination | | S | |
| 523-FN | Amount Attributed Sales Tax | | S | |
| 558-AW | Flat Sales Tax Amount Paid | | S | |
| 559-AX | Percentage Sales Tax Amount Paid | | S | Tax dollar amount paid to pharmacy |
| 560-AY | Percentage Sales Tax Rate Paid | | S | Rate used to calculate Percentage Sales Amount Paid |
| 561-AZ | Percentage Sales Tax Basis Paid | | S | Code indicating basis of dollars used in calculating tax in the final paid claim |
| 562-J1 | Professional Service Fee Paid | | S | |
| 563-J2 | Other Amount Paid Count | | S | This data element will only be returned in COB Copay only billing |
| 564-J3 | Other Amount Paid Qualifier | | S | 99 = Other<br>This data element will only be returned in COB Copay only billing |
| 565-J4 | Other Amount Paid | | S | This data element will only be returned in COB Copay only billing |
| 566-J5 | Other Payer Amount Paid Recognized | | S | |
| 557-AV | Tax Exempt Indicator | | S | This indicator, a value of "1", identifies those plans that are exempt from sales tax. |
| 346-HH | Basis Of Calculation—Dispensing Fee | | S | |
| 347-HJ | Basis Of Calculation—Copay | | S | |
| 348-HK | Basis Of Calculation—Flat Sales Tax | | S | |
| 349-HM | Basis Of Calculation—Percentage of Sales Tax | | S | |

**Response DUR/PPS Segment: Optional**

| FIELD # | NCPDP FIELD NAME | VALUE | M/O/R | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 24 | M | Response DUR/PPS Segment |
| 567-J6 | DUR / PPS Response Code Counter | | S | |
| 439-E4 | Reason for Service Code | | S | |
| 528-FS | Clinical Significance Code | | S | |
| 529-FT | Other Pharmacy Indicator | | S | |
| 530-FU | Previous Date of Fill | | S | |
| 531-FV | Quantity of Previous Fill | | S | |
| 532-FW | Database Indicator | | S | |
| 533-FX | Other Prescriber Indicator | | S | |
| 544-FY | DUR Free Text Message | | S | |

**PART 5: REJECT RESPONSE**

**Transaction Header Segment: Mandatory**

| FIELD # | NCPDP FIELD NAME | VALUE | M | COMMENT |
|---|---|---|---|---|
| 1Ø2-A2 | Version/Release Number | Same value as in request billing 51 | M | NCPDP v5.1 |
| 1Ø3-A3 | Transaction Code | Same value as in request billing B1 | M | Billing Transaction |
| 1Ø9-A9 | Transaction Count | Same value as in request billing 01 – 04 | M | 1 – 4 occurrences supported for B1 transaction |
| 5Ø1-F1 | Header Response Status | A | M | |
| 2Ø2-B2 | Service Provider ID Qualifier | Same value as in request billing 07=NCPDP Provider ID | M | |
| 2Ø1-B1 | Service Provider ID | Same value as in request billing NCPDP Provider ID Number | M | |
| 4Ø1-D1 | Date of Service | Same value as in request billing | M | CCYYMMDD |

**Response Message Segment: Optional**

| FIELD | NCPDP FIELD NAME | VALUE | M/O | COMMENT |
|---|---|---|---|---|
| 1111-AM | Segment Identification | 20 | M | Response Message Segment |
| 504-F4 | Message | | R | |

**Response Insurance Segment: Optional**

| FIELD | NCPDP FIELD NAME | VALUE | M/O | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 25 | M | Response Insurance Segment |
| 301-C1 | Group ID | | S | |
| 524-FO | Plan ID | | S | |

**Response Status Segment: Mandatory**

| FIELD | NCPDP FIELD NAME | VALUE | M/O | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 21 | M | Response Status Segment |
| 112-AN | Transaction Response Status | R = Reject | M | |
| 503-F3 | Authorization Number | | S | |
| 510-FA | Reject Count | | R | |
| 511-FB | Reject Code | | R | |
| 526-FQ | Additional Message Information | | S | |

**Response Claim Segment: Mandatory**

| FIELD | NCPDP FIELD NAME | VALUE | M | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 22 | M | Response Claim Segment |
| 455-EM | Prescription/Service Reference Number Qualifier | 1=Rx Billing<br>2=Service Billing | M | |
| 402-D2 | Prescription/Service Reference Number | | M | Rx Number |

**Response DUR/PPS Segment: Optional**

| FIELD # | NCPDP FIELD NAME | VALUE | M/O | COMMENT |
|---|---|---|---|---|
| 111-AM | Segment Identification | 24 | M | Response DUR/PPS Segment |
| 567-J6 | DUR / PPS Response Code Counter | | S | |
| 439-E4 | Reason for Service Code | | S | |
| 529-FT | Other Pharmacy Indicator | | S | |
| 530-FU | Previous Date of Fill | | S | |
| 531-FV | Quantity of Previous Fill | | S | |
| 532-FW | Database Indicator | | S | |
| 533-FX | Other Prescriber Indicator | | S | |
| 544-FY | DUR Free Text Message | | S | |
| 528-FS | Clinical Significance Code | | S | |

## Billing Requirements for Cognitive Services Program for RXBIN 610029 Only

A pharmacist can provide cognitive services face-to-face with a patient. The pharmacist can bill for these professional services via current procedural terminology (CPT) codes.

The cognitive services plan sponsor allows specific pharmacies to conduct "brown bag" consults by a pharmacist once a year. The patient brings all medications (prescription, OTC, vitamins and/or supplements) in a "brown bag" to the pharmacy, and the pharmacist provides consultative services regarding the patient's drug utilization. The pharmacy bills according to the information below.

**Processing Cognitive Services Claims: RXBIN 610029 ONLY**

| | |
|---|---|
| Qualifying | Cognitive Services are **reimbursed once per member per calendar year.** |
| | 610029 |
| RXBIN | CRK |
| PCN | MDFHC, MDFFH |
| RXGRP | First Health **SELECT** Plan participarts – only. |
| Other Data Elements Required | Prescription/Service/Reference Number Qualifier (455-EM) 02<br>New Prescription/Service Reference Number (402-D2)<br>Product/Service ID Qualifier (436-E1) 07<br>Product/Service ID (407-D7) 0115T<br>Days Supply 1 |

## PharmaCare Payer Specification Sheet

| | |
|---|---|
| January 1, 2003 | |
| Bin #: | 610468 (see III. BIN/Primary PCN Combinations) |
| States: | National |
| Destination: | PharmaCare / RxClaim |
| Accepting: | Claim Adjudication, Reversals |
| Format: | NCPDP Version 5.1 |

### I. VERSION 5.1 GENERAL INFORMATION

**Version 5.1 Transactions supported/not supported:**

| SUPPORTED | | NOT SUPPORTED | |
|---|---|---|---|
| B1 | Billing Transaction | C1,C2,C3 | Controlled Substance Reporting |
| B2 | Billing Reversal | N1,N2,N3 | Information Reporting |
| B3 | Rebill Transaction | P1,P2,P3,P4 | Prior Authorization Request |
| | | E1 | Eligibility Verification |

**Version 5.1 Billing Transaction Segments Mandatory/Situational/not supported:**

| MANDATORY/SITUATIONAL | FUTURE ENHANCEMENTS (NOT CURRENTLY SUPPORTED) |
|---|---|
| Transaction Header & Response | Pharmacy Provider |
| Patient | Coordination of Benefits/Other Payer |
| Insurance & Response | Coupon |
| Claim & Response | Multiple Ingredient Compound (future enhancement) |
| Prescriber | Prior Authorization |
| Worker's Compensation | Partial Fill (future enhancement) |
| DUR/PPS & Response | |
| Pricing & Response | |
| Clinical | |
| Compound | |

**Version 5.1 High level summary of changes:**

| FUNCTIONALITY CHANGES |
|---|
| Dollar fields increased to 9(2) in length |
| Partial Fills will be rejected but will be a future enhancement. |
| Compound and COB segments will not be rejected, however, they are not used for claim processing and reimbursement. (Submit highest ingredient NDC for compounds.) |
| Prior Authorizations will process if sent with the claim segment. Prior Authorization sent alone will reject. |

### II. TRANSACTION SETS - DATA ELEMENTS

**NOTE -Field and Segment Requirements**

The Segment Summaries included below list the mandatory data fields as defined by NCPDP as well as any additional fields that we define as mandatory, the accepted code values, and the situations that drive the need for a given field.

(M-Mandatory Field, O-Optional Field, ***R-Repeat Field)

**Transaction Header Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 101-A1 | BIN NUMBER | M | 610468 |
| 102-A2 | VERSION/RELEASE NUMBER | M | 51 |
| 103-A3 | TRANSACTION CODE | M | B1, B2 |
| 104-A4 | PROCESSOR CONTROL NUMBER | M | PC2 |
| 109-A9 | TRANSACTION COUNT | M | 1-4 |

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 202-B2 | SERVICE PROVIDER ID QUALIFIER | M | 07 |
| 201-B1 | SERVICE PROVIDER ID (NCPDP #) | M | 7 digit NCPDP Provider ID |
| 401-D1 | DATE OF SERVICE | M | |
| 110-AK | SOFTWARE VENDOR/CERTIFICATION ID | O | Not used |

**Patient Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 01 |
| 331-CX | PATIENT ID QUALIFIER | O | |
| 332-CY | PATIENT ID | O | |
| 304-C4 | DATE OF BIRTH | M | Patient's Date of Birth |
| 305-C5 | PATIENT GENDER CODE | M | |
| 310-CA | PATIENT FIRST NAME | M | |
| 311-CB | PATIENT LAST NAME | O | |
| 322-CM | PATIENT STREET ADDRESS | O | |
| 323-CN | PATIENT CITY ADDRESS | O | |
| 324-CO | PATIENT STATE / PROVINCE ADDRESS | O | |
| 325-CP | PATIENT ZIP/POSTAL ZONE | O | |
| 326-CQ | PATIENT PHONE NUMBER | O | |
| 307-C7 | PATIENT LOCATION | O | |
| 333-CZ | EMPLOYER ID | O | |
| 334-1C | SMOKER / NON-SMOKER CODE | O | |
| 335-2C | PREGNANCY INDICATOR | O | |

**Insurance Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 04 |
| 302-C2 | CARDHOLDER ID | M | From ID card |
| 312-CC | CARDHOLDER FIRST NAME | O | |
| 313-CD | CARDHOLDER LAST NAME | O | |
| 314-CE | HOME PLAN | O | |
| 524-FO | PLAN ID | O | |
| 309-C9 | ELIGIBILITY CLARIFICATION CODE | O | |
| 336-8C | FACILITY ID | O | |
| 301-C1 | GROUP ID | M | 1234567 |
| 303-C3 | PERSON CODE | M | |
| 306-C6 | PATIENT RELATIONSHIP CODE | M | 1-Employee/Insured, 2-Spouse, 3-Dependent, 4-Other |

**Claim Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 07 |
| 455-EM | PRESCRIPTION/SERVICE REFERENCE NUMBER QUALIFIER | M | 1 |
| 402-D2 | PRESCRIPTION/SERVICE REFERENCE NUMBER | M | RxNumber |
| 436-E1 | PRODUCT/SERVICE ID QUALIFIER | M | 01, 02, 03 |
| 407-D7 | PRODUCT/SERVICE ID (NDC) | M | NDC, UPI, HRI |
| 456-EN | ASSOCIATED PRESCRIPTION/SERVICE REFERENCE # | O | |
| 457-EP | ASSOCIATED PRESCRIPTION/SERVICE DATE | O | |
| 458-SE | PROCEDURE MODIFIER CODE COUNT | O | |

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 59-ER | PROCEDURE MODIFIER CODE | 0, ***R | |
| 442-E7 | QUANTITY DISPENSED | M | |
| 4Ø3-D3 | FILL NUMBER | M | |
| 4Ø5-D5 | DAYS SUPPLY | M | |
| 4Ø6-D6 | COMPOUND CODE | M | |
| 4Ø8-D8 | DISPENSE AS WRITTEN (DAW)/PRODUCT SELECTION CODE | M | |
| 414-DE | DATE PRESCRIPTION WRITTEN | M | |
| 415-DF | NUMBER OF REFILLS AUTHORIZED | 0 | Plan specific |
| 419-DJ | PRESCRIPTION ORIGIN CODE | 0 | |
| 42Ø-DK | SUBMISSION CLARIFICATION CODE | 0 | |
| 46Ø-ET | QUANTITY PRESCRIBED | 0 | |
| 3Ø8-C8 | OTHER COVERAGE CODE | 0 | |
| 429-DT | UNIT DOSE INDICATOR | 0 | |
| 453-EJ | ORIG PRESCRIBED PRODUCT/SERVICE ID QUALIFIER | 0 | |
| 445-EA | ORIGINALLY PRESCRIBED PRODUCT/SERVICE CODE | 0 | |
| 446-EB | ORIGINALLY PRESCRIBED QUANTITY | 0 | |
| 33Ø-CW | ALTERNATE ID | 0 | |
| 454-EK | SCHEDULED PRESCRIPTION ID NUMBER | 0 | |
| 6ØØ-28 | UNIT OF MEASURE | 0 | |
| 418-DI | LEVEL OF SERVICE | 0 | |
| 461-EU | PRIOR AUTHORIZATION TYPE CODE | 0 | |
| 462-EV | PRIOR AUTHORIZATION NUMBER SUBMITTED | 0 | |
| 463-EW | INTERMEDIARY AUTHORIZATION TYPE ID | 0 | |
| 464-EX | INTERMEDIARY AUTHORIZATION ID | 0 | |
| 343-HD | DISPENSING STATUS | 0 | |
| 344-HF | QUANTITY INTENDED TO BE DISPENSED | 0 | |
| 345-HG | DAYS SUPPLY INTENDED TO BE DISPENSED | 0 | |

**Pharmacy Provider Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL, | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 02 |
| 465-EY | PROVIDER ID QUALIFIER | 0 | |
| 444-E9 | PROVIDER ID (NCPDP #) | M | 7 Digit NCPDP Provider ID |

**Prescriber Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL, | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 03 |
| 466-EZ | PRESCRIBER ID QUALIFIER | M | 12-DEA# |
| 411-DB | PRESCRIBER ID (DEA#) | M | Prescribing Physician's DEA# |
| 467-1E | PRESCRIBER LOCATION CODE | 0 | |
| 427-DR | PRESCRIBER LAST NAME | 0 | |
| 498-PM | PRESCRIBER PHONE NUMBER | 0 | |
| 468-2E | PRIMARY CARE PROVIDER ID QUALIFIER | 0 | 12-DEA# |
| 421-DL | PRIMARY CARE PROVIDER ID | 0 | |
| 469-H5 | PRIMARY CARE PROVIDER LOCATION CODE | 0 | |
| 47Ø-4E | PRIMARY CARE PROVIDER LAST NAME | 0 | |

**COB/Other Payments Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 05 |
| 337-4C | COORDINATION OF BENEFITS/OTHER PAYMENTS COUNT | M | |
| 338-5C | OTHER PAYER COVERAGE TYPE | M, ***R | |
| 339-6C | OTHER PAYER ID QUALIFIER | O, ***R | |
| 340-7C | OTHER PAYER ID | O, ***R | |
| 443-E8 | OTHER PAYER DATE | O, ***R | |
| 341-HB | OTHER PAYER AMOUNT PAID COUNT | O | |
| 342-HC | OTHER PAYER AMOUNT PAID QUALIFIER | O, ***R | |
| 431-DV | OTHER PAYER AMOUNT PAID | O, ***R | |
| 471-5E | OTHER PAYER REJECT COUNT | O | |
| 472-6E | OTHER PAYER REJECT CODE | O, ***R | |

**Workers' Compensation Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 06 |
| 434-DY | DATE OF INJURY | M | Required for all Worker's Comp Claims |
| 315-CF | EMPLOYER NAME | O | |
| 316-CG | EMPLOYER STREET ADDRESS | O | |
| 317-CH | EMPLOYER CITY ADDRESS | O | |
| 318-CI | EMPLOYER STATE/PROVINCE ADDRESS | O | |
| 319-CJ | EMPLOYER ZIP/POSTAL ZONE | O | |
| 320-CK | EMPLOYER PHONE NUMBER | O | |
| 321-CL | EMPLOYER CONTACT NAME | O | |
| 327-CR | CARRIER ID | O | |
| 435-DZ | CLAIM/REFERENCE ID | O | |

