# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| CAREMARKPCS HEALTH, L.P., a Delaware Limited Partnership, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 07-C-6272 Honorable Mark Filip |
| WALGREEN CO., an Illinois Corporation | ) ) ) | |
| Defendant. | ) ) ) | |

## WALGREEN CO.'S OPPOSITION TO PLAINTIFF'S
## MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiff Caremark's complaint and Motion for an Emergency TRO against defendant Walgreen Co. ("Walgreens") claim that Walgreens has breached a written Provider Agreement between Walgreens and plaintiff's purported predecessor. (Verified Complaint ("Cmplt." ¶ 2, 37-40; Plaintiff's Mem. of Law in Support of its Emergency Mot. for TRO ("Mem.") at 2-3) As plaintiff admits, "the party to the contract at issue in this action with Walgreens" is "PCS Health Systems, Inc.," not plaintiff Caremark. (Cmplt. ¶ 2.) Despite this, Caremark has sued Walgreens, claiming that Caremark—not PCS Health Systems, Inc.—"amended" the 10-day termination provision of the Provider Agreement, and that Walgreens has breached that allegedly amended provision. (*Id.* ¶¶ 1, 23-27.)

On its face, plaintiff's motion suffers from legal defects and cannot satisfy any (much less all) of the requirements for a TRO. As plaintiff's own pleadings show:

- ***First***, Caremark has no likelihood of success on the merits. The 10-day termination provision of the Provider Agreement was never amended, and plaintiff's purported "notices" of amendment neither mention that provision nor provide that it has been amended. The "notices" themselves do not comply with the Provider Agreement's

provisions for providing notice of *any* contract amendment, much less an amendment to the 10-day notice of termination provision. And, plaintiff nowhere alleges that it has complied with the terms of the Provider Agreement, which is a prerequisite of any contract claim.

- *Second*, Caremark has no claim under the terms of the Provider Agreement. That contract contains a "Limitation on Liability" clause that states that Walgreens "shall not be liable [to PCS] for indirect, consequential or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation or loss of customers or business"—which are the only injuries alleged by Caremark in its complaint. (*See* Cmplt. ¶¶ 35, 40, 43; *id.* Ex. 1, § 7.1)

- *Third*, plaintiff Caremark is not a party to the Provider Agreement and has no rights under that contract. The Provider Agreement expressly provides that, "[e]xcept for the indemnity provisions hereof, no term or provision of this Agreement is for the benefit of any person who is not a party hereto (including, without limitation, any Eligible Person or Plan Sponsor), and no such party shall have any right or cause of action hereunder." (Cmplt., Ex. 1, § 9.2.) As plaintiff admits, the "party" to the Provider Agreement is "PCS Health Systems, Inc." (Cmplt. ¶ 2) Plaintiff cannot claim any rights as a purported successor of PCS Health Systems, Inc. where (i) the contract itself contradicts and negates any such claim, and (ii) plaintiff has not demonstrated or alleged that it was ever made a party to the contract.

- *Fourth*, Caremark cannot show any irreparable harm because it has an adequate legal remedy, *i.e.*, money damages. Breach of contract claims are, by their nature, remedied by a monetary award. Plaintiff concedes as much in its complaint, expressly alleging that it is entitled to "compensatory and punitive damages" for Walgreens' purported breach. (Cmplt. at 11.) Although Caremark seeks to rely on the purported harm to plan participants, it provides no evidence of such harm, let alone irreparable harm. In any event, the Provider Agreement expressly precludes such an argument by providing that the agreement cannot be read to confer benefits on any non-party. (*See* Cmplt., Ex. 1, § 9.2)

- *Fifth*, plaintiff cannot show that the balance of hardships and the public interest favor entry of a TRO, particularly where plaintiff seeks to unilaterally amend an agreement to which it is not a party.

- *Finally*, plaintiff has no legally protectible interest that justifies the extraordinary remedy of a TRO.

