**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINIOS
EASTERN DIVISION**

| | | |
|---|---|---|
| CAREMARKPCS HEALTH, L.P., a Delaware Limited Partnership, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 07 C 6272 |
| vs. | ) ) | Judge Filip |
| WALGREEN CO., an Illinois Corporation, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

Howard M. Pearl
Peter J. Kocoras
Courtney M. Oliva
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600 (telephone)
(312-558-5700 (facsimile)

I.  **INTRODUCTION**[1]

As detailed in its Verified Complaint, CaremarkPCS Health, L.P. ("Caremark") and Walgreen Co. ("Walgreens") are parties to a Provider Agreement that Walgreens breached by failing to provide 30 days notice of termination of its service to the four health plans that are at issue in this litigation.  The purpose of the 30-day notice requirement is to give individual plan participants time to transfer their prescription records between retail pharmacies and to give Caremark and its health plan clients sufficient time to notify all plan participants about Walgreens' termination of service so that no participant has their prescription rejected at a Walgreens pharmacy counter.  If Walgreens terminates service on only 10 days notice, as it intends to do on November 9, Caremark's ability to arbitrate this dispute will be mooted. Walgreens will have already terminated its service and caused irreparable harm to Caremark, its four health plan clients, and the hundreds of thousands of plan participants who rely on Walgreens to timely fill their prescriptions.  To prevent this from occurring, Caremark has sought a temporary restraining order.

II.  **ARGUMENT**

In addition to preventing immeasurable harm to its clients and hundreds of thousands of plan participants, Caremark is entitled to a temporary restraining order to protect its vested contact right to arbitrate any disputes arising under the Provider Agreement.  As stated in Section 9.5 of the Agreement:  "Any and all controversies in connection with or arising out of the Provider Agreement, which cannot be settled by the parties, will be exclusively settled by arbitration before a single arbitrator in accordance with the Rules of the American Arbitration Association."  (Compl. Exh. 1).  Walgreens' hasty termination plans endanger Caremark's contractual right to arbitration.

---

[1] As all relevant facts are set forth in more detail in the Verified Complaint, this Introduction is abbreviated.

1

**I.      Caremark Is Entitled To Injunctive Relief To Protect Its Contract Right To Arbitration**

To protect the meaningfulness of arbitration clauses like Section 9.5, the Seventh Circuit has recognized that district courts have the power to issue preliminary injunctive relief in disputes that are ultimately to be resolved through arbitration. *See, e.g., Gateway Eastern Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141 (7th Cir. 1994) (affirming "the district court's grant of preliminary injunctive relief in the face of arbitration"); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 214 (7th Cir. 1993) ("district courts are not precluded as a general matter from issuing preliminary injunctive relief pending arbitration"); *Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 351-52 (7th Cir. 1983) (protecting efficacy of arbitration clause requiring arbitration of "any and all disputes arising out of and in connection with" the contract by ordering district court to enjoin defendant's actions pending arbitration where plaintiff satisfied the requisites for obtaining such relief under the four usual factors justifying injunctions); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cross*, 1998 WL 122780, at *3 (No. 98 C 1435) (N.D. Ill. Mar. 13, 1998) (issuing a TRO to "preserve the status quo … until an arbitration panel considers the merits of Merrill Lynch's case"). As the courts observed in *Salvano* and *Cross*, the protection of a party's contractual right to arbitration is "furthered, not weakened, by a rule permitting a district court to preserve the meaningfulness of the arbitration by granting injunctive relief." *Salvano*, 999 F.2d at 214; *Cross*, 1998 WL 122780, at *3.

To obtain a preliminary injunction to preserve its right to arbitration, a party must satisfy the traditional factors that justify an injunction's issuance. *Salvano*, 999 F.2d at 214; *see also Sauer-Getriebe*, 715 F.2d at 351. The Court is no doubt very familiar with these factors: (1) reasonable likelihood of success on the merits; (2) no adequate remedy at law; (3) irreparable

harm; (4) harm to the plaintiff outweighs the harm to the defendant from the injunction; and (5) no harm from the injunction to the public interest. *Diamond Blade Warehouse, Inc. v. Paramount Diamond Tools*, 420 F. Supp. 2d 866, 872 (N.D. Ill. 2006); *Long v. Bd. of Education*, 167 F. Supp. 2d 988, 990 (N.D. Ill. 2001) (applying the same analysis to the issuance of a temporary restraining order). Caremark easily satisfies this test.

Caremark is reasonably likely to succeed on the merits given that Arizona law, which governs the Provider Agreement, recognizes and enforces termination provisions requiring prior written notice. *See Southern Arizona School For Boys, Inc. v. Chery, et al.*, 119 Ariz. 277, 279 (Ct. App. 1978) (holding that appellants were entitled to seek special damages arising from a breach of an agreement for failure to provide 30 days prior written notice of termination).

