# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

200 East Randolph Drive
Chicago, Illinois 60601

(312) 861-2000

www.kirkland.com

Andrew B. Bloomer, P.C.
To Call Writer Directly:
(312) 861-2482
abloomer@kirkland.com

Facsimile:
(312) 861-2200

November 13, 2007

**VIA MESSENGER DELIVERY**

Honorable Mark Filip
United States District Court
Northern District of Illinois
219 South Dearborn
Chicago, IL 60604

Re:        *CaremarkPCS Health, L.P. v. Walgreen Co.*,
            Case No. 07-C-6272

Dear Judge Filip:

Defendant Walgreen Co. ("Walgreens") submits this letter in response to the Court's November 11, 2007 email request. The Court's email is divided into eight paragraphs, certain of which (paragraphs 1-4, 7-8) direct questions to Walgreens. For the convenience of the Court, we address the issues in the order raised in the email.

Before counsel for Walgreens received the Court's email on November 11, Walgreens was in the process of drafting a Supplemental Memorandum in Opposition to Plaintiff's Motion for a Temporary Restraining Order based on evidence and information that have come to light since the parties appeared in court on November 7. This letter refers in parts to Walgreens' Supplemental Memorandum, which was filed today and a courtesy copy of which is enclosed.

Paragraph 1: The "public interests" factor has little, if any, role in this case for two independent reasons. First, Caremark alleges a private contract — the Provider Agreement — with Walgreens. That contract, in § 9.2, expressly disclaims "any right or cause of action" by an individual or entity that is not a party to the Provider Agreement. In addition, plaintiff Caremark has its own private contracts with the pharmacy benefit plans at issue in this case, and plan participants have an employee benefit that allows them to participate in those plans. Walgreens is not a party to any of those contracts, does not know what they provide, and has no contractual duty to plan participants. To the extent any purported "public interest" is implicated here, that interest arises from, and is subject to, the private contractual rights by and between plan participants and their plans, not the dispute over the Provider Agreement between Walgreens and plaintiff. As this and other courts have recognized, a purely private contractual dispute that does not directly affect any alleged rights of non-parties does not raise "public interest" concerns. *See, e.g., Nano-Proprietary, Inc. v. Keesmann*, No. 06 C 2689, 2007 WL 433100, at *7 (N.D. Ill.

## KIRKLAND & ELLIS LLP

Honorable Mark Filip
November 13, 2007
Page 2


Jan. 30, 2007) ("Because this is essentially a private contract dispute, the Court is not inclined to weigh the public interest here. ... [T]he consequences of this dispute, beyond [plaintiff] and [defendant], are purely speculative. The public interest we do consider is the sanctity of contracts and ownership."); *Caballo Coal Co. v. Indiana Michigan Power Co.*, 305 F.3d 796, 801 (8th Cir. 2002) ("Although the present case touches upon public policy issues concerning the structure of energy markets, the matter actually before the court is a contract dispute among private litigants").

Second, plaintiff Caremark has admitted that Walgreens' decision to terminate its participation will not cause any harm to plan participants, let alone irreparable harm, and thus cannot show that the "public interest" is somehow implicated here. As explained in Walgreens' Supplemental Memorandum, it turns out that Caremark and various of the pharmacy benefit plans have been telling plan participants that, in the event Walgreens terminates on November 13, participants will "easily" be able to get their prescriptions filled — and at no additional cost. Specifically:

- Members "can easily have your new pharmacy transfer…prescription[s] for you" and "[y]ou do not need to return to Walgreens to transfer your prescription."

- ***"Caremark has prepared an individualized letter for all [plan] members that will 1) inform them of Walgreens' status, 2) will identify alternative in-network pharmacies near their homes, 3) tell them how to get their prescriptions transferred …."***

- It is ***"Easy to Switch"*** from Walgreens and "new prescriptions may be filled at any participating [Caremark] network pharmacy."

- "The Caremark Retail Network includes 934 Wisconsin locations, more than eight out of ten pharmacy locations within the State and ***nearly nine out of ten pharmacies in the nation.***"

- "You may fill your prescriptions at ***any of the other 56,000 locations in the pharmacy network.***"

- "If you need to fill your prescription immediately,…***you may purchase your prescription drugs from Walgreens and submit the claim to Caremark for reimbursement***" through "December 8, 2007."