**DUR/PPS Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 08 |
| 473-7E | DUR/PPS CODE COUNTER | O, ***R | |
| 439-E4 | REASON FOR SERVICE CODE | O, ***R | |
| 440-E5 | PROFESSIONAL SERVICE CODE | O, ***R | |
| 441-E6 | RESULT OF SERVICE CODE | O, ***R | |
| 474-8E | DUR/PPS LEVEL OF EFFORT | O, ***R | |
| 475-J9 | DUR CO-AGENT ID QUALIFIER | O, ***R | |
| 476-H6 | DUR CO-AGENT ID | O, ***R | |

**Pricing Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 11 |
| 409-D9 | INGREDIENT COST SUBMITTED | M | |
| 412-DC | DISPENSING FEE SUBMITTED | M | |
| 477-BE | PROFESSIONAL SERVICE FEE SUBMITTED | O | |
| 433-DX | PATIENT PAID AMOUNT SUBMITTED | O | |
| 438-E3 | INCENTIVE AMOUNT SUBMITTED | O | |
| 478-H7 | OTHER AMOUNT CLAIMED SUBMITTED COUNT | O | |
| 479-H8 | OTHER AMOUNT CLAIMED SUBMITTED QUALIFIER | O, ***R | |

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 48Ø-H9 | OTHER AMOUNT CLAIMED SUBMITTED | O, ***R | |
| 481-HA | FLAT SALES TAX AMOUNT SUBMITTED | O | |
| 482-GE | PERCENTAGE SALES TAX AMOUNT SUBMITTED | O | |
| 483-HE | PERCENTAGE SALES TAX RATE SUBMITTED | O | |
| 484-JE | PERCENTAGE SALES TAX BASIS SUBMITTED | O | |
| 426-DQ | USUAL AND CUSTOMARY CHARGE | M | |
| 43Ø-DU | GROSS AMOUNT DUE | O | |
| 423-DN | BASIS OF COST DETERMINATION | O | |

**Coupon Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 09 |
| 485-KE | COUPON TYPE | M | |
| 486-ME | COUPON NUMBER | M | |
| 487-NE | COUPON VALUE AMOUNT | O | |

**Compound Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 10 |
| 45Ø-EF | COMPOUND DOSAGE FORM DESCRIPTION CODE | M | |
| 451-EG | COMPOUND DISPENSING UNIT FORM INDICATOR | M | |
| 452-EH | COMPOUND ROUTE OF ADMINISTRATION | M | |
| 447-EC | COMPOUND INGREDIENT COMPONENT COUNT | M | |
| 488-RE | COMPOUND PRODUCT ID QUALIFIER | M, ***R | 03-NDC |
| 489-TE | COMPOUND PRODUCT ID | M, ***R | Submit highest ingredient NDC |
| 448-ED | COMPOUND INGREDIENT QUANTITY | M, ***R | |
| 449-EE | COMPOUND INGREDIENT DRUG COST | O, ***R | |
| 49Ø-UE | COMPOUND INGREDIENT BASIS OF COST DETERMINATION | O, ***R | |

**Prior Authorization Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 12 |
| 498-PA | REQUEST TYPE | M | |
| 498-PB | REQUEST PERIOD DATE-BEGIN | M | |
| 498-PC | REQUEST PERIOD DATE-END | M | |
| 498-PD | BASIS OF REQUEST | M | |
| 498-PE | AUTHORIZED REPRESENTATIVE FIRST NAME | O | |
| 498-PF | AUTHORIZED REPRESENTATIVE LAST NAME | O | |
| 498-PG | AUTHORIZED REPRESENTATIVE STREET ADDRESS | O | |
| 498-PH | AUTHORIZED REPRESENTATIVE CITY ADDRESS | O | |
| 498-PJ | AUTHORIZED REPRESENTATIVE STATE/PROVINCE ADDRESS | O | |
| 498-PK | AUTHORIZED REPRESENTATIVE ZIP/POSTAL ZONE | O | |
| 498-PY | PRIOR AUTHORIZATION NUMBER--ASSIGNED | O | |
| 5Ø3-F3 | AUTHORIZATION NUMBER | O | |
| 498-PP | PRIOR AUTHORIZATION SUPPORTING DOCUMENTATION | O | |

**Clinical Segment**

| NCPDP FIELD | FIELD NAME | MANDATORY,OPTIONAL | COMMENTS/VALUES |
|---|---|---|---|
| 111-AM | SEGMENT IDENTIFICATION | M | 13 |
| 491-VE | DIAGNOSIS CODE COUNT | M | 1-5 |
| 492-WE | DIAGNOSIS CODE QUALIFIER | M, ***R | 01 - ICD-9 |
| 424-DO | DIAGNOSIS CODE | M, ***R | |
| 493-XE | CLINICAL INFORMATION COUNTER | O, ***R | 1-5 |
| 494-ZE | MEASUREMENT DATE | O, ***R | |
| 495-H1 | MEASUREMENT TIME | O, ***R | |
| 496-H2 | MEASUREMENT DIMENSION | O, ***R | |
| 497-H3 | MEASUREMENT UNIT | O, ***R | |
| 499-H4 | MEASUREMENT VALUE | O, ***R | |

NOTE: An "Optional" data element means the plan does not require data on all claims, but reserves the possibility of use in specific claim situations. A "Supported" data element means the plan does not require data except under appropriate situations, further editing on these fields will be implemented.

## III. BIN – PRIMARY PCN COMBINATIONS

| BIN | PCN |
|---|---|
| 610468 | PC2 |
| | MDP |
| | FHCP |
| | COMHP |
| | AHP |
| | HP |
| 610474 | TDI |
| | EEPDP |
| | SSP |
| | CAP |
| 603604 | BLANK |
| | CAP |
| 610449 | U07 |
| | U12 |
| | BLANK |
| 004245 | BLANK |

# Appendix B
# Companion Guide For Submission Of Home Infusion Claims Via The HIPAA X12N 837P Transaction

## Table of Contents

| | | | |
|---|---|---|---|
| Section 1 Overview | 1 | 2.1 ISA - IEA | 3 |
| 1.1 Introduction | 1 | 2.2 GS - GE | 4 |
| 1.2 Caremark Contacts | 1 | 2.3 837P | 4 |
| 1.3 EDI and Telecommunications | 2 | 2.4 K3 Segment 2300 Loop | 6 |
| 1.3.1 Connectivity Testing | 2 | 2.5 K3 Segment 2400 Loop | 10 |
| 1.3.2 End-to-end Testing | 2 | Exhibits | 10 |
| 1.3.3 Move to Production & Maintenance | 3 | Exhibit I DAW/Product Selection Code | 10 |
| Section 2 Caremark Specific Business Rules | 3 | Exhibit II Compounded Medication Billing | 11 |

## Section 1 Overview

### 1.1 Introduction

In order to comply with federally mandated HIPAA regulations, Caremark will utilize the ASC X12N Health Care Claim Transaction (837P) HIPAA Implementation Guide as a standard format for the electronic data interchange of claims from home infusion pharmacies. Retail pharmacies that dispense home infusion therapy drugs should continue to utilize the NCPDP Version 5 Release 1 Telecommunication Standard.

This Companion Document to the ASC X12N 837P Implementation Guide clarifies and specifies the data content when submitting the 837P transaction to Caremark. Transmissions based on this companion document, used in tandem with the HIPAA X12N 837P Implementation Guide, are compliant with both X12 syntax and those guides.

.**Important Note: All references in this guide refer to the 837P HIPAA format. This guide should be used in conjunction with the HIPAA Implementation Guide for the 837 Professional Health Care Claim transaction set.*

For more information on HIPAA please refer to the following companies, websites and publications:

HHS Administrative Simplification: http://aspe.hhs.gov/admnsimp/
Government Printing Office: http://www.access.gpo.gov/su_docs/aces/aces140.html
Washington Publishing Company http://wpc-edi.com/hipaa
CMS (centers for Medicare and Medicaid Services http://www.cms.gov/
NCPDP (National Council for Prescription Drug Programs) http://www.ncpdp.org
ANSI - American National Standards Institute http://www.ansi.org/
ASC X12 - Accredited Standards Committee X12 http://www.x12.org/
Phoenix Health Systems - HIPAAdvisory.com

### 1.2 Caremark Contacts

Caremark Retail Services/Director, Systems and Industry Standards, networksys@caremark.com

| WHAT YOU NEED | WHAT TO DO |
|---|---|
| To request another copy of the Caremark provider manual. | Access the internet site, CaremarkRx.com. If unavailable via internet, contact Caremark at 1-800-288-7384 |
| To obtain a copy of the X12 837 Companion Guide | Access the internet site, http://www.caremark.com/wps/portal/_s.155/3398 |
| To test the X12 837 Home Infusion Pharmacy Claim Transactions | Caremark Retail Services at 1-800-288-7384 |

| WHAT YOU NEED | WHAT TO DO |
| --- | --- |
| Answers to pharmacy claim questions or to make payment adjustments... | The Caremark Pharmacy Help Desk<br>Please refer to the beginning of this Provider Manual for appropriate Pharmacy Help Desk phone numbers. |
| Answers to technical questions | Caremark Retail Services at 1-800-288-7384 |
| After implementing the X12 837 Home Infusion Pharmacy Claim, to notify Caremark of any changes. | Caremark Retail Services at 1-800-288-7384 |

### 1.3 EDI and Telecommunications

Pharmacies sending and receiving EDI data to the Caremark system can do so by using PGP or Secure FTP via the internet.

Caremark uses the Tumbleweed SecureTransport product. It is a secure, enterprise-class file transfer product. It enables transfer of valuable or sensitive information over the Internet in a confidential, guaranteed, and provable manner. Secure Transport is client-server software that is built on industry-standard technologies including SSL, FTP, and HTTP.

When a user logs in to the Secure Transport Server using a Secure Transport Client (or Web browser), Secure Transport opens a secure session between the client and the server so that important information, such as user ID, password, commands, file names, and data are encrypted.

Caremark prefers that the 837 transaction be sent as one contiguous string. Unneeded spacing, carriage return and line feed characters should not be used within the data structure.

#### 1.3.1 Connectivity Testing

The objective of this phase is to test the telecommunication link between you and Caremark. This test is not however to test the 837 standard data layout. A successful test will eventually occur if you are able to send an 837 to Caremark.

#### 1.3.2 End-to-end Testing

The objective of this phase of the implementation is to ensure that all participants in the 837 electronic data interchange process are communicating with each other properly. This includes the pharmacy and Caremark. Caremark will provide test packets and schedule testing upon request.

Providers will receive the 997 acknowledgement after receipt of the 837. Providers have the option of receiving a paper remittance advice, or the ASC X12N 835 (004010X091A1) Healthcare Claim Payment/Advice.

#### 1.3.3 Move to Production & Maintenance

Caremark requests at least two weeks notification before a pharmacy is ready to submit the 837 transaction. This time is required to allow Caremark to prepare to receive the transmissions, and for Caremark to ensure that the pharmacy data is properly entered in Caremark systems.

Upon successful completion of the End-to End testing phase, the pharmacy will notify Caremark that they are ready to send the 837 Health Care Claim via EDI. Caremark will then establish the pharmacy into the production schedule.

If the pharmacy should encounter any EDI problems or issues, they should contact their Caremark representative for technical assistance at 1-800-288-7384.

When changes are made to this Companion guide for the 837 Health Care Claim transaction set, Caremark will provide the pharmacy with a notification of pending EDI updates. Caremark requires notification if there is a change in the representative or location to which EDI updates are being sent. Please submit these changes to your Caremark EDI representative. For those pharmacies using EDI software packages customized for Caremark, software updates are at the discretion of the software provider.

## Section 2 Caremark Specific Business Rules

### 2.1 ISA - IEA

The ISA segment is the Interchange Header Segment. This segment identifies the sender and receiver for each transaction. This segment also identifies the delimiters used throughout the file. The IEA segment is the Interchange Control Trailer. This segment identifies the end of an interchange of zero or more functional groups and interchange-related control segments and is the last segment within the transaction set. Please use the values listed in the table below when building the ISA segment for transactions submitted to Caremark.

| ELEMENT IDENTIFIER | ELEMENT NAME | VALUES | COMMENTS |
|---|---|---|---|
| ISA01 | Authorization Information Qualifier | 00 | |
| ISA02 | Authorization Information | | spaces |
| ISA03 | Security Information Qualifier | 00 | |
| ISA04 | Security Information | | spaces |
| ISA05 | Interchange ID Qualifier | ZZ | If use "ZZ" must use the NCPDP number in ISA06. If you would prefer to use a different sender ID please contact Caremark. |
| ISA06 | Interchange Sender ID | | NCPDP Number |
| ISA07 | Interchange ID Qualifier | ZZ | |
| ISA08 | Interchange Receiver ID | 610029 - production<br>447225 - testing | |

For all other ISA and IEA elements, please refer to the HIPAA-AS Implementation Guides for specific instructions.

Currently, Caremark does not require any security information, ID or password to be sent in ISA02 and ISA04. Caremark will support all delimiters as indicated in the HIPAA 837P Implementation Guide. For more information about these delimiters, please refer to the HIPAA 837P Implementation Guide.

**2.2 GS - GE**

The GS segment indicates the beginning of a functional group and provides control information. The GE segment indicates the end of a functional group and provides control information. Please use these values when building the GS segment for transactions submitted to Caremark.

| ELEMENT IDENTIFIER | ELEMENT NAME | VALUES | COMMENTS |
|---|---|---|---|
| GS01 | Functional Identifier Code | HC | |
| GS02 | Application Sender Code | Same value as ISA06 | |
| GS03 | Application Receiver Code | Same value as ISA08 | |

For all other GS and GE elements, please refer to the HIPAA 837P Implementation Guide for specific instructions.

**2.3 837P**

The following is a subset of the 837P data elements to highlight Caremark requirements. Please refer to the HIPAA 837P Implementation guide for HIPAA required data elements.

SHADED rows represent "segments"; NON-SHADED rows represent "data elements."

| LOOP | ELEMENT IDENTIFIER | ELEMENT NAME | CAREMARK REQ/OPT | VALUES | COMMENTS |
|---|---|---|---|---|---|
| 1000A | NM1 | Submitter Name | | | |
| | NM109 | Submitter Identifier | Required | Same value as ISA06 | |
| 1000B | NM1 | Receiver Name | | | |
| | NM109 | Receiver Primary Identifier | Required | 610029 | Caremark |
| 2010AA | REF | Billing Provider Secondary Identification | | | |
| | REF01 | Reference Identification Qualifier | Required | FH | While additional REF segments can be sent, the only one Caremark will utilize is the FH qualifier for NCPDP. |
| | REF02 | Billing Provider Additional Identifier | Required Number | Your assigned NCPDP | This will be your 7 digit NCPDP number |
| 2000B | SBR | Subscriber Information | | | |
| | SBR03 | Insured Group or Policy Number | Required | | Member's Group Number as printed on the member's prescription drug benefit card |
| 2010BB | REF | Payer Secondary Identification | | | |

| LOOP | ELEMENT IDENTIFIER | ELEMENT NAME | CAREMARK REQ/OPT | VALUES | COMMENTS |
|---|---|---|---|---|---|
| | REF01 | Reference Identification Qualifier | Required | 2U | |
| | REF02 | Payer Additional Identifier | Required | | Processor Control Number as printed on the member's prescription drug benefit card |
| 2010CA | NM1 | Patient Name | | | |
| | NM109 | Patient Primary Identifier | Required if patient is not the subscriber | | When the subscriber is not the patient, value with the Member ID plus the patient's Person Code from the ID card. |
| 2300 | CLM | Claim Information | | | |
| | CLM05-1 | Facility Type Code | Required | 12 or 31 | For home infusion, this should be limited to 12 – Home or 31 – Skilled Nursing Facility. |
| | CLM05-3 | Claim Frequency Type Code | Required | 1 or 8 | Caremark processes "1" - Billing and "8" - reversal. Caremark does not process "7" - rebills. |
| 2300 | K3 | File Information | | | |
| | K301 | Fixed Format Information | Required | | See Section 2.4 for instructions on valuing the K3 segment. |
| 2330B | NM1 | Other Payer Name | | | |
| | NM109 | Other Payer Primary Identifier | Required when using Other Payer Loop | | When supplying other payer information, please value with the BIN number when available. |
| 2400 | SV1 | Professional Service | | | NCPDP guidelines recommend only one service line/prescription per claim. Caremark adheres to this recommendation. |
| | SV102 | Line Item Charge Amount S9(7)V99 | Required | Gross Amount Due | |
| 2400 | K3 | File Information | | | |
| | K301 | Fixed Format Information | Optional | | See Section 2.5 |
| 2410 | LIN | Drug Identification | | | |
| | LIN02 | Product/.Service ID qualifier | Required | N4 | |
| | LIN03 | Product/Service ID | Required | NDC code | |
| 2410 | CTP | Drug Pricing | | | |
| | CTP03 | Unit Price | Required | Drug Unit Price | |
| | CTP04 | Quantity | Required | National Drug Unit Count | |
| 2410 | REF | Prescription Number | | | |
| | REF01 | Reference Identification Qualifier | Required | XZ | |
| | REF02 | Reference Identification | Required | Prescription Number | Caremark will move the first 7 characters in compliance with the NCPDP 5.1 format. |

| LOOP | ELEMENT IDENTIFIER | ELEMENT NAME | CAREMARK REQ/OPT | VALUES | COMMENTS |
|---|---|---|---|---|---|
| **2420E** | **NM1** | **Ordering Provider Name** | | | |
| | NM103 | Ordering Provider Last Name | Required | Prescriber Last Name | |
| **2420E** | **REF** | **Ordering Provider Secondary Identification** | | | |
| | REF01 | Reference Identification Qualifier | Required | | Use 08 - for state license number. Use EI - for DEA number. |
| | REF02 | Ordering Provider Secondary Identifier | Required | Prescriber ID | |