In sum, what Caremark seeks is a mandatory injunction—the most disfavored of all equitable remedies—that would rewrite the express terms of the Provider Agreement so as to delete key terms in that agreement, and insert new and different terms to which Walgreens never

agreed.  Nothing in the law, including Federal Rule of Civil Procedure 65, allows this.  Put simply, there is no basis to alter the *status quo* by rewriting the Provider Agreement in the context of an accelerated TRO proceeding.[1]

## STATEMENT OF FACTS

Plaintiff CaremarkPCS Health, L.P. ("Caremark") alleges that it is a Delaware limited liability partnership and maintains its principal place of business in Scottsdale, Arizona.  (Cmplt. ¶ 2.)  Caremark's complaint states that it offers drug benefit services to over 2,000 health plan sponsors and their plan participants, and has a national network of more than 62,000 participating local retail pharmacies including Walgreen Co. ("Walgreens"), among others.  (*Id.* ¶¶ 12, 14.)    Defendant Walgreens is an Illinois corporation, with headquarters located in Deerfield, Illinois.[2]  (*Id.* at ¶ 8.)

**A.    The Provider Agreement Between PCS Health Systems, Inc. And Walgreens.**

On January 3, 2001, PCS Health Systems, Inc., the alleged predecessor to Caremark, and Walgreens entered into a Provider Agreement.  (*Id.* at ¶ 15, attaching as Ex. 1.)   This agreement sets forth the terms under which Walgreens dispenses prescriptions to participants of PCS Health System's client plans in various national networks.  (*Id.*)

The relevant sections of the Provider Agreement are as follows:

*Section 1.3*:    Provides that from time to time "PCS may amend this Agreement . . . by giving notice to [Walgreens] of the terms of the amendment and by specifying the date the amendment becomes effective, which shall not be less than thirty (30) days after the notice." (Cmplt., Ex. 1 at §  1.3.)

---

[1]     In light of the arbitration provision in the Provider Agreement, Walgreens has filed a separate Motion To Dismiss Or, In The Alternative, To Stay, Pending Arbitration.

[2]     For the record, Walgreens denies the material allegations contained in plaintiff's Complaint.

*Section 4.2*:    Provides that "[Walgreens] may terminate participation in any PCS Network of any Plan . . . by giving PCS ten (10) days' prior written notice specifying the date of termination and the names of the Network(s) and Plan(s) in which [Walgreens] will no longer participate." (*Id.* at § 4.2.)

*Section 7.1*:    States that "[i]n no event is either [Walgreens or PCS] liable to the other party for indirect, consequential or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation or loss of customers or business." (*Id.* at § 7.1)

*Section 8.7*:    Sets forth the specific requirements for notice under the agreement. According to this section's terms, all notice "shall" be "delivered in person, sent by certified mail, delivered by air courier, or transmitted by facsimile ***and*** confirmed in writing . . . to a party at the address or facsimile number shown in this Agreement." (*Id.* at § 8.7 (emphasis supplied).) In addition, "Notice to [Walgreens] must be addressed as set forth on" the Provider Agreement, which provides a specific address and contact person at Walgreens. (*Id.*).

*Section 9.2*:    Provides that "[e]xcept for the indemnity provisions hereof, that no term or provision of this Agreement is for the benefit of any person who is not a party" to the Agreement. (*Id.* at § 9.2.) This means that plan participants do not have "any right[s] or cause[s] of action" relating to the Agreement. (*Id.*)

*Section 9.5*:    Relates to disputes arising under or relating to the agreement. According to the contract, "[a]ny and all controversies in connection with or arising out of this Agreement . . . will be ***exclusively*** settled by arbitration . . . ." (*Id.* at § 9.5 (emphasis supplied).)

*Section 9.8:*     Provides that in the event of any conflict between the Provider Agreement and any "PCS Documents," including the PCS Manual, "the terms of the [Provider] Agreement shall govern." (*Id.* § 9.8; *see id.* at 9, Schedule of Terms "PCS Documents".)

### B.     The Purported Amendments To The Provider Agreement.

Plaintiff alleges that on March 24, 2004, Caremark Rx, Inc. acquired AdvancePCS—the parent company of PCS Health Systems, Inc., the party to the Provider Agreement. (Cmplt. ¶ 20.) Shortly after this acquisition, Caremark purportedly notified Walgreens that it would be using the "same base provider agreement" for Caremark and AdvancePCS. (*Id.* at ¶ 22, attaching Ex. 2.) However, Caremark's alleged notice did not modify the Provider Agreement in effect between PCS Health Systems, Inc. and Walgreens. (Cmplt., Ex.2.) In fact, in its communication to Walgreens, Caremark did not even reference PCS or the Provider Agreement it had entered into with Walgreens. (*Id.*)

The Complaint further alleges that, in 2007, following the merger of Caremark, Rx, Inc. and CVS Corporation, Caremark sent Walgreens another communication. (Cmplt. ¶ 23, attaching Ex. 3.) In this document, Caremark notified pharmacy providers of certain changes and updates "regarding Caremark and Pharmacare." (*Id.*) The letter set forth specific "updates" and other changes, but, again, did not identify any change to the ten-day termination provision of Walgreen's Provider Agreement with PCS Healthcare. (*See* Cmplt. Ex. 3.)