Caremark has no adequate remedy at law for Walgreens' breach and will suffer irreparable harm. Caremark will lose its right to try and stop Walgreens' hurried termination through arbitration and prevent incalculable loss of "goodwill, competitive position, and continuity of business relationships with its [plan participant] customers," who must either wait to fill prescriptions and potentially risk health problems or pay the "usual and customary" fee and risk partial or no reimbursement. *Diamond Blade Warehouse,* 420 F. Supp. 2d at 872 (granting injunctive relief to protect plaintiffs' from harm to their competitive business positions which "cannot be readily calculated and cured by an award of monetary damages[.]").

Walgreens, for its part, will experience little or no harm if the Agreement's 30-day notice provision is enforced. (Compl. ¶ 26, Exh. 4). Any "hardship" caused to Walgreens by not being able to immediately terminate its service is simply a continuation of the *status quo*–participation in servicing the plans and receipt of continued reimbursement by Caremark for all prescriptions

filled.  This cannot and does not outweigh the benefits to Caremark, its health plan clients, and plan participants of enforcement of the Provider Agreement's termination provision.

Finally, the requested injunctive relief is in the public interest, because the purpose of the 30-day termination notice is to ensure minimal, if any, disruption in plan participants' ability to receive their medications.  *See NewLife Homecare, Inc. v. Express Scripts, Inc.*, No. 3: 07CV761, 2007 WL 1314861, at *9 (M.D. Pa. May 4, 2007) (granting injunctive relief in favor of a pharmacy in part on the ground that the public interest would be served by allowing individuals to continue to receive their medications from that pharmacy).

In the end, as in *Gateway*, *Salvano*, *Sauer-Getriebe*, and *Cross*, injunctive relief is needed here to protect a contractual right to arbitration, not to mention the other immeasurable damage that will be done to Caremark's business interests, its health plan clients, and individual plan participants.  As stated in Caremark's Verified Complaint, Walgreens has breached its Provider Agreement with Caremark by giving only 10 days notice of its intent to terminate the parties' Agreement.  (Compl. ¶¶ 33-35).  As a result, Caremark has had to take immediate legal action to protect itself, its four health plan clients, and the hundreds of thousands people whose timely access to medications has been jeopardized by Walgreens' rash behavior.  Absent an injunction, by the time this dispute is arbitrated, Walgreens' hasty termination of service and the detrimental effects on Caremark, its health plan clients, and the hundreds of thousands of individual plan participants will have already occurred.  No arbitration will be able to un-ring that bell.  To preserve the *status quo* and safeguard Caremark's contractual right to a meaningful opportunity to arbitrate its dispute with Walgreens, the Court should enjoined Walgreens from terminating its service of the health plans at issue on only 10 days notice.

**II.     Caremark Is Entitled To Injunctive Relief Under American Arbitration Rule 34(c).**

Caremark is also entitled to injunctive relief pursuant to the Rules of the American Arbitration Association ("AAA").  As previously discussed, section 9.5 of the Provider Agreement states that any and all disputes in connection with and/or arising out of the Agreement will be settled by arbitration "in accordance with the Rules of the American Arbitration Association." (Compl. Exh. 1).  The AAA rules expressly contemplate and authorize judicial grants of injunctive relief in disputes that are ultimately governed by an arbitration clause.  Section (c) of AAA Rule 34, attached hereto as Exhibit 1, titled "Interim Measures," states that "[a] request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate." Thus, Caremark's request for an interim measure – in this case, a temporary restraining order – is supported by AAA Rule 34(c), not to mention the weight of case law authority discussed above, which states that injunctive relief is consistent with, and actually furthers, the goal of arbitration by preserving the *status quo* and the meaningfulness of the parties' contractual right to arbitration.

### III.     CONCLUSION

For the foregoing reasons, Caremark respectfully requests that the Court enter the Temporary Restraining Order against Walgreens as stated above and in Caremark's Verified Complaint.

        Respectfully submitted,

        CAREMARKPCS HEALTH, L.P.

        By:  /s/ Peter J. Kocoras
            One of Its Attorneys

Howard M. Pearl
Peter J. Kocoras
Courtney M. Oliva
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600 (telephone)
(312-558-5700 (facsimile)

## CERTIFICATE OF SERVICE

      The undersigned attorney states that he caused a true and correct copy of the MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER to be filed with the Clerk of the Court, and further caused the same document to be served on counsel for Plaintiff, via email, on this 7th day of November, 2007.

Richard C. Godfrey
Andrew B. Bloomer
Michael A. Duffy
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601
(Tel): 312-861-2000
(Fax): 312-861-2200


By:   /s/ Peter J. Kocoras
           One of Its Attorneys