- ***"Q:  Do I now have to pay more for prescriptions filled at retail pharmacies? A: No. …"***

## KIRKLAND & ELLIS LLP

Honorable Mark Filip
November 13, 2007
Page 3


Caremark and the plans are correct in saying that plan members can easily switch to a convenient pharmacy in the Caremark network and get prescriptions filled at no additional cost. In this regard, there are significantly more non-Walgreens retail pharmacies in the plan areas at issue (including CVS, Osco, Wal-Mart, Target, KMart, Sam's, ShopKo, Dominick's, Pick 'n Save, etc.) than Walgreens stores from which plan members can obtain prescriptions. (*See* Walgreens' Suppl. Mem., Ex. 4, Declaration of Jillian Beydilly)

Paragraph 2:  The dispute in this matter extends beyond the issue of Walgreens' decision to terminate its participation in four pharmacy benefit plans. Over Walgreens' objections, Caremark has unilaterally used purported "amendments" to the Provider Agreement to systematically and repeatedly reduce reimbursement to Walgreens under the terms of the Provider Agreement, which potentially impacts Walgreens' ability to provide the necessary level of pharmacy services. Walgreens' contractual right to terminate its participation in pharmacy benefit plans within 10 days is the contractual mechanism available to Walgreens to limit and/or prevent Caremark's improper conduct.

Paragraph 3: The Provider Agreement is silent on the issue of PCS Heath Systems, Inc. assigning its rights under that contract. Because Provider Agreement § 9.2 provides that "no term or provision of this Agreement is for the benefit of any person who is not a party hereto," a purported assignment of rights would have to be accomplished by way of an amendment to the contract in accordance with the terms of § 1.3 ("Amendments"). While Walgreens does not dispute that it has done business with (and sent termination notices to) a Caremark entity, *see* Exhibit 5 in Exhibits in Support of Plaintiff's Verified Complaint, there is no allegation or evidence that the Provider Agreement has been amended to assign PCS Heath Systems, Inc.'s rights under that contract to the plaintiff in this case, and Walgreens has not acquiesced to any such purported assignment.

Paragraph 4:  The complaint's conclusory allegations regarding purported "higher costs" or delays to plan participants are directly contradicted by Caremark's (and the plans') own statements to plan participants over the last few days. Caremark has notified the plans and their members that they will be able to "easily" get prescriptions filled by an in-network pharmacy and, regardless, that participants will not pay more for prescriptions. The issue confronting the Court is how to reconcile plaintiff's allegations of purported "irreparable harm" with Caremark's representations to the plans and their many thousands of participants. They cannot be reconciled. Plaintiff's statements to third parties outside this court confirm that there is no irreparable harm here. Given plaintiff's admissions against its claim and its notice to the plans and their participants, any assertion of harm is entirely speculative. *See East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705 (7th Cir. 2005) ("a plaintiff cannot obtain a preliminary injunction by speculating about hypothetical future injuries").

## KIRKLAND & ELLIS LLP

Honorable Mark Filip
November 13, 2007
Page 4


Paragraph 7:  Walgreens has, under protest, received reduced reimbursement payments from Caremark, and has objected to Caremark regarding those payments.  Walgreens does not dispute that it has a contractual arrangement with one or more Caremark entities.  However, there is a significant dispute over the terms of that arrangement and, in particular, whether the 10-day termination provision has been eliminated and a 30-day termination provision applies. Walgreens' receipt of reimbursement payments does not address or resolve that issue.

Paragraph 8:  Walgreens has not waived compliance with the notice provisions of the Provider Agreement.  Under § 1.3 ("Amendments"), any notice of amendment must set forth, among other things, "the terms of the amendment."  This means that the notice itself must describe the specific proposed amendment.  Section 8.7 ("Notices") specifies how and to whom "[a]ll notices provided for in this Agreement" shall be transmitted, and requires that all notices be "confirmed in writing."

First, in § 9.6 the Provider Agreement contains an anti-waiver provision, which provides that the "[f]ailure to exercise any of the rights granted under this Agreement for any one default will not be a waiver of the right to exercise any of these rights for subsequent defaults."  Second, neither the alleged 2004 "notice" nor the 2007 "notice" complies with §§ 1.3 and 8.7.  Those purported "notices" do not mention, or purport to amend, the Provide Agreement's 10-day termination in § 4.2 and, in any event, were not addressed, provided, and confirmed in writing as required by § 8.7.  In the absence of a valid amendment, there is nothing for Walgreens to waive.

Finally, Walgreens has not committed any waiver by receiving reimbursement payments under protest and over its objections.  Payments are not "notices" under the Provider Agreement, and are not made under, or subject to, the contract's notice provisions.  *See* Provider Agreement § 4.3 ("Reimbursement to Provider").

In sum, plaintiff has the burden of clearly establishing each and every prerequisite for a TRO.  Its failure to establish any one of those elements — regardless of whether it is irreparable harm, an inadequate legal remedy, likelihood of success on the merits, etc. — precludes injunctive relief as a matter of law.  On the record before the Court, plaintiff has failed to establish the necessary elements for the extraordinary remedy of a TRO.

## KIRKLAND & ELLIS LLP

Honorable Mark Filip
November 13, 2007
Page 5


We look forward to appearing before your Honor at the hearing later today, and will be pleased to address these or any other questions that the Court may have.

Respectfully submitted,

Andrew B. Bloomer, P.C.
*Counsel for Defendant Walgreen Co.*


cc:  Counsel of Record (with enclosures) (via messenger)