**2.4 K3 Segment 2300 Loop**

*Note: The NCPDP committee has received approval from X12N to use the K3 segment for data necessary to process pharmacy claims.*

| POSITION | CAREMARK R=REQUIRED O=OPTIONAL | DEFAULT VALUE | COMMENT/VALUES | NCPDP FIELD NAME |
|---|---|---|---|---|
| 1–2 | R | | Fill Number | |
| 3 | O | | Compound Code | Ø=Not Specified<br>1=Not a Compound<br>2=Compound<br>*NOTE: Caremark only accepts single ingredient compounds. Multi-drug compounds with result in a rejection of the claim. Refer to Appendix II for billing instructions of compounded medications.* |
| 4 | R | | DAW/Product Selection Code | See Appendix I for a list of the DAW code values. |
| 5 | O | Ø | Submission Clarification Code | Ø=Not Specified, Default<br>1=No Override<br>2=Other Override<br>3=Vacation Supply-The pharmacist is indicating that the cardholder has requested a vacation supply of the medicine.<br>4=Lost Prescription-The pharmacist is indicating that the cardholder has requested a replacement of medication that has been lost.<br>5=Therapy Change-The pharmacist is indicating that the physician has determined that a change in therapy was required; either that the medication was used faster than expected, or a different dosage form is needed, etc.<br>6=Starter Dose-The pharmacist is indicating that the previous medication was a starter dose and now additional medication is needed to continue treatment.<br>7=Medically Necessary-The pharmacist is indicating that this medication has been determined by the physician to be medically necessary<br>8=Process Compound For Approved Ingredients<br>9=Encounters |
| 6 | O | | Unit Dose Indicator | Ø=Not Specified<br>1=Not Unit Dose<br>2=Manufacturer Unit Dose<br>3=Pharmacy Unit Dose |

| POSITION | CAREMARK R=REQUIRED O=OPTIONAL | DEFAULT VALUE | COMMENT/VALUES | NCPDP FIELD NAME |
|---|---|---|---|---|
| 7–8 | O | | Prior Authorization Type Code | Ø=Not Specified<br>1=Prior Authorization<br>2=Medical Certification<br>3=EPSDT (Early Periodic Screening Diagnosis Treatment)<br>4=Exemption from Copay<br>5=Exemption from RX<br>6=Family Plan. Indic.<br>7=AFDC (Aid to Families with Dependent Children)<br>8=Payer Defined Exemption |
| 9 - 16 | R | | Dispensing Fee Submitted | Format Implied decimals 9(6)v99<br>NOTE: 00000000 is valid |
| 17 - 24 | O | | Percentage Sales Tax Amount Submitted *NOTE: Required when applicable.* | Format Implied decimals 9(6)v99 |
| 25 - 31 | O | | Percentage Sales Tax Rate Submitted *NOTE: Required when applicable.* | Format Implied decimals 9(3)v4 |
| 32 - 33 | O | | Percentage Sales Tax Basis Submitted *NOTE: Required when applicable.* | Blank=Not Specified<br>Ø1=Gross Amount Due<br>Ø2=Ingredient Cost<br>Ø3=Ingredient Cost + Dispensing Fee |
| 34 - 41 | R | | Usual and Customary Charge | Format Implied decimals 9(6)v99 |
| 42 - 43 | O | | Basis of Cost Determination | Leave blank. |
| 44 - 45 | O | blanks | Reason for Service Code | This information is only submitted when advised to submit by Caremark. |
| 46 - 47 | O | blanks | Professional Service Code | This information is only submitted when advised to submit by Caremark. |
| 48 - 49 | O | blanks | Result of Service Code | This information is only submitted when advised to submit by Caremark. |
| 50 - 51 | O | blanks | Reason for Service Code | This information is only submitted when advised to submit by Caremark. |
| 52 - 53 | O | blanks | Professional Service Code | This information is only submitted when advised to submit by Caremark. |
| 54 55 | O | blanks | Result of Service Code | This information is only submitted when advised to submit by Caremark. |
| 56 - 57 | O | blanks | Reason for Service Code | This information is only submitted when advised to submit by Caremark. |
| 58 - 59 | O | blanks | Professional Service Code | This information is only submitted when advised to submit by Caremark. |
| 60 - 61 | O | blanks | Result of Service Code | This information is only submitted when advised to submit by Caremark. |
| 62-29 | R | | Date Prescription Written | Format Date CCYYMMDD |

| POSITION | CAREMARK R=REQUIRED O=OPTIONAL | DEFAULT VALUE | COMMENT/VALUES | NCPDP FIELD NAME |
|---|---|---|---|---|
| 70 | O | | Other Coverage Code | Ø=Not Specified<br>1=No other coverage identified<br>2=Other coverage exists-payment collected<br>3=Other coverage exists-this claim not covered<br>4=Other coverage exists-payment not collected<br>5=Managed care plan denial<br>6=Other coverage denied-not a participating provider<br>7=Other coverage exists-not in effect at time of service<br>8=Claim is a billing for a copay<br>Use value 2 when the previous payer paid the claim and the other payer paid amount is greater than zero, and the non-covered portion was NOT related to a copay.<br>Use value 8 when the previous payer paid the claim and the other payer paid amount is greater than zero, and the non-covered portion was related to a copay.<br>Use values 3–7 when the other payer paid amount is zero. |
| 71 - 80 | | | Not used at this time | |

**2.5 K3 Segment 2400 Loop**

Caremark currently does not process multi-line compound drugs. If this segment is sent, it will be ignored by Caremark. See Appendix II regarding billing for compounds.

| POSITION | CAREMARK R=REQUIRED O=OPTIONAL | DEFAULT VALUE | COMMENT/VALUES | NCPDP FIELD NAME |
|---|---|---|---|---|
| 1–2 | | | | CMPD Dosage Form Desc Code |
| 3–4 | | | | CMPD Route of Administration |
| 5–6 | | | | CMPD Ingredient Basis of Cost Determination |
| 7–80 | | | | Not used at this time |

**Exhibits**

***EXHIBIT I DAW/PRODUCT SELECTION CODE***

Ø=*No Product Selection Indicated*-This is the field default value that is appropriately used for prescriptions where product selection is not an issue. Examples include prescriptions written for single source brand products and prescriptions written using the generic name and a generic product is dispensed.

1=*Substitution Not Allowed by Prescriber*-This value is used when the prescriber indicates, in a manner specified by prevailing law, that the product is to be Dispensed As Written.

2=*Substitution Allowed-Patient Requested Product Dispensed*-This value is used when the prescriber has indicated, in a manner specified by prevailing law, that generic substitution is permitted and the patient requests the brand product. This situation can occur when the prescriber writes the prescription using either the brand or generic name and the product is available from multiple sources.

3=*Substitution Allowed-Pharmacist Selected Product Dispensed*-This value is used when the prescriber has indicated, in a manner specified by prevailing law, that generic substitution is permitted and the pharmacist determines that the brand product should be dispensed. This can occur when the prescriber writes the prescription using either the brand or generic name and the product is available from multiple sources.

4=*Substitution Allowed-Generic Drug Not in Stock*-This value is used when the prescriber has indicated, in a manner specified by prevailing law, that generic substitution is permitted and the brand product is dispensed since a currently marketed generic is not stocked in the pharmacy. This situation exists due to the buying habits of the pharmacist, not because of the unavailability of the generic product in the marketplace.

5=*Substitution Allowed-Brand Drug Dispensed as a Generic*-This value is used when the prescriber has indicated, in a manner specified by prevailing law, that generic substitution is permitted and the pharmacist is utilizing the brand product as the generic entity.

6=*Override*-This value is used by various claims processors in very specific instances as defined by that claims processor and/or its client(s).

7=*Substitution Not Allowed-Brand Drug Mandated by Law*-This value is used when the prescriber has indicated, in a manner specified by prevailing law, that generic substitution is permitted but prevailing law or regulation prohibits the substitution of a brand product even though generic versions of the product may be available in the marketplace.

8=*Substitution Allowed-Generic Drug Not Available in Marketplace*-This value is used when the prescriber has indicated, in a manner specified by prevailing law, that generic substitution is permitted and the brand product is dispensed since the generic is not currently manufactured, distributed, or is temporarily unavailable.

9=*Other*-This value is reserved and currently not in use. NCPDP does not recommend use of this value at the present time. Please contact NCPDP if you intend to use this value and document how it will be utilized by your organization.

***EXHIBIT II COMPOUNDED MEDICATION BILLING***

## Compounded Medications

Provider is encouraged, if providing compound medications as a routine business practice, to obtain accreditation through the Pharmacy Compounding Accreditation Board (PCAB). Provider is expected to maintain quality compounding practices in accordance with applicable Law, and standards of practice.

Provider shall submit compounds for reimbursement detailed by this Provider Manual. Provider shall not separate cash and third-party prescription business or own, operate, or affiliate with a nonparticipating provider to manipulate compound pricing for inappropriate financial gain. Provider may be removed from participation in Caremark's network if Caremark reasonably determines, at its sole discretion, that Provider has taken actions to manipulate compound pricing for inappropriate financial gain.

Listed below are the requirements for Provider to submit claims for compounded medications.

- All compounds must be submitted **on-line**
- A **legend drug** must be one of the items in the compound and have a valid NDC
- Change the **compound indicator (compound code)** in the claim segment to identify the prescription as a compound

**Single-Ingredient Processing:**

- If utilizing single ingredient processing enter the **highest priced legend drug** – determined by multiplying the unit cost of each legend ingredient by its quantity in the compound and reporting the most expensive legend ingredient's NDC (Product/Service ID) in the claim segment (the primary NDC should not be altered to another NDC in the product if claim is rejected)
- Enter the **total quantity of the final product dispensed** in the quantity dispensed field in the claim segment
- Enter the **calculated cost of the complete compound as the ingredient cost submitted** in the pricing segment - This calculated total cost should be no greater than the combined AWP cost of all ingredients plus nominal professional allowance based on the level of effort. Caremark, at its sole discretion, will have final reasonable determination of professional allowance attributed to claim above the cost.

**Multi-Ingredient Processing:**

- Compounds should be submitted utilizing **multi-ingredient** functionality as required by the Plan Sponsor and/or communicated by Caremark to Provider (if Caremark has not communicated necessity of the multi-ingredient compound segment, please maintain the NDC of the primary as described in the Single-Ingredient Processing guidance detailed above)
- Enter the NDC (Product/Service ID) value of "0" in the claim segment (also enter the corresponding qualifier (Product/Service ID Qualifier) as "00".
- Enter the **dosage form of the final product dispensed** in the compound segment (must be a valid NCPDP compound segment dosage form value)
- Enter the **total quantity of the final product dispensed** in the quantity dispensed field in the claim segment
- Enter the **calculated cost of the complete compound as the ingredient cost submitted** (This calculated total cost should be no greater than the combined AWP cost of all ingredients plus nominal professional allowance based on the level of effort. Caremark, at its sole discretion, will have final determination of professional allowance attributed to claim above the cost.)
- Enter the **quantity of each individual compound ingredient product dispensed** as the compound ingredient quantity in the compound segment.
- Enter the **calculated cost of each individual compound ingredient** as the compound ingredient drug cost in the compound segment
- Enter the **level of effort** in the DUR/PPS segment (level of effort should be based on the table on page 129, unless otherwise communicated by Caremark)

Additional information concerning all compounded medications:
- Compounds that have a commercially available product are not reimbursable unless the product is not available in the marketplace. If the product is not commercially available, Provider should enter an ingredient cost submitted no greater than the cost of the commercial product and in accordance with guidance detailed in this Provider Manual [Provider must document the necessity of dispensing the compound (i.e. invoice documenting the unavailability in the market, etc.)
- All compound recipes are subject to audit review. Full recipe disclosure is required for accurate calculation and must be provided to Caremark upon request.
- Calculated cost may not include cost of drug product associated with waste, unless the wasted drug product was not able to be utilized in the creation of additional compounded medications

The following medications should not be adjudicated as a compound and will not be reimbursed as such:
- A combination of products which are not combined to make one final medication for use (i.e. a 'kit' of individual products designed to be used independently)
- A combination of legend (and/or non-legend) products which do not have a medical purpose in combination other than convenience dosage form (example: legend and vitamin products combined into single dosage)
- A commercially available compound kit or commercially available product which is represented by a unique assigned NDC and contains all the ingredients of the final product as such (e.g., kit containing a base and active ingredient and directives for mixture, etc.)
- Compounds dispensed for human consumption which include ingredients that are not approved for human use
- Medications requiring reconstitution prior to dispensing (e.g., powdered oral antibiotics, topical acne preparations, etc.)
- Flavoring of a commercially available product prior to dispensing (e.g., addition of flavor to a powdered oral antibiotics, etc.), nor should the ingredient cost submitted include flavoring cost

| LOE RATING | COMPOUND TYPE |
|---|---|
| 1 | Single Ingredient Batched Capsule |
| | Any Combination of Commercially Available Products |
| 2 | Two or Three Ingredient Batched Capsule |
| | Transdermal Gel |
| 3 | Four or More Ingredient Batched Capsule |
| | Three or Less Ingredient Cream/Ointment/Gel |
| | Three or Less Ingredient Capsule |
| | Suppository |
| | Two or Less Ingredient Troche |
| | Noncomplex Suspension |
| | Tablet Triturate |
| 4 | Topical Containing Controlled Ingredient |
| | Three or More Ingredient Troche |
| | Four or More Ingredient Cream/Ointment/Gel |
| | Four or More Ingredient Capsule |
| | Complex Suspensions (i.e. pediatric) |
| | Custom Capsule (Includes Rapid Dissolution Preparations) |
| | Chemotherapy Cream/Ointment/Gel |
| | Hormone Therapy (capsules, Troches, and Suppositories) |
| 5 | Sterile Product |