### C.     Walgreens' Notices Of Termination

In late October 2007, in accordance with its express rights under section 4.2 of the Provider Agreement, Walgreens notified Caremark of its intent to terminate its participation in four benefit plans administered by Caremark. (Cmplt. ¶ 33.)

## ARGUMENT

"[T]he granting of a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 389 (7th Cir. 1984); *Schwinn Bicycle Co. v. Ross Bicycles, Inc.,* 870 F.2d 1176, 1181 (7th Cir. 1989). Moreover, a preliminary injunction is an extraordinary remedy which is not available unless the plaintiff carries its burden of persuasion ***by a clear showing*** as to all of the prerequisites. *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997); *Boucher v. School Bd. of School Dist. of Greenfield,* 134 F.3d 821, 823 (7th Cir. 1998). Because a preliminary injunction is an extraordinary remedy, the court's power to issue such relief should be exercised sparingly. *See Rizzo v. Goode*, 423 U.S. 362, 378 (1976); *Intl. Test & Balance, Inc. v. Assoc. Air & Balance Council,*14 F. Supp. 2d 1033, 1038-39 (N.D. Ill. 1998).

To obtain a TRO, Caremark must demonstrate (1) a protectible interest; (2) its case has a likelihood of success on the merits and; (3) it will suffer irreparable harm, as opposed to monetary damages, if the TRO is not granted. *See, e.g., Long v. Bd. of Educ., Dist. 128*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) (citing *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). If Caremark cannot meet this burden, the "court's inquiry is over and the injunction must be denied." *East St. Louis Laborers Local 100 v. Bellon Wreckage & Salvage*, 414 F.3d 700, 703 (7th Cir. 2005). If, however, Caremark satisfies these requirements, the court must then consider any harm that would result to Walgreens if the TRO is granted, as well as how granting or denying such relief would impact the public interest. *Long*, 167 F. Supp. 2d at 990. Caremark fails to make the extraordinary showing necessary to obtain a TRO.

## I.    CAREMARK HAS FAILED TO SHOW A LIKELIHOOD OF SUCCESS ON THE MERITS.

Caremark has not and cannot demonstrate that it is likely to succeed on the merits of its breach of contract claim.  The termination provision in the Provider Agreement was not amended at any time, let alone by plaintiff's purported "notices."  Moreover, the clear terms of the Provider Agreement itself bars Caremark from pursuing this breach of contract action.

### A.    The Ten-Day Termination Provision In The Provider Agreement Was Never Amended.

As plaintiffs' own pleadings show, the 10-day termination provision in Provider Agreement § 4.2 was never amended.[3]  *First*, on their face, plaintiff's purported notices (Cmplt. Ex. 2, the 2004 "Important Notice to Pharmacy Providers," and Ex. 3, the 2007 "Important Integration Notice Regarding Caremark and Pharmacare") do not mention the 10-day termination provision or even termination generally.  The 2004 and 2007 "notices" do not amend, or even purport to amend, the Provider Agreement between PCS Health Services, Inc. and Walgreens.  The 2004 "notice" does not address any amendment, and while the 2007 "notice" mentions certain "changes" and updates" to the Caremark Provider Manual (Cmplt. Ex. 3), it does not mention the 10-day termination provision in the Provider Agreement itself.

*Second*, neither of plaintiff's alleged "notices" complies with the "Amendments" provision in § 1.3 of the Provider Agreement, which Caremark claims to rely on in its complaint. (Cmplt. ¶ 17.)   Section 1.3 specifically requires that PCS Health Systems, Inc. amend the