# Appendix C
# Submission Error Codes

## Version 5.ø Reject Codes For Telecommunication Standard

| REJECT CODE | EXPLANATION | FIELD NUMBER POSSIBLY IN ERROR |
|---|---|---|
| ØØ | ("M/I" Means Missing/Invalid) | |
| Ø1 | M/I Bin | 1Ø1 |
| Ø2 | M/I Version Number | 1Ø2 |
| Ø3 | M/I Transaction Code | 1Ø3 |
| Ø4 | M/I Processor Control Number | 1Ø4 |
| Ø5 | M/I Provider Number | 2Ø1 |
| Ø6 | M/I Group Number | 3Ø1 |
| Ø7 | M/I Cardholder ID Number | 3Ø2 |
| Ø8 | M/I Person Code | 3Ø3 |
| Ø9 | M/I Birth Date | 3Ø4 |
| 1C | M/I Smoker/Nonsmoker Code | 334 |
| 1E | M/I Prescriber Location Code | 467 |
| 1Ø | M/I Patient Gender Code | 3Ø5 |
| 11 | M/I Patient Relationship Code | 3Ø6 |
| 12 | M/I Patient Location | 3Ø7 |
| 13 | M/I Other Coverage Cod | 3Ø8 |
| 14 | M/I Eligibility Clarification Code | 3Ø9 |
| 15 | M/I Date of Service | 4Ø1 |
| 16 | M/I Prescription/Service Reference Number | 4Ø2 |
| 17 | M/I Fill Number | 4Ø3 |
| 19 | M/I Days Supply | 4Ø5 |
| 2C | M/I Pregnancy Indicator | 335 |
| 2E | M/I Primary Care Provider ID Qualifier | 468 |
| 2Ø | M/I Compound Code | 4Ø6 |
| 21 | M/I Product/Service ID | 4Ø7 |
| 22 | M/I Dispense As Written (DAW)/Product Selection Code | 4Ø8 |
| 23 | M/I Ingredient Cost Submitted | 4Ø9 |
| 25 | M/I Prescriber ID | 411 |
| 26 | M/I Unit Of Measure | 6ØØ |
| 28 | M/I Date Prescription Written | 414 |
| 29 | M/I Number Refills Authorized | 415 |
| 3A | M/I Request Type | 498-PA |
| 3B | M/I Request Period Date-Begin | 498-PB |
| 3C | M/I Request Period Date-End | 498-PC |
| 3D | M/I Basis Of Request | 498-PD |
| 3E | M/I Authorized Representative First Name | 498-PE |
| 3F | M/I Authorized Representative Last Name | 498-PF |
| 3G | M/I Authorized Representative Street Address | 498-PG |
| 3H | M/I Authorized Representative City Address | 498-PH |

| REJECT CODE | EXPLANATION | FIELD NUMBER POSSIBLY IN ERROR |
|---|---|---|
| 3J | M/I Authorized Representative State/Province Address | 498-PJ |
| 3K | M/I Authorized Representative Zip/Postal Zone | 498-PK |
| 3M | M/I Prescriber Phone Number | 498-PM |
| 3N | M/I Prior Authorized Number Assigned | 498-PY |
| 3P | M/I Authorization Number | 503 |
| 3R | Prior Authorization Not Required | 407 |
| 3S | M/I Prior Authorization Supporting Documentation | 498-PP |
| 3T | Active Prior Authorization Exists Resubmit At Expiration Of Prior Authorization | |
| 3W | Prior Authorization In Process | |
| 3X | Authorization Number Not Found | 503 |
| 3Y | Prior Authorization Denied | |
| 32 | M/I Level Of Service | 418 |
| 33 | M/I Prescription Origin Code | 419 |
| 34 | M/I Submission Clarification Code | 420 |
| 35 | M/I Primary Care Provider ID | 421 |
| 38 | M/I Basis Of Cost | 423 |
| 39 | M/I Diagnosis Code | 424 |
| 4C | M/I Coordination Of Benefits/Other Payments Count | 337 |
| 4E | M/I Primary Care Provider Last Name | 570 |
| 40 | Provider Not Contracted With Plan On Date Of Service | None |
| 41 | Submit Bill To Other Processor Or Primary Payer | None |
| 5C | M/I Other Payer Coverage Type | 338 |
| 5E | M/I Other Payer Reject Count | 471 |
| 50 | Nonmatched Provider Number | 201 |
| 51 | Nonmatched Group ID | 301 |
| 52 | Nonmatched Cardholder ID | 302 |
| 53 | Nonmatched Person Code | 303 |
| 54 | Nonmatched Product/Service ID Number | 407 |
| 55 | Nonmatched Product Package Size | 407 |
| 56 | Nonmatched Prescriber ID | 411 |
| 58 | Nonmatched Primary Prescriber | 421 |
| 6C | M/I Other Payer ID Qualifier | 422 |
| 6E | M/I Other Payer Reject Code | 472 |
| 60 | Product/Service Not Covered For Patient Age | 302, 304, 401, 407 |
| 61 | Product/Service Not Covered For Patient Gender | 302, 305, 407 |
| 62 | Patient/Card Holder ID Name Mismatch | 310, 311, 312, 313, 320 |
| 63 | Institutionalized Patient Product/Service ID Not Covered | |
| 64 | Claim Submitted Does Not Match Prior Authorization | 201, 401, 404, 407, 416 |
| 65 | Patient Is Not Covered | 303, 306 |
| 66 | Patient Age Exceeds Maximum Age | 303, 304, 306 |
| 67 | Filled Before Coverage Effective | 401 |
| 68 | Filled After Coverage Expired | 401 |
| 69 | Filled After Coverage Terminated | 401 |
| 7C | M/I Other Payer ID | 340 |
| 7E | M/I DUR/PPS Code Counter | 473 |
| 70 | Product/Service Not Covered | 407 |
| 71 | Prescriber Is Not Covered | 411 |

| REJECT CODE | EXPLANATION | FIELD NUMBER POSSIBLY IN ERROR |
|---|---|---|
| 72 | Primary Prescriber Is Not Covered | 421 |
| 73 | Refills Are Not Covered | 402, 403 |
| 74 | Other Carrier Payment Meets Or Exceeds Payable | 409, 410, 442 |
| 75 | Prior Authorization Required | 462 |
| 76 | Plan Limitations Exceeded | 405, 442 |
| 77 | Discontinued Product/Service ID Number | 407 |
| 78 | Cost Exceeds Maximum | 407, 409, 410, 442 |
| 79 | Refill Too Soon | 401, 403, 405 |
| 8C | M/I Facility ID | 336 |
| 8E | M/I DUR/PPS Level Of Effort | 474 |
| 80 | Drug-Diagnosis Mismatch | 407, 424 |
| 81 | Claim Too Old | 401 |
| 82 | Claim Is Post-Dated | 401 |
| 83 | Duplicate Paid/Captured Claim | 201, 401, 402, 403, 407 |
| 84 | Claim Has Not Been Paid/Captured | 201, 401, 402 |
| 85 | Claim Not Processed | None |
| 86 | Submit Manual Reversal | None |
| 87 | Reversal Not Processed | None |
| 88 | DUR Reject Error | |
| 89 | Rejected Claim Fees Paid | |
| 90 | Host Hung Up | Host Disconnected Before Session Completed |
| 91 | Host Response Error | Response Not In Appropriate Format To Be Displayed |
| 92 | System Unavailable/Host Unavailable | Processing Host Did Not Accept Transaction/ Did Not Respond Within Time Out Period |
| *95 | Time Out | |
| *96 | Scheduled Downtime | |
| *97 | Payer Unavailable | |
| *98 | Connection To Payer Is Down | |
| 99 | Host Processing Error | Do Not Retransmit Claim(s) |
| AA | Patient Spenddown Not Met | |
| AB | Date Written Is After Date Filled | |
| AC | Product Not Covered Nonparticipating Manufacturer | |
| AD | Billing Provider Not Eligible To Bill This Claim Type | |
| AE | QMB (Qualified Medicare Beneficiary)-Bill Medicare | |
| AF | Patient Enrolled Under Managed Care | |
| AG | Days Supply Limitation For Product/Service | |
| AH | Unit Dose Packaging Only Payable For Nursing Home Recipients | |
| AJ | Generic Drug Required | |
| AK | M/I Software Vendor/Certification ID | 110 |
| AM | M/I Segment Identification | 111 |
| A9 | M/I Transaction Count | 109 |
| BE | M/I Professional Service Fee Submitted | 477 |
| B2 | M/I Service Provider ID Qualifier | 202 |
| CA | M/I Patient First Name | 310 |
| CB | M/I Patient Last Name | 311 |
| CC | M/I Cardholder First Name | 312 |
| CD | M/I Cardholder Last Name | 313 |

| REJECT CODE | EXPLANATION | FIELD NUMBER POSSIBLY IN ERROR |
|---|---|---|
| CE | M/I Home Plan | 314 |
| CF | M/I Employer Name | 315 |
| CG | M/I Employer Street Address | 316 |
| CH | M/I Employer City Address | 317 |
| CI | M/I Employer State/Province Address | 318 |
| CJ | M/I Employer Zip Postal Zone | 319 |
| CK | M/I Employer Phone Number | 320 |
| CL | M/I Employer Contact Name | 321 |
| CM | M/I Patient Street Address | 322 |
| CN | M/I Patient City Address | 323 |
| CO | M/I Patient State/Province Address | 324 |
| CP | M/I Patient Zip/Postal Zone | 325 |
| CQ | M/I Patient Phone Number | 326 |
| CR | M/I Carrier ID | 327 |
| CW | M/I Alternate ID | 330 |
| CX | M/I Patient ID Qualifier | 331 |
| CY | M/I Patient ID | 332 |
| CZ | M/I Employer ID | 333 |
| DC | M/I Dispensing Fee Submitted | 412 |
| DN | M/I Basis Of Cost Determination | 423 |
| DQ | M/I Usual And Customary Charge | 426 |
| DR | M/I Prescriber Last Name | 427 |
| DT | M/I Unit Dose Indicator | 429 |
| DU | M/I Gross Amount Due | 430 |
| DV | M/I Other Payer Amount Paid | 431 |
| DX | M/I Patient Paid Amount Submitted | 433 |
| DY | M/I Date Of Injury | 434 |
| DZ | M/I Claim/Reference ID | 435 |
| EA | M/I Originally Prescribed Product/Service Code | 445 |
| EB | M/I Originally Prescribed Quantity | 446 |
| EC | M/I Compound Ingredient Component Count | 447 |
| ED | M/I Compound Ingredient Quantity | 448 |
| EE | M/I Compound Ingredient Drug Cost | 449 |
| EF | M/I Compound Dosage Form Description Code | 450 |
| EG | M/I Compound Dispensing Unit Form Indicator | 451 |
| EH | M/I Compound Route Of Administration | 452 |
| EJ | M/I Originally Prescribed Product/Service ID Qualifier | 453 |
| EK | M/I Scheduled Prescription ID Number | 454 |
| EM | M/I Prescription/Service Reference Number Qualifier | 445 |
| EN | M/I Associated Prescription/Service Reference Number | 456 |
| EP | M/I Associated Prescription/Service Date | 457 |
| ER | M/I Procedure Modifier Code | 459 |
| ET | M/I Quantity Prescribed | 460 |
| EU | M/I Prior Authorization Type Code | 461 |
| EV | M/I Prior Authorization Number Submitted | 462 |
| EW | M/I Intermediary Authorization Type ID | 463 |
| EX | M/I Intermediary Authorization ID | 464 |

| REJECT CODE | EXPLANATION | FIELD NUMBER POSSIBLY IN ERROR |
|---|---|---|
| EY | M/I Provider ID Qualifier | 465 |
| EZ | M/I Prescriber ID Qualifier | 466 |
| E1 | M/I Product/Service ID Qualifier | 436 |
| E3 | M/I Incentive Amount Submitted | 438 |
| E4 | M/I Reason For Service Code | 439 |
| E5 | M/I Professional Service Code | 440 |
| E6 | M/I Result Of Service Code | 441 |
| E7 | M/I Quantity Dispensed | 442 |
| E8 | M/I Other Payer Date | 443 |
| E9 | M/I Provider ID | 444 |
| FO | M/I Plan ID | 524 |
| GE | M/I Percentage Sales Tax Amount Submitted | 482 |
| HA | M/I Flat Sales Tax Amount Submitted | 481 |
| HB | M/I Other Payer Amount Paid Count | 341 |
| HC | M/I Other Payer Amount Paid Qualifier | 342 |
| HD | M/I Dispensing Status | 343 |
| HE | M/I Percentage Sales Tax Rate Submitted | 483 |
| HF | M/I Quantity Intended To Be Dispensed | 344 |
| HG | M/I Days Supply Intended To Be Dispensed | 345 |
| H1 | M/I Measurement Time | 495 |
| H2 | M/I Measurement Dimension | 496 |
| H3 | M/I Measurement Unit | 497 |
| H4 | M/I Measurement Value | 499 |
| H5 | M/I Primary Care Provider Location Code | 469 |
| H6 | M/I DUR Co-Agent ID | 476 |
| H7 | M/I Other Amount Claimed Submitted Count | 478 |
| H8 | M/I Other Amount Claimed Submitted Qualifier | 479 |
| H9 | M/I Other Amount Claimed Submitted | 480 |
| JE | M/I Percentage Sales Tax Basis Submitted | 484 |
| J9 | M/I DUR Co-Agent ID Qualifier | 475 |
| KE | M/I Coupon Type | 485 |
| M1 | Patient Not Covered In This Aid Category | |
| M2 | Recipient Locked In | |
| M3 | Host PA/MC Error | |
| M4 | Prescription/Service Reference Number/Time Limit Exceeded | |
| M5 | Requires Manual Claim | |
| M6 | Host Eligibility Error | |
| M7 | Host Drug File Error | |
| M8 | Host Provider File Error | |
| ME | M/I Coupon Number | 486 |
| MZ | Error Overflow | |
| NE | M/I Coupon Value Amount | 487 |
| NN | Transaction Rejected At Switch Or Intermediary | |
| PA | PA Exhausted/Not Renewable | |
| PB | Invalid Transaction Count For This Transaction Code | 103, 109 |
| PC | M/I Claim Segment | 111 |
| PD | M/I Clinical Segment | 111 |

| REJECT CODE | EXPLANATION | FIELD NUMBER POSSIBLY IN ERROR |
|---|---|---|
| PE | M/I COB/Other Payments Segment | 111 |
| PF | M/I Compound Segment | 111 |
| PG | M/I Coupon Segment | 111 |
| PH | M/I DUR/PPS Segment | 111 |
| PJ | M/I Insurance Segment | 111 |
| PK | M/I Patient Segment | 111 |
| PM | M/I Provider Provider Segment | 111 |
| PN | M/I Prescriber Segment | 111 |
| PP | M/I Pricing Segment | 111 |
| PR | M/I Prior Authorization Segment | 111 |
| PS | M/I Transaction Header Segment | 111 |
| PT | M/I Workers' Compensation Segment | 111 |
| PV | Nonmatched Associated Prescription/Service Date | 457 |
| PW | Nonmatched Employer ID | 333 |
| PX | Nonmatched Other Payer ID | 340 |
| PY | Nonmatched Unit Form/Route of Administration | 451, 452, 600 |
| PZ | Nonmatched Unit Of Measure To Product/Service ID | 407, 600 |
| P1 | Associated Prescription/Service Reference Number Not Found | 456 |
| P2 | Clinical Information Counter Out Of Sequence | 493 |
| P3 | Compound Ingredient Component Count Does Not Match Number Of Repetitions | 447 |
| P4 | Coordination Of Benefits/Other Payments Count Does Not Match Number Of Repetitions | 337 |
| P5 | Coupon Expired | 486 |
| P6 | Date Of Service Prior To Date Of Birth | 304, 401 |
| P7 | Diagnosis Code Count Does Not Match Number Of Repetitions | 491 |
| P8 | DUR/PPS Code Counter Out Of Sequence | 473 |
| P9 | Field Is Nonrepeatable | |
| RA | PA Reversal Out Of Order | |
| RB | Multiple Partials Not Allowed | |
| RC | Different Drug Entity Between Partial & Completion | |
| RD | Mismatched Cardholder/Group ID-Partial To Completion | 301, 302 |
| RE | M/I Compound Product ID Qualifier | 488 |
| RF | Improper Order Of 'Dispensing Status' Code On Partial Fill Transaction | |
| RG | M/I Associated Prescription/service Reference Number On Completion Transaction | 456 |
| RH | M/I Associated Prescription/Service Date On Completion Transaction | 457 |
| RJ | Associated Partial Fill Transaction Not On File | |
| RK | Partial Fill Transaction Not Supported | |
| RM | Completion Transaction Not Permitted With Same 'Date Of Service' As Partial Transaction | 401 |
| RN | Plan Limits Exceeded On Intended Partial Fill Values | 344, 345 |
| RP | Out Of Sequence 'P' Reversal On Partial Fill Transaction | |
| RS | M/I Associated Prescription/Service Date On Partial Transaction | 457 |
| RT | M/I Associated Prescription/Service Reference Number On Partial Transaction | 456 |
| RU | Mandatory Data Elements Must Occur Before Optional Data Elements In A Segment | |
| R1 | Other Amount Claimed Submitted Count Does Not Match Number Of Repetitions | 478, 480 |
| R2 | Other Payer Reject Count Does Not Match Number Of Repetitions | 471, 472 |
| R3 | Procedure Modifier Code Count Does Not Match Number Of Repetitions | 458, 459 |
| R4 | Procedure Modifier Code Invalid For Product/Service ID | 407, 436, 459 |
| R5 | Product/Service ID Must Be Zero When Product/Service ID Qualifier Equals 06 | 407, 436 |

| REJECT CODE | EXPLANATION | FIELD NUMBER POSSIBLY IN ERROR |
|---|---|---|
| R6 | Product/Service Not Appropriate For This Location | 3Ø7, 4Ø7, 436 |
| R7 | Repeating Segment Not Allowed In Same Transaction | |
| R8 | Syntax Error | |
| R9 | Value In Gross Amount Due Does Not Follow Pricing Formulae | 43Ø |
| SE | M/I Procedure Modifier Code Count | 458 |
| TE | M/I Compound Product ID | 489 |
| UE | M/I Compound Ingredient Basis Of Cost Determination | 49Ø |
| VE | M/I Diagnosis Code Count | 491 |
| WE | M/I Diagnosis Code Qualifier | 492 |
| XE | M/I Clinical Information Counter | 493 |
| ZE | M/I Measurement Date | 494 |

# Appendix D
# Performance Drug Program Tear-off Information Sheet

**CAREMARK**
**PERFORMANCE DRUG PROGRAM (PDP)**
**Eligible Person Information**

- **The Performance Drug Program (PDP) is a program developed by Caremark, the pharmacy benefit manager who administers the prescription drug benefit portion of your health plan.**
- Your health plan sponsor has chosen to implement the PDP as part of your overall drug benefit.
- Under PDP, Caremark compensates the retail pharmacy for the time and effort spent discussing drug selection alternatives from the Caremark Performance Drug List (PDL) with you and your doctor. A Performance Drug was selected from the PDL as part of a continuing effort to keep health care affordable for both you and your health plan sponsor.
- The PDL is a clinically approved, economically modeled subset of Caremark's Prescribing Guide. The PDL and the Prescribing Guide have been reviewed and approved by the Caremark Pharmacy & Therapeutics Committee.
- Your participation in the program is completely voluntary and, as such, you can choose whether or not to participate.