---

[3] Where, as here, plaintiff alleges and incorporates a written instrument or instruments into its complaint, those writings become part of the pleading "for all purposes." Fed. R. Civ. P. 10(c); *see Whirlpool Financial Corp. v. GN Holdings, Inc.*, 873 F. Supp. 111, 123 n.18 (N.D. Ill. 1995), *aff'd*, 67 F.3d 605 (7th Cir. 1995).  Moreover, "to the extent that the written documents contradict the allegations in the complaint, the former controls."  *Venture Associates Corp. v. Zenith Data Systems Corp.*, 812 F.Supp. 788, 790 (N.D. Ill. 1992), *aff'd in relevant part, rev'd on other grounds*, 987 F.2d 429 (7th Cir. 1993); *In re Fultz*, 232 B.R. 709, 717 (Bankr. N.D. Ill. 1999) ("[w]hen a written instrument incorporated in the pleadings contradicts allegations in the complaint, the exhibit 'trumps the allegations'").

agreement by, among other things, "giving notice to [Walgreens] of the terms of the amendment . . . ." (Cmplt. Ex. 1, § 1.3.) Plaintiff's "notices" do not do that. The purported 2004 "notice" does not state that **any** contract is being amended, much less that the 10-day termination provision in § 4.2 of Walgreen's Provider Agreement with PCS Health Systems, Inc. was being changed. Likewise, the purported 2007 "notice" discusses various "updates" and "changes" to the Caremark Provider Manual"—specifically regarding "the Medicare Part D Program and National Provider Identification number . . . initiative," "re-organization of the payer sheet, transaction standards, rejection codes as appendices," and various other manual "sections" — it does not address or mention the Provider Agreement's 10-day termination provision or any purported change or amendment to that term. (Cmplt. Ex. 3, at 2.) Simply put, though the Provider Agreement expressly requires that any purported "notice" provide "the terms of the amendment," nothing in plaintiff's notices does this with respect to the 10-day termination provision. Indeed, as plaintiff concedes, the termination provision that it relies upon is not found in any notice, but is buried in the 2007 Caremark Provider Manual. (Cmplt., Ex. 3 at 16.)

*Third*, by their terms, plaintiff's purported 2004 and 2007 "notices" independently fail to comply with the form-of-notice provision in Provider Agreement § 8.7. (Ex. 1, § 8.7) Section 8.7 specifically requires that "[n]otices to [Walgreens] must be addressed as set forth on the Enrollment Form" in the Provider Agreement, which provides a specific address and contact for Walgreens, and "[a]ll notices" must be "confirmed in writing…to a party at the address or facsimile number shown in this Agreement . . . ." (*Id*.; *see id.* Provider Agreement, PCS Health Systems, Inc. Network and Plan Enrollment Form) Caremark's 2004 "notice" does not contain any address or contact information for Walgreens, let alone the information specified by the Provider Agreement's Enrollment Form. (Cmplt., Ex. 2.) There is also no evidence presented

that this "notice" was ever confirmed in writing.  The 2007 "notice" has the same problem: it does not show how, or if, it was addressed as required under the contract.  (*Id.*, Ex. 3.)  And while plaintiff attaches as Exhibit 4 a Federal Express delivery slip, this shows, at most, that someone at Walgreens (but not the person or the location identified in the Provider Agreement's Enrollment Form) received a package, not that plaintiff's purported "notice" of an alleged amendment was confirmed in writing.  (*See* Cmplt., Ex. 4.)  Plaintiff has simply failed to show that it complied with the contractual condition precedent of providing notice of an alleged amendment to Provider Agreement's 10-day termination provision as required in that contract.

### B.    Caremark Has No Claim Under the Provider Agreement.

### 1.    Paragraph 7.1 Of The Provider Agreement Bars Caremark's Claims.

Caremark cannot assert any valid claim under the Provider Agreement.  Section 7.1 of the Provider Agreement is a "Limitation of Liability" provision that unequivocally states that "[i]n no event is either party liable to the other party for indirect, consequential or special damages of any nature (even if informed of their possibility), lost profits or savings, punitive damages, injury to reputation or loss of customers or business."  (Cmplt., Ex. 1 ¶ 7.1)  Caremark's claim in this case is that Walgreens' alleged breach of the Provider Agreement has purportedly harmed Caremark's "business efforts, customer relationships, and goodwill"—which is precisely the type of liability that the Provider Agreement precludes.  (*See* Cmplt. ¶¶ 39, 44; Pl. Mem. in Supp. of TRO at 8.)  Caremark cannot assert liability (or, for that matter, damages) claims that are barred by the terms of the contract it purportedly seeks to enforce.  *See, e.g., Hicks v. Airborne Exp.*, 858 N.E.2d 48, 54-55 (Ill. App. Ct. 2006) (granting summary judgment to defendant on plaintiff's breach of contract claim where the contract precluded the damages sought by plaintiff).