*©2007 Caremark. All Rights Reserved*

# Appendix E
# Drugs with Unusual Submission Requirements

| DRUG NAME | TRANSMIT QUANTITY | COMMON DIRECTIONS | COMMON DAY SUPPLY | COMMENTS |
|---|---|---|---|---|
| **ORAL TABLETS/CAPSULES** | | | | |
| Accutane® (Amnesteem®, Claravis™, Sotret™) | Bill as 1 = one capsule | One tablet daily (may see two daily or alternating daily therapies) | 30 capsules = 30 day supply | Maximum 30 day supply can be dispensed. Must be dispensed to patient prior to "Do Not Dispense After Date" (7 days from office visit) provided by IPLEDGE. All guidelines are required. www.ipledgeprogram.com |
| Actonel® | Bill as 1 = one tablet | 35 mg tablets, one tablet weekly | 4 tablets = 28 day supply | Commonly incorrectly billed as 28 for 28 day supply, or other quantity that exceeds plan limitations |
| Allegra® 180mg Tablets | Bill as 1 = one tablet | One tablet daily | 30 tablets = 30 day supply | Commonly mistaken for Allegra 60 mg and dispensed as twice daily |
| Amerge® | Bill as 1 = one tablet | One tablet, may repeat once after 4 hours | Varies - day supply must be supported with maximum dose for day supply adjudicated/ documented on prescription | Commonly billed without directions to support quantity (confirm dosage for therapy and document) |
| Anzemet® | Bill as 1 = one tablet | Take up to two tablets one hour prior to surgery/chemotherapy | 4 tablets = 28 day supply | Commonly billed without directions to support quantity (confirm dosage for therapy and document) |
| Axert® | Bill as 1 = one tablet | One tablet, may repeat after 2 hours | Varies - day supply must be supported with maximum dose for day supply adjudicated/ documented on prescription | Commonly billed without directions to support quantity (confirm dosage for therapy and document) |
| Boniva® | Bill as 1 = one tablet | One tablet monthly | One tablet = 1 month supply | Commonly incorrectly billed as one tablet weekly |
| Dostinex® cabergoline | Bill as 1 = one tablet | One tablet twice weekly; varies | 8 tablets = 28 day supply | Commonly billed without directions to support quantity (confirm dosage for therapy and document) |
| Fosamax® Fosamax PLUS D™ | Bill as 1 = one tablet | One tablet daily or weekly, depending on strength/dosage | 4 tablets = 28 day supply, or 30 tablets = 30 days depending on therapy | Commonly incorrectly billed without directions to support quantity (confirm dosage for therapy and document) |

| DRUG NAME | TRANSMIT QUANTITY | COMMON DIRECTIONS | COMMON DAY SUPPLY | COMMENTS |
|---|---|---|---|---|
| Gleevec® | Bill as 1 = one tablet | Once or twice daily (400-600mg daily) | 30 - 60 tablets = 30 day supply; varies | Commonly incorrectly billed without directions to support quantity (confirm dosage for therapy and document) |
| Helidac® | Bill as 56 (14 blister cards each containing 4 doses) = one box of 56 doses each containing 4 tablets | Take contents of one card daily in four divided doses of four tablets per dose | 56 = 14 day supply | Each Card has 4 doses (each dose = 4 pills). Commonly incorrectly billed for total pills or number of cards. Supplied in boxes of 14 cards |
| Imitrex® | Bill as 1 = one tablet | One tablet, may repeat after 2 hours | Varies - day supply must be supported with maximum dose for day supply adjudicated/ documented on prescription | Commonly incorrectly billed without directions to support quantity (confirm dosage for therapy and document) |
| Lariam® | Bill as 1 = one tablet | One tablet weekly (prophylaxis) | 4 tablets = 28 day supply | Commonly incorrectly billed as 28 for 28 day supply or other quantity that exceeds plan limitations |
| Maxalt®, Maxalt-MLT® | Bill as 1 = one tablet | 1 tablet, may repeat after 2 hours | Varies - day supply must be supported with maximum dose for day supply adjudicated/ documented on prescription | Commonly incorrectly billed without directions to support quantity (confirm dosage for therapy and document) |
| Plan B® | Bill as 2 = one kit (2 tablets) | One tablet initially, one tablet 12 hours after initial dose | One kit = 1 day supply | Commonly incorrectly billed as 1 due to confusion with Preven® |
| Pravigard™ Pac | Bill as 1 = one card | One card (2 tablets) daily | 30 cards = 30 day supply | Commonly incorrectly billed as 60 for a 30 day supply |
| Prevacid® NapraPAC™ | Bill as 84 = one box with four weekly dosage cards containing 21 dosage units | One Prevacid® and 2 Naprosyn® daily | 84 = 28 day supply | Commonly incorrectly billed as number of weekly administration cards or as one kit |
| Preven™ | Bill as 1 = one kit | Two tablets initially, two tablets 12 hours after initial dose (kit also contains pregnancy test) | One kit = 1 day supply | Commonly incorrectly billed as 4 (number of tablets in kit) |
| PREVPAC® | Bill as 1 = one card (8 dosage units) | One card (8 dosage units) daily for 10 to 14 days | 14 cards = 14 days (8 dosage units daily) | Commonly incorrectly billed as number of dosage units |
| Prozac® Weekly™ | Bill as 1 = one capsule | One capsule weekly | 4 capsules = 28 day supply | Commonly incorrectly billed as quantities greater than 1 per week or 28 for a 28 day supply |
| Relpax® | Bill as 1 = one tablet | One tablet, may repeat after 2 hours | Varies - day supply must be supported with maximum dose for day supply adjudicated/ documented on prescription | Commonly incorrectly billed without directions to support quantity (confirm dosage for therapy and document) |
| Seasonale® | Bill as 91 = one compact | One active tablet daily for 84 consecutive days followed by 7 days of inactive tablets | 91 tablets = 91 day supply | Attempt to bill for correct day supply before reduction to max day supply allowed by Plan |

| DRUG NAME | TRANSMIT QUANTITY | COMMON DIRECTIONS | COMMON DAY SUPPLY | COMMENTS |
|---|---|---|---|---|
| Sporanox PulsePak® | Bill as 28 = one box (28 capsules) | Four capsules daily for one week, followed by 3 weeks off | One box = 28 day supply | Commonly incorrectly billed as 120 (total number of capsules) |
| Zomig® | Bill as 1 = one tablet | One tablet, may repeat after 2 hours | Varies - day supply must be supported with maximum dose for day supply adjudicated/ documented on prescription | Commonly billed without directions to support quantity (confirm dosage for therapy and document) |
| **ORAL SUSPENSIONS/SOLUTIONS** | | | | |
| Gelclair® | Bill as 15 = one (15 ml) packet; 225 = one box of 15 (15ml) packets | One packet used orally as directed three times daily | 225 ml= 5 day supply | Commonly incorrectly billed for number of packets in box |
| GoLYTELY® | Bill as 4000 = one container | Drink 4 L prior to exam | 4000 = 1 day supply | Common confusion due to HalfLytely® billing |
| HalfLytely® | Bill as 1 = one kit (combination product with tablets) | Complete therapy as directed in packaging | One single use kit = 1 day supply | Commonly incorrectly billed for total milliliters (2000) |
| Monurol® | Bill as 1 = one (3 gram) sachet | One sachet as a single dose | One sachet = 1 day supply | Commonly incorrectly billed as total grams |
| Questran® cholestyramine | Bill as 1 = one gram<br>Bill as 1 = one packet | Specified gram dose once or twice daily | 378 grams = 30 day supply<br>60 packets = 30 day supply | Billing varies for packets and containers. For example: Bill 378 gram container as 378 (9 grams per scoop = 42 scoops in each container) |
| Questran® Lite cholestyramine lite | Bill as 1 = one gram<br>Bill as 1 = one packet | Specified gram dose once or twice daily | 268 grams= 30 day supply<br>60 packets = 30 day supply | Billing varies for packets and containers. For example: Bill 268 gram container as 268 (9 grams per scoop = 29 scoops in each container) |
| Zmax® | Bill as 1 = one bottle | Take entire contents at once | One bottle = 1 day supply | Commonly incorrectly billed for 60 (total milliliters) or 2 (total grams) |
| **RECTAL/VAGINAL** | | | | |
| Diastat® and Diastat® AcuDial™ | Bill as 1 = one package of two doses (twin pack) | One dosage as needed, may repeat as directed (maximum 5 treatments monthly - separated by 5 days) | One package = 5 day supply | Commonly incorrectly billed as 2 (number of dosages in package) |
| Estrace® Cream | Bill as 42.5 = one tube of 42.5 grams | Titration therapy with maintenance of 1 application weekly | One 42.5 gram tube = 30 day supply | Commonly incorrectly billed for greater than 1 tube per month (confirm dosage for therapy, include titration if needed, and document) |
| Estring® | Bill as 1 = one ring | One ring every 90 days | One ring = 90 day supply | Commonly incorrectly billed as more than one ring |
| Femring™ | Bill as 1 = one ring | One ring every 90 days | One ring = 90 day supply | Commonly incorrectly billed as more than one ring |
| Metrogel® Kit (contains gel and cleanser) | Bill as 1 = one kit | Cleanse and apply once daily | One kit = 30 day supply | Commonly incorrectly billed as total grams |

| DRUG NAME | TRANSMIT QUANTITY | COMMON DIRECTIONS | COMMON DAY SUPPLY | COMMENTS |
|---|---|---|---|---|
| NuvaRing® | Bill as 1 = one ring | Use one ring for 3 weeks, remove for 1 week | One ring = 28 day supply | Box of 3 can be split. Commonly incorrectly billed 3 for 28 days |
| Premarin® Cream | Bill as 1 = one gram | Titration therapy with maintenance of 1 application weekly | One 42.5 gram tube = 30 day supply | Commonly incorrectly billed for greater than 1 tube per month |
| Vagifem® | Bill as 1 = one tablet | One tablet twice weekly (maintenance) one tablet daily x 2 weeks, then twice weekly (initial) | 8 tablets = 28 day supply (maintenance) 18 tablets = 28 day supply (initial) | Commonly incorrectly billed as 18 for 28 day supply or other quantity that exceeds plan limitations |
| **MEDICAL DEVICES/TESTING SUPPLIES** | | | | |
| Glucometers (all manufacturers) | Bill as 1 = one meter | Varies | Varies | Commonly incorrectly billed for more than one meter |
| Lancets (all manufacturers) | Bill as 1 = one lancet | Varies | Varies | Commonly incorrectly billed without directions to support quantity (clinical documentation of expectation of use) |
| Mirena® Intrauterine Device | Bill as 1 = one box | Use one device | One = 30 day supply (ulilization of device extends beyond day supply) | Commonly incorrectly billed as total milligrams |
| Ortho ALL-FLEX® diaphragm (and all diaphragms) | Bill as 1 = one diaphragm | Use one device | One = 30 day supply (ulilization of device extends beyond day supply) | Commonly incorrectly billed using the size as the billed quantity |
| Syringes (all manufacturers) | Bill per syringe | Varies | Varies | Commonly incorrectly billed without directions to support quantity (clinical documentation of expectation of use) |
| Test Strips (all manufacturers) | Bill per strip | Varies | Varies | Commonly billed without directions to support quantity (clinical documentation of expectation of use) |
| Zoladex® | Bill as 1 = one implant | One monthly (3.6 mg implant) or one every 3 months (10.8 mg implant) | One 3.6 mg implant = 30 day supply One 10.8 mg implant = 90 day supply | Commonly incorrectly billed for greater than 1 per 30/90 days |
| **TOPICAL PREPARATIONS** | | | | |
| Aldara™ | Bill as 12 = one box (12 packets) | Apply 2-5 times weekly | 1-2 boxes (12-24 packets) = 28 day supply | Twelve single use packets per box (confirm dosage for therapy and document) |
| AnaMantle HC® | Bill as 20 = one box (20 kits) | Apply twice daily | 20 kits = 10 day supply | Commonly incorrectly billed as total grams. Box contains 20 single use kits |
| AnaMantle HC® Cream | Bill as 98 = one box of 14 (7 gram) tubes | Apply twice daily | 98 = 7 day supply | Commonly incorrectly billed as total grams or as one kit |

| DRUG NAME | TRANSMIT QUANTITY | COMMON DIRECTIONS | COMMON DAY SUPPLY | COMMENTS |
|---|---|---|---|---|
| Androgel® Gel Pump | Bill as 150 = one box [2 (75 gram) pumps] | 4 doses (5 grams) applied daily<br>6 doses (7.5 grams) applied daily<br>8 doses (10 grams) applied daily | 150 = 30 day supply (4 doses/daily)<br>150 = 20 day supply (6 doses/daily)<br>300 = 30 day supply (8 doses/daily) | Commonly billed without directions to support quantity (confirm dosage for therapy and document) |
| Brevoxyl® -4 Acne Wash Kit (contains wash and lotion) | Bill as 1 = one kit | Apply once to twice daily | One kit = 30 day supply | Commonly incorrectly billed as total grams |
| Brevoxyl® -8 Acne Wash Kit (contains wash and lotion) | Bill as 1 = one kit | Apply once to twice daily | One kit = 30 day supply | Commonly incorrectly billed as total grams |
| Carmol® Scalp Treatment Kit | Bill as 1 = one kit | Application of shampoo and lotion vary per package directions | One kit = 30 day supply | Commonly incorrectly billed for total grams |
| Cordran® Tape | Bill as 1 = one roll of tape | Varies | Varies | Commonly incorrectly billed for dosage/length of tape (confirm dosage for therapy and document) |
| Minocin® PAC (contains capsules, serum, wipes, and masque) | Bill as 1 = one kit | Take 2 capsules daily, use serum, wipes, and masque as directed | One kit = 30 day supply | Commonly incorrectly billed as number of capsules in kit |
| Penlac® | Bill as 6.6 = one (6.6 ml) vial | Apply topically to nails as directed | 6.6 ml = 30 day supply (1080 applications) | Commonly incorrectly billed for more than one bottle per month |
| Tretin-X® Kit (contains cleanser and moisturizer) | Bill as 1 = one kit | Cleanse and apply once daily | One kit = 30 day supply | Commonly incorrectly billed as grams |
| **TRANSDERMAL SYSTEMS** | | | | |
| Androderm® | Bill as 30 = one box | Apply one patch daily | 30 patches = 30 day supply | Commonly incorrectly billed as 75 or 150 (total mg strength) |
| Catapres-TTS® | Bill as 1 = one patch (4 = 4 patches) | Apply one patch weekly | 4 patches = 28 day supply | Commonly incorrectly billed as 12 for 28 day supply |
| Climara® Patch | Bill as 4 = one box (4 patches) | One patch weekly | 4 patches = 28 day supply | Commonly incorrectly billed for quantities greater than 1 per week |
| Estraderm® Patch | Bill as 1 = one patch (box contains 8 patches) | One patch twice weekly | 8 patches = 28 day supply | Commonly incorrectly billed for quantities greater than 2 per week |
| Ortho-Evra® | Bill as 3 = one box | Apply one patch weekly for 3 weeks, remove for 1 week | 3 patches = 28 day supply | Commonly incorrectly billed as 28 for a 28 day supply |
| Transderm -SCōP® | Bill as 1 = one patch | One patch every 3 days for motion sickness | One patch = 3 days supply | Boxes can be broken. Commonly incorrectly billed for quantities greater than 10 in 30 days |
| Vivelle-Dot® | Bill as 8 = one box (8 patches) | One patch twice weekly | 8 patches = 28 day supply | Commonly incorrectly billed as quantity greater than 2 per week |