### 2. Caremark Is Not A Party To The Provider Agreement And Has No Right Or Cause Of Action Under The Agreement.

Finally, Provider Agreement § 9.2 provides that "[e]xcept for the indemnity provisions hereof, no term or provision of this Agreement is for the benefit of any person who is not a party hereto (including, without limitation, any Eligible Person or Plan Sponsor), and no party shall have any right or cause of action hereunder."  (Ex. 1, § 9.2)  Caremark admits that it is not "the party" (PCS Health Care Systems, Inc.) to the Provider Agreement, but at most a purported "successor" to that party (Cmplt. ¶ 2), an entity that expressly has no rights under the contract. Moreover, Caremark presents no evidence that this party-only provision was ever amended or that Caremark itself ever became a party to the Provider Agreement.  For the same reason, Caremark cannot purport to enforce the Provider Agreement allegedly on behalf of, or for the benefit, of plan participants — they, too, are excluded and have no rights or benefits under the contract.  (Cmplt., Ex. 1, § 9.2; *see id.* at 9, Schedule of Terms (defining "Eligible Person" to include plan participants).)

## II. CAREMARK HAS AN ADEQUATE REMEDY AT LAW AND CANNOT SHOW IRREPARABLE HARM IF THE RESTRAINING ORDER IS NOT ISSUED.

A party seeking injunctive relief must establish both irreparable harm **and** an inadequate remedy at law in order to obtain equitable relief.  *See, e.g.*, *International Test & Balance, Inc. v. Assoc. Air & Balance Council,*  14 F. Supp. 2d 1033, 1038-39 (N.D. Ill. 1998); *Ormsby Motors, Inc. v. General Motors Corp.*, 842 F. Supp. 344, 349 (N.D. Ill. 1994).  No injunction may issue if there is an adequate legal remedy, such as money damages, that could make the plaintiff whole after trial.  *See, e.g., American Hospital Ass'n v. Harris*, 625 F.2d 1328, 1331 (7th Cir. 1980) (alleged injury is not irreparable if there exists an adequate legal remedy); *Ormsby*, 842 F. Supp. at 349; *Antonic Rigging & Erecting of Minn., Inc. v. MDCON, Inc.,* N. 90 C 4800, 1990 WL

139079, at *2 (N.D. Ill. 1990). Here, Caremark cannot establish irreparable injury because it has an adequate remedy at law – *i.e.*, plaintiff can recover money damages if there is liability.

### A.    Caremark Pleads A Simple Breach Of Contract Claim, Expressly Seeking Money Damages.

By Caremark's own admission, its claims arise out of an alleged breach of contract. Plaintiff's complaint explicitly seeks "to enforce termination provisions in a Provider Agreement between Caremark and Walgreens." (Cmplt. ¶ 1.) This case is a straightforward breach of contract case, and such cases by their nature are money damages cases. *See, e.g.*, *Classic Components Supply, Inc. v. Mitsubishi Elecs. America, Inc.*, 841 F.2d 163, 164-65 (7th Cir. 1988).

Caremark's own sworn complaint confirms that it has an adequate remedy at law. Specifically, in ***each*** of its two causes of action, Caremark alleges and seeks money damages to compensate it for its alleged losses caused by Walgreens' termination of the Provider Agreement. (Cmplt. ¶ 40 (alleging that "Caremark's business will suffer damages in excess of $75,000"; ¶ 43 (alleging that "[t]he precise monetary value of this disruption to Caremark's business … will exceed $75,000")). In fact, Caremark's Prayer For Relief expressly requests an award of "compensatory and punitive damages" for its purported losses caused by Walgreens' alleged conduct. (Cmplt. at Prayer for Relief). This, in itself, defeats plaintiff's motion. *See Lancaster Foundation Inc. v. Skolnick*, No. 92 C 4175, 1992 WL 211063, at *5 (N.D. Ill. Aug. 21, 1992) ("Even plaintiffs themselves have been able to place a monetary value on their alleged injuries in their request for compensatory damages ..., thus providing further evidence that plaintiffs have an adequate remedy at law.")