| DRUG NAME | TRANSMIT QUANTITY | COMMON DIRECTIONS | COMMON DAY SUPPLY | COMMENTS |
|---|---|---|---|---|
| **INJECTABLES** | | | | |
| Actimmune® | Bill as 6 = one box of 12 (0.5 ml) vials | Three injections weekly | 12 vials = 28 day supply | Single use vials, commonly incorrectly billed as 12 (number of vials) |
| Aranesp® | Bill per milliliter (metric decimal quantity, e.g. 0.3ml, 0.4ml) | One injection weekly | Varies | Commonly incorrectly billed as 200 or 300 (micrograms per dose) or number of injections |
| Arixtra® | Bill per milliliter (metric decimal quantity, e.g. 0.4ml, 0.5ml) | One injection daily | per ml (example 5) = 10 day supply | Commonly incorrectly billed as 10 (number of syringes). An example of correct billing for Arixtra 2.5 mg/0.5 ml: 0.5 ml syringes x 10 syringes = bill as 5 |
| Avonex® | Bill as 4 = one kit (4 syringes) | One injection weekly | 4 syringes = 28 day supply | Commonly incorrectly billed as 8 for a 28 day supply |
| Boniva® Injectable | Bill as 1 = one (3 ml) injection kit | One injection every 3 months | One injection = 3 month supply | Commonly incorrectly billed as 3 (number of milliliters) |
| Byetta® | Bill as 1.2 = one 5mcg/dose pen<br>Bill as 2.4 = one 10mcg/dose pen | One injection twice daily | 1.2 or 2.4 ml = 30 day supply | Commonly incorrectly billed for incorrect package size or total micrograms |
| Caverject® (Impulse Kit) | Bill as 1 = one kit (2 trays each containing a syringe system) | One injection up to 3 times per week | 6 kits = 28 day supply | Commonly incorrectly billed as number of syringes |
| Cerezyme® | Bill as 1 = one vial | One injection 3 times weekly or once every 2 weeks; varies | 12-20 vials = 28 day supply | Commonly incorrectly billed as number of units/ milliliters |
| Copaxone® | Bill as 1 = one kit | One injection daily | One kit = 30 day supply | Commonly incorrectly billed as 30 for a 30 day supply |
| Depo-Provera® | Bill as 1 = one syringe/vial | One injection every 3 months | One syringe/vial = 3 month supply | Commonly incorrectly billed as 150 (the milligram strength) |
| Edex™ | Bill as 1 = one kit (regardless of 2 or 6 injections/kit) | One injection up to 3 times per week | 2 kits = 28 day supply (6 packs)<br>6 kits = 28 day supply (2 packs) | Commonly incorrectly billed as number of syringes |
| Enbrel® multiple-use vial 4-dose carton (25mg dose) | Bill as 4 = one box (4 dose trays) | One injection twice weekly | 8 dose trays = (2 boxes) 28 day supply | Common confusion due to Enbrel® single-use vial billing |
| Enbrel® single-use prefilled (50 mg dose) | Bill per milliliter (metric decimal quantity, e.g. 0.98ml/syringe) | One injection twice weekly | 50 mg dosage: 3.92 ml (carton of 4 syringes) | Commonly incorrectly billed as number of syringes |
| Epogen® | Bill per milliliter | One injection once to three times weekly; Varies | Varies | Commonly billed without directions to support quantity (confirm dosage for therapy and document) |

| DRUG NAME | TRANSMIT QUANTITY | COMMON DIRECTIONS | COMMON DAY SUPPLY | COMMENTS |
|---|---|---|---|---|
| Forteo® | Bill as 3 = one (3 ml) syringe with 28 doses | One dose injected daily | 3 ml = 28 day supply | Commonly incorrectly billed without directions to support quantity (confirm dosage for therapy and document) |
| Fuzeon® | Bill as 1 = one kit (60 vials) | One injection twice daily | One kit = 30 day supply | Commonly incorrectly billed as 60 for a 30 day supply. |
| Ganirelix (1ml syringe with 0.5ml of medication) | Bill as 0.5 = one syringe | One injection daily | Varies; 1 to 14 days of therapy per treatment injection | Commonly incorrectly billed for number of syringes not total milliliters |
| Haldol® Decanoate | Bill per milliliter | One injection monthly or every 4 weeks | one = 28/30 day supply | Commonly incorrectly billed for mg strength. |
| Humira® | Bill as 1 = dose tray | One injection every other week (maintenance); Initial therapy may include a titration | 2 (dose trays)= 28 day supply (titration therapy starter package 6 = 28 day supply) | Commonly incorrectly billed as 4 for a 28 day supply, or not decreasing quantity to maintenance therapy |
| Imitrex® Injection | Bill as 1 = one kit (2 syringes) | One injection, may repeat at least 1 hour later, maximum of 2 (6 mg) injections/ 24 hours | Varies - day supply must be supported with maximum dose for day supply adjudicated/ documented on prescription | Commonly incorrectly billed without directions to support quantity (confirm dosage for therapy and document) |
| Insulin (all manufacturers) | Bill per milliliter (10 = one 10 ml vial) | Varies | Varies | Commonly incorrectly billed without directions to support quantity (confirm dosage for therapy and document) |
| Kepivance® | Bill as 1 = one vial | One injection daily for 6 days | 6 vials = 28/30 day supply | Commonly incorrectly billed as mg strength |
| Kineret® | Bill as 18.76 = one box of 28 syringes | One injection daily | 18.76 = 28 day supply | Commonly incorrectly billed as 28. |
| Lioresal® | Bill as 1 = one ampule | Varies; bolus injections and pump administration | Varies | Commonly incorrectly billed for total milliliters or milligrams-kits contain one or two ampules per kit (confirm dosage for therapy and document) |
| Lovenox® | Bill as ml based on:<br>30mg = 0.3 60mg = 0.6<br>80mg = 0.8 100mg = 1<br>120mg = 0.8 150mg = 1 | One injection once or twice daily | Varies | Commonly incorrectly billed as number of syringes or total mg dose instead of milliliter quantity |
| Lupron Depot® | Bill as 1 = one kit | One injection per treatment protocol (i.e. monthly, every 3 months, etc.) | One kit = day supply appropriate for treatment protocol | Commonly incorrectly billed as 3 (3 ml in package) |
| Neupogen® | Bill per milliliter | Varies | Varies | Commonly incorrectly billed as mcg strength or number of vials/syringes |
| Novarel® | Bill as 1 = one (10ml) vial | Varies | Varies | Commonly incorrectly billed for total milliliters, or without directions to support quantity (confirm dosage for therapy and document) |

| DRUG NAME | TRANSMIT QUANTITY | COMMON DIRECTIONS | COMMON DAY SUPPLY | COMMENTS |
|---|---|---|---|---|
| Orthovisc® | Bill as 2 = one (2 ml) syringe | One injection per affected knee weekly | One knee: 8 ml (4 syringes) = 28 day supply<br>Two knees: 16 ml (8 syringes) = 28 days | Commonly incorrectly billed as number of mg or incorrectly billed as number of syringes supply |
| Pegasys® | Bill as 1 = one single-use vial (1ml) or 1 = monthly convenience pack kit of 4 pre-filled syringes | One injection weekly | One kit = 28 day supply | Commonly incorrectly billed as 4 (number of vials per kit) |
| Peg-Intron® | Bill as 1 = one kit | One injection weekly | Four kits = 28 day supply | Commonly incorrectly billed as 16 for a 28 day supply |
| Pregnyl® | Bill as 1 = one (10ml) vial | Varies | Varies | Commonly incorrectly billed as total milliliters |
| Raptiva® | Bill as 4 = 1 carton (4 trays) | One injection weekly | 4 vials = 28 day supply | Commonly incorrectly billed as quantities greater than 4 |
| Rebif® | Bill as 0.5 = one (0.5 ml) syringe | Three injections weekly | 6 ml = 28 day supply | Commonly incorrectly billed as 12 (number of syringes). Titration pack billed as 4.2 (total milliliters in all syringes) |
| Risperdal® Consta® | Bill as 1 = one kit | One injection every 2 weeks | 2 kits = 28 day supply | Commonly incorrectly billed as mg strength |
| Synvisc® | Bill as 2 = one (2 ml) syringe | One injection weekly per knee for 3 weeks | One knee: 6 ml = 21 day supply<br>Two knees: 12 ml = 21 day supply | Formatting commonly incorrectly billed as 12 for single knee treatment or greater than 12 in a 21 day period |
| Tice® BCG | Bill as 1 = one vial | One injection weekly | 4 vials = 28 day supply | Commonly incorrectly billed as 50 (mg per vial) |
| Tygacil® | Bill as 1 = one (5 ml) vial | IV infusion every 12 hours | 2 vials = one day supply | Commonly incorrectly billed as total milliliters |
| **INHALERS** | | | | |
| Asmanex Twisthaler® | Bill as 0.24 = one inhaler (all inhalers regardless of inhalations) | One to two inhalations daily (use of 30, 60, or 120 unit inhaler dependent on directions for use) | 0.24 = 30 day supply (regardless of inhaler dispensed) | Commonly incorrectly billed for the number of inhalations, each inhaler is billed as 0.24 regardless of the total inhalations in the Twisthaler |
| Pulmicort Turbuhaler® | Bill as 1 = one inhaler (200 inhalations) | Varies; Maximum of 8 inhalations daily | One inhaler = at least 25 day supply | Commonly incorrectly billed as 200 (inhalations, mcg) or other quantity that exceeds plan limitations |
| Pulmozyme® | Bill as 75 = 1 box of 30 (2.5ml) ampules | Inhale one ampule via nebulizer once daily | 75 ml = 30 day supply | Commonly incorrectly billed as 30 (number of ampules per box) |
| TOBI® | Bill as 5 = one (5ml) ampule | Inhale one ampule via nebulizer twice daily for 28 days, followed by 28 days off | 280 ml (56 ampules) = 28 day supply | Commonly incorrectly billed for number of ampules |

# Appendix F
# The Caremark Diverse Retail Pharmacy Program and Supplier Diversity Profile Form

## Retail Pharmacy Program History with Diversity Program
- Formed in 2004
- Encourages diverse-owned, independent retail pharmacies to become certified business enterprises in order to:
  - Expand potential business opportunities with Caremark
  - Take advantage of targeted, set-aside governmental programs
  - Expand potential new business opportunities with other business entities

## The Caremark Diverse Retail Pharmacy Program is designed to:
- Complement Caremark commitment to sound business practices and social responsibility
- Recognize critical role diverse retail pharmacies play to Caremark success
- Provide outstanding service and solutions to Caremark's customers and clients
- Supports a corporate culture: working to ensure that diverse business enterprises are given a fair opportunity to do business with Caremark
- Provide sustainability, growth and additional business opportunities to diverse retail pharmacies

## The Caremark Diverse Retail Pharmacy Program benefits qualifying independent pharmacies by:
- Recognition as a diverse business enterprises
- Access to targeted, set-aside federal government programs
- Expanded opportunities to sustain and grow business
- Consideration for inclusion in Caremark contracts with clients
- Access to capital financing for business development and growth through governmental programs
- Opportunities to secure contracts with other PBMs, insurance companies, government, and other businesses
- Access to diverse supplier organizations and networks across the United States
- Consideration for future specialized reimbursement programs through Caremark or governmental agencies

## Here's how Diverse Retail Pharmacies can join the program:
- Contract with Caremark an as independent retail pharmacy
- Attain certification (by a government or third-party) as a diverse business enterprise
- Apply for the program by completing and submitting the Caremark Supplier Profile Form

## Step 1: Contracting with Caremark – this step is in process or has been completed as Provider is in receipt of Provider Manual

## Step 2: Diverse Business Enterprise Required Certification
- Caremark recognizes certified, diverse business enterprises, including:
  - Minority Business Enterprise (MBE)
  - Women Business Enterprise (WBE)
  - Disabled Veteran Business Enterprise (DVBE)
  - Small Disadvantaged Business Enterprises (SDBE)
  - Historically Underutilized Business Zones (HUBZ)
  - Government 8(a) Business Enterprise (8(a))
  - Disadvantaged Business Enterprise (DBE)
  - Disabled Business Enterprise (DBE)
- Becoming certified: What does it mean?
  - Pharmacy identified as a diverse-owned and operated business enterprise according to federal or third-party classifications
  - Access to specially designated, set-aside government or private programs, including financial assistance
  - Help sustaining and developing your pharmacy business
- Certifying third-party entity Requires/Provides

- A Certification fee, plus annual renewal fee
  - Inclusion in national network of diverse-owned businesses
  - Access to state/local government business opportunities in most areas
  - Access to grants, loans and other financial assistance nationwide
  - Recognition of status by most state/local government agencies
- Certifying government entity Requires/Provides
  - Minimal or no fees
  - Access to state/local governmental business opportunities
  - Access to grants, SBA business loans and other financial assistance nationwide
  - Recognition by state/local government agencies

### Step 3: Applying for the Program

- Completing the Caremark Supplier Profile Form will:
  - Provide an updated record of the pharmacy in Caremark's Supplier Database
  - Provide updated record of the pharmacy's diverse-owned enterprise certification status
  - Qualify your pharmacy as a possible resource for second-tier opportunities
  - Enable expedited review of the pharmacy's services and capabilities
- Supplier Profile Form should be accompanied by:
  - Current certificates/letters of certifications
  - Sales catalog or company brochure
  - Product profile
  - Capability statement
- Applying for the program is:
  - FREE
  - Easy—Assistance available with Caremark forms
  - Fast—Applying for a diverse business enterprise certification and contracting with Caremark can be completed in 60 to 90 days
  - Simple—Processing of your application to enter the Caremark Diverse Retail Pharmacy program takes approximately one week

### The Results? Caremark's commitment with diverse retail pharmacies speaks for itself:

- During 2005, Caremark spent approximately $5.7 million with diverse-owned independent retail pharmacies
- Today, Caremark contracts with 70 U.S. diverse-owned independent retail pharmacies
- By becoming a certified, diverse business enterprise, contracting as an independent retail pharmacy with Caremark and submitting a Caremark Supplier Diversity Profile Form, your pharmacy will be able to participate in the program

### The Caremark Diversity Program is unique to Caremark and can provide advantages to qualified Providers

- Industry pioneer in developing and implementing a Supplier Diversity Program and Diverse Retail Pharmacy Program
- Only PBM currently offering the Diverse Retail Pharmacy Program
- A staff solely dedicated to supporting this initiative
- Program shows annual 25 percent increase in spend with diverse suppliers
- In recognition of its achievements in supplier diversity, Caremark has received the following awards:
  - Anders C. Rasmussen, Jr., Award, Minority Committee of the Chicago Minority Business Development Council, Inc., April 2003
  - The 2003 Leaders of Distinction Gold Medal Achievement Award, Saludos Hispanos/Saludos.com

**To take advantage of the Diverse Retail Pharmacy Program, submit completed form and accompanying materials to:**

**Caremark Rx, L.L.C.**
**Attn: Reuben Hamilton, Jr.**
**Manager/Supplier Diversity/Strategic Sourcing and Procurement**
**2211 Sanders Road**
**SDP-SSP/NBT-3**
**Northbrook, IL 60062**
**Telephone: 847-559-4253**
**Web site: Diversity@caremarkrx.com**

To obtain a retail pharmacy contracting enrollment packet, see Provider Enrollment section of this Provider Manual.