Under the law, plaintiff's claims of irreparable injury to its reputation or to its goodwill if injunctive relief is denied do not establish irreparable harm. (Pl. Mem. at 11-12). ***First,***

Caremark has presented **no** evidence to support its bald assertions of reputational damage and loss of goodwill.   Such conclusory allegations cannot support a preliminary injunction as a matter of law.  *See Data Cash Systems, Inc. v. JS&A Group, Inc.*, 480 F. Supp. 1063, 1072 (N.D. Ill. 1979) (plaintiff's conclusory statements that its reputation and good will have been damaged do not establish that plaintiff has been irreparably harmed); *Lockheed Missile & Space Company, Inc. v. Hughes Aircraft Company*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995) (injunctive relief cannot rest on bald assertions of reputation damage unsupported by evidence).   **Second,** Caremark's claimed injuries to its reputation and goodwill are capable of valuation and, therefore, can be compensated by an award of money damages.  *See, e.g., Lawson Products, Inc.*, 782 F.2d at 1441; *Lancaster Foundation, Inc. v. Skolnick*, No. 92 C 4175, 1992 WL 211063, at *4 (N.D. Ill. Aug. 21, 1992) (alleged damage to plaintiff's goodwill is amenable to pecuniary valuation and can be adequately compensated with money damages); *Gary Joint Venture v. Friendly Ice Cream Corp.*, No. 87 C 886, 1987 WL 12691, at *5 (N.D. Ill. June 12, 1987) (alleged injury to plaintiff's reputation is compensable in money damages); *D'Acquisto v. Washington*, 640 F. Supp. 594, 625 (N.D. Ill. 1986).[4]   **Third,** and in any event, the Provider Agreement provides that Walgreens cannot be liable for the type of "injury to reputation" that Caremark is claiming here.  (Cmplt., Ex. 1, ¶ 7.1)

Accordingly, Caremark has failed to show that there is an inadequate remedy at law, and therefore, its request for a restraining order must not be issued.

---

[4]      As the courts have found, Caremark's claimed losses such as loss of "goodwill, its competitive position as a drug network administrator, and the continuity of its business relationships" (Pl. Br. at 12) are calculable and can be monetized.  *See, e.g., Lawson Products, Inc. v. Avent, Inc.*, 782 F.2d 1429, 1440 (7th Cir. 1986); *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380 (7th Cir. 1984); *Classic Components Supply, Inc. v. Mitsubishi Electronics America, Inc.*, 841 F.2d 163, 164-65 (7th Cir. 1988); *Ormsby Motors, Inc.*, 842 F. Supp. at 351.

## B.    UNSUPPORTED CLAIMS OF "HARM" TO THIRD PARTIES DOES NOT CREATE IRREPARABLE HARM.

Caremark further alleges that "it" has suffered irreparable harm because Walgreens' alleged actions pose a threat of substantial harm to Caremark's individual plan participants. These assertions, however, are misguided as well.

***First,*** the standard to show irreparable harm does not allow consideration of the potential harm to non-parties if a TRO is not entered. The plaintiff must show "whether [it] would suffer irreparable harm absent an injunction in that [it] would have an inadequate remedy at law." *See, e.g., MacDonald v. Chicago Park Dist.*, 132 F.3d 355, 357 (7th Cir. 1997). Thus, there is nothing within the irreparable harm standard to suggest that harm to third parties, such as the individual plan participants, satisfies this prong of the standard. In fact, it indicates just the contrary - that "Caremark" must show that "it" suffered irreparable harm, and also that "Caremark" does not have an adequate remedy at law.

***Second,*** the contract itself bars Caremark from relying on harm or damages to individual plan participants. Paragraph 9.2 of the Provider Agreement states:

> "The parties to this Agreement are to be considered independent contractors, and they shall have no other legal relationship under or in connection with this Agreement. ***Except for the indemnity provisions hereof, no term or provision of this Agreement is for the benefit of any person who is not a party hereto (including, without limitation, any Eligible Person or Plan Sponsor), and no such party shall have any right or cause of action hereunder.***"

(Cmplt., Ex. 1 (emphasis supplied).) This contractual provision demonstrates that even if Caremark could show, and it cannot, that harm to non-parties can satisfy the irreparable harm standard, these non-parties were not harmed because these parties (i) are not beneficiaries of the contract; and (ii) have no rights under the contract and could not possibly bring a cause of action themselves. Thus, Caremark cannot rely on the harm of third parties to satisfy the rigid standard for restraining orders.