# Supplier Profile Form

Caremark Vendor ID # ___________ - ________________

## Company Information

All categories marked with an asterisk ( * ) are required during registration

| | | |
|---|---|---|
| Company Name* | | |
| Principle's Name and Title* | | |
| Principle's Email* | | |
| Address* | | |
| Additional Address or P.O. Box | | |
| City* | State/Province* | Zip/Postal code* |
| Telephone Number* | Fax Number* | |
| Internet Address | http://www. | |
| Contact Person and Title* | | |
| Contact Person's Email* | | |
| Year Established* (XXXX) | Average Number of Employees | |
| Tax ID Number | Dun & Bradstreet Number | |
| GROSS ANNUAL SALES FOR THE LAST THREE YEARS | ____ / ____ / ____ $ ______ | |
| | ____ / ____ / ____ $ ______ | |
| | ____ / ____ / ____ $ ______ | |

CAREMARK
It all starts with care

## Organizational / Ownership Data

Legal Structure*

❏ Corporation ❏ Partnership ❏ Sole Proprietorship ❏ Joint Venture ❏ Franchise ❏ Non Profit

If your company is a Partnership or Corporation, please list each person owning more than 10%

Name ______________________ % ________ Name ______________________ % ________

Name ______________________ % ________ Name ______________________ % ________

Name ______________________ % ________ Name ______________________ % ________

Is your company a subsidiary or division of another company? ❏ Yes ❏ No

If Yes, Company Name ______________________

Address ______________________

Do you plan to subcontract any portion of your contract(s) with Caremark Rx? ❏ Yes ❏ No

If yes, Company Name ______________________

Address ______________________

Percentage of Minority Women or Disabled Veteran Ownership* ____________ %

Diversity Category: ❏ MBE ❏ WBE ❏ DVBE ❏ SBE ❏ SDB ❏ HUBZone ❏ None

Diversity Group*

❏ Hispanic American ❏ African American ❏ Asian American ❏ Native American/Alaskan ❏ Woman Owned
❏ Minority Woman Owned ❏ Asian/Pacific Island American ❏ Subcontinent Asian American

US Citizen? ❏ Yes ❏ No

Veteran? ❏ Yes ❏ No

Disabled Veteran? ❏ Yes ❏ No

Vietnam Veteran? ❏ Yes ❏ No

Does your enterprise currently have a Vendor/Supplier Diversity Program? ❏ Yes ❏ No

If Yes, List the program administrator

Name ______________________ Phone# ______________________

What percentage of your vendors or suppliers are from each of the following:

MBE ______ % WBE ______ % DVBE ______ % SBE ______ % SDB ______ $ HUBZone ______ %

What percentage of your purchases are from each of the following:

MBE ______ % WBE ______ % DVBE ______ % SBE ______ % SDB ______ $ HUBZone ______ %

**REMINDER: A copy of your certification(s) must be provided with this profile form.**

## Product(s) / Service(s)

Product(s) / Service(s) Description*

Type of Business / Commodity / Service

❑ Retailer ❑ Manufacturer Rep ❑ Broker ❑ Manufacturer ❑ Wholesaler
❑ Construction Contractor ❑ Professional Services ❑ Consultant ❑ Publication/Broadcaster
❑ Distribution / Dealer ❑ Service Provider ❑ Freight/Transportation ❑ Other

Standard Industrial Classification (SIC) System* __________

North American Industry Classification System (NAICS) Codes __________

Quality Assurance Standards* __________

ES Capabilities? (Electronic Data Interchange)
❑ Yes ❑ No

Geographical Service Area
❑ Local ❑ Regional ❑ National ❑ International Please Specify: __________

## Certification

| | | |
|---|---|---|
| M/WBE Certified* ❑ Yes ❑ No | If yes, List your Regional Council ________ | Certification Expiration Date ____ / ____ / ____ |
| SBA Certified ❑ SDB ❑ 8(a) ❑ HUBZone | | Certification Expiration Date ____ / ____ / ____ |
| State Certified ❑ Yes ❑ No | If Yes, Please specify Certifying Authority ________ | Certification Expiration Date ____ / ____ / ____ |
| DVBE Certified ❑ Yes ❑ No | If Yes, Please specify Certifying Authority ________ | Certification Expiration Date ____ / ____ / ____ |
| MBE Certified ❑ Yes ❑ No | If Yes, Please specify Certifying Authority ________ | Certification Expiration Date ____ / ____ / ____ |
| HUBZone Certified ❑ Yes ❑ No | If Yes, Please specify Certifying Authority ________ | Certification Expiration Date ____ / ____ / ____ |
| Other Certifications (s) ❑ Yes ❑ No | If Yes, Please specify Certifying Authority ________ | Certification Expiration Date ____ / ____ / ____ |

## Payment Information

Method of Payment Accepted:

❑ MasterCard (Caremark Purchasing Card) ❑ Credit Cards Not Accepted ❑ Purchase Order ❑ Check

**Payment Address**

Contact Name ❑ Mr. ❑ Mrs. ❑ Ms.

Address

Additional Address or P.O. Box

| City | State/Province | Zip/Postal code |
|---|---|---|

| Telephone Number | Fax Number |
|---|---|
| Email Address | 1 800-Number |

**Taxation Information**

Contact Name for Sales & Use Tax Questions

| Telephone Number | Email Address |
|---|---|

Will your company be charging tax on items purchased by Caremark? ❑ Yes ❑ No

**REMINDER: A copy of your certification(s) must be provided with this profile form.**

**Please complete and return with a copy of your certification(s) to:**

Caremark Rx L.L.C.
Vendor/Supplier Diversity Department
2211 Sanders Road VSD/NBT-3
Northbrook, Illinois 60062
Phone: 847-559-4253 or 847-559-3158
Fax: 847-559-3887
e-mail: diversity@caremarkrx.com

# Appendix G
# New York State MCO and IPA Provider Contract Guidelines Standard Clauses

*Downloaded as appears on http://www.health.state.ny.us/health_care/managed_care/hmoipa/appendix.htm*

**(REVISED 1/1/07)**

Notwithstanding any other provision of this agreement, contract, or amendment (hereinafter "the Agreement" or "this Agreement") the parties agree to be bound by the following clauses which are hereby made a part of the Agreement. Further, if this Agreement is between a Managed Care Organization and an IPA, or between an IPA and an IPA, such clauses must be included in IPA contracts with providers, and providers must agree to such clauses.

## A. DEFINITIONS FOR PURPOSES OF THIS APPENDIX

"Managed Care Organization" or "MCO" shall mean the person, natural or corporate, or any groups of such persons, certified under Public Health Law Article 44, who enter into an arrangement, agreement or plan or any combination of arrangements or plans which provide or offer, or which do provide or offer, a comprehensive health services plan.

"Independent Practice Association" or "IPA" shall mean an entity formed for the limited purpose of arranging by contract for the delivery or provision of health services by individuals, entities and facilities licensed or certified to practice medicine and other health professions, and, as appropriate, ancillary medical services and equipment, by which arrangements such health care providers and suppliers will provide their services in accordance with and for such compensation as may be established by a contract between such entity and one or more MCOs. "IPA" may also include, for purposes of this Agreement, a pharmacy or laboratory with the legal authority to contract with other pharmacies or laboratories to arrange for or provide services to enrollees of a New York State MCO.

"Provider" shall mean physicians, dentists, nurses, pharmacists and other health care professionals, pharmacies, hospitals and other entities engaged in the delivery of health care services which are licensed and/or certified as required by applicable federal and state law.

## B. GENERAL TERMS AND CONDITIONS

1. This Agreement is subject to the approval of the New York State Department of Health and if implemented prior to such approval, the parties agree to incorporate into this Agreement any and all modifications required by the Department of Health for approval or, alternatively, to terminate this Agreement if so directed by the Department of Health, effective sixty (60) days subsequent to notice, subject to Public Health Law §4403(6)(e). This Agreement is the sole agreement between the parties regarding the arrangement established herein.
2. Any material amendment to this Agreement is subject to the prior approval of the Department of Health, and any such amendment shall be submitted for approval at least 30 days, or ninety (90) days if the amendment adds or materially changes a risk sharing arrangement that is subject to Department of Health review, in advance of anticipated execution. To the extent the MCO provides and arranges for the provision of comprehensive health care services to enrollees served by the Medical Assistance Program, the MCO shall notify and/or submit a copy of such material amendment to DOH or New York City, as may be required by the Medicaid managed care contract between the MCO and DOH (or New York City) and/or the Family Health Plus contract between the MCO and DOH.
3. Assignment of an agreement between an MCO and (1) an IPA, (2) institutional network provider, or (3) medical group provider that serves five percent or more of the enrolled population in a county, or the assignment of an agreement between an IPA and (1) an institutional provider or (2) medical group provider that serves five percent or more of the enrolled population in a county, requires the prior approval of the Commissioner of Health.
4. The provider agrees, or if the Agreement is between the MCO and an IPA or between an IPA and an IPA, the IPA agrees and shall require the IPA's providers to agree, to comply fully and abide by the rules, policies and procedures that the MCO (a) has established or will establish to meet general or specific obligations placed on the MCO by statute, regulation, or DOH or SID guidelines or policies and (b) has provided to the provider at least thirty (30) days in advance of implementation, including but not limited to:
   - quality improvement/management;
   - utilization management, including but not limited to precertification procedures, referral process or protocols, and reporting of clinical encounter data;
   - member grievances; and
   - provider credentialing.

5. The provider or, if the Agreement is between the MCO and an IPA, or between an IPA and an IPA, the IPA agrees, and shall require its providers to agree, to not discriminate against an enrollee based on color, race, creed, age, gender, sexual orientation, disability, place of origin, source of payment or type of illness or condition.
6. If the provider is a primary care practitioner, the provider agrees to provide for twenty-four (24) hour coverage and back up coverage when the provider is unavailable. The provider may use a twenty-four (24) hour back-up call service provided appropriate personnel receive and respond to calls in a manner consistent with the scope of their practice.
7. The MCO or IPA which is a party to this Agreement agrees that nothing within this Agreement is intended to, or shall be deemed to, transfer liability for the MCO's or IPA's own acts or omissions, by indemnification or otherwise, to a provider.
8. Notwithstanding any other provision of this Agreement, the parties shall comply with the provisions of the Managed Care Reform Act of 1996 (Chapter 705 of the Laws of 1996) and Chapter 551 of the Laws of 2006, and all amendments thereto.
9. To the extent the MCO enrolls individuals covered by the Medical Assistance and/or Family Health Plus programs, this Agreement incorporates the pertinent MCO obligations under the Medicaid managed care contract between the MCO and DOH (or New York City) and/or the Family Health Plus contract between the MCO and DOH as if set forth fully herein, including:
   a. The MCO will monitor the performance of the Provider or IPA under the Agreement, and will terminate the Agreement and/or impose other sanctions, if the Provider's or IPA's performance does not satisfy standards set forth in the Medicaid managed care and/or Family Health Plus contracts;
   b. The Provider or IPA agrees that the work it performs under the Agreement will conform to the terms of the Medicaid managed care contract between the MCO and DOH (or between the MCO and New York City) and/or the Family Health Plus contract between the MCO and DOH, and that it will take corrective action if the MCO identifies deficiencies or areas of needed improvement in the Provider's or IPA's performance; and
   c. The Provider or IPA agrees to be bound by the confidentiality requirements set forth in the Medicaid managed care contract between the MCO and DOH (or between the MCO and New York City) and/or the Family Health Plus contract between the MCO and DOH.
   d. The MCO and the Provider or IPA agree that a woman's enrollment in the MCO's Medicaid managed care or Family Health Plus product is sufficient to provide services to her newborn, unless the newborn is excluded from enrollment in Medicaid managed care or the MCO does not offer a Medicaid managed care product in the mother's county of fiscal responsibility.
   e. The MCO shall not impose obligations and duties on the Provider or IPA that are inconsistent with the Medicaid managed care and/or Family Health Plus contracts, or that impair any rights accorded to DOH, the local Department of Social Services, or the United States Department of Health and Human Services.
10. The parties to this Agreement agree to comply with all applicable requirements of the Federal Americans with Disabilities Act.
11. The provider agrees, or if the Agreement is between the MCO and an IPA or between an IPA and an IPA, the IPA agrees and shall require the IPA's providers to agree, to comply with the HIV confidentiality requirements of Article 27-F of the Public Health Law.

**C. PAYMENT; RISK ARRANGEMENTS**

1. **Enrollee Non-liability.** Provider agrees that in no event, including, but not limited to, nonpayment by the MCO or IPA, insolvency of the MCO or IPA, or breach of this Agreement, shall Provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against a subscriber, an enrollee or person (other than the MCO or IPA) acting on his/her/their behalf, for services provided pursuant to the subscriber contract or Medicaid Managed Care contract or Family Health Plus contract and this Agreement, for the period covered by the paid enrollee premium. In addition, in the case of Medicaid Managed Care, provider agrees that, during the time an enrollee is enrolled in the MCO, he/she/it will not bill the New York State Department of Health or the City of New York for Covered Services within the Medicaid Managed Care Benefit Package as set forth in the Agreement between the MCO and the New York State Department of Health. In the case of Family Health Plus, provider agrees that, during the time an enrollee is enrolled in the MCO, he/she/it will not bill the New York State Department of Health for Covered Services within the Family Health Plus Benefit Package, as set forth in the Agreement between the MCO and the New York State Department of Health. This provision shall not prohibit the provider, unless the MCO is a managed long term care plan designated as a Program of All-Inclusive Care for the Elderly (PACE), from collecting copayments,

coinsurance amounts, or permitted deductibles, as specifically provided in the evidence of coverage, or fees for uncovered services delivered on a fee-for-service basis to a covered person provided that provider shall have advised the enrollee in writing that the service is uncovered and of the enrollee's liability therefor prior to providing the service. Where the provider has not been given a list of services covered by the MCO, and/or provider is uncertain as to whether a service is covered, the provider shall make reasonable efforts to contact the MCO and obtain a coverage determination prior to advising an enrollee as to coverage and liability for payment and prior to providing the service. This provision shall survive termination of this Agreement for any reason, and shall supersede any oral or written agreement now existing or hereafter entered into between provider and enrollee or person acting on his or her behalf.

2. **Coordination of Benefits (COB).** To the extent otherwise permitted in this Agreement, the provider may participate in collection of COB on behalf of the MCO, with COB collectibles accruing to the MCO or to the provider. However, with respect to enrollees eligible for medical assistance, or participating in Child Health Plus or Family Health Plus, the provider shall maintain and make available to the MCO records reflecting COB proceeds collected by the provider or paid directly to enrollees by third party payers, and amounts thereof, and the MCO shall maintain or have immediate access to records concerning collection of COB proceeds.
3. The parties agree to comply with and incorporate the requirements of Physician Incentive Plan (PIP) Regulations contained in 42 CFR §438.6(h), 42 CFR §422.208, and 42 CFR §422.210 into any contracts between the contracting entity (provider, IPA, hospital, etc.) and other persons/entities for the provision of services under this Agreement. No specific payment will be made directly or indirectly under the plan to a physician or physician group as an inducement to reduce or limit medically necessary services furnished to an enrollee.

**D. RECORDS; ACCESS**

1. Pursuant to appropriate consent/authorization by the enrollee, the provider will make the enrollee's medical records and other personally identifiable information (including encounter data for government-sponsored programs) available to the MCO (and IPA if applicable), for purposes including preauthorization, concurrent review, quality assurance, provider claims processing and payment. The provider will also make enrollee medical records available to the State for management audits, financial audits, program monitoring and evaluation, licensure or certification of facilities or individuals, and as otherwise required by state law. The provider shall provide copies of such records to DOH at no cost. The provider (or IPA if applicable) expressly acknowledges that he/she/it shall also provide to the MCO and the State (at no expense to the State), on request, all financial data and reports, and information concerning the appropriateness and quality of services provided, as required by law. These provisions shall survive termination of the contract for any reason.
2. When such records pertain to Medicaid or Family Health Plus reimbursable services the provider agrees to disclose the nature and extent of services provided and to furnish records to DOH and/or the United States Department of Health and Human Services, the County Department of Social Services, the Comptroller of the State of New York, the New York State Attorney General, and the Comptroller General of the United States and their authorized representatives upon request. This provision shall survive the termination of this Agreement regardless of the reason.
3. The parties agree that medical records shall be retained for a period of six (6) years after the date of service, and in the case of a minor, for three (3) years after majority or six (6) years after the date of service, whichever is later, or for such longer period as specified elsewhere within this Agreement. This provision shall survive the termination of this Agreement regardless of the reason.
4. The MCO and the provider agree that the MCO will obtain consent directly from enrollees at the time of enrollment or at the earliest opportunity, or that the provider will obtain consent from enrollees at the time service is rendered or at the earliest opportunity, for disclosure of medical records to the MCO, to an IPA or to third parties. If the Agreement is between an MCO and an IPA, or between an IPA and an IPA, the IPA agrees to require the providers with which it contracts to agree as provided above. If the Agreement is between an IPA and a provider, the provider agrees to obtain consent from the enrollee if the enrollee has not previously signed a consent for disclosure of medical records.

**E. TERMINATION AND TRANSITION**

1. Termination or non-renewal of an agreement between an MCO and an IPA, institutional network provider, or medical group provider that serves five percent or more of the enrolled population in a county, or the termination or non-renewal of an agreement between an IPA and an institutional provider or medical group provider that serves five percent or more of the enrolled population in a county, requires notice to the Commissioner of Health. Unless otherwise provided by statute or regulation, the effective date of

termination shall not be less than 45 days after receipt of notice by either party, provided, however, that termination, by the MCO may be effected on less than 45 days notice provided the MCO demonstrates to DOH's satisfaction prior to termination that circumstances exist which threaten imminent harm to enrollees or which result in provider being legally unable to deliver the covered services and, therefore, justify or require immediate termination.