*Third,* there is no support for plaintiff's allegations that third parties will be harmed by not having prescriptions filled at Walgreens locations. In fact, Caremark alleges in its Complaint that it "offers its clients various network options for the clients' participants. Caremark's national network includes" more than 62,000 participating local retail pharmacies, including Walgreens." (Cmplt. ¶ 14.) Surely, if Caremark provides more than 62,000 local retail pharmacies for its plan members, its individual plan participants will have an ample supply of pharmacies to fill their prescriptions if they cannot do so at a Walgreens store. Caremark has failed to show it will suffer irreparable harm and that there is an inadequate remedy at law.

## III.    THE BALANCE OF HARM DISFAVORS AN INJUNCTION.

Plaintiff cannot meet its burden in establishing that the balance of harm favors the entry of an injunction here. *First***,** the function of a preliminary injunction is to "preserve the *status quo* pending final determination of the merits after a full hearing." *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978); *Morgan v. Drew*, No. 91 CV 20167, 1992 WL 70341, at *1 (N.D. Ill. March 17, 1992). Here, the *status quo* is the ten day termination provision in the only contract ***actually signed*** by Walgreens. Granting an injunction will upset that *status quo*—and will undo Walgreens' agreement. That is not the purpose of a TRO.

*Second*, as demonstrated above, in seeking monetary damages in its complaint, plaintiff admits that the only harm that it will suffer can be reduced to a dollar certain. As a matter of law, this is insufficient to move the scales. *See Lancaster Foundation, Inc. v. Skolnick*, 1992 WL 211063, at *5 (N.D. Ill. Aug. 21, 1992) ("Even plaintiffs themselves have been able to place a monetary value on their alleged injuries in their request for compensatory damages …, thus providing further evidence that plaintiffs have an adequate remedy at law."); *Meerbrey v. Marshall Field & Co., Inc.*, 524 N.E.2d 228, 230 (Ill. App. Ct. 1988) (recognizing that injunctive

relief is properly denied where a plaintiff's complaint seeks money damages and thereby demonstrates the existence of an adequate remedy at law).

**Third**, the harm that would be visited upon Walgreens if the injunction is granted, is steep. Walgreens will be forced to adhere to contractual terms to which it never agreed.

**Fourth**, entry of an injunction would do violence to the public interest. Apart from unsupported assertions that plan participants will be harmed, plaintiff makes no effort to support its arguments that public policy supports the rewriting of a bargained-for contract. Nor can it. To the contrary, the law is clear. Public policy weighs heavily in favor of enforcing contracting parties' intentions. *See Bock v. Computer Assocs. Int'l, Inc.*, 257 F.3d 700, 708 (7th Cir. 2001) (recognizing importance of "giv[ing] effect to the mutual intent of the parties at the time the contract was made").

## IV.    CAREMARK HAS NO PROTECTIBLE INTEREST.

Caremark cannot demonstrate a legally protected interest that warrants imposition of an injunction. As such, the Court should deny this motion on these grounds as well. *See, e.g., Medline Indus., Inc. v. Grubb*, 670 F. Supp. 831, 835-37 (N.D. Ill. 1987) (holding that plaintiff's investment in its customer base did not give rise to a protected interest for TRO purposes). The interests that Caremark asserts are illusory. The alleged amendment of section 4.2 of the Provider Agreement was never actually made, assented to, or rendered enforceable. This is not a protectible interest.

## CONCLUSION

For the reasons stated above, Walgreens respectfully requests that this Court enter an order denying plaintiff's motion for preliminary injunctive relief.

Respectfully submitted,


/s/ Andrew B. Bloomer, P.C.
Richard C. Godfrey, P.C. (ARDC # 3124358)
Andrew B. Bloomer, P.C. (ARDC # 6209756)
Michael A. Duffy (ARDC # 6272163)
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601
Telephone:    (312) 861-2000
Facsimile:    (312) 861-2200

ATTORNEYS FOR DEFENDANT
WALGREEN COMPANY

## CERTIFICATE OF SERVICE

The undersigned attorney states that he caused a true and correct copy of the above-described OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER to be served upon the following attorneys of record for plaintiff, via messenger and email, on November 7, 2007, at the following email address:

> Howard M. Pearl (hpearl@winston.com)
> Peter J. Kocoras (pkocoras@winston.com)
> Courtney M. Oliva (coliva@winston.com)
> WINSTON & STRAWN LLP
> 35 West Wacker Drive
> Chicago, Illinois 60601
> (312) 558-5700 (facsimile)

/s/ Andrew Bloomer