2. If this Agreement is between the MCO and a health care professional, the MCO shall provide to such health care professional a written explanation of the reasons for the proposed contract termination, other than non-renewal, and an opportunity for a review as required by state law. The MCO shall provide the health care professional 60 days notice of its decision to not renew this Agreement.
3. If this Agreement is between an MCO and an IPA, and the Agreement does not provide for automatic assignment of the IPA's provider contracts to the MCO upon termination of the MCO/IPA contract, in the event either party gives notice of termination of the Agreement, the parties agree, and the IPA's providers agree, that the IPA providers shall continue to provide care to the MCO's enrollees pursuant to the terms of this Agreement for 180 days following the effective date of termination, or until such time as the MCO makes other arrangements, whichever first occurs. This provision shall survive termination of this Agreement regardless of the reason for the termination.
4. Continuation of Treatment. The provider agrees that in the event of MCO or IPA insolvency or termination of this contract for any reason, the provider shall continue, until medically appropriate discharge or transfer, or completion of a course of treatment, whichever occurs first, to provide services pursuant to the subscriber contract, Medicaid Managed Care contract, or Family Health Plus contract, to an enrollee confined in an inpatient facility, provided the confinement or course of treatment was commenced during the paid premium period. For purposes of this clause, the term "provider" shall include the IPA and the IPA's contracted providers if this Agreement is between the MCO and an IPA. This provision shall survive termination of this Agreement.
5. Notwithstanding any other provision herein, to the extent that the provider is providing health care services to enrollees under the Medicaid Program and/or Family Health Plus, the MCO or IPA retains the option to immediately terminate the Agreement when the provider has been terminated or suspended from the Medicaid Program.
6. In the event of termination of this Agreement, the provider agrees, and, where applicable, the IPA agrees to require all participating providers of its network to assist in the orderly transfer of enrollees to another provider.

### F. ARBITRATION

1. To the extent that arbitration or alternative dispute resolution is authorized elsewhere in this Agreement, the parties to this Agreement acknowledge that the Commissioner of Health is not bound by arbitration or mediation decisions. Arbitration or mediation shall occur within New York State, and the Commissioner of Health will be given notice of all issues going to arbitration or mediation, and copies of all decisions.

### G. IPA-SPECIFIC PROVISIONS

1. Any reference to IPA quality assurance (QA) activities within this Agreement is limited to the IPA's analysis of utilization patterns and quality of care on its own behalf and as a service to its contract providers. analysis

# Appendix H
# CMS Form No. 10147

CUT ON DOTTED LINE AND DISPLAY IN PHARMACY. SPANISH VERSION ON NEXT PAGE.

**APPROVED OMB #0938-0975**

## MEDICARE PRESCRIPTION DRUG COVERAGE AND YOUR RIGHTS

- You have the **right to get a written explanation** from your Medicare drug plan if: Your doctor or pharmacist tells you that your Medicare drug plan will not cover a prescription drug in the amount or form prescribed by your doctor.
- You are asked to pay a different cost-sharing amount than you think you are required to pay for a prescription drug.

The Medicare drug plan's written explanation will give you the specific reasons why the prescription drug is not covered and will explain how to request an appeal if you disagree with the drug plan's decision.

You **also have the right to ask** your Medicare drug plan **for an exception** if:

- You believe you need a drug that is not on your drug plan's list of covered drugs. The list of covered drugs is called a "formulary;" or
- You believe you should get a drug you need at a lower cost-sharing amount.

### What you need to do:

- Contact your Medicare drug plan to ask for a written explanation about why a prescription is not covered or to ask for an exception if you believe you need a drug that is not on your drug plan's formulary or believe you should get a drug you need at a lower cost-sharing amount.
- Refer to the benefits booklet you received from your Medicare drug plan or call 1-800-MEDICARE to find out how to contact your drug plan.
- When you contact your Medicare drug plan, be ready to tell them:
  1. The prescription drug(s) that you believe you need.
  2. The name of the pharmacy or physician who told you that the prescription drug(s) is not covered.
  3. The date you were told that the prescription drug(s) is not covered.

*According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-0975. The time required to distribute this information collection once it has been completed is one minute per response, including the time to select the preprinted form, and hand it to the enrollee. If you have any comments concerning the accuracy of the time estimates or suggestions for improving this form, please write to CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Baltimore, Maryland 21244-1850.*

*Form No. CMS-10147*

APPROVED OMB #0938-0975

## SUS DERECHOS Y LA COBERTURA DE MEDICARE PARA RECETAS MÉDICAS

Usted **tiene el derecho de recibir una explicación por escrito** de su plan de Medicare para recetas médicas si:

- Su doctor o farmacéutico le dice que su plan de Medicare para recetas médicas no cubre un medicamento recetado por la cantidad o forma que ha sido prescrita por su doctor.
- Le piden pagar una cantidad de costo-compartido diferente a la que usted piensa que tiene que pagar por una medicina recetada.

La explicación por escrito del plan de Medicare para recetas médicas le dará las razones específicas por las que no se cubre la receta médica y le explicará cómo solicitar una apelación si no está de acuerdo con la decisión del plan.

**También tiene el derecho de pedirle** a su plan de Medicare para recetas médicas una excepción si:

- Usted cree que necesita un medicamento que no está en la lista de su plan de medicinas cubiertas. La lista de medicinas cubiertas se llama un "formulario;" o
- Usted cree que debe obtener una medicina que necesita a una cantidad de costo-compartido más baja.

**Lo qué necesita hacer:**

- Comuníquese con su plan para recetas médicas y pida una explicación por escrito del porqué no se cubre una prescripción o pregunte si pueden hacer una excepción si cree que necesita una medicina que no está en el formulario de su plan, o cree que debe conseguir una receta que usted necesita por una cantidad de costo-compartido más baja.
- Revise el manual de beneficios que recibió de su plan o llame GRATIS al 1-800-MEDICARE para averiguar cómo comunicarse con su plan de medicamentos.
- Cuando llame a su plan de Medicare para recetas médicas, este listo para decirles:
  1. La medicina o medicinas que usted cree que necesita.
  2. El nombre de la farmacia o médico que le informó que el medicamento no está cubierto.
  3. La fecha en que le informaron que el medicamento o medicamentos no estaba cubierto.

*La Ley de Reducción de Papeleo de 1995 requiere que le avisemos que la colección de esta información se hace según las disposiciones de la sección 3507 de La Ley de Reducción de Papeleo de 1995. No podemos coleccionar ni patrocinar la colección de información, y usted no está obligado a responder a una colección de información a menos que muestre un número válido de control de la Oficina de Gerencia y Presupuesto (OMB, siglas en inglés). El número válido de control de OMB para esta colección de la información es 0938-0975. Calculamos que tardará un minuto para completar cada sección. Esto incluye el tiempo que se tardará en leer las instrucciones, reunir la información necesaria y llenar el formulario. Si usted tiene comentarios sobre la precisión del estimado que toma llenar este formulario o sugerencias de cómo mejorar este documento, por favor envíelos por escrito a: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Baltimore, Maryland 21244-1850.*

*Form CMS-10147-SP (11 05)*

# Glossary of Terms

**Caremark Documents** means the Provider Agreement, Schedules thereto, Addendum, the Provider Manual and all attachments thereto including this Glossary of Terms, Federal Laws and Regulations, State Laws and Regulations, information transmitted by Caremark to Provider through the claims system, and information transmitted by Caremark to Provider specifically designated by Caremark as a "Caremark Document" which may include educational materials related to products, programs, services, and Plan Sponsor announcements.

**AWP or Average Wholesale Price** means the current wholesale cost of a given drug as defined in the latest edition of the First DataBank Blue Book, Medi-Span (with supplements), MICROMEDEX, or any other similar nationally recognized reference which Caremark may reasonably select from time to time.

**Confidential Caremark Information** means any nonpublic information or data (including but not limited to products, programs, services, business practices, procedures, MAC lists, reimbursement pricing information, prices paid to Provider for individual claims, or other information acquired from the contents of the Provider Agreement, Provider Manual, or other Caremark Documents) obtained from or provided by Caremark or any Plan Sponsor to Provider through or in connection with the Provider Agreement, Provider Manual, or other Caremark Documents that is confidential and proprietary to Caremark.

**Covered Item** means any drug or device covered, in whole or in part, in accordance with and subject to the terms of a Plan covering an Eligible Person.

**Dispensing Pharmacy** means the pharmacy identified by the NCPDP/NPI number under which the claim was submitted to and adjudicated by Caremark and where the Pharmacy Services were provided to the Eligible Person.

**Eligible Person** means a person or animal entitled to a Covered Item pursuant to a Plan.

**Law** means any Federal, State, local or other constitution, charter, act, statute, Law, ordinance, code, rule, regulation, order, specified standards, or objective criteria contained in or which are (by express reference or necessary implication) a condition of granting any applicable permit, license or approval required by Caremark, Provider, or a Plan Sponsor, or other legislative or administrative action of the United States of America, or state or any agency, department, authority, political subdivision or other instrumentality thereof or a decree or judgment or order of a court.

**MAC or Maximum Allowable Cost** means a unit price that has been established as the reimbursement amount to Provider for certain multiple-source drugs without regard to the specific manufacturer whose drug is dispensed.

**Patient Pay Amount** means the amount an Eligible Person must pay to Provider at the time a Covered Item is dispensed as indicated by the claims system, which may include but is not limited to copayments, coinsurance, deductibles, transaction fees, access fees, and/or taxes.

**Pharmacy Services/Provider Services** means all services including the provision of prescription drugs usually and customarily rendered by a Provider licensed to provide pharmacy services in the normal course of business, including services mandated by applicable Law. Pharmacy Services may include, but not be limited to: the maintenance of Eligible Person profiles; the interpretation of prescriptions; the selection of medications and medical devices; the sale of compounding or dispensing of medications and medical devices (also includes over-the-counter medications [OTCs] and supplies covered by or used in conjunction with a pharmacy benefit); the counseling of Eligible Persons, which may consist of information about the proper storage, dosing, side effects, potential interactions and use of the medication dispensed; the monitoring of appropriate drug use; and the implementation of drug utilization review programs and other clinical programs and services.

**Plan** means that portion of Plan Sponsor's pharmacy benefit plan that relates to Covered Items with respect to a group of Eligible Persons.

**Plan Sponsor** means the entity that contracts with Caremark or any of Caremark Rx, L.L.C.'s affiliates for pharmacy benefit management services, which entity could be, among other things, an insurance company, self-insured group, health maintenance organization, preferred provider organization, multi-employer trust or third party administrator.

**Prescriber** means a physician, dentist, physician's assistant, optometrist or other health care professional authorized by law to write prescriptions for prescription drugs.

**Price Type** means a current price of a given drug as defined by a nationally recognized reference that Caremark may reasonably select from time to time, which may include, but is not limited to: AWP (Average Wholesale Price), WAC (Wholesale Acquisition Cost), AMP (Average Manufacturer Price), ASP (Average Sales Price) or DP (Direct Price).

**Third-Party Agreement** means an agreement between Caremark and a Caremark client in which Caremark serves as an auditor for that client's participating network pharmacies.

**Usual and Customary Price or U&C** means the lowest price Provider would charge to a particular customer if such customer were paying cash for an identical prescription on that particular day at that particular location. This price must include any applicable discounts offered to attract customers.

NOTES



2211 Sanders Road • Northbrook, IL 60062
**www.caremark.com**

©2007 Caremark Inc. All rights reserved. (05.07)

# Exhibit 4



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

Dear Customer:

The following is the proof of delivery you requested with the tracking number **724639534770**.

## Delivery Information:

| Status: | Delivered | **Delivery location:** | 1411 LAKE COOK ROAD |
|---|---|---|---|
| Signed for by: | J.BARRERA | **Delivery date:** | Jun 1, 2007 08:42 |
| Service type: | Priority Overnight | | |

## Shipping Information:

| Tracking number: | 724639534770 | **Ship date:** | May 31, 2007 |
|---|---|---|---|

**Recipient:**
SHERRISE Y. TROTZ PHARMD. VP
WALGREENS
1417 LAKE COOK RD MS L459
REF. 1002STPM2007
DEERFIELD, IL 60015 US
Reference

**Shipper:**
PAUL LOEBE
CAREMARK
9501 E SHEA BLVD

SCOTTSDALE, AZ 85260 US
BILLACC

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

# Exhibit 5



Walgreens
The Pharmacy America Trusts

| | | | |
|---|---|---|---|
| **To:** | Greg Madsen | **From:** | Donna Dillavou for George Flaherty |
| **Co** | Caremark Rx., Inc. | **Phone** | 847.964.6110 |
| **Fax:** | 480.862.1046 | **Pages:** | 6 including cover |
| **Phone:** | 847.559.3854 | **Date:** | 10/29/2007 |
| **Re:** | Termination Notice | **CC:** | |

Mr. Madsen:

Attached are Termination Notices with George's initials.



October 24, 2007

Mr. Gregory I. Madsen, R.Ph.
Senior Vice-President, Retail Services
Caremark Rx, Inc.
2211 Sanders Road
Northbrook, IL 60062

RE: Termination Notice

Dear Mr. Madsen:

This letter serves as a written notice from Walgreen Co. ("Walgreens") to Caremark Rx, Inc. ("Caremark") that Walgreens intends to terminate participation in the Johnson Controls, Inc. pharmacy benefit plan ("Plan") administered by Caremark.

Please be advised that the termination of Walgreens' participation in the above referenced Plan will be effective on November 19, 2007. Please be further advised that Walgreens' termination of participation in the above referenced Plan will in no event be construed or interpreted as terminating Walgreens' participation in any other Caremark pharmacy networks and pharmacy benefit plans unless Walgreens has sent a separate written termination notice to Caremark.

Sincerely,

George Flaherty
Vice President, Managed Care Sales
Walgreens



October 24, 2007

Mr. Gregory I. Madsen, R.Ph.
Senior Vice-President, Retail Services
Caremark Rx, Inc.
2211 Sanders Road
Northbrook, IL 60062

     RE:   Termination Notice

Dear Mr. Madsen:

This letter serves as a written notice from Walgreen Co. ("Walgreens") to Caremark Rx, Inc. ("Caremark") that Walgreens intends to terminate participation in the Wisconsin Educational Association Trust pharmacy benefit plan ("Plan") administered by Caremark.

Please be advised that the termination of Walgreens' participation in the above referenced Plan will be effective on November 17, 2007. Please be further advised that Walgreens' termination of participation in the above referenced Plan will in no event be construed or interpreted as terminating Walgreens' participation in any other Caremark pharmacy networks and pharmacy benefit plans unless Walgreens has sent a separate written termination notice to Caremark.

Sincerely,

George Flaherty
Vice President, Managed Care Sales
Walgreens



October 24, 2007

Mr. Gregory I. Madsen, R.Ph.
Senior Vice-President, Retail Services
Caremark Rx, Inc.
2211 Sanders Road
Northbrook, IL 60062

RE: Termination Notice

Dear Mr. Madsen:

This letter serves as a written notice from Walgreen Co. ("Walgreens") to Caremark Rx, Inc. ("Caremark") that Walgreens intends to terminate participation in the Ispat Inland Inc. pharmacy benefit plan ("Plan") administered by Caremark.

Please be advised that the termination of Walgreens' participation in the above referenced Plan will be effective on November 27, 2007. Please be further advised that Walgreens' termination of participation in the above referenced Plan will in no event be construed or interpreted as terminating Walgreens' participation in any other Caremark pharmacy networks and pharmacy benefit plans unless Walgreens has sent a separate written termination notice to Caremark.

Sincerely,

George Flaherty
Vice President, Managed Care Sales
Walgreens

1417 LAKE COOK ROAD M.S. L468 DEERFIELD, IL 60015 PHONE: (847) 964-8429
www.walgreens.com



Walgreens

October 24, 2007

Mr. Gregory I. Madsen, R.Ph.
Senior Vice-President, Retail Services
Caremark Rx, Inc.
2211 Sanders Road
Northbrook, IL 60062

RE: Termination Notice

Dear Mr. Madsen:

This letter serves as a written notice from Walgreen Co. ("Walgreens") to Caremark Rx, Inc. ("Caremark") that Walgreens intends to terminate participation in the Progressive Corporation pharmacy benefit plan ("Plan") administered by Caremark.

Please be advised that the termination of Walgreens' participation in the above referenced Plan will be effective on November [illegible] 2007. Please be further advised that Walgreens' termination of participation in the above referenced Plan will in no event be construed or interpreted as terminating Walgreens' participation in any other Caremark pharmacy networks and pharmacy benefit plans unless Walgreens has sent a separate written termination notice to Caremark.

Sincerely,

George Flaherty
Vice President, Managed Care Sales
Walgreens